UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
MICHAEL I. JANIS,
and JONATHAN N. JANIS

    Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC); et al.,

    Defendants.
_____/

CASE NO.: 1:16-mc-00405-P1

**EX PARTE APPLICATION AND MOTION FOR COURT ORDERED WRIT OF EXECUTION & MEMORANDUM OF LAW**

Plaintiffs' file this Ex Parte Application and Motion for issuance of a court Ordered Writ of Execution to enforce their Final Default Judgment entered in their favor as U.S. nationals against Defendants pursuant to the Anti-Terrorism Act, 18 U.S.C. §2333. The Judgment was rendered June 15, 2010 by the U.S. District Court for the Middle District of Florida, and was duly registered in this district on November 10, 2016 pursuant to 28 U.S.C. §1963, and may now be enforced like a judgment from this district. *See Order* [Case No 8:09-cv-2308 MDFL DE 232] and Judgment [MDFL DE 233] registered herein at Dkt. Entry 5.[1] There still remains due and owing $301,276,178.28 on the Judgment awarded.

Defendant FARC is the world's largest supplier of cocaine and is a designated Foreign Terrorist Organization. The FARC has also been designated by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") as a "specially designated

---

[1] Also attached to Declaration of Attorney Tony Korvick as Exhibits 1 and 2

narcotics trafficker" [SDNTK] under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act") and 31 CFR Part 598.

Plaintiffs are the widow and surviving children of Tom Janis, a retired decorated U.S. Army Delta Force aviator who was executed by the FARC in Colombia on February 13, 2003 after they shot down a single engine Cessna performing a counter-narcotics surveillance mission for the US Embassy in Bogota.  Plaintiffs also include the 3 American crew members (former U.S. military) who were then held hostage and tortured in the jungle for 5 ½ years until their rescue on July 2, 2008.

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides the federal statutory procedure for the enforcement of judgments by victims of terrorism and for executing on any blocked assets of the FARC, *or any agency or instrumentality of the FARC*.  Terrorism Risk Insurance Act of 2002, codified at 28 U.S.C. §1610 note.

Plaintiffs have satisfied the requirements of TRIA, they obtained an ATA judgment against the FARC, a "terrorist party" as defined by the TRIA Section 201(d)(4), on a claim based on an "act of terrorism" as defined by TRIA Section 201(d)(1)(B), and now seek to enforce that ATA judgment against blocked assets of "any agency or instrumentality of that terrorist party" which includes blocked assets of individuals, organizations, entities or cartels that have been designated by Department of Treasury's Office of Foreign Assets Control ("OFAC") as Specially Designated Narcotics Traffickers under the Kingpin Act ("SDNTKs") and that have a nexus with the FARC.  18 U.S.C. § 2333(e).

The TRIA allows terrorism victim judgment holders to execute on blocked assets of designated persons, entities or organizations not named in the ATA Judgment.  *Weinstein v.*

*Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010)("Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").

In *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d. 713, 731-32 (11th Cir. 2014)("*Stansell II*"), the Eleventh Circuit adopted the district court's definition of "agency or instrumentality" for TRIA purposes, 771 F.3d at 724 n.6, 732, where the district court stated that the term meant any person, entity, drug cartel, or organization that (1) "materially assist[ed] in, or provid[ed] financial or technological support for or to, or provid[ed] goods or services in support of the international narcotics trafficking activities of . . [FARC]"; "and/or" (2) was "owned, controlled, or directed by, or acting for or on behalf of, ... [FARC]"; "and/or" (3) "play[ed] a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC]." *See, e.g., Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2011 U.S. Dist. LEXIS 163474, at *10-11 (M.D. Fla. Sept. 6, 2011).

TRIA §201 provides for execution on the blocked assets of "**any**" agency or instrumentality of a terrorist party. The agency or instrumentality standard in a TRIA execution requires that any individual members, divisions and networks of any blocked person, entity, organization or group that has "**ever**" been involved in the cultivation, manufacture, trafficking or distribution of FARC cocaine, or that has "**ever**" supplied financial or money laundering services to the FARC, or its trafficking partners, "**directly or indirectly**" … "is an agency or instrumentality of the FARC under the TRIA." (MDFL DE

3

322, ¶¶ 11-13).[2] *See also Stansell* at 742 ("evidence Plaintiffs presented to the district court was sufficient to establish the required relationship between FARC and the Partnerships, **even if that relationship was indirect**")(emphasis added).

This "agency or instrumentality" standard was crafted to reach beyond the blocked parties' efforts at staying in the "shadows" by obfuscating ownership through layers of affiliated persons and front companies:

> On the other hand, terrorist organizations such as FARC operate in the shadows out of necessity. For example, a corporation organized under Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies.

*Stansell* at 732. The appellate court recognized that terrorist and money laundering operations are "clandestine" and that a real-world standard must apply to reach non-state actors. *Id*. The standard reaches blocked parties even if never previously linked to the terrorist party. *Stansell II* at 738-39 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.").

On February 13, 2017, OFAC formally designated the "**EL AISSAMI & LOPEZ BELLO NETWORK**" and all its members [See **Ex. 1**: OFAC Chart] as SDNTKs under the Kingpin Act. OFAC made the following factual findings in its designations of the "EL AISSAMI & LOPEZ BELLO NETWORK":

> **Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello**
> 2/13/2017
> *Action Targets International Network of 13 Companies That Facilitate Illicit Money Movements and Offshore Asset Holdings*

---

[2] Attached as Exhibit 3 to Declaration of Tony Korvick, Esq.

4

WASHINGTON—Today, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated **Venezuelan national Tareck Zaidan El Aissami Maddah (El Aissami) as a Specially Designated Narcotics Trafficker pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act) for playing a significant role in international narcotics trafficking**. El Aissami is the Executive Vice President of Venezuela. **<u>El Aissami's primary frontman, Venezuelan national Samark Jose Lopez Bello (Lopez Bello), was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of, and acting for or on behalf of, El Aissami</u>**. OFAC further designated or identified as blocked property 13 companies owned or controlled by Lopez Bello or other designated parties that comprise an international network spanning the British Virgin Islands, Panama, the United Kingdom, the United States, and Venezuela.

\*   \*   \*

El Aissami … facilitated shipments of narcotics from Venezuela, to include control over planes that leave from a Venezuelan air base, as well as control of drug routes through the ports in Venezuela. In his previous positions, he oversaw or partially owned narcotics shipments of over 1,000 kilograms from Venezuela on multiple occasions, including those with the final destinations of Mexico and the United States.

He also facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela. Specifically, El Aissami received payment for the facilitation of drug shipments belonging to Venezuelan drug kingpin Walid Makled Garcia. El Aissami also is linked to coordinating drug shipments to Los Zetas, a violent Mexican drug cartel, as well as providing protection to Colombian drug lord Daniel Barrera Barrera and Venezuelan drug trafficker Hermagoras Gonzalez Polanco. Los Zetas, Daniel Barrera Barrera, and Hermagoras Gonzalez Polanco were previously named as Specially Designated Narcotics Traffickers by the President or the Secretary of the Treasury under the Kingpin Act in April 2009, March 2010, and May 2008, respectively.

Lopez Bello is a key frontman for El Aissami and in that capacity launders drug proceeds. Lopez Bello is used by El Aissami to purchase certain assets. He also handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami. Lopez Bello oversees an international network of petroleum, distribution, engineering, telecommunications, and asset holding companies: Alfa One, C.A. (Venezuela), Grupo Sahect, C.A. (Venezuela), MFAA Holdings Limited (British Virgin Islands), Profit Corporation, C.A.

5

(Venezuela), Servicios Tecnologicios Industriales, C.A. (Venezuela), SMT Tecnologia, C.A. (Venezuela), and Yakima Trading Corporation (Panama). .

**Ex. 2** (OFAC Press Release)(emphasis added).  All members of "EL AISSAMI & LOPEZ BELLO NETWORK" remain on the OFAC SDN list designated as a Specially Designated Narcotics Traffickers blocked under the Kingpin Act.

The members of the "EL AISSAMI & LOPEZ BELLO NETWORK" are each an "agency or instrumentality of the FARC".  Plaintiffs have filed the 2011 sworn testimony of Colonel (P) Luis Miguel Cote on the FARC's narcotics trafficking history in general, and identifying various Colombian cartels and Drug Trafficking Organizations (e.g. Cali cartel, North Valley Cartel) as agencies or instrumentalities of the FARC.   MDFL DE 312, Affid. COL Cote.  Colonel Cote is the former Chief of Staff, Colombian Marine Corps and a faculty member at the Inter-American Defense College in Washington D.C. where he lectured on global narcotics trafficking as being linked to transnational organized crime and terrorist funding.  Mr. Cote has testified:

> *[I]t is a virtual certainty that any significant cocaine trafficking or transport organization in South or Central America, or West Africa and Europe, from the mid-1990s to the present has at some point in time been involved, directly or indirectly, with the purchase, processing and/or trafficking and transport of FARC supplied coca products*.

MDFL DE 312, ¶ 50, Affid. COL Cote (emphasis added).  The FARC have controlled approximately 80-90 % of the cocaine HCL produced in Colombia since the mid-1990s.  DE 312, ¶¶ 47, 48, 49, Affid. COL Cote.

Plaintiffs have also filed a second 2018 affidavit from Colombian Marine Corp. Col. LUIS MIGUEL COTE [retired] addressing the Venezuelan Cartel of the Suns and

the "EL AISSAMI & LOPEZ BELLO NETWORK" and their long nexus with the FARC's narcotics trafficking and murder, torture and hostage taking of Plaintiffs.

Plaintiffs have also filed the sworn testimony of Douglas Farah, President of IBI Consultants, LLC. Mr. Farah is a recognized Subject Matter Expert ("SME") for the Department of Defense and other U.S. Government agencies on the subject matter areas of: Counternarcotics and terrorism and the relationships between state, non-state and transnational criminal organizations.

Col. Cote and Mr. Farah are both familiar with the applicable standard for determining an agency or instrumentality of the FARC. The 11th Circuit has affirmed TRIA executions based in part on Col. Cote's opinions. **Both Col. Cote and Mr. Farah have testified that the Cartel of the Suns and the "EL AISSAMI & LOPEZ NETWORK" members are each an agency or instrumentality of the FARC**. *See* Notice of Filing Expert Witness Affidavits [DE 14](Cote 2011 Affidavit, Cote 2018 Affidavit, Farah Affidavit); Appendix [DE 15](FARC is World's Largest Supplier of Cocaine); Appendix [DE 16](Cartel of the Suns & EL AISSAMI & LOPEZ BELLO NETWORK").

Plaintiffs have filed substantial competent evidence, expert testimony, and OFAC fact findings sufficient for this Court to determine that the "EL AISSAMI & LOPEZ NETWORK" members identified on OFAC's Chart [Ex. 1] are each an agency or instrumentality of the FARC. *See Stansell* 771 F.3d at 738-39 (affirming district court ruling that members of a cartel that is itself an agency or instrumentality of the FARC can also be agency or instrumentality by virtue of cartel membership).

7

The OFAC Kingpin factual findings on the "EL AISSAMI & LOPEZ BELLO NETWORK" are afforded extreme deference under federal law.  *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("extremely deferential" because OFAC operates "in an area at the intersection of national security, foreign policy, and administrative law"); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010)(OFAC designation is "factual finding"); *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989)(OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999)(OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation.").

Plaintiffs have now identified assets in this district blocked under the Kingpin Act and owned by members of the "EL AISSAMI & LOPEZ BELLO NETWORK".  Plaintiffs have attached their proposed writ of execution as Ex. 4, with individual financial account information redacted pursuant to the Court's published Individual Practices, 7.A., Redactions Not Requiring Court Approval.  Plaintiffs have complied with the Court's Individual Practices, 7.C., Procedures for Filing Documents with Redactions.

The Kingpin Act blocked assets at issue are not immune from attachment under the TRIA as sovereign, diplomatic or consular property.  These blocked assets are not and never were "property subject to the Vienna Convention on Diplomatic Relations" that "is being used exclusively for diplomatic or consular purposes" and are therefore not excluded from the definition of blocked assets under the TRIA.

This Court must make two separate determinations in this post-judgment TRIA execution upon receiving a motion to issue a TRIA writ of garnishment or execution. First, the Court must determine whether the property is blocked under IEEPA or as here, for an ATA victim judgment holder, under the Kingpin Act. *See* 18 U.S.C. §2333(e). And, second, the Court must determine that the designated persons or entities owning the blocked property are agencies or instrumentalities of the terrorist party FARC. *See Stansell et al. v. FARC et al.,* 771 F.3d 713, 726 (11th Cir. 2014).[3]

The OFAC has already established the first part of the analysis that the assets which Plaintiffs seek to attach are all blocked under the Kingpin Act, and it undisputed that Plaintiffs hold an ATA judgment. *See Stansell*, 771 F.3d 713, 726 (11th Cir. 2014).

Plaintiffs' filed evidence supports the second determination that the members of the OFAC Kingpin [SDNTK] designated "EL AISSAMI & LOPEZ BELLO NETWORK" are agencies or instrumentalities of the FARC and therefore the SDNTK's blocked assets held by garnishees in this district are subject to execution under TRIA and 18 U.S.C. §2333(e). *See Stansell et al. v. FARC et al.,* 771 F.3d 713, 730-32 (11th Cir. 2014). This evidence supports the "minimally intrusive" step of issuance of and service of the TRIA writs of garnishment and execution so that "immediate attachment" can occur. *Id.* at 729.

Because of the fleeting nature of blocked assets, Plaintiffs seek to attach these SDNTK blocked assets without delay. *See Stansell v. FARC et al.*, 771 F.3d 713, 726 (11th Cir 2014). Plaintiffs respectfully requested expedited review and relief so that they may

---

[3] The Eleventh Circuit also ruled that any subsequent delisting of the Kingpin or removal from the OFAC SDNTK List does not operate retroactively and cannot defeat a prior TRIA judgment execution proceeding. *Stansell v. FARC*, 771 F.3d 713, 732-733 (11th Cir. 2014).

9

promptly attach these assets and perfect their judgment liens under New York law.  Plaintiffs are aware of competing judgment creditors attempting to obtain issuance of creditor process to perfect judgment lien priority.

The OFAC does not require a license for plaintiffs to execute on blocked assets under the TRIA.  *Weininger v. Castro*, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006) [D.E. 299-7].  Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605.   Plaintiffs will also be filing separate motions for turnover to the respective garnishees pursuant to CPLR §5225 to complete the TRIA execution.

**WHEREFORE** Plaintiffs request expedited review and relief:

(1) that their ex parte application and motion be granted;

(2) that the Court enter the Proposed Order, attached hereto as **Exhibit 3**, finding that based upon the OFAC findings and supporting expert witness testimony and appendix, and the Declaration of Tony Korvick, Esq., that the OFAC Kingpin Act designated members of the  "EL AISSAMI & LOPEZ BELLO NETWORK" are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. 2333(e);

(3) that the Court direct the Clerk to issue the writ of execution in the form attached hereto as **Exhibit 4** (financial account information redacted in the public filing) in unredacted form for service and levy on garnishees; and

(4) that the Court find that Clerk of this Court is authorized and directed to issue such further writs in aid of execution as warranted under, and in accordance with, Rule 69 of the Federal Rules of Civil Procedure, consistent with the Court's Order.

Respectfully submitted January 14, 2019

| | |
|---|---|
| /s/ Newton P. Porter_____ | /s/ Tony Korvick_____ |
| NEWTON P. PORTER | TONY KORVICK |
| (Florida Bar No. 833738) | (Florida Bar No. 768405) |
| (Admitted Pro Hac Vice DE 4) | (Admitted Pro Hac Vice DE 3) |
| nporter@porterandkorvick.com | tkorvick@porterandkorvick.com |
| PORTER & KORVICK, P.A. | PORTER & KORVICK, P.A. |
| 9655 South Dixie Highway Suite 208 | 9655 South Dixie Highway Suite 208 |
| Miami, Florida 33156 | Miami, Florida 33156 |
| Telephone:   (305) 373-5040 | Telephone:   (305) 373-5040 |
| Fax:            (305) 668-9154 | Fax:            (305) 668-9154 |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 14, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document and the notice of electronic filing by first class mail and electronic mail to the following persons:

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylvania Ave. NW
Washington DC
*Via email to OFAC counsel in compliance with 31 CFR 501.605*

None of the FARC defendants have appeared and defaults were properly entered against them all prior to entry of the Default Judgment. Accordingly, no further notice, service of pleadings, motions or writs is required to be served on the FARC or the individual FARC members identified in the ATA Judgment. Fed. R. Civ. P. 5(a)(2).

/s/ Tony Korvick_____
TONY KORVICK
(Florida Bar No. 768405)
(Admitted Pro Hac Vice DE 3)
Attorneys for Plaintiffs
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone:   (305) 373-5040
Fax:            (305) 668-9154
tkorvick@porterandkorvick.com