**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KEITH STANSELL, et al.,

      Plaintiffs,

      v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

      Defendants,

      v.

CITIBANK, N.A.,
EQUINITI TRUST COMPANY,
SUMITOMO MITSUI BANKING CORP.,

      Turnover Respondents/Third-Party
      Plaintiffs.
_____/

Case No.: 1:16-mc-00405-LGS-SN
Related Case No. 1:18-mc-545-LGS-SN

KEITH STANSELL, MARC GONSALVES, THOMAS HOWES,
JUDITH JANIS, CHRISTOPHER JANIS, MICHAEL JANIS,
JONATHAN JANIS, OLIVIA PESCATORE, JOSH PESCATORE,
JADA PESCATORE, JARROD PESCATORE, JORDAN PESCATORE,
CAROLE PESCATORE HARPSTER, RICHARD PESCATORE, and
JOHN PESCATORE,

      Third-Party Interpleader Defendants/
      Crossclaimants,

      v.

ANTONIO CABALLERO,

      Third-Party Interpleader Defendant/
      Crossclaim Defendant.
_____/

**ANTONIO CABALLERO'S MEMORANDUM IN OPPOSITION**
**TO STANSELL AND PESCATORE PLAINTIFFS' OMNIBUS MOTION [D.E. 330-31],**
**AND IN SUPPORT OF HIS OMNIBUS MOTION TO DISMISS CROSSCLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

PROCEDURAL FRAMEWORK ........................................................................ 4

FACTUAL BACKGROUND .............................................................................. 6

STANDARD OF REVIEW ................................................................................ 8

ARGUMENT ...................................................................................................... 9

   I.    THE STANSELLS HAVE EXHAUSTED THEIR COMPENSATORY DAMAGES, AND THEREFORE LACK STANDING ................................................................. 9

A.  Factual Background on the Stansells' ATA Judgment and Collections Efforts.................... 10

B.  Legal Analysis .............................................................................. 14

C.  Conclusion .................................................................................... 29

   II.    STPE LACK STANDING TO BRING THEIR CROSSCLAIMS, WHICH ARE, IN ANY CASE, WRONG ON THE MERITS ............................................... 30

A.  STPE's Purported "Subject Matter Jurisdiction" Attack on Caballero's ATA Final Judgment Fails on Four Independent Grounds .................................................... 33

   1.   FIRST, STPE'S PURPORTED "SUBJECT MATTER JURISDICTION" ARGUMENTS ARE ACTUALLY PLEADING SUFFICIENCY TYPE ARGUMENTS, AND AS SUCH, ARE UNTIMELY AND CANNOT BE RAISED BY STPE ..................................................... 33

   2.   SECOND, STPE'S PLEADING SUFFICIENCY TYPE ARGUMENT IS BARRED BY THE DOCTRINE OF FINALITY ...................................................................... 35

   3.   THIRD, CABALLERO WAS AUTHORIZED TO BRING AN ACTION UNDER THE ATA ............... 37

   4.   FOURTH, STPE DO NOT EVEN HAVE STANDING TO RAISE A PLEADING SUFFICIENCY TYPE ARGUMENT ................................................................. 38

B.  STPE's Personal Jurisdiction Attack Fails on Two Independent Grounds ......................... 39

   1.   STPE LACK STANDING TO COLLATERALLY ATTACK CABALLERO'S ATA FINAL JUDGMENT ON PERSONAL JURISDICTIONAL GROUNDS .............................................. 39

   2.   THE DOCTRINE OF FINALITY BARS ANY ATTACK BY STPE ON PERSONAL JURISDICTION OVER THE DEFENDANTS IN THE UNDERLYING ACTION .................................. 41

C.  STPE's Argument that Caballero Has Already Satisfied His Judgment is Also an Improper Collateral Attack on Caballero's Judgment ................................................. 43

   III.   STPE'S CROSSCLAIMS ARE IMPROPERLY PLED ............................................. 44

   IV.   STPE HAVE NO BASIS TO BRING THEIR CITIBANK/BANCO DE VENEZUELA/CLEARSTREAM CROSSCLAIM AGAINST CABALLERO ..................... 45

# TABLE OF AUTHORITIES

CASES

*Agency Holding Corp. v. Malley-Duff Assocs., Inc.*, 483 U.S. 143 (1987) ............................ 16, 27
*Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768 (11th Cir. 2011) ........................................ 16
*Am. Soc'y Of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982) ..................................... 16
*Antonio Caballero v. FARC, et al.*, No. 12-48803-CA-02 (Fla. 11th Cir. Ct. 2012)..................... 7
*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212
    (2d Cir. 2004) ..................................................................................................................... 10
*Brunswick Corp. v. Pueblo Bowl- O-Mat, Inc.*, 429 U.S. 477 (1977) ........................................ 16
*Byrd v. City of N.Y.*, No. 04-1396-cv, 2005 U.S. App. LEXIS 10820 (2d Cir. 2005).................. 10
*Chicot City Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940)..................................... 31
*Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119 (2003) ....................................... 15, 16
*Eaton & Van Winkle, LLP v. Yunling Ren*, 2020 U.S. Dist. LEXIS 47164 (S.D.N.Y. Mar. 16,
    2020)...................................................................................................................................... 31
*Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118 (D.D.C. Cir. 2011) ............................ 24, 25
*Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d. 232 (D.R.I. 2004).......................... 22, 28
*Flatow v. Islamic Republic of Iran*, 995 F. Supp. 1 (D.D.C. 1998).......................................... 19
*Gates v. Syrian Arab Republic*, No. 11 C 8715, 2014 U.S. Dist. LEXIS 157204 (N.D. Ill. Nov. 6,
    2014)...................................................................................................................................... 14
*Grady v. Grady*, No. 10-CV-8809 (CS), 2015 U.S. Dist. LEXIS 114033 (S.D.N.Y. Aug. 26,
    2015)...................................................................................................................................... 33
*Hoffman v. Pulido*, 928 F.3d 1147 (9th Cir. 2019) ........................................................ 31, 32, 36
*Holland v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 00233 (PAE), 2019 U.S. Dist. LEXIS
    146553 (S.D.N.Y. Aug. 28, 2019) ......................................................................................... 10
*In re Air Crash Disaster at Gander*, 684 F. Supp. 927  (W.D. Ky. 1987) ................................ 21
*Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694 (1982) .................................... 40
*Jenkins v. Smead Mfg. Co.*, No. Civ.A.09-261, 2009 U.S. Dist. LEXIS 101545, 2009 WL
    3628100 (S.D. Cal. Oct. 28, 2009)........................................................................................ 40
*Jerez v. Republic of Cuba*, 775 F.3d 419 (D.D.C. 2014) .......................................................... 39, 41
*Jones v. Cty. of Westchester (In re D.J.)*, No. 14-cv-7635 (NSR), 2020 U.S. Dist. LEXIS 13450
    (S.D.N.Y. Jan. 27, 2020) ........................................................................................................ 8
*Jones v. Giles*, 741 F.2d 245 (9th Cir. 1984) ............................................................................ 32
*Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491 (S.D.N.Y. 2015).................................... 9
*Kaplan v. Al Jazeera*, No. 10 Civ. 5298, 2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011)
    ............................................................................................................................................ 23
*Kiobel v. Royal Dutch Petro Co.*, 133 S. Ct. 1659 (2013)..................................................... 7, 42
*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) .............................................................................. 8
*Lakonia Mgmt. v. Meriwether*, 106 F. Supp. 2d 540  (S.D.N.Y. 2000)..................................... 9
*Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 1086 (11th Cir. 1986)....... 20
*Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005).............................................. 37
*Louis S.A. v. Vuitton Corp.*, 765 F.2d 966 (2d Cir. 1985) ......................................................... 27

*Martinez v. Republic of Cuba*, 221 F. Supp. 3d 276 (N.D.N.Y. 2016)........................................ 41

*Murtaugh v. New York*, 810 F. Supp. 2d 446 (N.D.N.Y. 2011) ...................................................... 9

*Mylonakis v. M/T Geogios M.*, 909 F. Supp. 2d 691 (S.D. Tex. 2012) ........................................ 39

*Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986)............................................................................ 31

*Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498 (S.D.N.Y. 2013) .................................................. 45

*PacifiCare Health Sys. v. Book*, 538 U.S. 401 (2003) ............................................................ 15, 26

*Phx Bond & Indem. Co. v. Bridge*, No. 05 C 4095, 2012 WL 8706 (N.D. Ill. Jan. 2, 2012) ....... 27

*Rosenberg v. Lashkar-E-Taiba*, Nos. 10-CV-5381, 10-CV-5382, 10-CV-5448, 11-CV-3893, 12-
    CV-5816, 2014 U.S. Dist. LEXIS 205692 (E.D.N.Y. Aug. 1, 2014) ................................. 23, 24

*Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. Civ.A.08-676S, 2009 U.S. Dist. LEXIS 23449
    (W.D.N.Y. Mar. 23, 2009) ........................................................................................................ 40

*Shearson/Am. Express v. McMahon*, 482 U.S. 220 (1987).......................................................... 16

*Smith v. Islamic Emirate of Afg.*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003) .............................. 24, 26

*Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509 (S.D.N.Y. 2014)......................... 24, 26

*Stansell, et al., v. FARC, et al.*, No. 8:09-cv-02308 (M.D. Fla.) ................................................. 10

*Tex. Indus. v. Radcliff Materials*, 451 U.S. 630 (1981) ............................................................... 27

*TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215, 2012 U.S. Dist. LEXIS 35269
    (S.D.N.Y. Feb. 23, 2012) .......................................................................................................... 27

*United Student Aid Funds, Inc. Espinosa*, 559 U.S. 260 (2010)............................................. 31, 32

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F. 3d 120 (2d Cir. 2019) ......................... 39

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................................... 38

*Weinstein v. Islamic Republic of Iran*, 274 F. Supp. 2d 53 (D.D.C 2003) .................................. 20

*X-Ray Optical Sys., Inc. v. Inst. for Roentgen Optics*, No. 98cv1270, 2008 U.S. Dist. LEXIS
    47301 (S.D. Cal. 2008)............................................................................................................. 31

*Yong Biao Ji v. Aily Foot Relax Station, Inc.*, 2021 U.S. Dist. LEXIS 23674 (S.D.N.Y. Feb. 8,
    2021).......................................................................................................................................... 45

## STATUTES

18 U.S.C. § 2333 ................................................................................................................. 1, 14, 33

22 U.S.C. § 6081 ............................................................................................................................ 38

28 U.S.C. 1605 ............................................................................................................................... 20

TRIA § 201(a).......................................................................................................................... 1, 9, 13

TRIA, 116 Stat. 2322 ..................................................................................................................... 19

## OTHER AUTHORITIES

136 Cong. Rec. S14,284 (daily ed. Oct. 1, 1990) ........................................................................ 22

*Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Cts. & Admin. Prac. of
    the S. Comm. on the Judiciary*, 101st Cong. 89 (1990)............................................................ 22

*Antiterrorism Act of 1991: Hearing on H.R. 2222 Before the Subcomm. on Intell. Property &
    Judicial Admin. of the H. Comm. on the Judiciary*, 102d Cong. 2 (1992)............................... 22

Jeffrey F. Addicott, *American Punitive Damages vs. Compensatory Damages in Promoting
    Enforcement in Democratic Nations of Civil Judgements to Deter State-Sponsors of Terrorism*,
    5 U. Mass. L. Rev. 89 (2010) ........................................................................................ 15, 28, 29

S. Rep. No. 102-342 (1992) ........................................................................................... 22

<u>RULES</u>

Fed. R. Civ. P. 12 ................................................................................................... 5, 6, 8
Fed. R. Civ. P. 56 ................................................................................................... 5, 6, 8
Fed. R. Civ. P. 57 ................................................................................................... 5, 6, 8
Fed. R. Civ. P. 60 ...................................................................................................... 5, 8
Fed. R. Civ. P. 8 ........................................................................................................... 8

## INTRODUCTION

The Terrorism Risk Insurance Act ("TRIA") is the first and last word in post-judgment TRIA collection proceedings such as this one.  And, under TRIA's clear instructions, the Stansell Plaintiffs (the "Stansells") have no standing to proceed in these Interpleader Actions[1] because, based on their prior submissions to a court, they have already satisfied their judgment under TRIA.  TRIA § 201(a) is explicit: ***"blocked assets…shall be subject to execution…in order to satisfy such judgment <u>to the extent of any compensatory damages</u>***…" Emphasis added. Judgment holders may thus collect from blocked assets only "<u>to the extent</u> of any compensatory damages" despite the Anti-Terrorism Act ("ATA") provision for treble damages, 18 U.S.C. §2333(a).  Having already exhausted their compensatory damages, the Stansells can no longer collect blocked assets under TRIA in order to satisfy the remainder of their judgment. The Stansells therefore have no right to the subject "blocked assets" in these Interpleader Actions, to bring a crossclaim, or even to participate in these Interpleader Actions.

Even were this Court to find that the Stansells have standing (and they do not because, based on their prior court submissions, they have already exhausted their compensatory damages under TRIA), the Stansell and Pescatore Plaintiffs' ("STPE") Crossclaims[2] would still fail.

---

[1] "Interpleader Actions" refer to the various interpleader actions corresponding to the Crossclaims (*see infra* n.2), specifically in—D.E. 208, 234, 236, 238, 227, 225, 280, and 324.

[2] "Crossclaims" refer to STPE's crossclaims at D.E. 268, 269, 270, 271, 272, 273, 310, and 328. With respect to the Equiniti proceedings, which necessarily includes the STPE Equiniti-related crossclaim [D.E. 268], Caballero notes that he has filed a separate motion to dismiss and/or transfer [D.E. 208].  However, because such motion to dismiss and/or transfer is yet to be decided, the STPE Equiniti-related crossclaim is currently before this Court and, as such, the analysis herein contemplates such crossclaim.  With respect to STPE's crossclaim relating to Citibank/Banco de Venezuela/Clearstream [D.E. 273], Caballero notes that he has not even attached such blocked assets (as reflected in his Answer to Citibank's interpleader complaint, D.E. 258), and the Court therefore need not reach the issues in the related STPE crossclaim.

Unlike the Garnishees'[3] interpleader complaints and Antonio Caballero's ("Caballero") crossclaims—which address the narrow <u>pre-interpleader-judgment issues relevant to the potential distribution of limited assets in a post-ATA-judgment proceeding</u>—STPE's Crossclaims improperly address <u>pre-judgment issues already adjudicated by the TRIA Judgment Creditors'[4] judgments</u> (i.e., improper collateral attacks on Caballero's long-standing ATA Final Judgment[5]), which they waived by virtue of a previous settlement agreement with Caballero and for which they lack standing. STPE's Crossclaims thus fall outside the scope of TRIA interpleaders proceedings such as this one, which are **post-judgment in relation to the TRIA Creditors' ATA judgments but pre-judgment in relation to the interpleader's final adjudication of who is entitled to the limited assets**. Put another way, this TRIA interpleader proceeding is not a forum for attacking the competing TRIA Creditors' underlying judgments— and is certainly not a substitute for an untimely appeal of a final judgment—precisely because it is post-judgment in relation to the TRIA Creditors' ATA judgments.

The issues before this Court are narrowed by the fact that judgments exist, are final, and have not been challenged under FRCP[6] 60 by Defendants Fuerzas Armadas Revolucionarias de Colombia ("FARC") and the Norte del Valle Cartel ("NDVC")—the only parties to have standing to use FRCP 60 with narrow exceptions not applicable here. Third-parties, including the agencies or instrumentalities here, lack standing to challenge Caballero's long-standing ATA Final Judgment. And the standing of third-party, competing judgment creditors such as STPE to

---

[3] "Garnishees" refer to Equiniti Trust Company ("Equiniti"), Citibank, N.A. ("Citibank"), and Sumitomo Mitsui Banking Corp. ("SMBC").

[4] The "TRIA Judgment Creditors" or "TRIA Creditors" refers to Caballero and STPE.

[5] "ATA Final Judgment" refers to the final judgment entered by Chief Judge Moore of the United States District Court of the Southern District of Florida ("SDFL") in *Caballero v. FARC, et al.*, No. 1:18-cv-25337-KMM (the "ATA Action") on May 20, 2020. *See* D.E. 250-18.

[6] "FRCP" refers to the Federal Rules of Civil Procedure.

attack Caballero's ATA Final Judgment is even more tenuous than that of the agencies or instrumentalities because their assets are not being garnished by Caballero.

Worse still, STPE's Crossclaims lack any basis to survive any meritorious review. STPE's purported "subject-matter jurisdiction" collateral attack, which is, at best, an untimely attempt to raise a failure-to-state-a-cause-of-action type argument (i.e., that Caballero needed to have been a United States national at the time of the terrorist act in order to sue under the ATA), is particularly egregious because the Stansells actually intervened in Caballero's underlying ATA Action to raise this very argument, *lost the argument that ATA has a temporal limitation*, and never bothered to return to Chief Judge Moore presiding over the underlying ATA Action—choosing instead to mislead this Court into becoming an appellate court over Chief Judge Moore.

Furthermore, because this purported "subject-matter jurisdiction" collateral attack fails, so too does STPE's argument that Caballero has already satisfied his judgment (which is based on the mistaken premise that Caballero needed to have been a U.S. national "injured in his person" at the time of the terrorist act in order to sue under the ATA and to be entitled to non-economic damages for the emotional distress he suffered). Setting aside the fact that STPE have no standing to make such argument, Caballero did qualify as a U.S. national for ATA purposes (and Chief Judge Moore explicitly held as much). Moreover, the ATA lacks any temporal limitation on "injury." As such, Caballero was entitled to receive non-economic damages.

STPE's argument (for which they lack standing) that the SDFL (presiding over the ATA Action) and the Florida State Court[7] (presiding over the ATS Action[8]) lacked personal

---

[7] "Florida State Court" refers to the Circuit Court of the Eleventh Judicial Circuit Court in Miami-Dade County, Florida.

[8] Referring to the Florida State Court case of *Antonio Caballero v. FARC, et al.*, No. 12-48803-CA-02, wherein the court entered a final judgment in favor of Caballero and jointly and severally against the FARC, the NDVC, and the ELN (the "ATS Final Judgment," D.E. 250-3).

jurisdiction over the Defendants similarly fails because the issue has already been fully and fairly litigated. Among the Crossclaims' many deficiencies (both procedural and substantive), is the fact STPE have failed to properly plead their Crossclaims, which are essentially legal memoranda instead of short and plain factual allegations. Moreover, with respect to the Citibank/Banco de Venezuela/Clearstream crossclaim, STPE have failed to demonstrate any basis for bringing such crossclaim against Caballero when Caballero has already admitted to not having attached the blocked assets subject to such crossclaim and has further requested that he be dismissed from the interpleader action relating to such blocked assets.

## PROCEDURAL FRAMEWORK

These Interpleader Actions are TRIA **collection proceedings in aid of execution (i.e. post-judgment in relation to the TRIA Creditors' ATA judgments but pre-judgment in relation to the interpleader's final adjudication of who is entitled to the limited assets)** and; therefore, these Interpleader Actions must be viewed through such lens. With this limited framework in mind, the relevant issues vis-à-vis the TRIA Judgment Creditors are simple: (i) who among the TRIA Creditors have not fully satisfied their judgment; and, (ii) among those TRIA Creditors who have not fully satisfied their judgment, who has priority.[9]

The issues outlined above are consistent with the issues reflected in the various interpleader complaints brought by the Garnishee.[10] The Garnishees, by way of their interpleader

---

[9] This second issue relating to priority is not currently before this Court in this opposition/motion.  Indeed, STPE do not argue priority in their Motion [D.E. 330-331].

[10] The Garnishees' complaints contain prayers for relief raising additional issues relevant to these interpleader proceedings, many of which go towards whether who, if any, of the judgment creditors are entitled to execution of the subject assets under TRIA.  The Garnishees' complaints also raise additional outlier issues, including some related to service and jurisdiction of this Court.  Notably, all these additional issues—though not relevant to the opposition/motion immediately before the Court—are also consistent with the purpose of these TRIA interpleader

complaints, seek a determination of which post judgment writs are to be enforced. Such determination necessarily implicates the two inquiries outlined above. So too are Caballero's crossclaims consistent with the two issues outlined above. STPE's Crossclaims, however, are not. STPE's Crossclaims are improper collateral attacks of Caballero's ATA Final Judgment and a blatant attempt to re-litigate pre-judgment issues already adjudicated by the TRIA Judgment Creditors' judgments and outside the scope of this TRIA interpleader proceeding with this Court inappropriately sitting as an appellate court over its sister court and Chief Judge Moore.

STPE assert there are "four procedural mechanisms" authorizing their improper collateral attacks—FRCP 12(c) (Judgment on the Pleadings), FRCP 56 (Summary Judgment), FRCP 57 (Declaratory Judgment), and FRCP 60(b)(4) (Motion to Void a Judgment). D.E. 331 at 14. Nonsense. Of the "four procedural mechanisms," only FRCP 60(b)(4) is a **post-judgment mechanism** appropriate (in limited circumstances not applicable here) for addressing pre-judgment issues already adjudicated by the TRIA Judgment Creditors' judgments (i.e. improper collateral attacks). Put another way, although FRCP 12(c), 56, and 57 are pre-judgment mechanisms, they cannot be utilized for purposes of addressing such pre-judgment issues (i.e. improper collateral attacks) in these TRIA interpleader actions **(which are post-judgment in relation to the TRIA Creditors' ATA judgments)**. Instead, FRCP 12(c), 56, and 57 are limited to addressing the narrow pre-judgment issues relevant to this interpleader proceeding such as the two inquiries outlined above. Thus, even were this Court to reach the merits of STPE's collateral attack arguments (and it should not because STPE lack standing to raise such arguments), the only appropriate lens through which to analyze such purported "merits" would be through FRCP 60(b)(4). In any case, each of STPE's improper collateral attacks fail on the

---

proceedings **(which are post-judgment in relation to the TRIA Creditors' ATA judgments)** and do not inappropriately attack any of the judgment creditors' underlying judgments.

merits. In particular, FRCP 60, unlike FRCP 59, does not involve a reconsideration of a court order, but vacating a final judgment—which subject the movant to a much higher burden.

STPE's use of FRCP 12(c), 56, and 57—for purposes of addressing <u>pre-judgment issues already adjudicated by the TRIA Judgment Creditors' judgments</u> (i.e. improper collateral attacks) as opposed to the narrow <u>pre-judgment issues relevant to this interpleader proceeding</u>— is improper and turns these FRCP mechanisms on their head. By way of example, Caballero addresses STPE's summary judgment motion.  Judge Schofield gives a clear directive regarding such motions, applicable to this non-jury action: "**<u>Absent good cause</u>**, the Court ordinarily will not have summary judgment practice in a non-jury case." *See* Individual Rules and Procedures, Section III.B.6. (emphasis added).   One need only cursorily review STPE's Statement of Material Facts[11] (the "STPE's Rule 56.1 Statement") filed in support of their motion for summary judgment, to understand why Judge Schofield has such rule in the first place.

STPE "facts" in their Rule 56.1 Statement are irrelevant to these TRIA interpleader proceedings (**which are post-judgment in relation to the TRIA Creditors' ATA judgments**). Indeed, almost every "fact" preceded entry of Caballero's ATA Final Judgment and is a blatant attempt to go back in time, re-litigate every aspect of Caballero's underlying action, and have this Court (as if it were an appellate court over its sister courts) undo Chief Judge Moore's work. STPE's requested relief should be denied and Caballero's motion to dismiss should be granted.

## FACTUAL BACKGROUND

The Florida State Court in the ATS Action, entered a final judgment in favor of Caballero and jointly and severally against the FARC, the ELN, and the NDVC. *See* D.E. 250-3. The ATS Final Judgment was never appealed. *See Antonio Caballero v. FARC, et al.*, No. 12-48803-CA-

---

[11] A movant invoking FRCP 60(b)(4) does not get to file a Material Statement of Facts.

02 (Fla. 11th Cir. Ct. 2012). Thereafter, a third-party agency or instrumentality of the FARC ("Third-Party A+I"), whose assets Caballero had attached, raised the following issues on appeal to the Florida Third District Court of Appeal ("3DCA") concerning the Florida State Court's jurisdiction in entering the ATS Final Judgment, *see* D.E. 250-11 at 14-17:

- Whether the ATS Final Judgment was void for lack of subject matter jurisdiction;
- Whether the Florida State Court had subject matter jurisdiction to adjudicate Caballero's claims brought pursuant to the Alien Tort Statute, Federal RICO Statutes, Florida RICO Statutes, and Colombian Wrongful Death Law; and
- Whether the Florida State Court in holding that it had subject matter jurisdiction to enter the final judgment adjudicating Caballero's claims, properly found that the presumption against extraterritorial application of the Alien Tort Statute, Federal RICO Statutes, Florida RICO Statutes, and Colombian Wrongful Death Law had been overcome based on the relevant conduct of the defendants that occurred in the United States, as well as the presence of the strong national interest.

In raising the subject matter jurisdiction of the Florida State Court, the Third-Party A+I challenged the court's application of *Kiobel v. Royal Dutch Petro Co.*, 133 S. Ct. 1659 (2013) to the contacts of the FARC, amongst others, with the State of Florida—an issue addressed by the Third-Party A+I and Caballero in their appellate briefing. *See* D.E. 250-11 at 14-15; 250-12 at 37-40; and 250-13 at 3-5. The 3DCA considered and rejected—*per curiam* no less—the Third-Party A+I's collateral attacks against the ATS Final Judgment. D.E. 250-14. Thereafter, Chief Judge Moore entered the ATA Final Judgment based on the same jurisdictional allegations and conduct on the part of the FARC and NDVC upon which the ATS Final Judgment was entered. *See* D.E. 250-17 at 14; 250-18; and 250-3. The ATA Final Judgment was never appealed.

Prior to the ATA Final Judgment being entered, the Stansells filed a motion to intervene in the ATA Action wherein they raised the argument (among others) that Caballero did not qualify as a U.S. national under the ATA—the same argument they raise together with the Pescatores in these Interpleader Actions. *See* D.E. 259-6. The SDFL denied the Stansells' intervention motion and subsequently specifically **rejected the Stansells' erroneous argument**.

7

*See* D.E. 259-9; and D.E. 250-17 at 6 ("Accordingly, a reading of the ATA permitting individuals who were not U.S. nationals at the time of the injury but subsequently become U.S. nationals to state a claim is consistent with Congress' intention and furthers the ATA's purpose. ***Thus, Plaintiff [Caballero] qualifies as a 'U.S. national' under the ATA.")*** (emphasis added). Caballero and STPE recently entered into a settlement agreement (subsequently approved by the court), dividing garnished assets, in a separate garnishment proceeding. **Composite Exhibit 15**.[12]

STANDARD OF REVIEW

STPE invoke FRCP 12(c), 56, 57, and 60(b)(4).  No matter the authority and corresponding standard, STPE are not entitled to relief because they lack standing and their arguments fail on the merits.  Caballero moves to dismiss the Crossclaims under FRCP 12(b)(1) and (6) as they improperly address <u>pre-judgment issues already adjudicated by the TRIA Creditors' judgments</u> (i.e., improper collateral attacks) in these TRIA interpleader actions **(which are post-judgment in relation to the TRIA Creditors' ATA judgments)**.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation" or allegations that are wholly conclusory. *Id.* Furthermore, allegations forming a "claim for relief" must be "simple, concise, and direct" in accordance with FRCP 8; otherwise, the pleading may be subject to dismissal (including *sua sponte*). *Jones v. Cty. of Westchester (In re D.J.)*, No. 14-cv-7635 (NSR), 2020 U.S. Dist. LEXIS 13450, at *9-10 (S.D.N.Y. Jan. 27, 2020) (internal quotation marks omitted).  Furthermore, "[a] dismissal for lack of standing is generally brought pursuant to Fed. R. Civ. P. 12(b)(1) and

---

[12] The "Exhibits" referenced are part of the Caballero's Appendix filed concurrently herewith.

12(b)(6)." *Murtaugh v. New York,* 810 F. Supp. 2d 446, 464 (N.D.N.Y. 2011); *see also Lakonia Mgmt. v. Meriwether,* 106 F. Supp. 2d 540, 544 n.3 (S.D.N.Y. 2000).

STPE lack standing to raise their improper collateral attacks (which are, in any case, wrong on the merits). Consequently, STPE cannot credibly allege that this Court has subject matter jurisdiction over their Crossclaims, nor can STPE credibly state a claim for relief in their Crossclaims. The allegations in STPE's Crossclaims are additionally deficient because they are legal and conclusory in nature and fail to meet FRCP 8's pleading parameters.  Moreover, with respect to its Citibank/Banco de Venezuela/Clearstream crossclaim, STPE fail to state any credible basis for bringing such crossclaim against Caballero when Caballero has not even attached the Citibank/Banco de Venezuela/Clearstream blocked account. Because such deficiencies cannot be cured by repleading, Caballero respectfully requests dismissal with prejudice.  *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015).

## ARGUMENT

## I. THE STANSELLS HAVE EXHAUSTED THEIR COMPENSATORY DAMAGES, AND THEREFORE LACK STANDING

One issue requiring resolution under the limited framework outlined above and applicable to these interpleader actions, is whether the Stansells have fully satisfied their judgment under TRIA (i.e., "to the extent of any compensatory damages"). TRIA § 201(a) (emphasis added).[13] Based on the Stansells' prior submissions to a court, the answer to such inquiry is "yes." The Stansells therefore lack standing to bring their Crossclaims and to proceed

---

[13] The Pescatores were awarded actual compensatory damages in the amount of $23,000,000, which were then trebled to $69,000,000 pursuant to the ATA. **Exhibit 1**. Given STPE's shared belief that their entire treble damages award under their respective judgments qualify as compensatory damages, it is possible that the Pescatores have similarly exceeded (or are about to exceed) their compensatory damages.  However, because the record is unclear as to this issue, Caballero limits his "compensatory damages limitation" argument to the Stansells. Notably, TRIA's "compensatory damages limitation" has not been decided by any appellate court.

in the Interpleader Actions.[14] Unlike STPE, Caballero's position is consistent with the intended scope of these interpleader action because he is not seeking to void a competing creditor's longstanding judgment.  To the contrary, Caballero's position that the Stansells (and possibly the Pescatores) have fully satisfied their judgments under TRIA acknowledges their legitimacy.

## A.  Factual Background on the Stansells' ATA Judgment and Collections Efforts

### The Stansells' MDFL Action[15]

On June 7, 2010, the Stansells filed a Motion for Entry of Final Judgment on Liability and Damages and Memorandum of Law before the United States District Court for the Middle District of Florida (the "Stansell Trial Court").  *See* D.E. 259-1. In their memorandum, the Stansells acknowledged that the damages awarded under the ATA  serve a "deterrent purpose." *Id*. at 51.  The Stansells requested that the Stansell Trial Court base its compensatory damages calculation on a "[h]ostage taking damages formula" that had been used by various courts. *Id*. at 53. The Stansells also requested that the Stansell Trial Court add a lump sum to the per diem amount given the circumstances of their case.  *Id*. at 54. The Stansells' request for an award of damages was very specific. They requested a "compensatory damage award . . . [which] must then be trebled pursuant to 18 U.S.C. § 2333" (*id.* at 55) and "awards of compensatory damages

---

[14] The court filings related to the Stansells' underlying judgment—upon which Caballero relies in support of his argument that the Stansells have exhausted their compensatory damages and therefore lack standing—are necessarily incorporated into STPE's Crossclaims by virtue of the Stansells' referencing their underlying judgment and alleging priority. *See e.g.,* D.E. 268 at 14, ¶1. Even if this Court were to disagree, this Court could nevertheless consider such court filings for dismissal purposes as they relate to Caballero's standing arguments against STPE. *See Holland v. JPMorgan Chase Bank, N.A.,* No. 19 Civ. 00233 (PAE), 2019 U.S. Dist. LEXIS 146553, at *13 (S.D.N.Y. Aug. 28, 2019); *see also Byrd v. City of N.Y.*, No. 04-1396-cv, 2005 U.S. App. LEXIS 10820, at *1 (2d Cir. 2005) (explaining that courts may consider matters that are subject to judicial notice on a motion to dismiss); *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).
[15] *Stansell, et al., v. FARC, et al.*, Case No. 8:09-cv-02308 (M.D. Fla.).

to each surviving son. . . trebled  . . . under the ATA" and awards to "four surviving children . . . with each award ***then*** subject to trebling under § 2333." *Id*. at 58 (emphasis added).

On June 14, 2010, the Honorable Judge Lazzara entered an Order,[16] summarizing the Stansells' request as follows: "They each request a compensatory award of $19,670,000 ($10,000 per day in captivity), plus an additional lump sum factor of an amount based upon the horrific injury in fact, and trebling of the total award pursuant to 18 U.S.C. § 2333." Judge Lazarra's Order at 6. The Stansell Trial Court found the $19,670,000 compensatory damage award plus an additional lump sum of $5,000,000 appropriate for Keith Stansell, Marc Gonsalves, Thomas Howes. *Id*. at 6-7.  Thus, each of those three Plaintiffs (i.e., Keith Stansell, Marc Gonsalves, Thomas Howes), received a total compensatory damages award of $24,670,000.  The Stansell Trial Court then trebled such sum and awarded each of those three Plaintiffs $74,010,000 in trebled damages.  *Id*. at 10.

With regard to the Janis family, the Stansell Trial Court awarded the surviving spouse (i.e., Judith G. Janis) $12,000,000 in compensatory damages and each of the four surviving children (i.e., Christopher T. Janis, Greer C. Janis, Michael I. Janis, and Jonathan N. Janis) $5,000,000 in compensatory damages. *Id*. at 8. The Stansell Trial Court then trebled such sums and awarded the surviving spouse (i.e., Judith G. Janis) $36,000,000 in trebled damages and each of the four surviving children (i.e., Christopher T. Janis, Greer C. Janis, Michael I. Janis, and Jonathan N. Janis) $15,000,000 in trebled damages. *Id*. at 9-10.  Thus, the Stansell Trial Court awarded, in total, $106,010,000 in compensatory damages and $318,030,000 in treble damages.[17]

---

[16]  *See* D.E. 259-2 ("Judge Lazzara's Order").
[17]      The breakdown is as follows:

| Compensatory | Trebled |
| --- | --- |
| $24,670,000 Stansell | $74,010,000 |
| $24,670,000 Gonsalves | $74,010,000 |

On June 15, 2010, the Clerk of the Court, not the Judge, entered a Default Judgment in a Civil Case (the "Stansell Final Judgment"). D.E. 259-3.  The Stansell Final Judgment was not signed by the Judge, but instead was (likely prepared by the Stansells' counsel and) issued by the Clerk of the Court.  *Id*. at 4.  The Clerk of the Court even referenced Judge Lazzara's Order [D.E. 259-2] in the Stansell Final Judgment. *See* D.E. 259-3.  ("The issues have been tried or heard and a decision has been rendered by Order entered June 14, 2010 [Docket Entry 232].")[18] (brackets in original).  The Clerk of Court erroneously used the phrase "compensatory damages" when describing each of the awards that total $318,030,000 in the Stansell Final Judgment, despite the Stansell Trial Court's clear Order (i.e., Judge Lazzara's Order) setting forth a total compensatory damage award in the amount of $106,010,000. *Id*. at ¶¶ 1-8.

### *The Stansells' SDFL Action*[19]

Following entry of their ATA Judgment in their original MDFL Action, the Stansells initiated post-judgment collection proceedings throughout the U.S., including in the SDFL.  On July 8, 2020, the Stansells filed a motion seeking a ruling that the entire amount of $318,030,000 (i.e., the Stansell Trebled Damages) is for "compensatory damages" and therefore collectible under TRIA.  *See* **Exhibit 2** at 1. Two days later, Caballero filed his Motion to Intervene on the basis that the outcome of such legal issue will have significant effect on TRIA judgment creditors, such as Caballero, and opposing the Stansells' proposed ruling on their compensatory damages motion on the grounds that such ruling would contravene TRIA.  **Exhibit 3** at 2-4.

---

|  |  |
|---|---|
| $24,670,000 Howes | $74,010,000 |
| $12,000,000 Janis surviving spouse | $36,000,000 |
| <u>$20,000,000</u> Total for 4 surviving Janis children | <u>$60,000,000</u> |
| $106,010,000 | $318,030,000 |

[18] Judge Lazarra's Order in the Stansell MDFL Action is D.E. 232.
[19] *Stansell, et al. v. FARC, et al.*, No. 19-cv-20896 (S.D. Fla.).

On July 16, 2020, without first ruling on Caballero's Motion to Intervene, the court granted the Stansells' motion and determined that the Stansells' entire $318 million treble ATA judgment (i.e., the Stansell Trebled Damages) is for "compensatory damages." **Exhibit 4**. The decision of the court was subsequently appealed by terrorist agencies of the FARC and parties to the Stansell SDFL Action. **Exhibit 5**.[20] Thereafter, on August 17, 2020, the court in the Stansell SDFL Action denied "as moot" Caballero's Motion to Intervene. D.E. 259-5. Caballero's appeal to the Eleventh Circuit Court of Appeals followed. **Exhibit 7**. On February 19, 2021, the Eleventh Circuit Court of Appeals dismissed the appeal for lack of subject matter jurisdiction, but *the Court did not reach the merits* of the compensatory damages issue. **Exhibit 8**.

### *Satisfaction of the Stansells' Compensatory Damages*

Over one-year ago, the Stansells admitted that following turnover of certain assets (i.e., the Leucadendra home), they would have exceeded their compensatory damages amount of $106,010,000.[21] **Exhibit 2** at 1 ("the United States Marshal will be disbursing over $12 million in sale proceeds to Plaintiffs next week following the July 7, 2020 execution sale…*After the turnover of these proceeds, __approximately $108 million in total__ will have been turned over on writs of execution enforcing the Stansell Plaintiffs' ATA judgment*.") (emphasis added); *see*

---

[20] Moreover, it appears that the same terrorist parties also requested that a successor Judge to Judge Lazzara amend the approximately ten-year-old judgment entered by the Clerk of Court and have appealed the denial of such request to the Eleventh Circuit. *See* Stansell M.D. Fla. Action, D.E. 1205, 1215, 1220, 1222 (attached as **Composite Exhibit 6**). These appeals (stemming from the Stansell SDFL and MDFL Actions) have been consolidated and are pending before the Eleventh Circuit. *See* Order, *Stansell, et al. v. Bello, et al.,* No. 20-11736 (11th Cir. Mar. 10, 2021) (granting consolidation), attached as **Exhibit 16**.

[21] The Stansells' attempt to use their fee-sharing agreement with the Pescatores to reduce their overall TRIA collection amount is a blatant and improper attempt to side-step TRIA's clear directive authorizing collection of blocked assets "to the extent of any compensatory damages," TRIA § 201(a). *See* D.E. 198 at 6 n.4 (noting that the amount due on their judgment "excludes the prior *Stansell* post-judgment recoveries that are paid or payable to the *Pescatore* plaintiffs" pursuant to their Confidential Joint Prosecution and Sharing Agreement).

*also* **Exhibit 9** (reflecting the sale of the Leucadendra home at auction by the U.S. Marshal for the Stansells' TRIA execution purposes). Upon information and belief, such funds have been turned over to the Stansells.[22] *See* **Exhibit 10** (denying agency or instrumentalities' request for "preliminary injunction to stop the U.S. marshals from turning over the proceeds of the sale" (i.e., the Leucadendra home sale) and "motion to stay enforcement of the turnover judgment pending appeal"); **Exhibit 4** (denying agency or instrumentalities' reconsideration motion).

### B.  Legal Analysis

TRIA §201(a) allows for the collection from blocked assets "to the extent of any compensatory damages." Emphasis added. TRIA therefore contemplates that a terrorism judgment holder may have something more than a compensatory damage award, such as punitive damages or treble damages, but limits the collection from blocked assets "to the extent of any compensatory damages," without limiting the collection of non-blocked assets beyond "the extent of any compensatory damages."[23] Put another way, TRIA limits collection of blocked assets "to the extent of any compensatory damages," despite the ATA providing for awards of treble damages generally – i.e., three times a plaintiff's actual damages, 18 U.S.C. § 2333(a). Indeed, the greater weight of authority under the ATA establishes that treble damages are awarded under the ATA to deter and punish the Defendants and are therefore not compensatory

---

[22] It is possible that during the past year since the Leucadendra home sale, the Stansells have executed upon additional blocked assets through TRIA enforcement proceedings, further exceeding their compensatory damages award.  At a minimum, the Stansells have continued to inappropriately attach blocked assets and have sought improper TRIA enforcement of same as evidenced by their participation in these Interpleader Actions.

[23] Blocked assets are intended to compensate victims of terrorism, such as Caballero. *See, e.g., Gates v. Syrian Arab Republic*, No. 11 C 8715, 2014 U.S. Dist. LEXIS 157204 at *9 (N.D. Ill. Nov. 6, 2014) ("The broad purpose of the statutory regime is to compensate victims of state sponsored terrorism at the expense of state sponsors of terror."). Notably, TRIA does not limit the collection of treble damages under the ATA from non-blocked assets.

under TRIA.[24]   The ATA's treble damages are not compensatory damages, but like many treble damages, are damages with an indivisible punitive and deterrent purpose and component, such that they cannot be considered compensatory under TRIA.[25]

### 1.   Treble Damages are a Unique Form of Damages

Treble damages are their own unique category of damages. The U.S. Supreme Court has noted that treble damages have not been considered either purely compensatory or purely punitive. *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 130-34 (2003) ("it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."). The U.S. Supreme Court has also acknowledged that "[o]ur cases have placed different statutory ***treble-damages provisions on different points along the spectrum*** between purely compensatory and strictly punitive awards." *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 405 (2003) (listing cases that have found certain treble damage provisions to be "essentially punitive in nature" while finding others to be more remedial in nature) (emphasis added). The U.S. Supreme Court's "spectrum" analysis confirms that treble damages are unique (i.e., they are not "purely compensatory" nor "strictly punitive," rather they lie somewhere "***between***" the two) and, depending on the statute, such treble damages can fall closer to one side or the other of the spectrum. And, yet, despite falling closer to or further from one end of the damages spectrum or the other (i.e., "purely compensatory" or "strictly punitive"), ATA's trebled damages nonetheless occupy a position on such spectrum ***between*** these ends and, thus, cannot be the same as "purely compensatory" damages one the one end of the spectrum.

---

[24] *See, e.g.,* Jeffrey F. Addicott, *American Punitive Damages vs. Compensatory Damages in Promoting Enforcement in Democratic Nations of Civil Judgements to Deter State-Sponsors of Terrorism,* 5 U. Mass. L. Rev. 89 (2010) (summarizing caselaw).
[25] If the courts (including the appellate courts) rule rules that Caballero is wrong, Caballero will, of course, accept such ruling as increasing the amounts collectible by him from blocked assets.

Where a statute's treble damages provision lies on the "spectrum" **between** purely compensatory and purely punitive is important when determining which statute of limitations to apply, whether an arbitration provision is applicable, whether agency liability rules apply, and whether local governments are amenable to suit.[26] Thus, the United States Supreme Court has looked for a ". . . tipping point between pay-back and punishment. . ." when deciding whether a treble damages statute should be considered closer to the compensatory or closer to the punitive side of the spectrum with regard to a particular legal issue. *Cook Cty.*, 538 U.S. at 130. Yet again, the "tipping point" test is meant to assess whether treble damages are closer to or further from "purely compensatory" or "strictly punitive" damages for purposes of determining the outcome of a legal issue – but not for purposes of recharacterizing (destroying the uniqueness of) treble damages themselves to mean the same as "purely compensatory" or "strictly punitive."

*Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768, 771 (11th Cir. 2011), relied upon previously by the Stansells, is not on point as it deals with a different statutory provision and the construction of insurance contracts against an insurance company. The issue before the court was

---

[26] The cases previously relied upon by the Stansells, among them *PacifiCare*, confirm this analysis. *See Agency Holding Corp. v. Malley-Duff Assocs., Inc*., 483 U.S. 143, 151-52 (1987) (selecting a four year statute of limitations for civil RICO claims and finding that civil RICO is patterned after the Clayton Act as both were designed to remedy economic injury (a compensatory characteristic) and both provide for treble damages as a carrot to create private attorneys general to combat organized crime (a punitive characteristic)); *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 240 (1987) (considering whether RICO claims could be arbitrable and noting that RICO has both a remedial and deterrent function); *Am. Soc'y Of Mech. Eng'rs v. Hydrolevel Corp*., 456 U.S. 556, 575 (1982) (analyzing antitrust liability for acts of an agent and noting that antitrust treble damages were designed in part to punish past violations of antitrust laws, deter future antitrust violations, and also to provide a remedy for victims of such violations); *Brunswick Corp. v. Pueblo Bowl- O-Mat, Inc*., 429 U.S. 477, 485-86 (1977) (noting that Section 4 of the Clayton Act, which permits recovery of treble damages, is remedial but noting "[o]f course, treble damages play an important role in penalizing wrongdoers and deterring wrongdoing . . ."); *Cook Cty*., 538 U.S. at 130-34 (holding that local governments can be sued under the False Claims Act and noting that "it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives.").

whether the treble damages awardable under the Telephone Consumer Protection Act ("TCPA") were excluded under the insurance policy's language, which had to be construed, if ambiguous, against the insurance company. *Id*. at 779. The court found that the treble damages provision in the TCPA "falls more on the compensatory than the punitive side" (*id*. at 779), reasoning that the statute allows, but does not require, a court to increase the compensatory damage award by up to three times. *Id*. at 778. The court also noted that given the small amount of damages available under the TCPA, the trebling did not serve to punish. *Id*. at 778-79.

Unlike *Alea London Ltd.,* the ATA, however, requires that compensatory damages be trebled, thus codifying through this required trebling the deterrent and punitive purposes of the judicial act of the trebling itself.  The Stansells acknowledged as much [*see* D.E. 259-1 at 51] in their original action in the Stansell MDFL Action (i.e., that the damages under the ATA serve a "deterrent purpose" [*id.*]). The Court, further, in this instance is not being asked to decide whether the ATA's trebled damages are more like compensatory damages or more like punitive damages merely for purposes of deciding a related legal issue.  Instead, Caballero is asking this Court to declare that the ATA's trebled damages are **not** the equivalent of compensatory damages under TRIA. Put another way, Caballero is asking this Court to **not** ignore that the ATA's treble damages are impounded with a punitive and deterrent purpose and component.

The Stansells now attempt to "double-dip" in order to prevent another TRIA judgment creditor—Caballero—from collecting merely upon his compensatory damages.  Put another way, the Stansells attempt to crowd out Caballero's ability to collect damages that are indisputably compensatory by having this Court permit collection of damages that are trebled beyond mere compensatory damages and beyond what TRIA permits as collectible.  Having successfully argued to the Middle District of Florida that Stansells' compensatory damages be based upon a

"[h]ostage taking damages formula" [D.E. 259-1 at 53] that had been used by various court (obviously deterrent and punitive in nature), and having successfully argued to the Middle District of Florida that a lump sum should be added to their per diem damages amount given the circumstances of their case [*id*. at 54], the Stansells now wish to collect upon the treble of such entire amounts.  That "double-dip" is neither fair nor supported by the plain language of TRIA, which specifically limits collection of damages "<u>to the extent</u> of any compensatory damages."[27] TRIA § 201(a) (emphasis added). As previously noted, Judge Lazzara distinguished between the Stansells' treble damages portion (i.e., $212,020,000 million) and their compensatory damages portion (i.e., $106,010,000 million). D.E. 259-2.

It is undisputed that TRIA does not provide for the use of blocked assets to the extent of any trebled damages, but instead expressly limits the collection of blocked assets to the extent of any compensatory damages. Congress could have drafted TRIA to allow for the use of blocked assets to the "extent of any trebled damages," but it did not. Congress has given victims of terrorism a mechanism (i.e., TRIA) by which to collect their compensatory damages against the blocked assets of a terrorist – to the "extent of any compensatory damages" (i.e., "actual damages", or "sustained damages"), yet: (a) not allowing terrorism victims to deprive (through collection beyond compensatory damages) other terrorism victims from also obtaining collection from a limited pool of blocked assets, and (b) not depriving terrorism victims of pursuing non-blocked assets beyond the "extent of any compensatory damages." This is sensible statutory construct – so much so that this terrorism victim, Caballero, is arguing (potentially against his own financial interests, no less) that he should be allowed to collect from the blocked assets in

---

[27] The Stansells are fortunate that, to date, no party has raised the argument that the Stansells infused its base damages award with deterrent and punitive purposes when it invoked a "[h]ostage taking damages formula" [D.E. 259-1 at 53] and requested that the court heap on lump sum damages amounts to their per diem damages calculations in their MDFL Action.

this case up "to the extent of any compensatory damages" awarded to him under his ATA judgment (i.e., $46.7 million), rather than herein attempting to argue that he should be entitled to collect from the blocked assets in this case beyond the "extent of any compensatory damages" awarded to him (i.e., the trebled damages that were awarded to him beyond such $46.7 million).

Further, the Stansells overlook a second significant obstacle in their attempt to circumvent the text of TRIA by ignoring the words "to the extent" as they appear in the statute immediately before the words "any compensatory damages." The word "to" and the word "extent" function as an express ceiling on collection to the point of damages that are actually compensatory—and nothing more, else TRIA could have expressly provided for collection of damages that have a component in addition to their compensatory component without limiting collection beyond such compensatory component. The authors of TRIA did not do so. The "to the extent" text of TRIA thus establishes the boundary of collectible damages up to only what is compensatory in a manner congruent to the term "purely compensatory" as used by the U.S. Supreme Court in its spectral analysis under *PacifiCare Health Sys.,* 538 U.S. at 405.  Reading *PacifiCare Health Sys.,* its use of the term "purely compensatory," and its defining of treble damages as unique damages (that are "between" [*id.*] compensatory and punitive damages), together with the words "to the extent of any compensatory damages" under TRIA, reveals the overreach sought by the Stansells in collection beyond their base compensatory damages.

TRIA was enacted in 2002. *See* TRIA, 116 Stat. 2322. At the time TRIA was enacted to provide terrorism victims with a route to collect their judgments "to the extent of any compensatory damages," there were numerous terrorism judgments containing punitive damage components. *See, e.g.,* *Flatow v. Islamic Republic of Iran*, 995 F. Supp. 1, 32-34 (D.D.C. 1998) (awarding punitive damages of $225,000,000); *Weinstein v. Islamic Republic of Iran*, 274 F.

Supp. 2d 53, 55 (D.D.C 2003) (noting that on February 6, 2002, the court entered a default judgment awarding the terrorist victims $33.2 million in compensatory damages and $150 million in punitive damages). Thus, when Congress passed TRIA it was fully aware that 100% of a terrorism victim's judgment may not be collected from blocked assets under TRIA.

Moreover, in 2008, Congress amended the terrorism exception to state sovereign immunity then codified at 28 U.S.C. 1605(a)(7), which did not permit for the award of punitive damages, to allow for the award of punitive damages. *See* 28 U.S.C. 1605A(c). Clearly, the aforementioned law is meant to provide an opportunity to for all terrorism victims (not just the Stansells) to collect from the available—undisputedly limited—pool of blocked assets. A terrorist victim can obtain a judgment against a nation under 28 U.S.C. 1605A(c) that includes punitive damages, but not collect such punitive damages portion from blocked assets under TRIA. Obviously, if Congress had intended otherwise, it could have amended TRIA in 2008 when amending the Foreign Sovereign Immunities Act. Congress' intent was clearly that TRIA not provide for the use of blocked assets to the extent of any trebled damages, thus further evidencing that the Stansells' entire $318 million treble ATA judgment is not compensatory and not fully collectible under TRIA.

2. The Trebled Amount of an ATA Judgment Cannot be Considered Compensatory Damages Under TRIA

Although the text of the ATA does not explicitly use the word "compensatory" when describing the damages that may be awarded, it does use the phrase "the damages he or she *sustains*." 18 U.S.C. 2333(a). (emphasis added). The damage one *sustains* is the equivalent of one's actual or compensatory damages. *See, e.g.*, *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 1086, 1088 (11th Cir. 1986) (applying Alabama law and noting: "Compensatory damages, sometimes called actual damages, measure the actual loss *sustained*,

while punitive damages are awarded to punish a wrongdoer and to deter the commission of similar acts in the future.") (emphasis added); *In re Air Crash Disaster at Gander*, 684 F. Supp. 927, 931 (W.D. Ky. 1987) ("On its face, the text of Article 17, set forth above, is entirely compensatory in tone. It establishes liability only for 'damages sustained' or 'bodily injury suffered' by a passenger.").

Thus, the ATA's text already provides that the base component of the total damages to be awarded is compensatory. After the court has determined the base compensatory damages amount (i.e., the actual damages amount, the sustained damages amount) (and this is the analysis done by Judge Lazzara and by many other courts), such base compensatory damages amount is then multiplied by three – in this case the multiplication yielded a trebled damage amount that is $212,020,000 beyond the "extent of any compensatory damages" of $106,010,000.

Accordingly, the ATA provides a damages calculation that TRIA divides into two components: (a) the base compensatory damages amount (in this case the $106,010,000 awarded to the Stansells), which may be collected from blocked accounts; and (b) the amount beyond the base compensatory damages amount (in this case the $212,020,000) that results from trebling of the base compensatory damages amount, which may be collected from non-blocked accounts. Put another way, the base compensatory damages amount are those actual damages or sustained damages, in this case the $106,010,000. Under the ATA, the remaining $212,020,000 in damages beyond the base compensatory damages amount are meant to deter and punish the FARC.

The ATA does not provide that the trebled amount beyond the actual damages – i.e., the base compensatory damages amount of $106,010,000 – should be considered compensatory,[28]

---

[28] Albeit there are arguments that the Stansells impounded deterrent and punitive elements into their base damages, we assume for purposes of this analysis that such base damages are assumed as compensatory damages for purposes of this memorandum.

and the courts that have considered the issue have likewise reasoned to the contrary. The below cases are on point and establish that an ATA's trebled damages amount beyond the base compensatory amount – i.e., in this case beyond the $106,010,000 – are punitive and deterrent in nature. Yet, the Stansells, in essence, ask this Court to ignore the indivisible punitive and deterrent purpose and component impounded into the ATA's trebling provision, as well as the fact that their entire $318 million treble ATA judgment is not compensatory under TRIA.

The legislative history of the ATA further clarifies that the trebled damages awarded under the ATA are distinct from compensatory damages under the ATA and are punitive in nature. *See, e.g.*, S. Rep. No. 102-342 (1992) ("By its provisions for **compensatory damages, treble damages,** and the imposition of liability...") (emphasis added); *Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Cts. & Admin. Prac. of the S. Comm. on the Judiciary*, 101st Cong. 89 (1990) ("[The ATA] provides ***not only for*** **the recovery of compensatory damages,** ***but also for treble damages***, costs of suit, and attorneys' fees, with all the additional deterrent power that such sanctions may have.") (emphasis added); [136 Cong. Rec. S14,284 (daily ed. Oct. 1, 1990) ("suing those responsible—the PLO: 'is a matter of principle…**It is not the money.  It is not a price tag.  It is to legally set responsibility**.'") (statement of bill sponsor Sen. Chuck Grassley) (quoting Lisa Klinghoffer) (emphasis added); *Antiterrorism Act of 1991: Hearing on H.R. 2222 Before the Subcomm. on Intell. Property & Judicial Admin. of the H. Comm. on the Judiciary*, 102d Cong. 2 (1992) (describing the ATA's "deterrent effect in putting terrorists' assets at risk and deterring them from using the U.S. financial system to hide and augment their wealth") (statement of bill sponsor Edward Feighan).

In *Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d. 232 (D.R.I. 2004), terrorism victims sued various terrorists and terrorist organizations under the ATA. *Id*. at 236-37. The

issue before the court was whether to grant plaintiffs' request for pre-judgment interest. *Id*. at 237. The court declined to award prejudgment interest because "the treble damages provision of Section 2333 is overwhelmingly punitive…" *Id*. at 239.

Summarizing the legislative history, the court found that "the congressional purpose behind 18 U.S.C. § 2333 (the ATA) was to deter acts of international terrorism and this Court will not add prejudgment interest to the substantial penalties of treble damages, court costs, and attorney's fees already provided by Congress." *Id*. at 237. Before reaching its conclusion, the court undertook a lengthy analysis of the legislative history of the ATA, finding that the "legislative history of 18 U.S.C. § 2333 shows an unequivocal congressional intent to deter acts of international terrorism and punish those who commit such acts against American citizens." *Id*. at 239. The court noted that testimony before Congress included analysis that "the deterrent power of provisions allowing for treble damages, court costs, and attorney's fees." *Id*. The court concluded as follows: "Given the legislative history discussed above, it cannot be reasonably argued that the treble damages provided for in Section 2333 are primarily compensatory. The ***punitive*** aspect and congressional intent to deter and ***punish*** those who commit terrorist acts ***permeate the statute and overshadow its compensatory aspects***." *Id*. at 240 (emphasis added). The court's conclusion is fatal to the Stansells' position. The Stansells cannot ignore that, in general, treble damages amounts beyond the base damages amount are punitive and deterrent in nature and therefore cannot be considered compensatory damages under TRIA.

Courts in this Circuit have supported Caballero's position. *See Kaplan v. Al Jazeera*, No. 10 Civ. 5298, 2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011); *Rosenberg v. Lashkar-E-Taiba*, Nos. 10-CV-5381, 10-CV-5382, 10-CV-5448, 11-CV-3893, 12-CV-5816, 2014 U.S. Dist. LEXIS 205692 (E.D.N.Y. Aug. 1, 2014). In *Kaplan*, several terrorism victims sued Al Jazeera

23

under the ATA and also under ATS. *Kaplan v. Al Jazeera*, 2011 U.S. Dist. LEXIS 61373, at *6. When determining whether the plaintiffs had adequately pled a cause of action under the ATA, the court analyzed whether Section 2333(a) contains a state of mind requirement. *Id*. at *14. Noting that the ATA does not explicitly contain a state of mind requirement, the court noted that "courts have interpreted the statute 'to include a requirement that there be some deliberate wrongdoing by the defendant, in light of the fact that the statute contains a ***punitive element (i.e., treble damages)***.'" *Id*. (emphasis added) (citations omitted). Given the reasoning in *Kaplan*, the Stansells' position that trebled damages amount beyond the base compensatory amount of $106,010,000 are compensatory remains wholly contradicted. Such punitive element referenced in *Kaplan* is the purpose of, and an individual component of such ATA treble damages.

Further, *Rosenberg v. Lashkar-E-Taiba* is also on point and demonstrates that treble damages under the ATA are distinct from compensatory damages. The court in *Rosenberg* addressed the plaintiffs' claim for damages under the ATA in categories, addressing treble, punitive damages in a single category – 1) "Economic Damages"; 2) "Pain and Suffering"; 3) "Solatium"; 4) Treble/ Punitive Damages." *Rosenberg*, 2014 U.S. Dist. LEXIS 205692, at *74-82. The court further implied that treble damages already serve a punitive purpose: that "***it does not appear that a separate award of punitive damages, in addition to treble damages, would be warranted***". *Id*. at *81 n.33 (emphasis added).

The Stansells will likely argue (as they have previously) that the above cases were decided before *Estate of Parsons v. Palestinian Auth*., 651 F.3d 118, 148 (D.C. Cir. 2011), which the Stansells have represented to hold "that ATA treble damages are compensatory damages, not punitive damages." **Exhibit 2** at 3. It does not and neither do *Sokolow v. Palestine Liberation Org*., 60 F. Supp. 3d 509, 516 n.9 (S.D.N.Y. 2014) or *Smith v. Islamic Emirate of Afg*., 262 F.

Supp. 2d 217, 240 (S.D.N.Y. 2003), which the Stansells have also previously relied upon. *See id*. Indeed, there is nothing about the passage of time (or anything in the cases cited by the Stansells) that makes *Estates of Ungar* and *Kaplan* inapplicable here.

In *Estate of Parsons*, the family of a victim of terrorism brought an ATA action against the Palestinian Authority for providing material support or conspiring with the terrorists that had killed a family member with a roadside bomb. 651 F.3d at 119. One of the issues in *Estate of Parsons* was whether the Palestinian authority could be held vicariously liable for its employees' acts. *Id*. at 266. The Stansells have previously quoted from the opinion of one Judge in *Estate of Parsons*, concurring in part and dissenting in part (the "Dissenting Judge"). **Exhibit 2** at 3. The Dissenting Judge did not address the pertinent question here, but instead addressed where on the spectrum an ATA's trebled damages lie for purposes of a vicarious liability analysis. *Id*. at 266-67. The Dissenting Judge wrote that "for purposes of selecting the applicable standard for vicarious liability, treble damages are not punitive." *Id*. at 267. Put another way, all the Dissenting Judge concluded is that the treble damages do not equal strictly punitive damages in such a way as to preclude the application of vicarious liability. The Dissenting Judge does not conclude that the treble damages beyond the base compensatory amount are equal to compensatory damages for purposes of a TRIA analysis. Indeed, the Dissenting Judge's opinion is more helpful to Caballero's position. The Dissenting Judge acknowledged that the "ATA's legislative history confirms that the primary purpose of the statutory multiplier is to ***deter*** future acts of terrorism…." *Id*. at 267 n.10 (emphasis added).

*Sokolow*, previously relied upon by the Stansells, is likewise of no assistance to the Stansells. In that case, the court was faced with the issue of whether vicarious liability principles should be applied. *Sokolow*, 60 F. Supp. 3d at 516. Agreeing with the Dissenting Judge in *Estate*

*of Parsons*, the court held that "[t]reble damages in this context are statutory or liquidated – rather than punitive – damages" and therefore did not preclude the application of vicarious liability principles. *Id*. at 516 n.9. Once again, the opinion does not conclude that the trebled damages are equal to, or the same as, compensatory for TRIA purposes.[29]

The Stansells also previously cited *Smith* in support of their erroneous position. *Id.*, 262 F. Supp. 2d at 217. In that case, the plaintiffs requested punitive damages be awarded, and the court declined. *Id*. at 239-40. With regard to the damages awarded under the ATA, the court reasoned that "[t]o the extent that § 2333's treble-damages provision already provides a penalty, this Court is foreclosed from assessing additional punitive damages…" *Id*. at 240. In the context of the ATA, the court explicitly held that treble damages are inclusive of the component that is punitive and deterrent in nature such that allowing for a separate award of punitive damages outside of the trebled damage amount would be redundant—that it would in essence constitute a double recovery.[30] *Id*. at 240. The court summarized the law: "recovery of both multiple statutory damages and punitive damages constitutes an impermissible double recovery because the two forms of enhanced damages serve the same functions…Because multiple damages ***are punitive in nature*** and not intended to compensate for the plaintiff's injury, a plaintiff cannot recover both punitive damages and multiple damages in the same cause of action…because receipt of both…violates the principle against double recovery." *id*. at  n. 38 (emphasis added).

Clearly, the cases previously relied upon by the Stansells actually refute their position.

---

[29] The holding of *Sokolow* is thus congruent with the principles set forth in *PacfiCare Health Sys.,* 538 U.S. at 205, in that treble damages are "***between*** purely compensatory and strictly punitive awards." Emphasis added.

[30] The double recovery reasoning does not provide for or imply recovery beyond compensatory damages of blocked assets under TRIA, but rather acknowledges that if a plaintiff were to be able to recover on a basis other than TRIA – *e.g.*, an unblocked assets collection under the ATA – the double recovery reasoning would stand.

None of the cases cited by the Stansells in the past—not a single one—hold that the ATA's trebled damages beyond the base compensatory damages are compensatory under TRIA.

The ATA is akin to the Lanham Act, which was also passed to encourage deterrence, specifically to deter counterfeiting. In *TigerCandy Arts, Inc.,* a sister court within this district confirmed the deterrent purpose of treble damages under the Lanham Act: "The mandatory nature of the ***treble damages award demonstrates that Congress intended to 'penalize known counterfeiters, thereby deterring others,*** and to induce private victims to protect the public interest by vindicating their rights.'" *TigerCandy Arts, Inc. v. Blairson Corp*., No. 09 Civ. 6215, 2012 U.S. Dist. LEXIS 35269, at *13 (S.D.N.Y. Feb. 23, 2012) (citing *Louis S.A. v. Vuitton Corp.*, 765 F.2d 966, 971 (2d Cir. 1985))) (emphasis added). The court further noted: "***treble damages*** provision thus is intended to "be punitive rather than compensatory." *Id.*

Nevertheless, the Stansells have previously attempted to liken the ATA to RICO and the Clayton Act. Such ignores the distinct legislative history of the ATA, which treble damages provision is uniquely aimed at punishing and deterring acts of terrorism rather than derived from an economic justification such as those underlying the treble damages provisions in both RICO and the Clayton Act.[31] In fact it is the very "punishment"-oriented nature of the ATA, that has caused other nations to reject our judicial approach toward remuneration of victims:

> [B]y allowing the 'estate, survivors, or heirs' of a U.S. national killed by an act of terrorism to sue in federal district court and to recover treble damages and attorney's fees, ***it is certain that the intent of the law [i.e. the ATA] is to maximize the punishment of the wrongdoer <u>so that it is punitive in nature</u>. In American jurisprudence, <u>the purpose of allowing for treble damages is always</u>***

---

[31] *Agency Holding Corp*., 483 U.S. at 151; *see also Phx Bond & Indem. Co. v. Bridge*, No. 05 C 4095, 2012 WL 8706, at *3 (N.D. Ill. Jan. 2, 2012); *But see Tex. Indus. v. Radcliff Materials,* 451 U.S. 630 (1981) ("the provision for treble-damages actions under the Clayton Act were not adopted for the benefit of participants in a conspiracy to restrain trade…***The very idea of treble-damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers***") (emphasis added).

> ***punitive in nature*** *and designed to 'punish past, and to deter future, unlawful conduct.'*

See *Addicott*, supra n. 24, at 104 (emphasis added).[32]

Still, the Stansells have, in the past, engaged in classic "cherry-picking" of legal principles—conflating two distinct areas of law in the process. First, the Stansells have analogized the ATA to RICO and to the Clayton Act, arguing that under *Estate of Ungar*, 304 F. Supp. 2d at 240—the district court "held that prejudgment interest under the ATA was not allowed because it was subsumed within the trebled damages award." **Exhibit 11** at 6. The *Estate of Ungar* court said nothing of the sort—it merely stated that trebled damages provided sufficient award such that the prejudgment interest provision would not be necessary, but the court did not make the trebled damages as "subsuming" or "one and the same as" prejudgment interest. *See Estate of Ungar*, 304 F. Supp. 2d at 240 ("Congress' clear intent to deter and punish those who commit acts of international terrorism makes Section 2333 [i.e., the ATA] overwhelmingly punitive and precludes this Court from awarding prejudgment interest on what is essentially a punitive damages award.").

The Stansells' "prejudgment interest" argument is precisely what condemns their ATA analogy to RICO or to the Clayton Act. The Stansells previously argued that *Estate of Ungar* cites to RICO and antitrust cases for the principle that treble damages under RICO and the Clayton Act are designed to cover prejudgment interest [**Exhibit 11** at 6]—thus admitting the economic grounds for trebling under RICO and the Clayton Act, i.e., that trebling is more than

---

[32] In the above law review article regarding the use of civil judgments to deter international terrorism, the author also notes that the ATA has "twin aims of fully compensating victims and significantly punishing the financial capabilities of terrorist sponsors from the basis for these judgments." *Id*. at 105. The problem, from an international perspective, the author concludes, is that civil law nations do not recognize punitive damages, thus diminishing the international effect of ATA judgments. *Id*. at 106, 113-15.

enough to cover pre-judgment interest. There are no such economic grounds attendant to the ATA's trebling provision—that provision is meant purely to **punish and deter** terrorism.

The Stansells have further previously argued that the trebling damages under RICO and the Clayton Act "provide incentives to bring difficult lawsuits and ensure full compensation." **Exhibit 11** at 7. At the heart of the argument is the erroneous conflation of: (a) the word "compensation" as a term denoting remuneration of victims, with (b) the phrase "compensatory damages" which connotes only the actual damages or sustained damages incurred by those victims. The Stansells miss the heart of the issue – why the trebling is to occur under the ATA – and it is not for economic reasons – prejudgment interest or otherwise – it is to "**punish past, and to deter future, unlawful conduct**." See *Addicott*, supra n. 24, at 104 (emphasis added).

## C. Conclusion

The Stansells' original ATA Default Judgment was based on a crystal-clear order (after briefing by the Stansells) setting compensatory damages at $106 million. Such amount was then trebled **by the Clerk of the Court.  *See supra* I.A. *Such mathematical calculation by the Clerk did not somehow convert the $106 million compensatory damage award to a $318 million compensatory damage award.*  The aforementioned legislative history, the plain language of TRIA (i.e., "to the extent of any compensatory damages"), the established case law, scholarly literature on the ATA, and the practical reality that blocked assets are a limited pool from which all ATA judgment holders should be able to collect their compensatory awards all confirm that the Stansells' damages above their compensatory damages amount of $106,010,000 are **not** compensatory and **not** fully collectible under TRIA and that concluding otherwise would deprive any other ATA judgment holder from obtaining the relief that the Stansells themselves have already obtained.  Because, based on their prior submissions to a court, the Stansells have

29

already exhausted their compensatory damages under TRIA (*see supra* I.A.), the Stansells have

no standing to proceed further in these interpleader actions.

## II. STPE LACK STANDING TO BRING THEIR CROSSCLAIMS, WHICH ARE, IN ANY CASE, WRONG ON THE MERITS

Without establishing that they have any standing to do so, STPE collaterally attack

Caballero's long-standing ATA Final Judgment entered by Chief Judge Moore.[33]   STPE, in

essence, ***argue for the FARC*** that: (i) the SDFL did not have subject matter jurisdiction over the

case because neither Caballero nor his father were U.S. citizen when Caballero's father was

murdered in Colombia, (ii) the SDFL and the Florida state court presiding over Caballero's

related ATS action did not have personal jurisdiction over the FARC, and (iii) the ATA Final

Judgment improperly awarded non-economic damages to Caballero. Notably, Chief Judge

Moore continues to preside over Caballero's ATA Action and still continues to enforce the ATA

Final Judgment, evidencing the ATA Final Judgment's validity. *See* **Exhibit 13**.

Preliminarily, Caballero notes that STPE have waived the argument that Caballero's

ATA Final Judgment is somehow void. The fact that Caballero and STPE recently entered into a

settlement agreement in the United States District Court for the Southern District of Florida in a

separate garnishment proceeding vitiates any such argument as STPE expressly acknowledged

its validity when settling with him. *See* **Composite Exhibit 15**.

---

[33] Certain court filings referenced below in support of Caballero's argument that STPE's lack standing to collaterally attack Caballero's ATA Final Judgment were explicitly referenced by STPE in their Crossclaims and are, thus, within the "four corners" of the pleading. *See, e.g.,* D.E. 268 at 19, ¶16 (referencing Partial Summary Judgment Order); *id.* at 20 ¶17 (referencing Caballero's ATA Complaint). Other court filings, such as the Stansells' motion to intervene in Caballero's ATA Action and related briefings, which evidence that the Stansells have raised and lost their purported subject matter jurisdiction argument before, are necessarily incorporated into STPE's Crossclaim to the extent such documents informed the ATA Final Judgment, which STPE now improperly challenge via their Crossclaim.  Even if this Court were to disagree, this Court could nevertheless consider such court filings for dismissal purposes as they relate to Caballero's standing arguments against STPE. *See* n. 14, *supra*.

Furthermore, the Supreme Court has long recognized that collateral attacks are disfavored. *See, e.g., Chicot City Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940); *United Student Aid Funds, Inc. Espinosa*, 559 U.S. 260, 271 (2010) ("[A] judgment is void because of a jurisdictional defect [only in the] exceptional case in which the court that rendered the judgment lacked even an 'arguable basis' for jurisdiction."). This is particularly true in instances, such as this one, where multiple courts across the country have exercised jurisdiction over Caballero's collection proceedings, resulting in Caballero having satisfied over $11 million on his underlying judgment. *See Weininger v. Castro*, 462 F. Supp. 2d 457, 474 (S.D.N.Y. 2006) ("At this late stage of these complex and lengthy proceedings, the judgment debtors have had ample opportunity to contest the jurisdictional issues but chose not to do so. Similarly, numerous state and federal courts that encountered the same questions raised here either asserted jurisdiction or exercised discretion not to reopen those settled matters.").

Courts disfavor collateral attacks[34] because they disturb a judgment's "finality." *See Nemaizer v. Baker,* 793 F.2d 58, 64-66 (2d Cir. 1986); *Hoffman v. Pulido*, 928 F.3d 1147, 1151 (9th Cir. 2019) ("If any jurisdictional foible could be the basis of a voidness challenge, litigants would have unending opportunities to second-guess a court's legal determination as to its jurisdiction outside of the typical appellate review process, and the ***court's interest in finality would be undermined***.") (citation omitted) (emphasis added).  Although STPE argue otherwise, the rule stated therein is equally applicable in default judgment cases. *X-Ray Optical Sys., Inc. v. Inst. for Roentgen Optics,* No. 98cv1270, 2008 U.S. Dist. LEXIS 47301, at *14 (S.D. Cal. 2008) (denying motion to set aside default judgment in underlying action: "Accordingly, ***the court***

---

[34] Any reliance on *Eaton & Van Winkle, LLP v. Yunling Ren*, 2020 U.S. Dist. LEXIS 47164 (S.D.N.Y. Mar. 16, 2020) as authority for STPE's collateral attacks are misplaced given that such case did not even involve a collateral attack.

*concludes that* <u>*principles of finality*</u> *prevent Defendants from now raising a collateral attack to the underlying judgment*.") (emphasis added).

For instance, no judge has accepted any collateral attacks of Caballero's long-standing ATS Final Judgment. *See* **Composite Exhibit 12** (in her order, Judge Schreier recited and did not disturb the state court's analysis regarding subject matter jurisdiction [in Caballero's ATS Action]); D.E. 250-14 (rejecting the collateral attacks made by a putative claimant against Caballero's ATS Final Judgment – giving full *res judicata* effect to such judgment).

Nevertheless, courts recognize "that [FRCP] 60(b)(4) expressly allows for final judgments to be declared void in some circumstances, including certain limited situations in which the court lacked subject-matter jurisdiction to enter the judgment in the first place." *Hoffmann*, 928 F.3d at 1151 (citation omitted).  Yet, "the scope of what constitutes a void judgment is narrowly circumscribed, and judgments are deemed void <u>***only where the assertion of jurisdiction is truly unsupported***</u>." *Id.* (citing *Jones v. Giles*, 741 F.2d 245, 248 (9th Cir. 1984) (emphasis added); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 (2010) ("[A] judgment is void because of a jurisdictional defect [only in the] exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction.").

Contrary to STPE's assertions, their arguments have nothing to do with subject matter jurisdiction.  Instead, their arguments relate to pleading sufficiency.  STPE, however, did not argue the applicable elements nor argue that Caballero failed to properly state a cause of action. And even if they had (and they did not), the doctrine of finality bars such arguments from being raised at this late stage of the proceedings.  Moreover, even if the doctrine of finality does not bar such argument (and it does), only the Defendants—and not STPE—could have raised such pleading sufficiency argument (albeit unsuccessfully for the reasons discussed below).

Furthermore, STPE's "subject matter jurisdiction" argument, in any case, is substantively wrong and has already been addressed head-on by the underlying court in Caballero's ATA Action.

STPE also inappropriately raise a personal jurisdiction argument on behalf of the Defendants. Yet, STPE fail to provide a single case authorizing them (as opposed to the Defendants) to make such argument because they are not permitted to make it. Moreover, STPE ignore the fact that this argument is also foreclosed by the doctrine of finality.

STPE's final argument—that Caballero has satisfied his judgment—similarly fails because it is premised on the erroneous argument, which STPE have no standing to make here, that Caballero was not entitled to bring an ATA cause of action or obtain emotional distress damages he suffered because he was not a United States national "injured in his person" at the time of the terrorist act. D.E. 331 at 10. But, as will be demonstrated below, Caballero did qualify as a U.S. national for ATA purposes (as concluded by Chief Judge Moore), and the ATA lacks any temporal limitation on "injury." D.E. 250-17 at 4-6 ("Thus, Plaintiff qualifies as a 'U.S. national' under the ATA.").

**A.    STPE's Purported "Subject Matter Jurisdiction" Attack on Caballero's ATA Final Judgment Fails on Four Independent Grounds**

> **1.   First, STPE's Purported "Subject Matter Jurisdiction" Arguments are Actually Pleading Sufficiency Type Arguments, and as such, are Untimely and Cannot be Raised by STPE**

STPE's purported "subject matter jurisdiction" attack – that Caballero did not qualify as a U.S. national under the ATA because he was not a U.S. national at the time of the terrorist attack [D.E. 331 at 20-22] – is not actually a subject matter jurisdiction argument.[35] It is, at best, the

---

[35] Thus, STPE's cited authority, for instance *Grady v. Grady*, No. 10-CV-8809 (CS), 2015 U.S. Dist. LEXIS 114033, at *1 (S.D.N.Y. Aug. 26, 2015), purportedly allowing him to collaterally attack Caballero's underlying judgment on subject matter jurisdiction grounds, is inapplicable because, here, there is no actual subject matter jurisdiction attack.

type of argument that with the assertion of applicable elements could have been raised (albeit unsuccessfully by the FARC or NDVC) as a "failure to state a cause of action" argument. In an attempt to lead this Court into committing legal error, STPE mislabel their argument as a "subject matter jurisdiction" argument, when in fact it is a back door, belated attempt toward (without even asserting the proper elements) failure to state a cause of action type argument.

It is basic hornbook law that subject matter jurisdiction is the power of a court to hear a type of case. Here, STPE have not alleged that the SDFL lacked subject matter jurisdiction to decide whether Caballero had a cause of action under the ATA, 18 U.S.C. § 2333. And how could they? It is indisputable that federal courts, including the underlying court, have the power to hear such cases. Indeed, a federal district court's jurisdiction over such matters is referenced in the statute itself. *See* 18 U.S.C. § 2333(a) ("Any national of the United States…may sue therefor in any appropriate ***district court of the United States***…") (emphasis added); 18 U.S.C. § 2338 (providing exclusive subject matter jurisdiction to federal courts to adjudicate ATA complaints).

Based on the above, including the express provisions of Section 2338, there is no question of the underlying court's subject matter jurisdiction when one conducts the correct analysis – does the court have the power to decide the issue. In short, STPE's arguments about "subject matter jurisdiction" are "backdoor", belated attempts to argue whether Caballero pled the elements necessary to properly state a cause of action under the ATA.

Furthermore, STPE's pleading sufficiency type arguments are plainly untimely in this post-judgment proceeding. The reality is that the type of pleading sufficiency argument attempted by STPE here is not appropriate basis for any motion brought by STPE (even a post-judgment Rule 60 motion)—but rather, for a <u>defendant's</u> pre-answer motion to dismiss. If such errant pleading sufficiency type arguments could be raised at any time (and by a third-party no

less), no plaintiff or court would ever achieve "finality." *See Hoffmann,* 928 F.3d 1147 at 1151. Indeed, STPE fail to cite to a single case authorizing them, as third-parties, to make a backdoor, belated pleading sufficiency type argument post-judgment.

Caballero respectfully requests that this Court not entertain STPE's improper, untimely, and incorrect arguments during the post-judgment phase of this litigation, which improperly seek to have this Court sit as an appellate court over Chief Judge Moore when: (i) the ATA Final Judgment was never appealed; and (ii) as will be discussed further below in Section II.A.2., *infra,* Chief Judge Moore already considered and discarded these very same arguments (raised by STPE no less in Caballero's ATA Action). *See* D.E. 250-17 at 5-8.

### 2.   Second, STPE's Pleading Sufficiency Type Argument is Barred by the Doctrine of Finality

Aside from being too late and improperly attempted by a non-defendant, the pleading sufficiency type argument attempted by STPE is foreclosed by the doctrine of finality. The issue of whether Caballero must have been a U.S. national at the time of the injury has already been fully and fairly litigated in Caballero's underlying ATA Action. *See* D.E. 250-17 at 5-8. Thus, even if the Court were to interpret STPE's argument as a subject matter jurisdiction attack (and it should not for the aforementioned reasons), such argument still fails because the issue was fully and fairly considered by Chief Judge Moore after the Stansells themselves raised the issue before him. If the Stansells disagreed with Chief Judge Moore's decision, they could have appealed it. They did not. STPE cannot now use this Court to wage an improper collateral attack on Caballero's ATA Final Judgment.

Courts have been clear. Collateral attacks raising subject matter jurisdiction are highly disfavored and only considered on narrow grounds "[b]ecause federal courts are tribunals of limited jurisdiction, they have both the inherent authority and responsibility to consider their

jurisdiction." *Hoffman*, 928 F.3d at 1151. Indeed, "judgments are deemed void only where the assertion of jurisdiction is truly unsupported" not when there is a disagreement over the law. *Id*.

This is not the first attempt by the Stansells to raise the erroneous argument that Caballero did not qualify as a U.S. national under the ATA. They raised this same argument, pre-judgment, in a motion to intervene in Caballero's underlying ATA Action. *See* D.E. 259-6 at ¶ 6. Notably, Chief Judge Moore denied the Stansells' intervention motion and subsequently rejected the Stansells' argument head-on: "Accordingly, a reading of the ATA permitting individuals who were not U.S. nationals at the time of the injury but subsequently become U.S. nationals to state a claim is consistent with Congress' intention and furthers the ATA's purpose. ***Thus, Plaintiff qualifies as a 'U.S. national' under the ATA***." D.E. 250-17 at 6 (emphasis added). Chief Judge Moore further entered Caballero's ATA Final Judgment, thus evidencing Caballero's authority to collect under the ATA.

The issue is thus barred from being re-litigated in the interest of finality.[36] It does not matter that Defendants, FARC and NDVC did not raise the U.S. nationality argument. Even if STPE were making a valid subject matter jurisdiction argument (and they are not), as opposed to attempting to make a failure to state a cause of action argument, the doctrine of finality does not permit STPE to use this Court as an appellate court over the SDFL to reconsider the reasoning of Chief Judge Moore. This is not a case where the underlying court "lacked even an 'arguable basis' for jurisdiction." *Hoffmann*, 928 F.3d at 1151. To the extent the citizenship issue goes to subject matter jurisdiction, and it did not as this was not a diversity jurisdiction

---

[36] The Stansells cannot escape the fact that the issue was briefed in their intervention motion [D.E. 259-6], in Caballero's response thereto [D.E. 259-7], and in the Stansells' reply [D.E. 259-8]. And, following Chief Judge Moore's order denying the Stansells' intervention [259-9], Chief Judge Moore considered the U.S. nationality issue, addressed it specifically, and, ultimately, rejected the very same argument raised again here. *See* D.E. 250-17 at 5-8.

case, the underlying court fully addressed the issue before it and, as a court of limited jurisdiction, considered its subject matter jurisdiction before proceeding with the case.

### 3.   Third, Caballero was Authorized to Bring an Action under the ATA

Although STPE have no standing to raise their arguments regarding Caballero's qualifications as an ATA plaintiff, in the interests of completeness, we briefly address such arguments herein. Caballero was authorized and properly brought a cause of action under the ATA.[37] *See* D.E. 250-17 at 7-8.

As argued to Chief Judge Moore, "injury" under Section 2333(a) lacks any temporal limitation. "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue . . . ." 18 U.S.C. § 2333(a).  In other words, Section 2333(a) does not require that the act from which the injuries arise occur while the victim is a United States national. "In the absence of any limiting language in the statute, the court will not limit the scope of Section 2333(a) to physical injuries to U.S. nationals." *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (declining to limit the scope of "injuries" under Section 2333(a) and broadly construing the remedies to permit U.S. nationals to recover damages associated with injuries to family members who are not U.S. nationals).  Relevant precedent thus requires the ATA to be construed liberally. *Id*.

Moreover, if Congress intended to limit injuries under the ATA to those injuries that arise from acts that occurred while Caballero was a U.S. national, it would have expressly done

---

[37] Contrary to STPE's argument that both Caballero's father and Caballero himself needed to have been U.S. nationals at the time of the injury in order for Caballero to have properly brought a cause of action under the ATA, such implication is flat wrong. Caballero's father's nationality is of no import here or in the underlying ATA case. Caballero was not suing on behalf of his father's estate. Instead, he sued on his own behalf. Thus, only Caballero needed to have qualified as a U.S. national under the ATA. And, as explained herein, he did.

37

so, as Congress has done in other statutes.[38] Indeed, when Congress passed the Anti-Terrorism

Clarification Act of 2018 ("ATCA"), in order to clarify and amend the ATA, it specifically

excluded any reference to a temporal requirement for citizenship: "in any action in which a

national of the United States has obtained a judgment against a terrorist party pursuant to this

section, the term 'blocked asset' shall include any asset of that terrorist party." 18 U.S.C.

§2333(e), as amended by, ATCA of 2018, Pub. Law 115-253, Oct. 3, 2018.

### 4.  Fourth, STPE Do Not Even Have Standing to Raise a Pleading Sufficiency Type Argument

STPE lack the standing to attempt to raise any such pleading sufficiency type argument

or statute of limitations argument. A person who tries to assert the rights of a third party

defensively, including the defenses available to defendants, falls within the confines of the

prudential standing rule "that normally bars litigants from asserting the rights or legal interest of

others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. 490, 501,

n.12 (1975), superseded on other grounds as stated in *Mylonakis v. M/T Geogios M.*, 909 F.

Supp. 2d 691 (S.D. Tex. 2012). Consequently, the prudential standing rule bars STPE from

raising Defendants' failure to state a claim argument. [39]

---

[38] As was argued in briefing to Chief Judge Moore, the ATA's citizenship requirement is in the present tense, while describing the injury to the person in the past tense. This factual scenario draws parallels to the requirements set forth in the Helms-Burton Act of 1996 (the "Helms-Burton Act"). Like the language set out in the ATA, the Helms-Burton Act defines citizenship in the present tense and injury to the person in the past tense. By way of example, the Helms-Burton Act states that in light of the fact that trafficking confiscated property undermines the United States' foreign policy interests, it is imperative to Congress that such Act ". . . protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government." *See* Helms-Burton Act, 22 U.S.C. §6081 (1996). The above language clearly delineates a present requirement for U.S. citizenship ("United States nationals"), along with a past-tense injury ("who had property wrongfully confiscated"), when bringing suit.

[39] STPE have, at best, raised a pleading sufficiency type argument (for which they have no standing to raise) and not a "subject matter jurisdiction" argument. Thus, *Jerez v. Republic of Cuba*, 775 F.3d 419, 421, 425 (D.D.C. 2014), *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.,*

**B.  STPE's Personal Jurisdiction Attack Fails on Two Independent Grounds**

   **1.  STPE Lack Standing to Collaterally Attack Caballero's ATA Final Judgment on Personal Jurisdictional Grounds**

Third party collateral attacks on personal jurisdiction, like the one made by STPE here, are prohibited for lack of standing to raise such arguments. The *Weininger* court got it correct when it rejected collateral attacks on a terrorist victims' underlying judgment. *See Weininger,* 462 F. Supp. 2d at 473 (rejecting collateral attacks, relating to personal jurisdiction and subject matter jurisdiction, made by the Cuban Electric Company (i.e., CEC), part of the defendant Cuban government—which appeared as an alleged amicus filer—for lack of standing: "each of the preceding cases involved a collateral attack by the judgment debtor, or presumptive party to the underlying action, who had sufficient standing to pursue an appeal or collateral attack on the underlying judgment. ***Here, there is no collateral attack by the judgment debtors…While CEC***

---

946 F. 3d 120, 125 (2d Cir. 2019), and *Martinez v. Republic of Cuba*, 221 F. Supp. 3d 276, 278, 280 (N.D.N.Y. 2016)—upon which STPE rely as authority for their "subject matter jurisdiction" collateral attack in this post-judgment context—miss the mark. Moreover, in all three cases, the subject matter jurisdiction collateral attacks were made by ***garnishees*** or others who hold or manage the assets sought to be executed upon, not third-parties like STPE. *See Martinez*, 221 F. Supp. 3d at 282 ("a ***garnishee*** such as the Comptroller has standing to bring a collateral attack against a jurisdictionally defective default judgment.") (emphasis added); *Vera*, 946 F.3d at 135 (challenge brought by garnishee pursuant to FSIA); *Jerez*, 775 F.3d at 380 (challenge brought by an alleged agent and instrumentality of judgment debtor (Cuba) ***who held or managed the assets sought to be executed upon***). And further, despite STPE purporting that *Vera* supports any party raising a subject matter jurisdiction collateral attack [D.E. 331 at 13], *Vera* only supports such an attack, by a *garnishee*, when it is to raise sovereign immunity from execution under the FSIA. 946 F.3d at 135 ("The ***statute*** [referring to FSIA] allows for courts to 'consider the [jurisdictional] issue once it is suggested by any party—or for that matter, non-party.'") (emphasis added). Here, STPE is not a garnishee and is not raising a valid challenge to subject matter jurisdiction based on sovereign immunity.  Moreover, unlike the judgment in *Martinez*, Caballero's judgment is not defective. Furthermore, STPE cannot credibly argue that Caballero's judgment prejudices them by reducing the pool of collectible assets given that the Stansells have already exhausted their judgment under TRIA (based on their prior submissions to a court).

*objects to this Court's enforcement of the judgment, <u>it does not have standing to bring a</u>* <u>*collateral attack upon the judgment*</u>.") (emphasis added).[40]

      Only the Defendants could have brought such argument (albeit they would have lost) if they had timely brought it, which they failed to do. *See Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 703-04 ("Because **the requirement of personal jurisdiction represents first of all an <u>individual</u>** **<u>right</u>**, it can, like other such rights be waived.") ("under Rule 12(h), Federal Rules of Civil Procedure, '[a] defense of lack of personal jurisdiction over the person…is waived' if not timely raised in the answer or a responsive pleading") (emphasis added); *Sayles v. Pac. Eng'rs &* *Constructors, Ltd.,* No. 08CV676S, 2009 U.S. Dist. LEXIS 124819, at *18 (W.D.N.Y. Jan. 16, 2009) ("The foreign defendants, who would have standing to contest the exercise of personal jurisdiction over them…have yet to appear…**[T]he appearing defendants <u>lack standing to</u>** **<u>raise this objection to exercising personal jurisdiction over codefendants</u>**") (emphasis added), *adopted by* 2009 U.S. Dist. LEXIS 23449 at *6 (W.D.N.Y. Mar. 23, 2009).[41] Thus, a lack of personal jurisdiction is an **individual** defense that can be waived by an individual. *Ins. Corp. of Ireland*, 456 U.S.at 703. Just as a third party cannot waive the defense for an individual, a third party cannot raise it for that individual in a collateral attack.

      STPE fail to cite even one case—not one—to this Court where a third party collaterally attacked a final judgment on the basis that the original court lacked personal jurisdiction over the defendant because the opposite is true as evidenced by the above case law. In *Collins,*

---

[40] *Id.* at 476 ("**Here, where there is no collateral attack by the judgment debtors, <u>it is especially</u>** <u>**inappropriate for the Court to re-examine the record from the original controversy**</u>…[T]he judgments have been adopted by numerous subsequent courts, making reopening of the issue at this juncture even more inappropriate.") (emphasis added).

[41] *See also Jenkins v. Smead Mfg. Co.*, No. Civ.A.09-261, 2009 U.S. Dist. LEXIS 101545, 2009 WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (finding that defendants could not raise lack of personal jurisdiction or venue on behalf of the proposed defendants).

*Reefer,* and *Reefer* [D.E. 331 at 12], which purportedly authorize the Stansells to collaterally attack the underlying judgment, it was the defendant with an underlying judgement against it—not third parties—that attacked the underlying judgment.   And, although *Jerez, Vera,* and *Martinez* involved collateral attacks of the underlying final judgment by someone other than the defendant (i.e., an agent and instrumentality of the defendant in *Jerez* and garnishees in *Vera* and *Martinez*), the collateral attack at issue in these cases concerned the underlying court's subject matter jurisdiction – not personal jurisdiction. Thus, STPE fail to cite any authority supporting their standing to collaterally attack on personal jurisdiction grounds.

### 2.   The Doctrine of Finality Bars Any Attack by STPE on Personal Jurisdiction Over the Defendants in the Underlying Action

Even if STPE had standing to raise the personal jurisdiction issues, and they do not, the doctrine of finality would bar them from raising the issues here. The issue of whether personal jurisdiction over the Defendants (i.e., FARC and NDVC) existed has already been fully and fairly litigated.[42] In the interest of finality, STPE are foreclosed from raising these issues here. *See, e.g.*, *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 n. 9 ("Principles of res judicata apply to jurisdictional determinations – both subject matter and personal.").

Caballero's ATA Final Judgment, as well as his prior ATS Final Judgment, are based on the same conduct on the part of the Defendants (i.e., FARC and NDVC). Indeed, the state court in Caballero's ATS Action made specific findings related to personal jurisdiction. *See* D.E. 250-2 at 21-23. Such order was incorporated into the ATS Final Judgment relied upon by the SDFL. The state court specifically raised and considered the contacts of Defendants (including

---

[42] Contrary to STPE's assertions, the fact that Caballero's ATA judgment was obtained by default is not important. The prior determinations relating to personal jurisdiction are entitled to preclusive effect under the doctrine of finality because they have already been litigated.

Defendant FARC) with the State of Florida when the court itself raised a question regarding the application of *Kiobel v. Royal Dutch Petro Co.*, 133 S. Ct. 1659 (2013). *See id.* at 33-34.

Thereafter, a Third-Party A+I of the FARC, whose assets were attached by Caballero, raised the same arguments (as STPE) on appeal to the Florida Third District Court of Appeal and challenged the trial court's application of *Kiobel*. *See* Initial Brief, D.E. 250-11 at 14-15. Caballero briefed the issue in his Answer Brief, D.E. 250-12 at 37-40, and the appellant addressed the issue again in his Reply Brief, D.E. 250-13 at 3-5. After reviewing the briefs and hearing oral argument, the appellate court entered an affirmance *per curiam*. Per D.E. 250-14.

After such extensive state court litigation, Caballero reasserted his position – this time before the SDFL. Specifically, Caballero alleged in his ATA Complaint [D.E. 250-15 at ¶10]:

> This Court has ***personal jurisdiction over the Defendants*** pursuant to Florida Statute § 48.193, because the Defendants, through their agents and representatives, transacted business in this State and caused injury in this State, by their criminal activity and operations trafficking millions of dollars of illicit drugs into Florida and the United States for distribution throughout the United States. (FJ, ¶¶ 2, 3, 27, 41, 42.) As found by the State Court, Defendants kidnapping and eventual assassination of Ambassador Caballero was a necessary component part of the Defendants' overall criminal activity and scheme to traffic illicit drugs into South Florida and the United States for their profit and gain.  (FJ, ¶ 27.) Defendants' actions against the Ambassador and Antonio Caballero ***were inextricably intertwined with, and a necessary component of, Defendants' trafficking of illegal drugs into and throughout South Florida and the United States for their profit and gain.  Id.***

Emphasis added.[43] On May 20th, 2020, Chief Judge Moore granted Caballero's default judgment motion against the FARC and NDVC based upon the "pertinent portions of the record," which

---

[43] Thus, STPE's allegation that Caballero "materially misrepresented the state court record" or somehow committed fraud upon Chief Judge Moore is simply wrong and embarrassingly desperate. *See e.g.* D.E. 328 at ¶ 19.

squarely included the entire ATS Action (including the Partial Summary Judgment Order thereunder, and the state court rulings on personal jurisdiction).[44] *See* D.E. 250-17.

### C. STPE's Argument that Caballero Has Already Satisfied His Judgment is Also an Improper Collateral Attack on Caballero's Judgment

STPE's absurd argument that Caballero has satisfied his judgment through his existing collections (***authorized*** by U.S. District Courts and other courts) is premised upon his erroneous argument that Caballero is only entitled to the economic damages he has suffered as a U.S. national and not the emotional distress damages he has suffered because he was not "injured in his person" at the time of terrorist act. D.E. 331 at 10, 29. STPE, in essence, hinge their non-economic damages argument to their argument that Caballero does not qualify as a "U.S. National" for ATA purposes and therefore obtained an improper ATA Final Judgment.

The crux of STPE's error here is tying "injury in his person" temporally to Caballero being a U.S. national at the time of the injury. This sleight of hand attempts to crowd out "injury in his person" type damages and attempts to somehow limit Caballero's collectible damages to his "property" or "business" interests. Nonsense. Judge Moore expressly addressed and awarded damages to Caballero—including "injury in his person" (including by giving preclusive effect to Caballero's ATS damages) [D.E. 259-10 at 8-11]. STPE attempt to now modify Chief Judge Moore's final damages awarded. Further, STPE's argument overlooks that damages for

---

[44] STPE's attempt to undermine the state court's findings on personal jurisdiction through an attack of Dr. Bruce Bagley [D.E. 331 at fn. 3] is improper. STPE's attempt in no way refutes, diminishes, or bears upon Dr. Bagley's expertise in the field of narcotics trafficking and/or money laundering. *See* Excerpt (excluding exhibits), **Exhibit 17** (discussing Dr. Bagley's extensive work and prior service as an expert witness for high-profile trials). Indeed, John Robert McBrien—an expert in the United States' economic sanctions programs, counter-narcotics, and counter-terrorism, as well as the former Associate Director for Global Targeting in the Office of Foreign Assets Control ("OFAC")—has "recognized Dr. Bagley as an expert in the field of narcotics trafficking and money-laundering." *See* **Exhibit 14** at ¶ 8.

emotional injury are contemplated by "injury in his person"[45] and that such "injury in his person" continued well past Caballero becoming a U.S. national and, in fact, continues to this day.

STPE have no standing to make the above argument because Caballero's ATA cause of action was not directed to them, but to Defendants FARC and NDVC.[46] Moreover, Chief Judge Moore of the SDFL explicitly rejected this argument: "Accordingly, a reading of the ATA permitting individuals *who were not U.S. nationals at the time of the injury but subsequently become U.S. nationals* to state a claim is consistent with Congress' intention and furthers the ATA's purpose. Thus, *Plaintiff qualifies as a 'U.S. national' under the ATA*." D.E. 250-17 at 6 (emphasis added).  Furthermore, as previously explained, the ATA does not require that the act from which the injuries arise occur while the victim is a United States national. Thus, because Caballero qualified as a U.S. National for purposes of the ATA and because the ATA lacks any temporal limitation on "injury," Caballero was entitled to his damages award, including his noneconomic damages for the emotional distress he suffered.

## III.   STPE'S CROSSCLAIMS ARE IMPROPERLY PLED

FRCP 8(d)(1)'s instruction is clear: the allegations forming a "claim for relief" should be "simple, concise, and direct." Allegations should further be based in fact—not in law.  When either directive is disregarded, the pleading may be subject to dismissal. *See Jones*, 2020 U.S.

---

[45] *See Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) ("Congress intended to include non-physical injuries in the phrase 'injured in [their] person.'"). Moreover, STPE's arguments against the award of noneconomic damages is particularly disingenuous given that their own respective judgments included noneconomic damages awards. *See* D.E. 259-2 ("it is reasonable to award *non-economic damages*") (emphasis added); Order, *Pescatore, et al. v. Juvenal Ovidio Ricardo Palmera Pineda, et al.*, No. 08-02245-RMC, (D.D.C. Nov. 1, 2018), D.E. 41, attached hereto as **Exhibit 1** (awarding solatium damages to the Pescatores).

[46] STPE's argument is, once again, an improper collateral attack because STPE are, in essence, arguing that the ATA Final Judgment improperly awarded non-economic damages to Caballero. Although Caballero also argues that STPE have satisfied their damages award, Caballero's argument is not an improper collateral attack. Caballero is not seeking to reduce the overall damages awarded to STPE. Instead, Caballero is seeking to correct STPE misrepresentation regarding the portion of their award consisting of "compensatory damages."

Dist. LEXIS 13450, at *14 (dismissing for failure to comply with FRCP 8); *Krys*, 749 F.3d at 128, 135 (affirming dismissal and denying leave to amend, in part, because the allegations were conclusory).[47]  Here, STPE have violated both directives.  Instead of including "short and plain" allegations (*see* FRCP 8(a)(2)), STPE have effectively inserted a memorandum of law within their Crossclaims with extensive legal arguments and separate section headings reminiscent of a brief, including: "Statement of Facts," "**<u>Legal Analysis</u>**," and "**<u>Legal Standards</u>** for Personal Jurisdiction over a Foreign Defendant." *See e.g.* D.E. 268 at 23, 31 (emphasis added).[48]

## IV.  STPE HAVE NO BASIS TO BRING THEIR CITIBANK/BANCO DE VENEZUELA/CLEARSTREAM CROSSCLAIM AGAINST CABALLERO

STPE have failed to demonstrate that they have any basis for bringing the Citibank/Banco de Venezuela/Clearstream crossclaim against Caballero. Caballero has already admitted to not having attached the blocked assets subject to such crossclaim. D.E. 258 at ¶2. Caballero has further requested that he be dismissed from that specific interpleader action. *Id.* Nevertheless, STPE ask, in essence, that this Court issue an advisory opinion on the issues raised in its crossclaim. This Court, however, need not do so. *See Weininger*, 462 F. Supp. 2d at 474.

Dated: August 25, 2021.

---

[47] These directives are further echoed in other FRCPs. *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("Rule 12(f) is 'designed to reinforce the requirement in Rule 8 that pleadings be simple, concise, and direct.'" ); *Yong Biao Ji v. Aily Foot Relax Station, Inc*., 2021 U.S. Dist. LEXIS 23674, at *10 (S.D.N.Y. Feb. 8, 2021) (listing improper inclusion of legal arguments in a pleading as a basis for Rule 11 sanctions).
[48] All of STPE's crossclaims are similarly pled and suffer from the same pleading deficiencies.

Respectfully submitted,

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano (Florida Bar Number: 0056091)
Admitted *Pro Hac Vice*
E-mail: jzumpano@zplaw.com
Leon N. Patricios (Florida Bar Number: 0012777)
Admitted *Pro Hac Vice*
E-mail: lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Tel. (305) 444-5565

Nicholas Rostow
E-mail: nrostow@zplaw.com
ZUMPANO PATRICIOS & POPOK, PLLC
417 Fifth Avenue, Suite 826
New York, New York 10016
Tel. (212) 381-9914

*Counsel for Third-Party Interpleader*
*Defendant/Crossclaim Defendant Antonio*
*Caballero*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August 2021, the undersigned electronically filed the foregoing document with the Clerk of Courts by using the CM/ECF system.

*/s/ Leon N. Patricios*
Leon N. Patricios