# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

KEITH STANSELL, et al.,

    Plaintiffs,

v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

    Defendants,

v.

CITIBANK, N.A.,
EQUINITI TRUST COMPANY,
SUMITOMO MITSUI BANKING CORP.,

    Turnover Respondents/Third-Party
    Plaintiffs.

                              Case No.: 1:16-mc-00405-LGS-SN
                              Related Case No. 1:18-mc-545-LGS-SN

KEITH STANSELL, MARC GONSALVES, THOMAS HOWES,
JUDITH JANIS, CHRISTOPHER JANIS, MICHAEL JANIS,
JONATHAN JANIS, OLIVIA PESCATORE, JOSH PESCATORE,
JADA PESCATORE, JARROD PESCATORE, JORDAN PESCATORE,
CAROLE PESCATORE HARPSTER, RICHARD PESCATORE, and
JOHN PESCATORE,

    Third-Party Interpleader Defendants/
    Crossclaimants,

v.

ANTONIO CABALLERO,

    Third-Party Interpleader Defendant/
    Crossclaim Defendant.

**THIRD-PARTY INTERPLEADER DEFENDANT/CROSSCLAIM DEFENDANT
ANTONIO CABALLERO'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Third-Party Interpleader Defendant/Crossclaim Defendant, Antonio Caballero ("Caballero"), by and through his undersigned counsel, hereby files this Notice of Supplemental Authority (the "Notice") in support of Caballero's Memorandum in Opposition to Stansell and Pescatore Plaintiffs' Omnibus Motion [D.E. 330-331], and in Support of his Omnibus Motion to Dismiss Crossclaims, *see* D.E. 348, as well as in support of Caballero's Memorandum of Law in Opposition to PDVSA Subsidiaries'[1] Motion to Dismiss Interpleader Complaints,[2] *see* D.E. 397. Attached as **Exhibit 1** is the Memorandum Opinion and Order Regarding Pending Motions [ECF Nos. 89-94] (the "Order") issued by the Honorable Judge Holcomb of the United States District Court for the Central District of California, adjudicating various motions filed by Caballero and/or FARC agency or instrumentality Julio Cesar Alvarez Montelongo ("Alvarez"). *See* Order, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia, et al.*, No. 2:20-cv-07602-JWH (C.D. Cal. Dec. 29, 2021), D.E. 124.

The attached Order squarely rejected arguments raised by Alvarez in that court (i.e. substantially similar arguments raised by the Stansell and Pescatore Plaintiffs here) that Caballero's judgment: (i) has already been satisfied (ii) is void because the underlying court that entered Caballero's Anti-Terrorism Act ("ATA") judgment, i.e. the "ATA Court," lacked subject matter jurisdiction; and, (iii) is void because the ATA Court lacked personal jurisdiction over the defendants:

> Caballero admits that he has collected more than $11 million in damages; Alvarez regards that sum as excessive. ***Alvarez argues that Caballero is entitled to collect upon his judgment for "actual compensatory, and economic damages," in the amount of only $5,189,001. The remainder of the judgment, including the award of $45 million for "non-economic damages," according to Alvarez, is void because no "U.S. National" was ever "injured in his or [sic] person."*** This argument is closely related to Alvarez's argument in his separate motion

---

[1] The "PDVSA Subsidiaries" refer to the entities identified as such in D.E. 364 at 1.
[2] The "Interpleader Complaints" refer to D.E. 227, D.E. 236, and D.E. 238.

*regarding the ATA Judgment, in which Alvarez argues that the ATA Judgment is void and unenforceable. For the reasons discussed in more detail below, the Court concludes that Alvarez's attack on the validity of the ATA Judgment is without merit. <u>Putting that issue aside for the moment, in his instant motion, Alvarez does not cite any authority or evidence in support of his argument that Caballero is entitled to collect only the $5,189,001 in damages awarded for actual compensatory and economic damages, nor is there any support for that argument under the plain text of either 18 U.S.C. § 2333(a) or TRIA § 201(a). Accordingly, the Court is not persuaded that Caballero's ATA Judgment is satisfied or that the ATA Judgment is unenforceable against Alvarez's blocked assets.</u>*

<u>*For the foregoing reasons, the Court DENIES Alvarez's Motion Re Blocked Assets in its entirety.*</u>

\*\*\*

*Alvarez contends that the Southern District of Florida lacked subject matter jurisdiction because, under the plain language of 18 U.S.C. § 2333(a), Caballero did not qualify as a victim of international terrorism*. <u>*That argument, however, is not jurisdictional.*</u> The jurisdictional provision of the ATA, 18 U.S.C. § 2338, provides that federal district courts have exclusive jurisdiction over claims under the ATA. It was through that statutory provision that Caballero invoked the federal court's subject matter jurisdiction in the underlying action. To that end, it is well-established law that the "presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). By focusing on 18 U.S.C. § 2333, Alvarez effectively argues that Caballero failed to state a claim in the underlying action. However, that alleged defect does not relate to whether the federal court had subject matter jurisdiction over that claim in the first instance. That is an important distinction in the context of Rule 60(b)(4)—a judgment is not void merely because it is somehow erroneous. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). As relevant here, 18 U.S.C. § 2333(a) provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . ." While that provision does have a jurisdictional component—"may sue therefor in any appropriate district court of the United States"—that jurisdictional component merely confirms what is plainly set forth in 18 U.S.C. § 2338: federal district courts have exclusive jurisdiction over claims brought pursuant to the ATA. *See* 18 U.S.C. §§ 2333(a) & 2338.

<u>*Alvarez's argument—that Caballero did not qualify to assert a claim under the ATA because neither Caballero nor his father was a U.S. national at the time that his father was tortured and killed—is not persuasive. As the court in the ATA Action correctly observed, 18 U.S.C. § 2333(a) "does not explicitly require that*</u>

*the claimant be a U.S. national at the time of the injury, only that he is currently a U.S. national and that he was injured by an act of international terrorism at some time in the past." See, e.g.*, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (holding that "U.S. citizens suing for various non-physical injuries, such as emotional distress and loss of consortium, after their family members, who were not U.S. nationals, became victims of acts of international terrorism" could assert a claim under the ATA); *Biton v. Palestinian Interim Self–Government Authority*, 310 F. Supp. 2d 172, 181– 82 (D.D.C. 2004) (holding that a woman whose husband (a non-U.S. citizen) died in a Gaza Strip bus bombing could maintain an ATA lawsuit even though she was not personally on the bombed bus nor injured in the blast); *Weinstock v. Islamic Republic of Iran*, 2019 WL 1993778, at *4 (S.D. Fla. May 6, 2019). **Moreover, even if the statute did require Caballero to be a U.S. national at the time of his injury, as Alvarez argues, Caballero explicitly alleged a continuing injury in his person by reason of the acts of international terrorism. Thus, even accepting Alvarez's interpretation of the statute, a federal question appears on the face of Caballero's well-pleaded ATA Complaint. See Caterpillar, 482 U.S. 392.**

***Therefore, the Southern District of Florida had subject matter jurisdiction over the ATA Action.***

\*\*\*

**Alvarez next argues that the ATA Judgment is void because the district court did not have personal jurisdiction over the defendants.** Unlike subject matter jurisdiction, which "is an Art. III as well as a statutory requirement" that "functions as a restriction on federal power," the "requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause." *Ins. Corp. of Ireland*, 456 U.S. at 702. As such, the "personal jurisdiction requirement recognizes and protects an *individual* liberty interest." *Id.* (emphasis added). It therefore "represents first of all an individual right," and, like other such rights, it can be waived. *Id.* at 703.

***Alvarez was not a defendant in the ATA Action. Because the requirement of personal jurisdiction is "a legal right protecting the individual," id. at 704, other district courts in this circuit and elsewhere have held that objections to personal jurisdiction can be raised only by the individual defendant who is protected by that right,*** *see, e.g.*, *Verrecchia v. Aviss*, 2017 WL 9486151, at *3–*4 (C.D. Cal. Nov. 8, 2017) (co-defendant did not have standing to object to personal jurisdiction over another defendant); *Jenkins v. Smead Mfg. Co.*, 2009 WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (same); *In re Grana y Montero S.A.A. Sec. Litig.*, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019); *Zhaoyin Wang v. Beta Pharma, Inc.*, 2015 WL 5010713, at *12 (D. Conn. Aug. 24, 2015) (collecting cases); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ("[c]o-defendants do not have standing to assert improper service claims on behalf

4

of other defendants," citing *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties.")).

***In this regard, Alvarez cites no authority to show that he has standing to attack the ATA Judgment for lack of personal jurisdiction over the named defendants in the ATA Action. Therefore, the Court concludes that Alvarez lacks standing to object to personal jurisdiction on behalf of the named defendants in the ATA Action.***

***For the foregoing reasons, the Court DENIES Alvarez's Motion Re Judgment in its entirety.***

*See* Exhibit 1 at 8-14 (footnotes omitted) (emphasis added) (emphasis in original).

The attached Order additionally rejected arguments raised by Alvarez in that court (i.e. substantially similar arguments raised by the PDVSA Subsidiaries here) that personal jurisdiction over the agency or instrumentality is necessary in a post-judgment Terrorism Risk Insurance Act ("TRIA") collection proceeding. Indeed, the Order makes clear that post-judgment TRIA collection proceedings are not *in personam* actions, but rather *quasi in rem* actions, and that such actions do not impose liability on the agency or instrumentality:

> Through this motion, Alvarez seeks to dissolve the Writ of Execution because Caballero has not established that this Court has personal jurisdiction over Alvarez and because Caballero failed to comply with the relevant notice requirements under California law. The thrust of Caballero's response is that he does not have to establish personal jurisdiction over Alvarez because this is a post-judgment collection proceeding against the blocked assets that are located in this district, not Alvarez personally. Caballero also contends that he complied with all applicable notice requirements under California law.
>
> \*\*\*
>
> ***Due Process is satisfied because the agency-or-instrumentality finding establishes a relationship with the judgment debtor and the underlying litigation, and with the forum where the blocked assets of the agency or instrumentality are located.*** *See Shaffer*, 433 U.S. at 204.
>
> Courts have also adopted similar reasoning in examining the basis for federal subject matter jurisdiction over actions to enforce a judgment obtained against a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* While this Court recognizes that there are important distinctions

5

between the instant action and actions against a foreign state under FSIA,43 the analytical framework in the FSIA context is instructive with regard to the issue presently before this Court.

Like TRIA, FSIA contains provisions requiring an "agency or instrumentality" determination. Specifically, the statute's definition of the term "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Based upon that language, courts have held that Rule 69 authorizes a garnishment action against the assets of an agency or instrumentality of the judgment debtor. *See, e.g.*, *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298 (3d Cir. 2006); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019). In *IFC*, for example, the Third Circuit reasoned that "[a]lthough garnishment actions are new actions in the sense that there is a new party and a new theory for that party's liability, they are not new actions in the sense of a new direct claim." *IFC*, 438 F.3d at 314. Applying *IFC*, the district court in *Crystallex* determined that the judgment creditor's collection action against a Venezuelan state-owned oil company to collect on the creditor's judgment against the Bolivarian Republic of Venezuela was part of the action giving rise to the judgment and that Venezuela was subject to the court's jurisdiction under an exception to FSIA. *See Crystallex*, 333 F. Supp. 3d at 390–392. That court reasoned that the collection action was part of the "same lawsuit" that gave rise to the judgment and that the judgment creditor did not seek to impose any new obligation on the agency or instrumentality, but rather sought only to attach property that nominally belonged to the agency or instrumentality but effectually belonged to the judgment debtor.44 *See id.* at 392. ***The court in Crystallex proceeded to explain that the crucial distinction in such cases is that the judgment creditor seeks only to collect a judgment, not "to impose personal liability for an existing judgment on a new party."*** *See id.* at 393 (quoting *Gambone v. Lite Rock Drywall*, 288 Fed. App'x 9, 12 (3d Cir. 2008)); *see also id.* at 392–393 (citing cases).

***As in those FSIA cases, here <u>Caballero is not seeking to impose personal liability against Alvarez; Caballero seeks only to enforce his judgment against Alvarez's blocked assets based upon the theory that Alvarez is an agency or instrumentality of the FARC. Thus, Due Process is satisfied by the underlying judgment and by the implicit requirement under TRIA that the Court make a finding that Alvarez is an agency or instrumentality of the judgment debtor before Caballero can obtain the turnover of Alvarez's blocked assets.</u>***

***Accordingly, <u>the Court concludes that it has quasi in rem jurisdiction over this action,</u> pending a final determination of whether Alvarez is an agency or instrumentality of the FARC***.

***Therefore, for the foregoing reasons, the Court DENIES Alvarez's Jurisdiction Motion in its entirety.***

6

Exhibit 1 at 14, 21-23 ((footnotes omitted) (emphasis added) (emphasis in original).

The attached Order further rejected arguments raised by Alvarez in that court (i.e. substantially similar arguments raised by the PDVSA Subsidiaries here) that the court should utilize the "agency or instrumentality" definition found in the Foreign Sovereign Immunities Act ("FSIA"). In fact, the Order adopted the definition of "agency or instrumentality" as set forth by the Second Circuit Court of Appeals in *Kirschenbaum v. 650 Fifth Ave. and Related Properties*, 830 F.3d 107, 135 (2d Cir. 2016) and by the Eleventh Circuit Court of Appeals in *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, 771 F.3d 713 (11th Cir. 2014) ("*Stansell II*"):

> ***Alvarez contends that, because TRIA does not have its own definition of "agency or instrumentality" and because TRIA § 201 is codified as a note to 28 U.S.C. § 1610, the Court should apply the FSIA definition of "agency or instrumentality," 28 U.S.C. § 1603(b), which applies to the entire "chapter" including 28 U.S.C. § 1610, see 28 U.S.C. § 1603 ("For purposes of this chapter . . ."). In contrast, Caballero urges this Court to apply the so called "Assistance Standard" adopted by the Eleventh Circuit in Stansell II, which Caballero contends is supported by the plain text of TRIA § 201(a).*** The Court regards those requests as motions *in limine* pertaining to the upcoming evidentiary hearing and, accordingly, provides its guidance below.
>
> Alvarez correctly observes that TRIA § 201(a) is codified as a note to 28 U.S.C. § 1610 and that the FSIA definition of "agency or instrumentality" applies to 28 U.S.C. § 1610. In a typical case involving a question of statutory interpretation, the Court's analysis would end there. However, "[s]tatutory construction is a 'holistic endeavor.'" *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n*, 484 U.S. at 371. <u>**Here, importing the FSIA definition into TRIA § 201 is inconsistent with the plain text of both statutes, and such an importation would produce an anomalous result that is incompatible with the plain language of the statute.**</u>
>
> ***
>
> ***Alvarez contends that the distinction between "foreign state" in FSIA and "terrorist party" in TRIA § 201(a) is trivial and, therefore, that this Court should***

7

*simply substitute "foreign state" with "terrorist party."* <u>However, "our constitutional structure does not permit this Court to 'rewrite the statute that Congress has enacted.'"</u> *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1949 (2016) (quoting *Dodd v. United States*, 545 U.S. 353, 359 (2005)). <u>Furthermore, as the Eleventh Circuit explained in Stansell II, the statutory construction that Alvarez proposes "would create an absurd result and leave TRIA § 201 nearly meaningless." Stansell II, 771 F.3d at 731. "[A]pplying FSIA's definition of agencies or instrumentalities to TRIA would leave only terrorist states as potential sponsors of agencies or instrumentalities under TRIA § 201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist organizations." Id. Such an erroneous result would not comport with the plain text of the statute which unambiguously makes nonstate judgment debtors subject to TRIA execution. See id.</u>

*The so-called "assistance standard," on the other hand, utilizes the plain and ordinary meaning of the terms "agency" and "instrumentality." See Stansell II, 771 F.3d at 732; Kirschenbaum v. 650 Fifth Ave. and Related Properties, 830 F.3d 107, 135 (2d Cir. 2016) (for the purposes of TRIA, construing the terms "agency or instrumentality" according to their ordinary meaning), abrogated on other grounds by Rubin v. Islamic Republic of Iran, 138 S. Ct. 816 (2018). As the Second Circuit explained in Kirschenbaum:*

> "Instrumentality" is a means through which a function of another entity is accomplished, analogous to a branch of a governing body. *See Black's Law Dictionary* (10th ed. 2014) (defining "instrumentality" as "a means or [a]gency through which a function of another entity is accomplished, such as a branch of a governing body"); *Webster's Third New International Dictionary* 1172 (1993) (defining instrumentality as "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body"); *OED Online*, *Oxford University Press*, June 2016 (defining instrumentality as "[t]hat which serves or is employed for some purpose or end; a means, an agency"); *Merriam–Webster Collegiate Dictionary* 22 (10th ed. 1993) (defining instrumentality as a "means" or an "agency").
>
> "Agency" is an entity acting on another's behalf or providing a particular service on another's behalf. *See OED Online*, *Oxford University Press*, June 2016 (defining agency as "[a] person or organization acting on behalf of another, or providing a particular service"); *Webster's Third New International Dictionary* 1172 (1993) (defining agency as "a person or thing through which power is exerted or an end is achieved"); *Merriam–Webster Collegiate Dictionary* 22 (10th ed. 1993) (defining agency as "a person or thing through which power is exerted or achieved"). As ordinarily

8

> understood, an entity that is an "agency" or an "instrumentality" is distinct from, even if a part of, the entity for which the agency or instrumentality is acting.
>
> *Kirschenbaum*, 830 F.3d at 135.
>
> ***Accordingly, this Court concludes that to demonstrate that Alvarez is an "agency or instrumentality" of the FARC under TRIA § 201(a), Caballero must show that Alvarez: "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party." Id. (emphasis in original) (citing Stansell II, 771 F.3d at 723); see also Stansell v. Revolutionary Armed Forces of Colombia (FARC), 2013 WL 12156399, at \*2 (M.D. Fla. Apr. 25, 2013), aff'd sub nom. Stansell II, 771 F.3d 713.***

Exhibit 1 at 27, 29-31 (footnotes omitted) (emphasis added) (emphasis in original).

Dated: December 30, 2021.

        Respectfully submitted,

        */s/ Joseph I. Zumpano*
        Joseph I. Zumpano (Florida Bar Number: 0056091)
        Admitted *Pro Hac Vice*
        E-mail: jzumpano@zplaw.com
        Leon N. Patricios (Florida Bar Number: 0012777)
        Admitted *Pro Hac Vice*
        E-mail: lpatricios@zplaw.com
        ZUMPANO PATRICIOS, P.A.
        312 Minorca Avenue
        Coral Gables, FL 33134
        Tel. (305) 444-5565

        */s/ Nicholas Rostow*
        Nicholas Rostow
        E-mail: nrostow@zplaw.com
        ZUMPANO PATRICIOS & POPOK, PLLC
        134 East 38th Street,
        New York, NY 10016
        Tel. (212) 381-9914

        *Counsel for Third-Party Interpleader Defendant/Crossclaim Defendant Antonio Caballero*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of December 2021, the undersigned electronically filed the foregoing document with the Clerk of Courts by using the CM/ECF system.

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano