UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:16-mc-00405-LGS

KEITH STANSELL, et al.,

      Plaintiffs,

vs.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA,
a/k/a FARC-EP a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA, et al.,

      Defendants.

_____/

**MEMORANDUM IN RESPONSE TO
THE COURT'S ORDER DATED NOVEMBER 3, 2021 [ECF NO. 395]**

      Undersigned counsel submits this Memorandum in Response to the Court's Order Dated

November 3, 2021 (the "Court's Order") [ECF No. 395]. The Court asked undersigned counsel

and the White & Case law firm to brief the issue of who is entitled to represent certain third-party

defendants to this action. Undersigned counsel hereby responds to the Court's inquiry.

**INTRODUCTION**

      Undersigned counsel is the ***only*** counsel to have been specifically authorized by each of

the third-party defendants at issue here to represent them in this action. In this Terrorism Risk

Insurance Act ("TRIA") enforcement action, undersigned counsel represents ten (10) entities (the

"Third-Party Defendants") falsely alleged to be "agencies or instrumentalities" of a "terrorist

party," Fuerzas Armadas Revolucionarias de Colombia (the "FARC"):

- (1) Ministerio del Poder Popular de Economía, Finanzas y Comercio Exterior
(Venezuela's "Ministry of Finance").

- (2) Banco de Venezuela, S.A. Banco Universal ("Banco de Venezuela"); (3) Banco Bandes Uruguay, S.A. ("Bandes Uruguay"); (4) Banco Bicentenario del Pueblo de la Clase Obrera, Mujer y Comunas, Banco Universal ("Banco Bicentenario") (together, the "BANDES Affiliates").

- (5) Petrocedeño, S.A. ("Petrocedeño"), which is an affiliate of Petróleos de Venezuela, S.A. ("PDVSA").

- (6) Aceites y Solventes Venezolanos Vassa, S.A., (7) Venfleet Asphalt, Ltd., (8) Petro San Felix, S.A., (9) Venezuelan Heavy Industries, C.A., and (10) Petrowarao, S.A., which are also affiliates of PDVSA (together, the "Remaining PDVSA Affiliates").

Each of these Third-Party Defendants have provided a written authorization from a legal representative confirming that undersigned counsel is specifically authorized to defend against Plaintiffs' execution efforts. White & Case, on the other hand, does not have such authorizations.

The Third-Party Defendants have a due process right to choose their own counsel and to present evidence to refute the erroneous "agency or instrumentality" allegations leveled against them. *See Stansell v. FARC*, 771 F.3d 713, 727 (11th Cir. 2014) ("Without notice and a fair hearing *where both sides are permitted to present evidence*, the third party never has an opportunity to dispute its classification as an agency or instrumentality." (emphasis added)). Critically, undersigned counsel is the *only* counsel who can present evidence on behalf of the Third-Party Defendants.

Regarding the Ministry of Finance, the BANDES Affiliates, and Petrocedeño, no attorney has appeared on their behalf except for undersigned counsel, and White & Case has never claimed to represent them (in this proceeding or otherwise). Removing undersigned counsel and leaving the Ministry of Finance, the BANDES Affiliates, and Petrocedeño without any legal representation would clearly violate due process because those entities cannot "present evidence" unless they are represented by counsel.

Similarly, the due process rights of the Remaining PDVSA Affiliates will be violated if their choice of undersigned counsel is not respected. Though White & Case claims to represent the Remaining PDVSA Affiliates, White & Case has not been specifically authorized by those entities to represent them. White & Case has not submitted an engagement letter or authorization letter from any of those entities directly, which demonstrates their lack of access to their putative "clients."

Instead, White & Case has been retained by the "Ad Hoc Board" of PDVSA (the "PDVSA Ad Hoc Board"), which is a legal fiction under the direction of Juan Guaidó. Since its creation, the PDVSA Ad Hoc Board has exercised no operational or substantive control over PDVSA or any of its affiliates. In fact, the PDVSA Ad Hoc Board has repeatedly ***admitted*** that it does not have access to the records or personnel of the Remaining PDVSA Affiliates. Undersigned counsel, on the other hand, does have such access. In sum, the decision of the Remaining PDVSA Affiliates to choose undersigned counsel must be respected in the interest of preserving due process.

## BACKGROUND

Undersigned counsel first appeared on behalf of PDVSA in May 2019, in a Florida state court action brought by Antonio Caballero, who is also a third-party defendant in these proceedings. In the Florida state court action, Mr. Caballero obtained a judgment against the FARC in 2014. Approximately five years later in 2019, Mr. Caballero filed a motion to declare PDVSA an "agency or instrumentality" of the FARC. After undersigned counsel's appearance in the Florida state court action, Mr. Caballero did not pursue his efforts to obtain an "agency or instrumentality" determination against PDVSA.

Instead, Caballero filed a separate action in the Southern District of Florida and obtained another default judgment against the FARC in 2020. In that case, Mr. Caballero did ***not*** seek a declaration that PDVSA or its affiliates are agencies or instrumentalities of the FARC. Instead,

3

without notice to PDVSA or undersigned counsel, Mr. Caballero subsequently filed numerous *ex parte* motions in jurisdictions outside of Florida, seeking the "agency or instrumentality" determinations against PDVSA and its affiliates that he had abandoned in Florida. These new actions were filed in various federal districts, including in the Western District of New York ("WDNY"), the District of Connecticut, and the District of South Carolina.

PDVSA and certain of its affiliates through undersigned counsel subsequently intervened in the WDNY action.[1] Very shortly before PDVSA and certain of its affiliates were due to file their motion to vacate and dismiss in opposition to Mr. Caballero's action, the White & Case law firm, instructed by the PDVSA Ad Hoc Board, moved to substitute counsel and for a stay of proceedings.[2]

The WDNY ultimately granted White & Case's Motion to Substitute Counsel on May 11, 2021, finding that White & Case had the authority to represent PDVSA and several of its affiliates in that action (the "WDNY *Caballero* Order"). However, as explained more thoroughly herein, the WDNY *Caballero* Order was wrongly decided. First, it applied the act of state doctrine in spite of binding Supreme Court precedent foreclosing the doctrine's application. Second, it substituted counsel despite the Ad Hoc Board's consistent admission that it lacked the resources and

---

[1] Undersigned counsel has also appeared on behalf of PDVSA in TRIA actions brought by Mr. Caballero in the District of South Carolina and the District of Connecticut. The court granted PDVSA's motion to intervene in the South Carolina case, which is currently stayed. *Caballero v. FARC*, No. 20-cv-4485, ECF No. 43 (D.S.C. June 2, 2021). The Connecticut case involves assets allegedly owned by a PDVSA affiliate named ALBA Petróleos de El Salvador S.E.M. de C.V. ("ALBA"), which has specifically retained undersigned counsel to represent it in that action. White & Case filed a motion to substitute counsel in the Connecticut action, but the District of Connecticut has not yet ruled on that motion. *See Caballero v. FARC*, No. 20-cv-1939, ECF No. 125 (D. Conn. May 14, 2021).

[2] In order to respect the deadlines set by the WDNY, PDVSA and its affiliates filed a motion for enlargement of time and limited stay of proceedings. As an exhibit, undersigned counsel attached PDVSA's and its affiliates' motion to vacate the court's turnover judgment and writs of execution.

information necessary to defend PDVSA and its affiliates against Plaintiffs' execution efforts, thereby violating due process. On these bases, PDVSA and its affiliates moved for reconsideration (or, in the alternative, certification for interlocutory appeal) of the WDNY *Caballero* order, which was denied on January 7, 2022. *Caballero*, No. 20-mc-40, ECF No. 97. However, as explained below, the WDNY *Caballero* Order and the corresponding order denying the motion for reconsideration were nevertheless wrongly decided.

Furthermore, the WDNY *Caballero* Order is inapposite because most of the WDNY's analysis was focused on PDVSA itself, an entity that was a party in the WDNY but (importantly) is not a party here. And, to be clear, the WDNY *Caballero* Order only addressed whether undersigned counsel or White & Case could represent certain parties to that action: PDVSA, Aceites y Solventes, Venfleet Asphalt, and Petro San Felix. The WDNY's analysis went no further. This is evidenced by the fact that undersigned counsel also represents the Ministry of Finance in the WDNY—and did so at the time the WDNY *Caballero* Order was entered—yet the WDNY *Caballero* Order did not even mention the Ministry of Finance.

In the instant proceedings, undersigned counsel filed a notice of appearance on behalf of the Third-Party Defendants on October 1, 2021, and filed an accompanying letter requesting a pre-motion conference in advance of filings motions to vacate and motions to dismiss on behalf of the Third-Party Defendants. *See* ECF Nos. 361, 362. In that letter, the Remaining PDVSA Affiliates explained to the Court (through undersigned counsel) that they did not authorize White & Case to represent them in this action. *Id.* White & Case filed a series of letters in response, arguing that that undersigned counsel "has no authority to appear for the PDVSA Subsidiaries or, for that matter, the various other entities owned directly or indirectly by the Bolivarian Republic of Venezuela." ECF No. 378 at 1.

To resolve this dispute, on November 3, 2021, this Honorable Court ordered that White & Case and undersigned counsel file simultaneous briefs addressing "who is entitled to represent PDVSA and its subsidiaries and who is entitled to represent the other entities identified by Mr. Jimenez that are not currently represented." ECF No. 395. Accordingly, this memorandum addresses the issues identified by the Court in its November 3, 2021, letter.

## ARGUMENT

I.   **Each of the Third-Party Defendants have chosen undersigned counsel to appear in this action, and removal of undersigned counsel would violate the due process rights of the Third-Party Defendants.**

The Third-Party Defendants are entitled to retain their counsel of choice to represent their interests in this action. It is well settled that "courts highly value a party's right to choose [its] own counsel." *In re Watkins*, No. 05-cv-344, 2005 WL 6955328, at *5 (E.D.N.Y. Aug. 24, 2005). "The Second Circuit has 'been loathe to separate a client from his chosen attorney,' as 'disqualification has a serious and immediate adverse effect by denying the client his counsel of choice.'" *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 304-05 (E.D.N.Y. 2005) (quoting *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), and *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979)).

Consistent with this right to choose counsel, the Third-Party Defendants also have the right to be meaningfully heard in opposition to Plaintiffs' TRIA action and to present evidence to protect their purported assets from attachment and execution. *See Stansell*, 771 F.3d at 726 ("[B]ecause an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns. . . ."); *see also Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("[D]ue process requires . . . an opportunity granted at a meaningful time and in a meaningful manner, for hearing appropriate to the nature of the case." (internal quotation omitted)). "Without notice and a fair hearing ***where both sides are permitted to present evidence***,

the third party never has an opportunity to dispute its classification as an agency or instrumentality." *Stansell*, 771 F.3d at 727 (emphasis added)). Both of those rights will be violated if this Court recognizes the improper appearance of White & Case.

### A. Petrocedeño, the Ministry of Finance, and the BANDES Affiliates have specifically authorized undersigned counsel to appear in this proceeding on their behalf, and removing undersigned counsel would leave these entities with no legal counsel whatsoever.

Petrocedeño, the Ministry of Finance, and the BANDES Affiliates have provided written authorization from a legal representative of each entity confirming that undersigned counsel is authorized to represent them in this action. *See* **Composite Exhibit A**, copies of written authorizations. Besides undersigned counsel, no attorney has appeared on behalf of Petrocedeño,[3] the Ministry of Finance, and/or the BANDES Affiliates. As a result, if the Court were to remove undersigned counsel from these proceedings, these entities would be left with no legal representation whatsoever. Due process forbids this result.

White & Case has never claimed to represent any of these entities. On June 7, 2021, White & Case entered a Notice of Appearance on behalf of the Remaining PDVSA Affiliates *only*. *See* ECF Nos. 295–97. And in a letter submitted to the Court on August 12, 2021, White & Case assiduously denied that it represents Petrocedeño, which is also a PDVSA affiliate. *See* ECF No. 342 ("White & Case does not currently represent Petrocedeño, S.A. and we have never represented otherwise to Plaintiffs, this Court, or any court. The appearances for White & Case leave no confusion that we represent only the five PDVSA Subsidiaries defined above."). Yet, in subsequent letters to the Court, White & Case has argued that undersigned counsel is not permitted to represent Petrocedeño, or the other Third-Party Defendants that White & Case does not purport

---

[3] Even if White & Case had appeared on behalf of Petrocedeño—it has not—its representation of Petrocedeño would nevertheless be defective for the reasons provided in Section (I)(B).

to represent, the Ministry of Finance and the BANDES Affiliates. *See, e.g.*, ECF No. 378 at 1 ("Mr. Jiménez has no authority to appear for the PDVSA subsidiaries or, for that matter, ***the various other entities owned directly or indirectly by the Bolivarian Republic of Venezuela***." (emphasis added)). White & Case therefore asks the Court to deny these entities any legal representation whatsoever, even though one of those entities (Petrocedeño) is an affiliate of its own purported client.

As a preliminary matter, White & Case does not have standing to challenge undersigned counsel's representation of entities that White & Case does not even purport to represent. It is axiomatic that "the party seeking review must himself have suffered an injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (citations and quotations omitted). For instance, in *O'Connor v. Jones*, the Eighth Circuit Court of Appeals held that the plaintiff lacked standing to disqualify the defendant's chosen counsel because there was no "showing of injury to [the plaintiff] as a result of the [the defendant's] engagement of these attorneys." 946 F.2d 1395, 1399 (8th Cir. 1991). Thus, "the District Court disqualified counsel on a motion that it had no authority to entertain, as [the plaintiff] had no standing to raise the question of disqualification." *Id.*; *see also Dupree v. Hardy*, 859 F.3d 458, 464 (7th Cir. 2017) ("As we previously decided, [the plaintiff] does not have standing to disqualify [the defendant's] attorneys because he cannot show that their representation of [the defendant] harmed him in any way.").

Put simply, this Court has no jurisdiction to entertain White & Case's objections to another party's choice of counsel. Holding otherwise would amount to an improper advisory opinion. *See United Public Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory

opinions. For adjudication on constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite.").

Nonetheless, White & Case appears to argue that Petrocedeño, the Ministry of Finance, and the BANDES Affiliates are not entitled to any legal representation at all in this action because they are owned in some capacity by the unrecognized Bolivarian Republic of Venezuela. *See* ECF No. 378 at 1. However, that contention is without merit. Foreign governments—whether or not recognized by the United States—are entitled to appear as defendants in United States court proceedings. According to the Second Circuit Court of Appeals, "[w]hile unrecognized regimes are generally precluded from appearing as plaintiffs in an official capacity without the Executive Branch's consent, ***there is no bar to suit where an unrecognized regime is brought into court as a defendant***." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48 (2d Cir. 1991) (emphasis added).

White & Case, in support of its position, misinterprets Section 205 of the Restatement (Third) of Foreign Relations Law of the U.S.: "a regime not recognized as the government of a state, is ordinarily denied access to courts in the United States." *See* ECF No. 378 at 2 (citing same); ECF No. 381 at 2 (citing same). However, Comment (a) to that provision, entitled "Access to courts," provides that "the representatives of [an unrecognized] entity or regime are to be denied the ***right to sue*** in courts in the United States." *Id.* (emphasis added). By its plain terms, Section 205 does not preclude unrecognized governments from appearing ***as defendants*** in United States court proceedings.

Here, Petrocedeño, the Ministry of Finance, and the BANDES Affiliates are third-party defendants whose purported assets are at risk of execution. These entities are entitled to defend

themselves in this Court, *see Stansell*, 771 F.3d at 727, regardless of whether the Republic of Venezuela is recognized by the United States.

The removal of undersigned counsel would clearly deprive Petrocedeño, the Ministry of Finance, and the BANDES Affiliates of their constitutional due process rights. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984) (holding that foreign corporations are entitled to due process in U.S. courts). Specifically, in the context of TRIA, to comport with due process, parties are entitled to "notice and a fair hearing where both sides are permitted to present evidence." *Stansell*, 771 F.3d at 727. Removing undersigned counsel and leaving these entities bereft of any legal representation would prevent them from having "notice and a fair hearing" by definition. *Id.*

The paramount consideration for this Court is to ensure that the entities whose purported assets are at risk of execution have legal representation if they so desire. Although White & Case asks this Court to opine on the political question and act of state doctrines, those doctrines plainly do not apply in the face of a due process violation. The WDNY *Caballero* Order that White & Case invokes for its position even confirms as much.

Indeed, the WDNY recognized that "whether substitution [of counsel] might deprive PDVSA and the subsidiaries of their constitutional rights ***is a justiciable question that this Court can decide***." *Caballero v. FARC*, No. 20-mc-40, 2021 WL 1884110, at *7 (W.D.N.Y. May 11, 2021) (emphasis added). "And if substitution truly deprived PDVSA of its right to due process, the political question doctrine might give way." *Id.* Although the WDNY found that PDVSA's due process rights would not be violated by removing undersigned counsel from that case, it was ***only***

because White & Case would be substituted as counsel and PDVSA would still have some form of legal representation.[4] *Id.*

Here, however, the due process concerns identified by the WDNY are readily apparent, where it appears that White & Case does not seek to simply "substitute" itself in as counsel, but rather strives to have Petrocedeño, the Ministry of Finance, and the BANDES Affiliates represented by **no counsel at all**. Barring these entities from being represented by counsel would run afoul of due process.

     **B. The Remaining PDVSA Affiliates have specifically authorized undersigned counsel—not White & Case—to appear in this proceeding on their behalf, and White & Case's inability to defend the purported assets of the Remaining PDVSA Affiliates violates due process.**

Each of the Remaining PDVSA Affiliates have provided written authorization from a legal representative of each entity confirming that undersigned counsel is specifically authorized to defend their interests in this action. *See* **Composite Exhibit B**, copies of written authorizations. White & Case, on the other hand, does not have such authorizations. White & Case's appearance in fact violates the due process rights of the Remaining PDVSA Affiliates because White & Case is unable to render effective representation.

Apparently, White & Case believes that its authority to appear in this proceeding stems from a decision by the PDVSA Ad Hoc Board to broadly engage White & Case to "represent the interests of PDVSA and it [sic] affiliates in the Garnishment Cases." *See Caballero v. FARC*, No. 20-mc-40, ECF No. 58-3 (W.D.N.Y. Mar. 26, 2021). In another TRIA action in the District of Connecticut (brought by Antonio Caballero, a third-party defendant in this action), White & Case

---

[4] PDVSA and the PDVSA Affiliates respectfully disagree with the WDNY's finding that White & Case's appearance in that action does not violate the due process rights of PDVSA and its affiliates. *See infra*, Section (I)(B).

relied on this broadly-worded letter from the PDVSA Ad Hoc Board as its basis to represent another PDVSA affiliate, ALBA Petroleos de El Salvador S.E.M. de C.V. ("ALBA"). *See Caballero v. FARC*, No. 19-cv-1939, ECF No. 125-3 (D. Conn. May 14, 2021). Judge Meyer in the District of Connecticut called this letter ***"really deficient." *Id.*,** ECF No. 131 at 15 (emphasis added).

> In doing so, Judge Meyer stated:
>
> You see the description there from is it the President of the Ad Hoc Board of Directors there. And it states that White & Case LLP has been engaged to represent the interest of PDVSA and its affiliates, ***without naming who those affiliates are, naming Alba in particular. And that's it***. That's what you're telling me is your authority . . . . ***I'm going to need more than this, because what you've given me is really deficient***. It seems to me it's very odd to get this kind of general letter here that doesn't even identify the name of Alba as the client, much less this specific action. ***And you're going to need to go back to your client, in fact if you are authorized, and you're going to need to make quite a bit stronger showing than what you've given me at this point*** . . . . [A]re you going to be prepared not just to give me your word about this but actually to give me documentation that shows that Alba specifically – and I assume there's some kind of board of directors of Alba or there's people in charge there that specifically authorized you to represent them in this specific action in the District of Connecticut. Are you going to be able to do that?

*Id.* at 13, 15-16.

In response to Judge Meyer's request, White & Case failed to submit any documentation from ALBA itself stating that White & Case had the authority to represent ALBA. Instead, White & Case submitted a self-serving declaration from the "President" of the PDVSA Ad Hoc Board, claiming that his personal interpretation of Venezuelan law[5] gave him the authority to hire counsel for all of PDVSA's affiliates. *See id.*, ECF No. 136-1. In stark contrast, undersigned counsel submitted an authorization letter executed by the Legal Representative of ALBA, who confirmed

---

[5] As explained in the following paragraphs, White & Case's interpretation of Venezuelan law is based on a statute that has been declared unconstitutional by Venezuela's highest court, the Supreme Tribunal of Justice.

that undersigned counsel was explicitly authorized to represent ALBA in the District of Connecticut action. *See id.*, ECF No. 132-1. The District of Connecticut has yet to issue a ruling regarding which counsel is authorized to represent ALBA in that action.

Likewise, White & Case has not produced any authorization from any of the Remaining PDVSA Affiliates regarding White & Case's authority to appear in this action on their behalf. Undersigned counsel, meanwhile, has produced five separate letters, one from each of the Remaining PDVSA Affiliates, confirming undersigned counsel's authority to represent them in this action. *See* **Composite Exhibit B**.

White & Case's purported client, PDVSA, is only an indirect shareholder of each of the Remaining PDVSA Affiliates.[6] As a matter of general corporate law, the shareholders of a corporation do not manage its day-to-day affairs. *See United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) ("It is the directors who are charged with the responsibility for managing the affairs of a corporation. Generally, the role of shareholders in governing the conduct of the corporation is minimal and limited to fundamental decisions such as the election of directors." (internal citations omitted)). As a result, the PDVSA Ad Hoc Board is not entitled to hire counsel for those affiliates. That decision is left to those who manage the day-to-day affairs of the corporations. Here, those representatives that manage the day-to-day affairs of the Remaining PDVSA Affiliates have provided the authorizations for undersigned counsel to represent them in these proceedings.

---

[6] Aceites y Solventes is owned by PDVSA Petróleo, S.A., which (in turn) is owned by PDVSA. Venfleet Asphalt is owned by PDV Marina, S.A., which (in turn) is owned by PDVSA. Petro San Felix is partly owned by Corporación Venezolana de Petróleo, which (in turn) is owned by PDVSA. Venezuelan Heavy Industries is owned by PDVSA Industrial, S.A., which (in turn) is owned by PDVSA. Petrowarao is partly owned by Corporación Venezolana de Petróleo, which (in turn) is owned by PDVSA.

Admittedly, the WDNY previously held that White & Case had the authority to represent PDVSA and three affiliates that are parties to the instant action—Aceites y Solventes, Petro San Felix, and Venfleet Asphalt. Critically, however, that court did not have the benefit of or consider the authorization letters from the individual PDVSA affiliates when issuing its ruling. Accordingly, the vast majority of the WDNY's analysis was focused on PDVSA itself, an entity that was a party in the WDNY, but significantly, is not a party here. Here, this Court is presented with an issue that was not addressed by the WDNY—whether the PVDSA Ad Hoc Board can override the decision of the Remaining PDVSA Affiliates to retain their own counsel. The answer to this question is no. *See Polin v. Kellwood Co.*, 866 F. Supp. 140, 142 (S.D.N.Y. 1994) (reaffirming that courts "must be solicitous of a client's right to freely choose his counsel") (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)); *In re Watkins*, No. 05-cv-344, 2005 WL 6955328, at *5 (E.D.N.Y. Aug. 24, 2005); *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 304-05 (E.D.N.Y. 2005).

This is especially the case because White & Case is unable to provide the Remaining PDVSA Affiliates with effective representation.[7] White & Case has no access to the documents, records, or personnel of the Remaining PDVSA Affiliates.

As mentioned, White & Case's stated "authority" to appear in this action derives from a decision by the PDVSA Ad Hoc Board, which is a legal fiction created for political purposes. In line with its political mission, the PDVSA Ad Hoc Board has inserted itself in various U.S. actions brought against PDVSA despite its repeated admission that it does not have the means and

---

[7] The New York Rules of Professional Conduct require a lawyer to provide "competent representation," which requires the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." N.Y. Rules of Prof'l Conduct R.1.1.

resources to adequately defend PDVSA and its affiliates in U.S. court proceedings. Indeed, it has

made this admission in ***at least five*** cases:

- *Caballero v. FARC*, No. 20-mc-00040, ECF No. 58-1 at 10 (W.D.N.Y. Mar. 26, 2021) (requesting a stay and admitting through White & Case that it lacks the "resources and information necessary to defend the interests and protect the assets in the United States of PDVSA and the PDVSA Subsidiaries").

- *Impact Fluid Solutions v. Bariven, S.A.*, No. 4:19-cv-00652, ECF No. 71 at 11-12 (S.D. Tex. Apr. 29, 2021) (requesting deferred consideration of summary judgment motions and admitting through Hogan Lovells that "neither the Guaidó government nor the ad hoc Board of Directors of PDVSA appointed by President Guaidó can access the documents, electronic records, or personnel of Defendants. The Guaidó government and the ad hoc Board of Directors are unable to confer with Defendants' employees or public officials in Venezuela who may have direct knowledge of the facts and circumstances related to this case").

- *Red Tree Investments, LLC v. PDVSA, et al.*, No. 19-cv-02519, ECF No. 98 (S.D.N.Y. April 9, 2021) (requesting deferred consideration of summary judgment motions and admitting through Hogan Lovells that, "[t]o this day, the Ad Hoc Board of Directors of PDVSA . . . still do not have access to documents and information related to the present dispute").

- *Dresser-Rand Co. v. PDVSA, et al.*, No. 19-cv-02689, ECF No. 18 at 7 (S.D.N.Y. June 3, 2019) (requesting a stay and admitting through Hogan Lovells that the Ad Hoc Board "cannot access the documents, electronic records, or personnel of PDVSA").

- *Comparelli, et al. v. Bolivarian Rep. of Venez., et al.*, No. 14-cv-24414, ECF No. 132 at 2 (S.D. Fla. Mar. 18, 2019) (requesting a stay and admitting through Hogan Lovells that the purported Interim Government of Venezuela does not have "access to documents, information, or witnesses").

In fact, in the *Impact Fluid Solutions* case, just recently on November 9, 2021, the Southern

District of Texas granted the plaintiff's motion for summary judgment because, among other

things, "Defendants [represented by Guaidó lawyers] have failed to bring forth any evidence."

*Impact Fluid Solutions*, No. 4:19-cv-00652, 2021 WL 5202103, at *5. This is the prejudice that

the Remaining PDVSA Affiliates face in the instant case if they are denied their choice of counsel.

The Ad Hoc Board has also repeatedly invoked its inability to defend PDVSA and

PDVSA's affiliates as a basis to request stays of the U.S. actions. *See Caballero*, No. 20-mc-00040,

ECF No. 58-1; *Impact Fluid Solutions*, No. 4:19-cv-00652, ECF No. 71; *Red Tree Investments*, No. 19-cv-02519, ECF No. 98; *Dresser-Rand Co.*, No. 19-cv-02689, ECF No. 18; *Comparelli*, No. 14-cv-24414, ECF Nos. 123, 132. Most recently, in the WDNY, the PDVSA Ad Hoc Board stated that it was able to defend the assets at issue to the extent the court could decide issues as a matter of law; however, the PDVSA Ad Hoc Board admitted that "to the extent that factual showings become necessary, a stay of this action is imperative." *Caballero*, No. 20-mc-00040, ECF No. 76 at 8. The WDNY nonetheless denied the PDVSA Ad Hoc Board's motion to stay.

Here, unlike in the prior cases, the PDVSA Ad Hoc Board has not sought a stay of proceedings, as of now. But the PDVSA Ad Hoc Board cannot escape its prior repeated admissions. It comes as no surprise that White & Case's litigation strategy in the instant case reflects its lack of access to the records and personnel of its putative clients. In moving to quash the writs of execution and vacate the turnover judgments issued by this Court, White & Case has advanced legal arguments ***only***, without submitting any evidence in support thereof. *See* ECF Nos. 344-46. In contrast, undersigned counsel submitted competing factual evidence when moving to vacate the writs of execution and deny the turnover motions on behalf of Petrocedeño. *See* ECF No. 409. Among other things, that evidence consisted of declarations executed by the President of Petrocedeño, ECF No. 409-1; an expert witness, ECF No. 409-2 and the "Principal Commissioner" of PDVSA, ECF No. 409-4, all of whom rebutted the allegation that PDVSA and its affiliates (including Petrocedeño) are "agencies or instrumentalities" of the FARC.

In response to the PDVSA Ad Hoc Board's motion to vacate, Plaintiffs unsurprisingly used the lack of evidence to argue that PDVSA and its affiliates have failed to rebut the "agency or instrumentality" allegations. *See* ECF No. 363 at 6 ("Today, in attempting to overturn Judge Carter's agency or instrumentality determination, the PDVSA subsidiaries have submitted ***zero***

*evidence*—no affidavits, no declarations—*nothing*." (emphasis in original)); *see also Caballero v. FARC*, 20-mc-40, ECF No. 90 at 7 (W.D.N.Y. July 26, 2021) (Caballero responding to the PDVSA Ad Hoc Board's motion to vacate in the WDNY: "[T]he PDVSA Parties [through White & Case] have submitted ***no evidence – none***. The PDVSA Parties [through White & Case] have no submitted an affidavit providing any facts ***refuting*** the evidence before the Court or even bothered . . . to submit an affidavit simply ***denying*** participation in the activities that establish their agency or instrumentality status.") (emphasis in original). The Remaining PDVSA Affiliates should not be burdened with counsel that cannot present evidence and adequately defend their purported assets in this action. Again, in the context of TRIA, due process is violated unless parties are given "notice and a fair hearing where both sides ***are permitted to present evidence***." *Stansell*, 771 F.3d at 727 (emphasis added). Yet, White & Case has admitted that it cannot do that. White & Case's admitted inability to present evidence leaves the Remaining PDVSA Affiliates with ineffective representation and so violates due process.

The WDNY *Caballero* Order erroneously decided that PDVSA's due process rights would not be violated by substituting undersigned counsel with counsel appointed by the Ad Hoc Board. That court incorrectly found that "any obstacle to White & Case's effective representation of PDVSA would be of PDVSA's own making, and the due process argument therefore is a chimera." *Caballero*, 2021 WL 1884110, at *6. The WDNY suggested that PDVSA and its affiliates should simply cooperate with the Ad Hoc Board by providing documents, witnesses, and other evidence to White & Case. *Id.* ("[W]hoever controls PDVSA can cooperate with whichever lawyers represent PVDSA."). Respectfully, however, that suggestion ignores the reality of the circumstances in Venezuela and Venezuelan law.

The WDNY did not properly consider the fact that Venezuelan law **forbids** PDVSA and its affiliates from recognizing the purported Ad Hoc Board and its counsel as legitimate representatives of PDVSA, and thus PDVSA and its affiliates are prohibited by Venezuelan law from cooperating with the purported Ad Hoc Board.  *See, e.g.*, PDVSA Decl., attached as **Exhibit C**, filed in the D. Conn. action on May 24, 2021, ECF No. 138-1 (ECF headers redacted for ease of viewing). While the National Assembly of Venezuela previously enacted a law to allow Guaidó to appoint ad hoc administrative boards of state-owned companies, Venezuela's highest court, the Supreme Tribunal of Justice, has held that all appointments made by Guaidó to the Ad Hoc Board of PDVSA are void and an absolute nullity. *See id.* Because Guaidó is not the legal representative of Venezuela, it is therefore ***illegal under Venezuelan law*** for PDVSA's affiliates to cooperate with the Ad Hoc Board and its counsel, in these proceedings or otherwise.

The PDVSA Ad Hoc Board will surely respond with its oft-repeated argument that the Venezuelan Supreme Tribunal of Justice is an "illegitimate" body whose opinions should be discounted, but that argument misses the point. This Court need not analyze the validity of any foreign act or decree to resolve the issues here; instead, this Court need only acknowledge the well-settled notion that an entity based in a certain country must comply with the domestic laws of that country. PDVSA and the Remaining Affiliates must comply with the law of Venezuela, regardless of what the United States might think of that law. Thus, the WDNY *Caballero* Order ultimately left PDVSA with a Hobson's Choice: (1) follow Venezuelan law by not cooperating with the illegal Ad Hoc Board's law firm (and risk losing its assets), or (2) violate Venezuelan law by cooperating with said law firm. Due process forbids either result.[8] White & Case's appearance for

---

[8] On this basis, PDVSA and its affiliates moved for reconsideration of the WDNY *Caballero* Order. And on January 7, 2022, the WDNY denied that motion, stating: "Flynn's and Jimenez's due process argument hinges on a violation of Venezuelan law based precisely on the

the Remaining PDVSA Affiliates should therefore be stricken and undersigned counsel should be substituted as counsel.

## II.     The political question doctrine does not apply.

Based on White & Case's recent briefing in this Court, the WDNY, and the District of Connecticut, White & Case will argue to this Court that the political question doctrine requires the Court to recognize their appearance as counsel. *See* ECF Nos. 378, 381; *see also Caballero v. FARC*, No. 20-mc-40, ECF No. 58-1 (W.D.N.Y. Mar. 26, 2021); *Caballero v. FARC*, No. 20-cv-1939, ECF No. 125-1 (D. Conn. May 14, 2021). White & Case bears the burden to establish that the political question doctrine applies. According to White & Case, the decision of the United States to recognize the purported "Interim Government" of Venezuela is a political decision that United States courts are bound to accept. *See generally id.* But regardless of which Venezuelan government the United States recognizes, the political question doctrine is not implicated here. In other words, this Court need not delve into U.S. political decisions to resolve the narrow issues presented before it.

While the Constitution prohibits federal courts from deciding political questions, which normally arise in the context of U.S. foreign policy, not "every case or controversy which touches

---

Constitutional Court's ruling. Therefore, accepting their argument would necessarily require the Court to accept that ruling as valid." *Caballero*, No. 20-mc-40, ECF No. 97 at 9 n.8. Respectfully, the WDNY is incorrect. PDVSA and its affiliates never asked the court to find that the Constitutional Court's ruling was a valid "act of state" as contemplated by United States foreign policy. The United States can believe that a foreign law is not a valid "act of state," but that foreign country can disagree and enforce its own law against its own people that live in that country. PDVSA and its affiliates must comply with the law of Venezuela, just like Boeing or Microsoft (for example) must comply with the law of the United States or be subject to civil or criminal penalties, ***even if a foreign country thinks that the United States law is invalid***. That is all that PDVSA and its affiliates asked the Court to recognize. As such, PDVSA and its affiliates are forced to either (1) violate the law of the country of their incorporation (even if the United States does not think that law is valid), or (2) lose their assets in this TRIA action. Neither result should be permitted.

foreign relations lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962). Indeed, "[t]he political question doctrine has occupied a more limited place in the Supreme Court's jurisprudence than is sometimes assumed." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 856 (D.C. Cir. 2010) (en banc) (Kavanaugh, J., concurring in judgment). In 2010, the D.C. Circuit even noted that "the [Supreme] Court has relied on the doctrine ***only twice in the last 50 years***." *Id.* (emphasis added).

Courts are hesitant to apply the political question doctrine, and for good reason. "It is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), and the political question doctrine's "shifting contours and uncertain underpinnings" make it "susceptible to indiscriminate and overbroad application to claims properly before the federal courts," *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1514 (D.C. Cir. 1984) (en banc), *vacated on other grounds*, 571 U.S. 1113 (1985).

### A.   The *Baker* factors do not support application of the political question doctrine.

In *Baker v. Carr*, the Supreme Court established a six-factor test to determine whether a political question arises in a lawsuit. 369 U.S. at 217. A political question arises when there is:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentially of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*

Though White & Case will presumably rely on the WDNY *Caballero* Order to support the application of the political question doctrine here, the WDNY erred in applying the political question doctrine because—among other things—it failed to address which, if any, of the *Baker*

factors compelled recognition of White & Case as counsel. *See generally Caballero*, 2021 WL 1884110. Thus, the application of the political question doctrine by the WDNY is not entitled to any deference.

The political question doctrine does not apply unless one or more of the *Baker* factors are met. *See Baker*, 369 U.S. at 217 (holding that, "***[u]nless one of these [six] formulations is inextricable from the case at bar***," the political question doctrine does not apply) (emphasis added); *see also Lessin v. Kellogg Brown & Root*, No. CIVA H-05-01853, 2006 WL 3940556, at *3 (S.D. Tex. June 12, 2006) ("Because the Court cannot conclude that one of the political question formulations set forth in *Baker* will be 'inextricable from the case at bar,' it cannot dismiss Plaintiffs' claims on political question grounds."). Yet, White & Case has consistently failed to address which, if any, of the *Baker* factors were met when briefing this issue in the WDNY and the District of Connecticut.[9]

Understandably so. A straightforward application of the *Baker* factors shows that the doctrine does not apply and that the issue before this Court can be resolved on much narrower grounds. "The first *Baker* formulation is primarily concerned with direct challenges to actions taken by a coordinate branch of the federal government." *Lane v. Halliburton*, 529 F.3d 548, 560 (5th Cir. 2008); *see also McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358-59 (11th Cir. 2007). Here, none of the Third-Party Defendants are asking the Court to review the Executive

---

[9] Similarly, the cases on which White & Case previously relied in the WDNY and the District of Connecticut also fail to address which, if any, of the *Baker* factors were met when issuing their respective rulings. *See, e.g., Impact Fluid Solutions v. Bariven*, No. 4:19-cv-00652, ECF No. 55 at 11-12 (S.D. Tex. May 20, 2020) (applying the political question doctrine on the Ad Hoc Board's motion to substitute counsel but failing to explain which of the Baker factors were met); *Republic of Panama v. Citizens & S. Int'l Bank*, 682 F. Supp. 1544, 1545 (S.D. Fla. 1988) (applying the political question doctrine without addressing the *Baker* factors at all). Those cases should be discounted accordingly.

Branch's recognition (or non-recognition) of any foreign government. Instead, they are simply asking the Court to affirm their right to select their own counsel consistent with due process.

The second *Baker* factor considers whether there are judicially discoverable and manageable standards for resolving the issue before the court. *Baker*, 369 U.S. at 217. Here, the standard for resolving this issue is whether the Third-Party Defendants are "permitted to present evidence" in opposition to this Court's "agency or instrumentality" determination. *Stansell*, 771 F.3d at 727. This issue implicates due process concerns that this Court can and should resolve. *See infra*, Section (II)(B).

The remaining *Baker* factors consider whether the court can decide the case without condemning political decisions made by another branch of government. *Baker*, 369 U.S. at 217. This Court need not delve into U.S. political decisions, despite the PDVSA Ad Hoc Board's protestations otherwise. Simply put, none of the *Baker* factors are met here.

### B. The political question doctrine is inapplicable when due process rights are violated.

"[T]he Supreme Court has repeatedly found that claims based on [due process] rights are justiciable, even if they implicate foreign policy decisions." *Comm. of U.S. Citizens Living in Nicaragua v. Regan*, 859 F.2d 929, 935 (D.C. Cir. 1988). Again, in the context of White & Case's appearance on behalf of PDVSA and its affiliates, "whether substitution [of counsel] might deprive PDVSA and the subsidiaries of their constitutional rights *is a justiciable question that this Court can decide*." *Caballero*, 2021 WL 1884110, at *7 (emphasis added); *see also United States v. Ghailani*, 686 F. Supp. 2d 279, 297 (S.D.N.Y. 2009) (holding that the political question doctrine does not apply when substitution of counsel affects the represented party's constitutional rights).

Here, striking undersigned counsel's appearance would violate the due process rights of the Third-Party Defendants. *See supra*, Sections (I)(A), (I)(B). Because due process rights are violated, the political question doctrine does not apply.[10]

**III.   The act of state doctrine does not apply.**

White & Case will also argue (as it did in the WDNY and the District of Connecticut) that the act of state doctrine compels the Court's recognition of the PDVSA Ad Hoc Board's engagement of White & Case as counsel. *See* ECF Nos. 378, 381; *see also Caballero v. FARC*, No. 20-mc-40, ECF No. 58-1 (W.D.N.Y. Mar. 26, 2021); *Caballero v. FARC*, No. 20-cv-1939, ECF No. 125-1 (D. Conn. May 14, 2021). According to them, the decision of the purported "Interim Government" of Venezuela to create the PDVSA "Ad Hoc Board" is the valid act of a foreign state that United States courts are bound to accept. *See generally id.* However, that argument is misplaced. While the underlying principle of the act of state doctrine holds that "the courts of one country will not sit in judgment on the acts of governments done within its own territory," the doctrine simply has no application here. *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).

The Supreme Court has been clear: "Act of state issues only arise when a court ***must decide***—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (emphasis in original). "When that question is not the case, neither is the act of state doctrine." *Id.* "In every case in which [the Supreme Court] has held the act of state doctrine applicable, ***the relief***

---

[10] In this regard, the WDNY erred in applying the political question doctrine because it improperly discounted the due process argument of the Remaining PDVSA Affiliates (as discussed in Section (I)(B)). Had the court properly weighed the due process concerns, the political question doctrine would not have been applied there.

***sought or the defense interposed*** would have **required** a court in the United States to declare invalid official acts of a foreign sovereign performed within its own territory." *Id.* at 405 (emphasis added).

The WDNY improperly applied the act of state doctrine to the PDVSA Ad Hoc Board's engagement of White & Case as counsel, even though the "relief sought or the defense interposed" in that TRIA proceeding did not require the court to declare invalid any act by any foreign sovereign. *W.S. Kirkpatrick*, 493 U.S. at 405. In other words, "the outcome of the case [did not] turn upon" the issue of which lawyers could represent PDVSA and its affiliates. *Id.* at 406. By applying the act of state doctrine, the WDNY (respectfully) contradicted binding Supreme Court precedent. *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994) ("It is [the Supreme] Court's responsibility to say what [the law] means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.").

On this basis, PDVSA and its affiliates moved for reconsideration of the WDNY *Caballero* Order. And on January 7, 2022, the WDNY denied that motion, stating: "To decide White & Case's motion [to substitute counsel]—that is, to decide who represents parties in this Court—this Court necessarily had to decide 'the effect of official action by a foreign sovereign.'" *Caballero*, No. 20-mc-40, ECF No. 97 at 6 (quoting *Kirkpatrick*, 493 U.S. at 406). Respectfully, however, *Kirkpatrick* held that the act of state doctrine only applies when "the outcome ***of the case***" turns upon the official act of a foreign sovereign, not when "the outcome of an issue in the case" or when "the outcome of a particular motion in the case" does so. The WDNY could have simply denied White & Case's motion to substitute counsel on any number of bases (e.g., substitution of counsel would disrupt the proceedings or violate due process). The WDNY was not in any way "required" to

analyze Venezuelan or U.S. politics because the political question and act of state doctrines were not related to the merits of the case in any way.

Similarly, in this TRIA action, the claims and defenses of the parties have nothing to do with official acts of a foreign sovereign. In other words, the Court must decide whether certain third-party defendants are "agencies or instrumentalities" of a "terrorist party" (the FARC), and if so, whether their purported assets are properly subject to execution. Neither "the relief sought" nor "the defense interposed" would require this Court to declare invalid any act of a foreign sovereign. As such, the act of state doctrine plainly does not apply according to the Supreme Court's holding in *Kirkpatrick*, 493 U.S. at 406.

## CONCLUSION

For the foregoing reasons, this Court should recognize the appearance of undersigned counsel, and reject the appearance of White & Case, in the interest of preserving due process.

Dated: January 10, 2022

Respectfully submitted,

*s/Marcos Daniel Jiménez*
Marcos Daniel Jiménez
New York Bar No. 4881736
**Marcos D. Jiménez, P.A.**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel: 305-772-6026
Email: mdj@mdjlegal.com

*Counsel for Ministerio del Poder Popular de Economía, Finanzas y Comercio Exterior; Banco de Venezuela S.A., Banco Universal; Banco Bandes Uruguay, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal C.A; Petrocedeño, S.A.; Aceites y Solventes Venezolanos Vassa, S.A.; Venfleet Asphalt, Ltd.; Petro San Felix, S.A.; Venezuelan Heavy Industries, C.A.; and Petrowarao, S.A.*