WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

January 19, 2022

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, New York 10007

RE:   *Stansell v. Revolutionary Armed Forces of Colombia*, No. 1:16-mc-00405-LGS-SN (related action: *Pescatore v. Pineda,* No. 1:18-mc-00545-LGS-SN) – Response to Caballero's Notice of Supplemental Authority (ECF No. 421)

Dear Judge Netburn:

We represent respondent third-party defendants Aceites y Solventes Venezolanos Vassa S.A., Petro San Felix S.A., Venfleet Asphalt Ltd., Petrowarao S.A., Venezuelan Heavy Industries C.A., and Petrocedeño S.A. (the "PDVSA Subsidiaries") in the above-referenced actions. We write in response to third-party defendant Antonio Caballero's Notice of Supplemental Authority (ECF No. 421) concerning an order Caballero obtained from the Central District of California in a proceeding against designated SDNTK Julio Cesar Alvarez Montelongo (the "Alvarez Order"), and Plaintiffs' Response thereto (ECF No. 422).

As set forth below, Caballero overgeneralizes and otherwise misrepresents various parts of the Alvarez Order as rejecting arguments that are purportedly "substantially similar" to the arguments presented by the PDVSA Subsidiaries here. To the contrary, the Central District of California did not consider or address various arguments made by the PDVSA Subsidiaries. Nor is that decision binding on this Court. In any event, the Alvarez Order is incorrect on a number of key grounds.

*First*, the Alvarez Order is incorrect that the Southern District of Florida had subject matter jurisdiction over Caballero's ATA action. The plain terms of the ATA's jurisdictional provision, 18 U.S.C. § 2333(a), require that an ATA plaintiff be a U.S. national at the time of injury (which Caballero was not) in order to invoke the subject matter jurisdiction of a U.S. court. Moreover, the Central District of California relied on the Southern District of Florida's own faulty conclusion that it had jurisdiction. Notice 3-4 (quoting Alvarez Order 12 (quoting Order on Mot. for Default J., *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-cv-25337, ECF No. 62 at 5 (S.D. Fla. May 20, 2020))). The cases upon which the Southern District of Florida (and the Central District of California) relied, do not support the conclusion by those courts that Caballero could have ATA standing for injuries he sustained as a foreign national.

Specifically, *Linde* and *Biton* both concerned whether *U.S. nationals* can sue under the ATA for their own *non-physical injuries*, such as emotional distress and loss of consortium, arising from the death or injury of their non-U.S. national family members who were victims of acts of international terrorism.  *See Linde v. Arab Bank*, *PLC*, 384 F. Supp. 2d 571, 575 (E.D.N.Y. 2005); *Biton v. Palestinian Interim Self-Government Auth.*, 310 F. Supp. 2d 172, 175 (D.D.C. 2004). These courts did not address the question of whether non-U.S. nationals who later became U.S. nationals could recover.  *Weinstock* concerned claims by U.S. nationals and foreign nationals who were *survivors of a U.S. national* killed by an act of international terrorism, which some courts have held is authorized by § 2333(a), where the estate or legal representative of the U.S. national has standing to assert the claim (i.e., for wrongful death)..  *See Weinstock v. Islamic Republic of Iran*, No. 17-23272-CIV, 2019 WL 1993778, at *3 (S.D. Fla. May 6, 2019).  None of these cases involved claims like Caballero's, where the plaintiff and his family member were both foreign nationals at the time of the relevant events and the plaintiff only happened to become a U.S. national over a decade later.

The Alvarez Order also misapplies the "well-pleaded complaint" rule to hold (incorrectly) that Caballero's failure to meet the requirements of § 2333(a) is somehow "not jurisdictional." Notice 3-4 (quoting Alvarez Order 10-11).  Indeed, Caballero's failure to meet these requirements is evident on the face of his ATA complaint, which admits that Caballero did not become a U.S. national until more than a decade after the relevant terrorist acts.  *See* ATA Compl., *Caballero*, No. 18-cv-25337, ECF No. 1 ¶¶ 2, 12 (S.D. Fla. Dec. 19, 2018); *see also* 18 U.S.C. § 2333(a) (limiting "[j]urisdiction" for ATA actions to "national[s] of the United States" and their "estate, survivors, or heirs").  Moreover, the well-pleaded complaint rule only concerns whether a plaintiff has stated a *prima facie* case for jurisdiction; it does not establish jurisdiction or otherwise allow plaintiffs to avoid jurisdictional limitations imposed by Congress.  *See* 2 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3562 (3d ed. 2021) (explaining that the "well-pleaded complaint rule" is a pleadings-stage limitation on federal courts' "arising under" jurisdiction).  In any event, the Central District of California incorrectly cites 18 U.S.C. § 2338 as the "jurisdictional provision of the ATA" through which "Caballero invoked the federal court's subject matter jurisdiction."  Notice 3 (quoting Alvarez Order 10-11).  Rather, § 2333(a), titled "Action and Jurisdiction," creates federal subject matter jurisdiction for ATA claims.  18 U.S.C. § 2333(a); *see also* S. Rept. 102-342, at 45 (1992) (explaining that § 2333 allows for an "appropriate action in a U.S. district court" and "extends the same jurisdictional structure that undergrids [*sic*] the reach of American criminal law to the civil remedies that it defines").  Section 2338, in contrast, merely makes that jurisdiction exclusive to the federal courts.  *See* 18 U.S.C. § 2338; H. Rept. 102-1040, at 8 (1992) ("[Section 2338] provides for exclusive jurisdiction for these cases in the district courts of the United States.").

*Second*, the Central District of California also held incorrectly that Alvarez lacked standing to attack the ATA judgment for lack of personal jurisdiction over the named defendants in the ATA action.  *See* Notice 4-5.  But it defies due process (and logic) to argue, on the one hand, that an entity should be responsible for a third party's default judgment as that party's alleged "agency or instrumentality," while, on the other hand, arguing that such entity does not have the same jurisdictional defenses available to it as the defaulting party.  *See, e.g.*, *Great Am. Ins. Co. v. Bevis*, 652 So. 2d 382, 383-84 (Fla. 2d Dist. Ct. App. 1995) (holding judgment debtor's alleged insurer permitted to attack default judgment because the judgment is "void for lack of personal jurisdiction and may be collaterally attacked at any time"); *Stephens v. Progressive Gulf Ins. Co.*, No. 1:13-

CV-00244-GHD-DAS, 2015 WL 1810182, at *10-12 (N.D. Miss. Apr. 17, 2015) (holding garnishee could assert personal jurisdiction defense on behalf of judgment debtors). In any event, the cases cited in the Alvarez Order are inapposite. Notice 4-5 (quoting Alvarez Order 12-13 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982))). *Insurance Corporation* stands for the proposition that a defendant, when present and defending in the litigation, can waive personal jurisdiction by his own conduct. But the FARC did not appear in the Florida actions and thus did not waive jurisdictional defenses. And the remaining cases cited in the Notice merely hold that a party may not assert lack of personal jurisdiction or improper service on behalf of an absent co-defendant, because the party has no personal stake in asserting the defense. Notice 4-5 (quoting Alvarez Order 13, and citing *In re Grana y Montero S.A.A. Sec. Litig.*, No. CV171105JMAARL, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019) (R. & R.); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010); *Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-CV-01790, 2015 WL 5010713, at *12 (D. Conn. Aug. 24, 2015)). In stark contrast, the PDVSA Subsidiaries plainly were not co-defendants with the FARC and have an unequivocal interest in asserting defenses to the default judgment where Caballero is seeking to hold the PDVSA Subsidiaries liable to the full extent of the FARC.

*Third*, the Alvarez Order failed to give the phrase "agency or instrumentality" in TRIA the meaning Congress clearly intended under § 1603(b) of the FSIA. *See* Notice 7-9 (quoting Alvarez Order 27, 29-31). As the PDVSA Subsidiaries have shown, the Central District's holding (and Caballero's and Plaintiffs' arguments here) are contrary to the plain language, structure, and purpose of TRIA, which establish that the term "agency and instrumentality" should be given the meaning ascribed to it in § 1603(b) of the FSIA and is limited to agencies and instrumentalities of foreign states adjudged not to be immune under § 1605A and § 1605(a)(7). *See* Mot. to Dismiss (ECF No. 365) 18-20; Mot. to Dismiss Reply (ECF No. 404) 12-13; *see also* Mots. to Vacate (ECF No. 346/124) 14-18. The interpretation of "agency or instrumentality" from *Kirschenbaum*, on which the Central District of California — like the Eleventh Circuit in *Stansell* — relied, plainly does not countenance the kind of due-process-defying application of TRIA that Caballero and Plaintiffs have attempted. *See* Notice 7-9 (quoting Alvarez Order 27, 29-31 (citing *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 771 F.3d 713, 723, 731, 732 (11th Cir. 2014)). The alleged "agencies or instrumentalities" in *Kirschenbaum* were directly and indirectly owned by the judgment debtor (Iran) and the plaintiffs there brought new actions to hold them liable based on TRIA. *See* Mot. to Dismiss 20; Mot. to Dismiss Reply 2 (citing Compl. & Affs. of Service, *Kirschenbaum v. Assa Corp.*, No. 1:13-cv-01825, ECF Nos. 1, 4-7 (S.D.N.Y.)). Indeed, the Second Circuit has raised "concerns" with "*Kirschenbaum*'s reading of TRIA" because, "if broadly construed," it could "invite lawsuits against a third-party institution" with "only incidental and perhaps unintentional involvement with a terrorist party." *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019). In any event, *Kirschenbaum* was decided without the benefit of briefing on the legislative history and has been abrogated by the Supreme Court on other grounds. *See* Mot. to Dismiss 20; Mots. to Vacate 18.

Further, contrary to Caballero's assertion (at 7), Alvarez did not brief, and the Central District of California did not consider, the arguments raised by the PDVSA Subsidiaries here, which include (i) the extensive legislative history discussed in the Motion to Dismiss (at 19; *see also* Mots. to Vacate 15-18), (ii) the host of statutory and constitutional problems raised by this action which are avoided under the PDVSA Subsidiaries' interpretation, which preserves the overall scheme

Congress enacted in the FSIA (Mot. to Dismiss 8-9, 18-19; *see also* Mots. to Vacate 14-15), or (iii) the fact that Plaintiffs' proffered reading of "agency or instrumentality" would effect a radical departure from the meaning ascribed to the phrase throughout the U.S. Code (Mot. to Dismiss 19-20; *see also* Mots. to Vacate 17-18) — or any "substantially similar" arguments. Notice 7. Instead, as is plain on the face of the Notice, Alvarez argued (without support) that "the distinction between 'foreign state' in FSIA and 'terrorist party' in TRIA § 201(a) is trivial" and "that th[e] Court should simply substitute 'foreign state' with 'terrorist party.'" Notice 8 (quoting Alvarez Order 29). This baseless argument is hardly "substantially similar" to the reasoned and supported arguments presented in the Motion to Dismiss (Notice 7) and the Central District of California's rejection of it has no bearing on this case.

*Fourth*, the Central District of California also held incorrectly that Caballero was not required to establish personal jurisdiction over Alvarez before seeking a declaration that Alvarez, a natural person, was an "agency or instrumentality" of the FARC. *See* Notice 5-6 (quoting Alvarez Order 21-23). This holding overlooks the binding U.S. Supreme Court authority of *Peacock*, which establishes that efforts to shift liability for a judgment to a third party not present in the underlying case are not permissible without an "independent basis" for jurisdiction. *See* Mot. to Dismiss 10 (citing *Peacock v. Thomas*, 516 U.S. 349, 357 (1996); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001)); *see also* Mots. to Vacate 8. Thus, contrary to the Central District of California's decision, Caballero was required — as are Plaintiffs here — to bring a new action against the alleged "agencies or instrumentalities" in an adversarial proceeding, and establish an independent basis for subject matter jurisdiction and personal jurisdiction, before he can purport to "enforce" his judgment against the assets of alleged agencies or instrumentalities. *See* Mot. to Dismiss 10-11, 14-18; *see also* Mots. to Vacate 8, 10, 11-14.

Further, the authorities upon which the Central District of California relied do not support its conclusion that the "agency-or-instrumentality finding" itself satisfies due process because both cases concerned efforts to attach property that was allegedly owned by the judgment debtor itself. *See* Notice 5 (quoting Alvarez Order 21-22). *IFC Interconsult, AG v. Safeguard Int'l Partners* (cited at Notice 6 (quoting Alvarez Order 22)) was an action to attach funds owed to the judgment debtor by a garnishee under an indemnification agreement. 438 F.3d 298, 304 (3d Cir. 2006). Similarly, in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* (*see* Notice 6 (quoting Alvarez Order 22)), the plaintiff-judgment creditor held a judgment against Venezuela which it sought to enforce against "assets that it allege[d] belong to Venezuela" and were allegedly only nominally held by PDVSA, which the parties agreed was an "agency or instrumentality" of Venezuela under the FSIA. 333 F. Supp. 3d 380, 393 (D. Del. 2018).

Here, by contrast, Plaintiffs admit that the judgment debtor (the FARC) has no ownership interest in the Blocked Assets. *See, e.g.*, Pls.' Resp. to Mot. to Dismiss (ECF No. 396) 23 (arguing that it is "irrelevant" that the Plaintiffs have never alleged the FARC has any ownership interest in the Blocked Assets). In any event, the Third Circuit cases cited in the Alvarez Order are inapposite because personal jurisdiction is determined by state law in addition to the Due Process Clause. *See Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located."). Consistent with *Peacock* and *Epperson*, New York law also requires that plaintiffs seeking to enforce judgments against the assets of a person other than the judgment debtor must establish personal jurisdiction over the other person before the court may make a fundamentally *in personam* adjudication, such as whether the

person is an alter ego of the judgment creditor.  See Mot. to Dismiss Reply 9 (citing *TD Bank v. South Shore Motor Grp.*, 953 N.Y.S. 2d 554, 554 (Sup. Ct. 2012); *First Horizon Bank v. Moriarty-Gentile*, No. 10-cv-00289, 2015 WL 8490982, at *4 (E.D.N.Y. Dec. 10, 2015)).

The PDVSA Subsidiaries do not waive and expressly preserve all rights, defenses, privileges, and immunities, including without limitation as to subject matter and personal jurisdiction and service of process.

    Respectfully submitted,

    *s/ Claire A. DeLelle*
    Claire A. DeLelle
    Nicole Erb
    Susan L. Grace
    WHITE & CASE LLP
    701 Thirteenth Street, NW
    Washington, DC 20005-3807
    Tel. (202) 626-3600
    claire.delelle@whitecase.com
    nerb@whitecase.com
    susan.grace@whitecase.com

    *Counsel for Aceites y Solventes Venezolanos Vassa S.A., Petro San Felix S.A., Venfleet Asphalt Ltd., Petrowarao S.A., Venezuelan Heavy Industries C.A., and Petrocedeño S.A.*

cc:    All counsel of record via ECF