

312 Minorca Avenue | Coral Gables FL, 33134
Ph: (305) 444-5565 | Fax: (305) 444-8588
www.zplaw.com

January 25, 2022

**VIA ECF**
The Hon. Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Stansell, et al., v. FARC, et al.*, Case No. 1:16-mc-00405-LGS-SN; *Pescatore, et al., v. Palmera Pineda, et al.*, Case No. 1:18-mc-00545-LGS-SN (Related Case)
**Response to STPE's[1] Letter [ECF 422] and the PDVSA Subsidiaries'[2] Letter [ECF 430] regarding Caballero's Notice of Supplemental Authority [ECF 421]**

    STPE and the PDVSA Subsidiaries now have attacked the rulings of two highly respected federal judges—Judge Moore of Caballero's underlying Anti-Terrorism ("ATA") action[3] and Judge Holcomb of the U.S. District Court for the Central District of California (the "C.D. Cal. Court").  Their most recent attack is on the C.D. Cal. Court's Order (the "C.D. Cal. Order") [ECF 421-1] entered in *Caballero v. FARC, et al.*, No. 2:20-cv-07602-JWH (the "C.D. Cal. Action"), which speaks for itself. Yet, in their January 6, 2022 letter (the "STPE Letter"), STPE actually agree that the C.D. Cal. Court was correct with respect to two holdings that have direct bearing on the various interpleaders before this Court: 1) personal jurisdiction over a FARC agency or instrumentality is not necessary in a Terrorism Risk Insurance Act ("TRIA") execution proceeding against blocked assets in the putative name of such FARC agency or instrumentality; and 2) the applicable "agency or instrumentality" definition for TRIA purposes is the definition set forth in *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 135 (2d Cir. 2016), citing *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 723 (11th Cir. 2014)—not the "agency or instrumentality" definition in the Foreign Sovereign Immunities Act ("FSIA"). *See* ECF 422 at 2.

    The PDVSA Subsidiaries, on the other hand, contest the C.D. Cal. Court's rulings with regards to the above two issues.[4]  But the PDVSA Subsidiaries' erroneous position on the above

---

[1] "STPE" refers to the Stansell/Pescatore Parties.
[2] The "PDVSA Subsidiaries" are the entities referenced in ECF 430.
[3] *Caballero v. FARC, et al.,* No. 18-cv-25337 (S.D. Fla.), hereafter the "ATA Action."
[4] The PDVSA Subsidiaries and the agency or instrumentality in the C.D. Cal. Action (i.e. Mr. Alvarez) both wrongly argued that personal jurisdiction over the agency or instrumentality is necessary in a TRIA collection proceeding and that the applicable agency or instrumentality definition is the one provided by the FSIA.  Yet, somehow, the PDVSA Subsidiaries claim that such arguments are not "substantially similar."  Such denial belies the PDVSA Subsidiaries' fear that like, the C.D. Cal. Court, this Court will reject the aforementioned erroneous arguments.

is premised on a critical misunderstanding of how TRIA works.  TRIA does not shift liability to the agencies or instrumentalities of a terrorist defendant. The C.D. Cal. Court specifically held as much: "***Caballero is not seeking to impose personal liability against Alvarez; Caballero seeks only to enforce his judgment against Alvarez's blocked assets based upon the theory that Alvarez is an agency or instrumentality of the FARC***." C.D. Cal. Order at 24 (emphasis added). So too has at least one Circuit Court of Appeals.[5] Along the same vein, the PDVSA Subsidiaries misunderstand the nature of this TRIA collection proceeding, which the C.D. Cal. Court found to be *quasi in rem*—and not *in personam*: "***the Court concludes that it has quasi in rem jurisdiction over this action***." *Id*. at 24 (emphasis added).  The PDVSA Subsidiaries nevertheless urge this Court to commit plain legal error by accepting their faulty legal premise.[6]

Notwithstanding STPE's concurrence with the C.D. Cal. Court's rulings relating to personal jurisdiction and the applicable agency or instrumentality definition, STPE attack certain portions of the C.D. Cal. Order. Unsurprisingly, the holdings from the C.D. Cal. Order that STPE (and the PDVSA Subsidiaries) attack are those that defeat their positions before this Court. Caballero respectfully requests that this Court disregard STPE's blatant cherry-picking (as well as the PDVSA Subsidiaries' hair-splitting) discussed in greater detail below.

STPE wrongly accuse Caballero of "conveniently omitting" portions of the C.D. Cal. Order, which they purport support their argument that treble damages under the ATA are not punitive and are fully recoverable in this case. But the C.D. Cal. Order does no such thing.  The issue adjudicated by C.D. Cal. Court (i.e. whether the Ex Post Facto Clause bars application of the Anti-Terrorism Clarification Act's expansion of the term "blocked asset" under subsection (e) of the ATA, 18 U.S.C. §2333) involved a different ATA subsection and is a distinct issue from the one to be adjudicated by this Court (i.e. whether the underlying judgment's treble damages under subsection (a) of the ATA, 18 U.S.C. §2333, against the Defendants are impounded with a punitive and deterrent purpose/component such that they cannot be considered "purely compensatory" and TRIA judgment creditors may not collect beyond their base compensatory damages):

> ***Here, Alvarez contends that 18 U.S.C. § 2333 is punitive in nature and, therefore, that the retroactive application of the 2018 Amendment to Alvarez's blocked assets would violate the Ex Post Facto Clause***. The Court is not persuaded.

---

[5] *Id.* at 9 (citing *Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d 833 (N.D. Cal. 2013), *aff'd*, 799 F.3d 1281 (9th Cir. 2015), *opinion withdrawn and superseded*, 817 F.3d 1131 (9th Cir. 2016), and *aff'd*, 817 F.3d 1131 (9th Cir. 2016), and *aff'd*, 825 F.3d 949 (9th Cir. 2016)).

[6] With respect to the applicable agency or instrumentality definition, the C.D. Cal. Court held that "***importing the FSIA definition into TRIA § 201 is inconsistent with the plain text of both statutes***, and such an importation would produce an anomalous result that is incompatible with the plain language of the statute." *Id.* at 28 (emphasis added). Such holding is consistent with two Circuit Court of Appeals decisions (i.e. *Kirschenbaum* and *Stansell*). And, contrary to the PDVSA Subsidiaries' implications, the C.D. Cal. Court clearly considered congressional intent: "In making that legislative decision, ***Congress appears to have recognized that although the two statutes are related in a general sense (i.e., both statutes have a similar purpose), they are directed at different subjects***. ***The plain text of the respective statutes makes that distinction crystal clear***." *Id.* at 29 (emphasis added).  Because the FSIA "concerns the activities of 'foreign states'…and the agencies or instrumentalities of the foreign states," whereas as TRIA concerns "both state and non-state actors," the C.D. Cal. Court correctly rejected as nonsensical the argument advanced by Mr. Alvarez (and the PDVSA Subsidiaries here) to apply the FSIA definition of agency or instrumentality to TRIA.

> ***Alvarez focuses his argument on the treble damages provision of the ATA, 18 U.S.C. § 2333(a), which Alvarez contends is "overwhelmingly punitive." That argument, however, misses the mark***. The ATA establishes a claim for relief for victims of terrorism against foreign terrorist organizations. Caballero is not seeking a judgment (or treble damages) against Alvarez—he is seeking only to enforce and collect upon the ATA judgment that he previously obtained against the FARC, a designated foreign terrorist organization. ***Thus, 18 U.S.C. § 2333(a) is only peripherally relevant here.*** Moreover, the TRIA does not shift "liability from a terrorist party to its instrumentality." ***In this regard, 18 U.S.C. § 2333(e) merely defines the category of assets that are executable; it does not determine liability. Accordingly, to the extent that the ATA is punitive, its punitive provisions do not apply to Alvarez. And 18 U.S.C. § 2333(e), specifically, is not "so punitive in either purpose or effect as to negate [Congress'] intention to deem it civil."***

*Id.* at 8-9 (footnotes and internal citations omitted) (emphasis added and removed). Thus, the treble damages provision, §2333(a), was "only peripherally relevant" in the C.D. Cal. Action. *Id.*

Furthermore, STPE's assertion that the C.D. Cal. Order "expressly concluded that ATA damages are not 'so punitive in either purpose or effect as to negate [Congress'] intention to deem it civil'" misrepresents the court's position. *See* STPE Letter, ECF 422 at 1. Rather, what the C.D. Cal. Order actually held was that "***18 U.S.C. § 2333(e)***, specifically, is not "so punitive in either purpose or effect as to negate [Congress'] intention to deem it civil." C.D. Cal. Order at 9 (emphasis added). Of note, subsection (e) of the ATA, 18 U.S.C. §2333, is a provision wholly separate and distinct from subsection (a) of the ATA, 18 U.S.C. §2333. Subsection (e) expands the definition of "blocked asset" to include assets seized/frozen under the Kingpin Act and is a separate subject than the limitation of compensatory damages under the ATA's treble damages provision, §2333(a), at issue before this Court. Moreover, contrary to STPE's assertions in their Letter, the excerpted language from the C.D. Cal. Order above actually cuts against STPE's position before this Court as the C.D. Cal. Court acknowledged that **the ATA's treble damages provision under §2333(a)—which imposes liability and treble damages against a terrorist defendant (i.e. not a terrorist agency or instrumentality)—does in fact serve a punitive purpose** such that treble damages thereunder cannot be considered "purely compensatory": "***Accordingly, to the extent that the ATA is punitive, its punitive provisions do not apply to Alvarez."*** *Id*. at 9 (emphasis added).[7]

The implication that the decision of the C.D. Cal. Court regarding the validity of Caballero's ATA judgment is irrelevant here is absurd. **The C.D. Cal. Court rejected collateral attacks upon Caballero's ATA judgment that are substantially similar to the collateral attacks raised here.[8]** The C.D. Cal. Court correctly rejected the collateral attack based on an alleged lack of personal jurisdiction over the Defendants: "Alvarez cite[d] no authority to show that he has standing to attack the ATA Judgment for lack of personal jurisdiction over the named

---

[7] Notably, Mr. Alvarez argued in the C.D. Cal. Action that the ATA's treble damages provision is punitive in nature: "*Alvarez focuses his argument on the treble damages provision of the ATA, 18 U.S.C. § 2333(a), which Alvarez contends is 'overwhelmingly punitive.'*" C.D. Cal. Order at 8 (emphasis added).

[8] Both Mr. Alvarez and STPE (and now the PDVSA Subsidiaries) have raised the erroneous argument that Caballero's underlying ATA judgment is allegedly void for lack of personal and subject matter jurisdiction. Mr. Alvarez and STPE have further erroneously argued that Caballero has already satisfied his judgment.

3

defendants in the ATA Action." *See* C.D. Cal. Order at 14-15.  Thus, there was no need for the C.D. Cal. Court to reach the merits.  Such ruling is equally applicable here where STPE and the PDVSA Subsidiaries have also failed to cite authority that they have standing to assert a personal jurisdiction defense on behalf of the Defendants.[9]

The C.D. Cal. Court also properly rejected Mr. Alvarez's collateral attack based on purported subject matter jurisdiction grounds. In a failed attempt to distinguish their argument from Mr. Alvarez's argument, STPE assert that the C.D. Cal. Court did not address *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F. 3d 120 (2d Cir. 2019), which purportedly authorizes them to attack Caballero's underlying judgment for an alleged lack of subject matter jurisdiction.  But Mr. Alvarez did include this particular case in his briefing in the C.D. Cal. Action—also for the proposition that he had standing to challenge Caballero's ATA judgment.[10] Thus, the C.D. Cal. Court did consider *Vera*, but was nevertheless unpersuaded by Alvarez's argument.

The C.D. Cal. Order confirms that the argument raised by Mr. Alvarez (i.e. a substantially similar argument to the one raised by STPE and the PDVSA subsidiaries here)—that the Southern District of Florida lacked subject matter jurisdiction over Caballero's ATA action because Caballero did not qualify as a terror victim under the ATA at the time of the terrorist attack—is not a jurisdictional argument but rather a pleading sufficiency-type argument.[11] C.D. Cal. Order at

---

[9] The PDVSA Subsidiaries' argument regarding their purported standing to collaterally attack Caballero's underlying judgment is again based on the mistaken premise that TRIA shifts liability from a defendant terrorist party to its agency or instrumentality.  Furthermore, both cases cited by the PDVSA Subsidiaries—one of which is from a district court in Mississippi and the other from a Florida state court—miss the mark because they are non-TRIA cases and are *in personam* suits rather than *quasi in rem* or *in rem* suits under TRIA.  Moreover, in *Stephens v. Progressive Ins. Co.,* No. 13-cv-00244, 2015 U.S. Dist. LEXIS 50826, at *7 (N.D. Miss. Apr. 17, 2015), the entity alleging a collateral attack (i.e. the garnishee) cited a Mississippi code **authorizing** garnishees to challenge an underlying judgment upon which a writ of garnishment is subsequently issued. *Great Am. Ins. Co. v. Bevis,* 652 So. 2d 382 (Fla. 2d DCA 1995) involved an insurer's collateral attack of a final judgment against its insured.  Both the insurer *and the insured* appeared before the trial court seeking relief from the default judgment. By contrast, neither Defendant FARC nor NDVC have appeared in Caballero's ATA Action (or any action) to date. Further, *Great Am. Ins. Co.* involved an *in personam* proceeding <u>in the underlying action</u> that adjudicated liability of the insured (and thus the insurer as well), whereas this TRIA proceeding is *quasi in rem* and in no way adjudicates or otherwise shifts liability from the Defendants to the PDVSA Subsidiaries.  In any case, agencies or instrumentalities such as the PDVSA Subsidiaries are afforded due process protection (as the C.D. Cal. Court itself noted on page 22 of its Order) by way of a judgment creditor having to proffer evidence establishing the agency or instrumentality relationship, whereas the insurer's liability is automatic. The PDVSA Subsidiaries further misunderstand the application of *Ins Corp. of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 703-04 (1982), which clarifies that personal jurisdiction represents an "individual right," to the facts of this case.  That the Defendants defaulted in the ATA Action does not authorize the PDVSA Subsidiaries to assert a personal jurisdiction defense on the Defendants' behalf.  The only parties that could have raised personal jurisdiction—had they done so in a timely manner—are Defendants FARC and NDVC. Moreover, setting aside the fact that Caballero need not have named the PDVSA Subsidiaries as co-defendants in order to execute upon blocked assets in their putative name, the PDVSA Subsidiaries fail to explain why they (non-co-defendants) are allowed to raise a defense for a defendant when not even a co-defendant can do so.

[10] *See* C.D. Cal. Action, ECF 91 at 13-14.

[11] The PDVSA Subsidiaries' contention that C.D. Cal. Court misapplied the well-pleaded complaint rule is based on a fundamental misunderstanding of subject matter jurisdiction and pleading a cause of action.  It is basic hornbook law that the former is the power of a court to hear a type of case.  18 U.S.C. § 2338, "Exclusive Federal Jurisdiction," is unambiguous: federal district courts have the exclusive power to hear ATA cases. As its title suggests, 18 U.S.C. § 2333(a), "Action and Jurisdiction," upon which the PDVSA Subsidiaries mistakenly rely, contains both a cause of action component, as well as a jurisdictional component that actually echoes § 2338 in that it acknowledges that a plaintiff "may sue…in any appropriate district court of the United States."  The PDVSA Subsidiaries' argument the

4

11 ("Alvarez contends that the Southern District of Florida lacked subject matter jurisdiction because, under the plain language of 18 U.S.C. § 2333(a), Caballero did not qualify as a victim of international terrorism. ***That argument, however, is not jurisdictional***."). The C.D. Cal. Court further ruled correctly and consistently with the U.S. District Court for the Southern District of Florida (i.e. the court that entered Caballero's underlying ATA judgment) and determined that there is no temporal limitation on "injury" under Section 2333(a).[12] *See* C.D. Cal. Order at 12-13; ECF 250-17 at 6. Nevertheless, STPE and the PDVSA Subsidiaries would have this Court believe that, not one, but **two** federal judges analyzing the same issue got it wrong. Nonsense.

Because the C.D. Cal. Court concluded (as did the court in the ATA Action) that there is no temporal limitation on "injury" under the ATA, the court additionally rejected the argument raised by Mr. Alvarez (i.e. another substantially similar argument to the one raised here) that Caballero was only entitled to economic damages and that he has already satisfied his judgment. *See* C.D. Cal. Order at 9-10. And although STPE weakly attempt to distinguish their argument from Mr. Alvarez, such attempt fails in light of the C.D. Cal. Court's clear holding that there is no "support for that argument [i.e. that Caballero is entitled to collect only his economic damages] under the plain text of either 18 U.S.C. § 2333(a) or TRIA § 201(a)." *Id*. at 10. Notably, STPE omit this critical portion of the C.D. Cal. Order.[13]

---

well-pleaded complaint rule merely concerns whether a plaintiff has made a *prima facie* case for jurisdiction overlooks the fact that even if a plaintiff fails to state an ATA cause of action (which is not the case at hand), it would not affect a federal court's inherent power to hear ATA cases and, as such, dismissal under Fed.R.Civ.P. 12(b)(6) as opposed to 12(b)(1) would follow. In any case, *assuming arguendo* that PDVSA Subsidiaries' argument that Caballero needed to have qualified as a U.S. National for purposes of subject matter jurisdiction is correct (and it is not), the C.D. Cal. Court (and the ATA Action court), held that Caballero did qualify as a U.S. national. C.D. Cal. Order at 12-13.

[12] The PDVSA Subsidiaries' attempt to distinguish the cases relied upon by the C.D. Cal. Court simply because such cases did not involve the exact fact pattern at issue here fails. The C.D. Cal. Court (and the ATA Action court, which relied upon the same cases) analyzed the caselaw (and thus considered and found the factual differences of no import). STPE's hypothetical also fails because—by its very nature—such hypothetical is incomplete and cannot capture the precise arguments that would be raised by such parties. For instance, it is uncertain whether the terrorist defendant in the hypothetical would raise a statute of limitations defense. Such uncertainty is precisely why courts do not decide hypotheticals (i.e. circumstances that do not present a "case or controversy") and why courts avoid giving advisory opinions. STPE's gambit further fails because it overlooks the fact that either hypothetical sibling plaintiff would have the same amount of time to bring his/her individual ATA claim. The only difference is that one sibling's clock would not start running until U.S. nationalization. The PDVSA Subsidiaries and STPE simply cannot get past the fact that (as two federal courts have already ruled) Congress did not include language requiring plaintiffs to be U.S. nationals at the time of the injury, despite having full authority to do so. If the PDVSA Subsidiaries and STPE do not like the law, they are free to try and change it via Congress. Notably, the legislative branch of government (in addition to the judicial branch, *see* C.D. Cal. Order and ECF 250-17 at 6) has squarely rejected efforts to inject any requirement into the TRIA and ATA, respectively, that a terror victim be a U.S. citizen at the time of the terrorist act. The first instance occurred when the Senate refused to act on the "Clarifying Amendment to Provide Terrorism Victims Equity Act" (the "Captive Act"), which was presented to the Senate in 2016 and which sought to "***amend[] the Terrorism Risk Insurance Act (TRIA) to allow U.S. victims of narcoterrorism to satisfy court-awarded judgments*** against a terrorist party from the 'blocked assets' of that terrorist party that have been frozen by the Federal Government under the Foreign Narcotics Kingpin Designation Act (Kingpin Act)." H.R. Rep No. 114-685, at 2 (2016) (emphasis added). Significantly, the Captive Act never became law. The Anti-Terrorism Clarification Act, which amended the ATA to allow ATA judgment holders to collect upon assets seized/frozen under the Kingpin Act, by contrast, did become law and did not include any requirement that an individual be a U.S. citizen at the time of terrorist act. *See* P.L. 115-253; 18 U.S.C. § 2333. Notably, counsels for the Stansells were involved in lobbying efforts related to both the Captive Act and the ATCA, and so they well know that Congress did not adopt language to restrict a remedy to U.S. citizens.
[13] The PDVSA Subsidiaries' attempted preservation of certain defenses fail for the reasons previously briefed in Caballero's opposition to the PDVSA Subsidiaries' motion to dismiss certain interpleader complaints. *See* ECF 397.

Respectfully submitted,

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano (Florida Bar Number: 0056091)
Admitted *Pro Hac Vice*
E-mail: jzumpano@zplaw.com
Leon N. Patricios (Florida Bar Number: 0012777)
Admitted *Pro Hac Vice*
E-mail: lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Tel. (305) 444-5565

Nicholas Rostow
E-mail: nrostow@zplaw.com
ZUMPANO PATRICIOS & POPOK, PLLC
134 East 38th Street
New York, New York 10016
Tel. (212) 381-9914
*Attorneys for Antonio Caballero*

cc: All counsel of record via ECF