UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:16-mc-00405-LGS

KEITH STANSELL, et al.,

     Plaintiffs,

vs.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA,
a/k/a FARC-EP a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA, et al.,

     Defendants.

vs.

CITIBANK, N.A. and EQUINITI TRUST COMPANY,

     Third-Party-Plaintiff
     Garnishees,

vs.

KEITH STANSELL, et al.,

     Third-Party-Defendant
     Adverse Claimants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF THE BANDES AFFILIATES TO VACATE
ORDERS, QUASH WRITS OF EXECUTION, DENY TURNOVER
MOTIONS, AND DISMISS INTERPLEADER COMPLAINTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 6

  I.   The Court lacked subject matter jurisdiction to issue the January 7, 2021 Orders and Writs of Execution. ........................................................................................................ 6

  II.  The Court lacked personal jurisdiction to enter the January 7, 2021 Order and issue the Writs of Execution. ......................................................................................................... 6

  III.  The Orders and Writs are void based on ineffective service. ........................................... 7

  IV.  TRIA does not apply to the Bandes Affiliates because TRIA applies to "agencies or instrumentalities" of state sponsors of terrorism only. ...................................................... 9

  V.  The Court lacks jurisdiction over the purported assets of the Bandes Affiliates because Plaintiffs fail to meet the requirements of TRIA. .............................................................. 9

    A.   Plaintiffs have not proven that the Bandes Affiliates or the FARC own the blocked assets............................................................................................................................. 9

    B.   Plaintiffs have not demonstrated that the Bandes Affiliates are agencies or instrumentalities of the FARC as of December 2020. ................................................. 11

      1.  The United States sanctions against the Bandes Affiliates are not related to terrorism, drug trafficking, or the FARC. ........................................................ 13

      2.  Plaintiffs' purported evidence is not sufficient to establish that the Bandes Affiliates are agencies or instrumentalities of the FARC, and there is at least a question of fact........................................................................................................ 14

        a.  Fonseca, Gaddis, and Farah rely on inadmissible hearsay.............................. 19

        b.  The affidavits of Fonseca, Gaddis, and Farah do not allege specific misconduct by the Bandes Affiliates on behalf of the FARC, and the declarations of the Bandes Affiliates confirm they are not agencies or instrumentalities of the FARC. ..................................................................... 20

    C.   The FARC is not a "terrorist party."........................................................................ 23

CONCLUSION...................................................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*
    867 F. Supp. 2d 389 (S.D.N.Y. 2011)....................................................................... 24, 25

*Calderon-Cardona v. Bank of New York Mellon*,
    770 F.3d 993 (2d Cir. 2014)................................................................................... 24, 25

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................................... 7

*Doe v. Ejercito de Liberacion Nacional*,
    92 F. Supp. 3d 1 (D.P.R. 2015) ................................................................................. 16

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ................................................................................................... 12

*Hausler v. JPMorgan Chase Bank, N.A.*,
    No. 12-1264, 2012 WL 2885369, at *16 (2d Cir. July 9, 2012). ............................. 10

*Harrison v. Republic of Sudan*,
    No. 13-cv-3127, 2017 WL 946422 (S.D.N.Y. Feb. 10, 2017)................................. 12

*I.N.S. v. St. Cyr*,
    533 U.S. 289 (2001) ................................................................................................... 12

*In re Morgan Stanley ERISA Litig.*,
    696 F. Supp. 2d 345 (S.D.N.Y. 2009).................................................................... 23

*In re South African Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009).................................................................... 23

*In re Worldcom, Inc. Sec. Litig.*,
    No. 02-cv-3288 (DLC), 2005 WL 375315 (S.D.N.Y. Feb. 17, 2005) ..................... 19

*Kirschenbaum v. 650 Fifth Ave.*,
    257 F. Supp. 3d 463 (S.D.N.Y. 2017).................................................................... 17

*Kirschenbaum v. 650 Fifth Ave.*,
    830 F.3d 107 (2d Cir. 2016)............................................................................. passim

*Kirschenbaum v. Assa Corp.*,
    934 F.3d 191, 199 n. 9 (2d Cir. 2019).................................................................... 12

*Levin v. Bank of N.Y. Mellon*,
  No. 09-CV-5900 (JPO), 2019 WL 564341 (S.D.N.Y. Feb. 12, 2019).....................................23

*Moradi v. Islamic Republic of Iran*,
  77 F. Supp. 3d 57 (D.D.C. 2015) ..........................................................................................18

*Peacock v. Thomas*,
  516 U.S. 349 (1996) ...............................................................................................................6

*Philippines v. Pimentel*,
  553 U.S. 851 (2008) ...............................................................................................................6

*Ruffalo's Trucking Serv. v. Nat'l Ben-Franklin Ins. Co.*,
  243 F.2d 949 (2d Cir. 1957)..................................................................................................19

*Stansell v. Revolutionary Armed Forces of Colombia*,
  771 F.3d 713 (11th Cir. 2014).........................................................................................14, 15

*Ungar ex rel. Strachman v. Palestinian Auth.*,
  304 F. Supp. 2d 232 (D.R.I. 2004) ......................................................................................14

*United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined*
  *Number of Cans of Rainbow Foam Paint*,
  34 F.3d 91 (2d Cir. 1994)................................................................................................20, 21

*United States v. Dukagjini*,
  326 F.3d 45 (2d Cir. 2002) ...................................................................................................20

*United States v. Mejia*,
  545 F.3d 179 (2d Cir. 2008) .................................................................................................20

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ...................................................................................................9

*Weinstein v. Islamic Republic of Iran*,
  609 F.3d 43 (2d Cir. 2010) ...................................................................................................14

## **STATUTES**

28 U.S.C. § 1605A(h)(6)...........................................................................................................18

## **RULES**

Federal Rule of Civil Procedure 4 ..........................................................................................8, 9

Federal Rule of Evidence 703.....................................................................................................20

## **OTHER**

Executive Order 13850...............................................................................................................13

Inter-American Service Convention, S. Treaty Doc. No. 27, 98th Cong., 2d Sess. (1984), and the
Additional Protocol to the Inter-American Service Convention, S. Treaty Doc. No. 98-27, 58
Fed. Reg. 31,132 (1988)……………………………………………………………………..8, 9

Press Release, Treasury Sanctions BANDES, Venezuela's National Development Bank,
and Subsidiaries, in Response to Illegal Arrest of Guaido Aide, U.S. Dep't of Treasury,
Mar. 22, 2019, https://home.treasury.gov/news/press-releases/sm636..................13, 21, 22

Press Statement, Revocation of the Terrorist Designations of the Revolutionary Armed Forces of
Colombia (FARC) and Additional Terrorist Designations, U.S. Dep't of State, Nov. 30, 2021,
https://www.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-
forces-of-colombia-farc-and-additional-terrorist-designations/ ……………………………….. 23

Specially Designated Nationals List Update, U.S. Dep't of the Treasury, Dec. 1, 2021,
https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20211201.................23

The Associated Press, Mar. 22, 2019 (https://federalnewsnetwork.com/government-
news/2019/03/the-latest-us-sanctions-venezuelas-development-
bank/).........................................................................................................................21, 22

Third-party defendants Banco de Venezuela S.A., Banco Universal ("Banco de Venezuela"), Banco Bandes Uruguay, S.A. ("Bandes Uruguay"), and Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal, C.A. ("Banco Bicentenario"), which are affiliates of Banco de Desarrollo Economico y Social de Venezuela ("BANDES") (together, the "Bandes Affiliates"), respectfully submit this memorandum in support of their Motion to Vacate the Court's Orders dated January 7, 2021 (*Stansell/Pescatore* ECF Nos. 130/58[1]) (the "Orders"), Quash the Writs of Execution issued under those Orders, Deny Turnover Motions (ECF Nos. 138/64, 143/70), and Dismiss the Third-Party Complaints in the Nature of Interpleader filed by Equiniti Trust Company ("Equiniti") (*Stansell* ECF No. 208[2]) ("Equiniti Interpleader") and Citibank, N.A. ("Citibank") (*Stansell* ECF No. 225) ("Citibank Interpleader") (together, the "Interpleader Complaints").

## **INTRODUCTION**

Plaintiffs previously obtained multi-million-dollar default judgments against the Fuerzas Armadas Revolucionarias de Colombia ("FARC"). Years after obtaining their default judgments against the FARC, and only after the U.S. government imposed unrelated sanctions on the subject assets, Plaintiffs now conveniently claim that the Bandes Affiliates are purported "agencies or instrumentalities" of the FARC and thus subject to execution under the Terrorism Risk Insurance Act of 2002 ("TRIA"). Plaintiffs' TRIA claims are based on hearsay and speculation and do not even allege any activities at all by the Bandes Affiliates <u>on behalf of the FARC</u> at any time.

---

[1] Substantively identical documents filed in both the *Stansell* and *Pescatore* actions are cited herein according to their respective docket entry numbers, ___/___.

[2] Plaintiffs' actions have been consolidated for interpleader purposes and, as such, the documents pertaining to the interpleader complaints are only filed in the *Stansell* action.

The utter dearth of any evidence supporting the Plaintiffs' claims is not surprising. The Bandes Affiliates have no connection whatsoever with the FARC. The Bandes Affiliates provide financial and banking services to customers in both the private and public sector and are affiliates of BANDES, a Venezuelan government owned autonomous financial institution that focuses on financing projects that contribute to the development of Venezuela. The declarations of the Bandes Affiliates, attached hereto, establish that the Bandes Affiliates are not agencies or instrumentalities of the FARC. These TRIA proceedings should be dismissed and any prior orders vacated, for the following reasons.

First, Plaintiffs do not establish an independent basis for this Court's subject matter jurisdiction. While Plaintiffs classify these proceedings as mere "post-judgment execution proceedings," Plaintiffs are not trying to execute on the assets of the judgment debtor, the FARC. Instead, Plaintiffs are attempting to shift financial liability from the judgment debtor (the FARC) to third parties (the Bandes Affiliates) who were never defendants in the underlying case. Plaintiffs were thus required to bring a new action to establish this Court's jurisdiction, but failed to do so.

Second, because these proceedings effectively shift liability to new parties, Plaintiffs were required, but failed, to establish this Court's personal jurisdiction over the Bandes Affiliates.

Third, Plaintiffs did not serve the Bandes Affiliates with process as required under Rule 4. Instead, Plaintiffs simply mailed copies of the writs to addresses in Venezuela and Uruguay. Venezuela, in consenting to the Hague Service Convention, explicitly objected to service by mail. Moreover, Uruguay is a party to the Inter-American Service Convention on Letters Rogatory and Additional Protocol, but Plaintiffs did not follow the service requirements of that convention.

Fourth, TRIA does not apply to the Bandes Affiliates—entities that are not owned by a state sponsor of terrorism. The plain language of TRIA supports this conclusion.

Fifth, Plaintiffs fail to satisfy the elements of TRIA. Plaintiffs have not established that the Bandes Affiliates or the FARC are the "owners" of the blocked assets at issue. Plaintiffs also have not shown, and cannot show, that the Bandes Affiliates are "agencies or instrumentalities" of the FARC, including during the relevant time period, December 2020, when Plaintiffs commenced this action. Finally, vacatur and dismissal is warranted because the FARC is no longer a U.S. designated terrorist or drug trafficker.

Accordingly, the *ex parte* Orders must be vacated, the Writs of Execution quashed, the Turnover Motions denied, and the enforcement actions against the purported assets of the Bandes Affiliates' dismissed, including the Interpleader Complaints.

## **BACKGROUND**

On June 15, 2010, the *Stansell* Plaintiffs obtained a default judgment in the Middle District of Florida against the FARC in the aggregate amount of $318 million for alleged terrorism-related injuries. *Stansell v. FARC*, No. 8:09-cv-2308-T-26-MAP (M.D. Fla.). On November 5, 2018, the *Pescatore* Plaintiffs likewise obtained a default judgment against the FARC in the District of D.C. in the aggregate amount of $69 million for their own alleged injuries related to terrorism. *Pescatore v. FARC*, No. 1:08-cv-02245-TJK (D.D.C.). The *Stansell* Plaintiffs registered their judgment in this Court on November 10, 2016, *see* ECF No. 5, while the *Pescatore* Plaintiffs registered their judgment on November 27, 2018, *see* ECF No. 1. The *Stansell* Plaintiffs and *Pescatore* Plaintiffs (collectively, the "Plaintiffs") have worked together to collect their judgments in lockstep.

On December 23, 2020, as part of their collection efforts, Plaintiffs initiated these proceedings against the Bandes Affiliates on an *ex parte* basis under TRIA, claiming that the Bandes Affiliates are "agencies or instrumentalities" of the FARC, and moved for corresponding writs of execution directed at Equiniti and Citibank regarding certain assets that are purportedly

held on behalf of the Bandes Affiliates. *See* ECF Nos. 119/46. On January 7, 2021, the Court granted Plaintiffs' motions, and the writs of execution were issued to Equiniti and Citibank the following day. *See* ECF Nos. 130/58. On January 15 and 19, 2021, Plaintiffs moved for turnover judgments as to those writs of execution. *See* ECF Nos. 138/64, 143/70. Plaintiffs mailed copies of the writs of execution to the Bandes Affiliates: (1) the Citibank writ of execution to Banco de Venezuela was mailed to an address in Venezuela on January 8, 2021, *see* ECF Nos. 246/112, and (2) the Equiniti writ of execution to the Bandes Affiliates were mailed to addresses in Venezuela and Uruguay on January 9, 2021, *see* ECF Nos. 244/110.

On April 15, 2021, Equiniti filed an Interpleader Complaint identifying Plaintiffs; a competing judgment creditor, Antonio Caballero; the Bandes Affiliates[3]; and other persons that may have an interest in certain assets supposedly held by Equiniti. *See* ECF No. 208.[4] On April 29, 2021, Citibank filed an Interpleader Complaint identifying Plaintiffs, Caballero, Banco de Venezuela, Clearstream Banking S.A. ("Clearstream"), and other persons that may have an interest in certain assets supposedly held by Citibank. *See* ECF No. 225.[5]

On June 7, 2021, White & Case LLP appeared in this action, purporting to represent certain affiliates of Petróleos de Venezuela, S.A. ("PDVSA"): (1) Aceites y Solventes Venezolanos Vassa

---

[3] While Equiniti has served Bandes Uruguay with the Equiniti Interpleader, Plaintiffs have not effectuated service of process on Bandes Uruguay, or any other of the Bandes Affiliates, with any papers in this proceeding, including the Writs of Execution and Turnover Motions.

[4] Plaintiffs jointly answered the Equiniti Interpleader and filed a crossclaim against Caballero. *See* ECF No. 268. Caballero initially filed a motion to dismiss and/or transfer the Equiniti Interpleader, which he later withdrew. *See* ECF Nos. 332, 358. Caballero then answered the Equiniti Interpleader and filed a crossclaim against Plaintiffs. *See* ECF No. 376.

[5] Plaintiffs jointly answered the Citibank Interpleader and filed a crossclaim against Caballero, who has likewise answered the Citibank Interpleader and filed a crossclaim against Plaintiffs. *See* ECF Nos. 262, 269.

S.A.; (2) Petro San Felix S.A.; (3) Venfleet Asphalt Ltd.; (4) Petrowarao, S.A.; and (5) Venezuelan Heavy Industries, C.A. (together, the "Remaining PDVSA Affiliates"). White & Case then filed, in August 2021, Motions to Vacate and Quash Writs of Execution, *see* ECF Nos. 344/122, Memoranda of Law in Support, *see* ECF Nos. 346/124, and Reply Briefs in Support, *see* ECF Nos. 393/131, on behalf of the Remaining PDVSA Affiliates (collectively "White & Case Motions to Vacate.").

On October 1, 2021, undersigned counsel appeared for the Remaining PDVSA Affiliates, Petrocedeño, S.A. ("Petrocedeño"), the Bandes Affiliates, and the Venezuelan Ministry of Finance. ECF Nos. 361/127. On November 24, 2021, Petrocedeño filed, through undersigned counsel, Motions to Vacate, Quash Writs of Execution, and Deny Turnover Motions, *see* ECF Nos. 408/133, Memoranda of Law in Support, *see* ECF Nos. 409/134, and Reply Briefs in Support, *see* ECF Nos. 420/140 (collectively "Petrocedeño's Motions to Vacate"). So as not to burden the Court with unnecessary and repetitive briefing, wherever possible the Bandes Affiliates will incorporate and adopt certain legal arguments presented in Petrocedeño's Motions to Vacate and White & Case's Motions to Vacate.[6]

On January 10, 2022, well after Petrocedeño filed its Motions to Vacate through undersigned counsel, White & Case entered an appearance for Petrocedeño. White & Case does not claim to represent the Bandes Affiliates, and no attorney other than undersigned counsel has appeared on their behalf.

---

[6] The Bandes Affiliates also adopt the Statutory Framework in White & Case's Motions to Vacate. See ECF Nos. 346/124 at 6-9. The Bandes Affiliates do not adopt the assertions made by White & Case regarding characterizations of President Maduro and the validity of the purported "Interim President" of Venezuela, an individual who—to be clear—exercises no operational control over the Bandes Affiliates.

## ARGUMENT

I.      **The Court lacked subject matter jurisdiction to issue the January 7, 2021 Orders and Writs of Execution.**

It is well settled that a judgment creditor seeking to impose liability on a party "not already liable for that judgment" must initiate a new civil action. *Peacock v. Thomas*, 516 U.S. 349, 357 (1996). Here, because Plaintiffs seek to hold the Bandes Affiliates liable for default judgments against the FARC, they were required to bring a new action to establish this Court's jurisdiction. Plaintiffs failed to do so. Accordingly, this Court lacks subject matter jurisdiction over these TRIA proceedings. Moreover, BANDES is a necessary and indispensable party to these proceedings because Plaintiffs' argument relies on conclusory allegations of a purported relationship between BANDES and the FARC. Plaintiffs' failure to join BANDES to this action requires dismissal. *See Philippines v. Pimentel*, 553 U.S. 851, 865 (2008). For judicial economy, the Bandes Affiliates incorporate and adopt by reference the legal arguments presented in Section I of Petrocedeño's Motions to Vacate. ECF Nos. 409/134 at 5 (memos of law); ECF Nos. 420/140 at 1 (replies); White & Case Motions to Vacate, ECF Nos. 346/124 at 8–10, ECF Nos. 393/131 at 6–8.

II.     **The Court lacked personal jurisdiction to enter the January 7, 2021 Order and issue the Writs of Execution.**

The Bandes Affiliates are Venezuelan and Uruguayan corporations that are not subject to this Court's personal jurisdiction. Plaintiffs have not alleged that personal jurisdiction over the Bandes Affiliates exists.

There can be no general personal jurisdiction because the Bandes Affiliates are not incorporated in the United States and do not maintain their principal place of business in the United States. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Banco de Venezuela and Banco Bicentenario are incorporated in Venezuela and maintain their principal place of business in

Venezuela, while Bandes Uruguay is incorporated in Uruguay and maintains its principal place of business in Uruguay. *See* Declaration of José Noel Zamora of Bandes Uruguay, dated February 25, 2022 ("Bandes Uruguay Declaration"), attached as **Exhibit 1**, ¶ 7; Declaration of Román Daniel Maniglia Darwich of Banco de Venezuela, dated February 25, 2022 ("Banco de Venezuela Declaration"), attached as **Exhibit 2**, ¶ 7; Declaration of Xabier Fernando León Anchustegui of Banco Bicentenario, dated February 25, 2022 ("Banco Bicentenario Declaration"), attached as **Exhibit 3**, at 2. As for specific personal jurisdiction, Plaintiffs allege no activities by the Bandes Affiliates on behalf of the FARC, much less any activity in the United States. This Court thus does not have personal jurisdiction over the Bandes Affiliates. The Orders must be vacated, the Writs of Execution quashed, the Turnover Motions denied, and the Interpleader Complaints dismissed.[7]

For the sake of judicial economy, the Bandes Affiliates incorporate and adopt by reference the legal arguments presented in Section II of Petrocedeño's Motions to Vacate. *See* ECF Nos. 409/134 at 6 (memos of law); ECF Nos. 420/140 at 1 (replies); White & Case Motions to Vacate, ECF Nos. 346/124 at 10–11, ECF Nos. 393/131 at 8–10.

## III.     The Orders and Writs are void based on ineffective service.

Plaintiffs did not properly serve the Bandes Affiliates with process in this action, thus depriving this Court of personal jurisdiction. For the sake of judicial economy, the Bandes Affiliates incorporate and adopt by reference the legal arguments presented in Section III of Petrocedeño's Motions to Vacate regarding the service of process requirements under Rule 4. ECF

---

[7] Plaintiffs apparently believe that personal jurisdiction over the Bandes Affiliates is not required because this action is simply a "post-judgment enforcement" action, but Plaintiffs are mistaken. As set forth in Section I, Plaintiffs seek to shift liability to parties not named in the underlying default judgments. Once an independent basis for subject matter jurisdiction has been established (as required), personal jurisdiction over the defendants in that action must naturally be established as well. Anything less would run afoul of due process.

Nos. 409/134 at 6-7 (memos of law); ECF Nos. 420/140 at 1 (replies); White & Case Motions to Vacate, ECF Nos. 346/124 at 11–14, ECF Nos. 393/131 at 10-11.

Plaintiffs failed to comply with an "internationally agreed means of service" under Federal Rule of Civil Procedure 4(f)(1) when they simply mailed copies of the operative writs of execution to addresses in Venezuela and Uruguay. *See* ECF Nos. 246/112 (Citibank writ), 244/110 (Equiniti writ). As to Banco de Venezuela and Banco Bicentenario, which are both incorporated in Venezuela, Venezuela objected to service by mail when assenting to the Hague Service Convention. *See* ECF Nos. 346/124 at 12. With regard to Bandes Uruguay (incorporated in Uruguay), Uruguay is a party to the Inter-American Service Convention on Letters Rogatory and Additional Protocol,[8] but there is no indication that Plaintiffs prepared letters rogatory or otherwise effected service through the Department of Justice as required under that convention. *See* S. Treaty Doc. No. 27, 98th Cong., 2d Sess. (1984); S. Treaty Doc. No. 98-27, 58 Fed. Reg. 31,132 (1988).

Plaintiffs also failed to comply with Rule 4(f)(2) because: (i) international mail is not a recognized method of service under Rule 4(f)(2)(A); (ii) Plaintiffs did not request the issuance of letters rogatory under Rule 4(f)(2)(B); and (iii) Plaintiffs did not use a form of mail that requires a signed receipt under Rule 4(f)(2)(C). As such, Plaintiffs have failed to properly serve the Bandes Affiliates with process.[9]

---

[8] Uruguay is not a party to the Hague Service Convention. *See* U.S. Dep't of State, *Judicial Assistance Country Information: Uruguay* (Nov. 15, 2013), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Uruguay.html.

[9] Plaintiffs' failure to serve the Bandes Affiliates with process is another basis for vacatur for lack of personal jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) ("To exercise personal jurisdiction lawfully, three requirements must be met. First, the plaintiff's service of process upon the defendant must have been procedurally proper.") (quotations omitted).

**IV.** **TRIA does not apply to the Bandes Affiliates because TRIA applies to "agencies or instrumentalities" of state sponsors of terrorism only.**

The plain language and legislative history of TRIA establish that TRIA applies to "agencies or instrumentalities" of state sponsors of terrorism only. Because Venezuela has not been classified as a state sponsor of terrorism by the U.S. Department of State, and because Plaintiffs have not obtained a terrorism-related judgment against Venezuela itself, Plaintiffs cannot use TRIA to execute on the Bandes Affiliates' property. For the sake of judicial economy, the Bandes Affiliates incorporate and adopt by reference the legal arguments presented in Section IV of Petrocedeño's Motions to Vacate. ECF Nos. 409/134 at 7 (memos of law); ECF Nos. 420/140 at 1 (replies); White & Case Motions to Vacate, ECF Nos. 346/124 at 14–18, ECF Nos. 393/131 at 12.

**V.** **The Court lacks jurisdiction over the purported assets of the Bandes Affiliates because Plaintiffs fail to meet the requirements of TRIA.**

**A. Plaintiffs have not shown that the Bandes Affiliates or the FARC own the assets.**

As a threshold matter, Plaintiffs have not established that the assets at issue are blocked assets of the FARC or the Bandes Affiliates. *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 131 (2d Cir. 2016). Plaintiffs cannot use TRIA to execute on "blocked assets" unless the FARC has some kind of ownership or beneficial interest in the assets. This is supported by the plain language of TRIA itself. Also, even if TRIA authorizes execution of assets owned by persons other than a terrorist party, Plaintiffs cannot execute on the Bandes Affiliates' purported assets because they are not blocked pursuant to the same executive action directed at the FARC. To that end, the Bandes Affiliates incorporate and adopt the legal arguments presented in Section V(A) of Petrocedeño's Motions to Vacate. ECF Nos. 409/134 at 8 (memos of law); ECF Nos. 420/140 at

1 (replies); White & Case Motions to Vacate, ECF Nos. 346/124 at 23–25 (memos of law); ECF Nos. 393/131 at 9–10 (replies).[10]

Even if TRIA would hypothetically permit Plaintiffs' execution of assets owned by the Bandes Affiliates, Plaintiffs have not shown that the Bandes Affiliates are the owners of any blocked assets in this action. It is not enough that the assets at issue have been blocked by OFAC. OFAC's blocking regulations have broad reach, and the blocking of assets pursuant to OFAC regulations is not sufficient to establish an ownership interest in the blocked assets. *See* Amicus Brief of the United States, *Hausler v. JPMorgan Chase Bank, N.A.*, No. 12-1264, 2012 WL 2885369, at *16 (2d Cir. July 9, 2012).

Plaintiffs allege that Equiniti is in the possession of certain assets that are the property of Banco de Venezuela, Banco Bicentenario, and Bandes Uruguay. ECF Nos. 139/65 at 9; ECF Nos. 144/71 at 7. But neither Equiniti nor Plaintiffs have provided the Bandes Affiliates with sufficient information for them to be able to identify the assets Plaintiffs seek to execute on. In addition, Banco de Venezuela states that it does not currently have a relationship with Equiniti and is not aware of any accounts with Equiniti held in its name. *See* Banco de Venezuela Decl. ¶ 9.

Plaintiffs also allege that Citibank is in possession of certain assets belonging to Banco de Venezuela. The Citibank Interpleader, however, alleges that the account Plaintiffs seek is in the name of Clearstream (located in Luxembourg), not Banco de Venezuela. *See* ECF No. 225. Citibank states that the account contains securities entitlements and related cash proceeds and that Citibank acts as a securities custodian for Clearstream, a securities intermediary for one or more downstream clients, which Citibank does not know the identity of. *Id.* Notably, Citibank alleges

---

[10] The Bandes Affiliates, however, do not adopt, and specifically reject, White & Case's reference to the "Interim Government of Venezuela," *see* ECF Nos. 346/124 at 23–25.

only that Banco de Venezuela "may" be the ultimate beneficiary of the assets Plaintiffs seek. *Id.* Clearstream has yet to respond to the Citibank Interpleader; the deadline for Clearstream's response to the interpleader has been extended multiple times, such that the current deadline is September 1, 2022. ECF No. 437. Banco de Venezuela has confirmed that it does not currently have a relationship with Citibank and is not aware of any accounts in its name with Citibank. *See* Banco de Venezuela Decl. ¶ 10. While Banco de Venezuela has not received sufficient information from the Plaintiffs or Citibank to confirm the identity of the assets at Citibank on which Plaintiffs seek to execute, Banco de Venezuela is aware of a securities portfolio with Clearstream. *See id.* ¶ 11. Banco de Venezuela, however, is not the beneficial owner of at least 40% of the securities in the Clearstream account; instead, private individual clients of Banco de Venezuela are the beneficial owners of these securities. *Id.*

Plaintiffs have failed to prove that the blocked assets they seek to execute on are owned by the FARC or the Bandes Affiliates and therefore cannot satisfy the elements of TRIA.

### B. Plaintiffs have not demonstrated that the Bandes Affiliates are agencies or instrumentalities of the FARC as of December 2020.

To prove the Bandes Affiliates are agencies or instrumentalities of the FARC, Plaintiffs must show that they "(1) [were] a means through which a material function of [the FARC] is accomplished, (2) provided material services to, on behalf of, or in support of [the FARC], or (3) [were] owned, controlled, or directed by [the FARC]." *Kirschenbaum*, 830 F.3d at 135. The Second Circuit left open the question of whether Plaintiffs must "show that [the Bandes Affiliates] knew, or reasonably should have known, that they were functioning for, providing material services on behalf of, or being owned, controlled, or directed by [the FARC]." *Id.* at 136.[11]

---

[11] While the Second Circuit did not reach this issue, an interpretation of TRIA allowing unknowing support to expose an individual or entity to TRIA liability would offend due process. *I.N.S. v. St.*

Significantly, Plaintiffs must demonstrate that the Bandes Affiliates were agencies or instrumentalities of the FARC <u>at the time when Plaintiffs filed their ex parte motions</u> seeking writs of execution against the Bandes Affiliates' alleged assets on December 23, 2020. *See id.* at 135-36 ("[I]nsofar as Plaintiffs contend that Alavi itself was sufficiently owned, controlled, or directed by Iran to render it an agency or instrumentality of a terrorist party under the TRIA, questions of fact exist as to whether Alavi was so owned, controlled, or directed <u>at the time Plaintiffs' complaints were filed</u>.") (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (emphasis added);[12] *see also Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 WL 946422, at *4 (S.D.N.Y. Feb. 10, 2017) ("Because jurisdiction depends upon the state of things at the time the action is brought, an entity's agency or instrumentality status under the FSIA is determined at the time of the filing of the complaint. . . . The same applies to the TRIA.") (citing *Kirschenbaum*, 830 F.3d at 126, 136).[13] Here, Plaintiffs have not shown that the Bandes Affiliates are agencies or instrumentalities of the FARC, much less in December 2020.

---

*Cyr*, 533 U.S. 289, 299-300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems."); *see also Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 n. 9 (2d Cir. 2019) (declining to reach the question of whether knowledge was required under TRIA because it was "abundantly clear from the record that Assa [the alleged agency or instrumentality] knew of its Iranian ownership via Bank Melli").

[12] "'[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.'" *Dole Food Co.*, 538 U.S. at 478 (quotations and citations omitted).

[13] Although Plaintiffs argue that *Kirschenbaum* held only that agency or instrumentality status under the Foreign Sovereign Immunities Act is determined at the time the complaint is filed, *see* ECF Nos. 363/128 at 18-19, clearly *Kirschenbaum*'s holding refers specifically to TRIA, which was expressly recognized by *Harrison*.

1. <u>The United States sanctions against the Bandes Affiliates are not related to terrorism, drug trafficking, or the FARC.</u>

Preliminarily, the Bandes Affiliates submit that there must be a connection between the United States sanctions against the Bandes Affiliates and Plaintiffs' allegations that the Bandes Affiliates are agencies or instrumentalities of a terrorist organization, the FARC. That connection is completely missing here. OFAC has not connected BANDES or its affiliates to the FARC, terrorism, or drug trafficking in any way. Plaintiffs simply ignore the factual basis for the sanctions.

Neither the State Department nor OFAC have designated BANDES or its affiliates (including the Bandes Affiliates here) as sponsors of terrorism, terrorists, or narcotics traffickers, and the U.S. sanctions against BANDES and its affiliates have nothing to do with any alleged terrorism, drug trafficking, or the FARC. *See* Exec. Order No. 13850; ECF No. 109-17, Press Release, Treasury Sanctions BANDES, Venezuela's National Development Bank, and Subsidiaries, in Response to Illegal Arrest of Guaido Aide, U.S. Dep't of Treasury, Mar. 22, 2019, https://home.treasury.gov/news/press-releases/sm636 ("Mar. 22, 2019 Treasury Press Release"). Executive Order No. 13850, as amended, blocks property in the United States relating to "the gold sector of the Venezuelan economy or in any other sector of the Venezuelan economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State." The Treasury Secretary subsequently issued a determination that Executive Order 13850 extended to the financial sector, and designated BANDES and the Bandes Affiliates as operating in Venezuela's financial sector. *See* Mar. 22, 2019 Treasury Press Release.

In other cases, the use of TRIA to execute on assets of an alleged "terrorist party" or "agency or instrumentality of a terrorist party," was tied to the factual basis of the U.S. sanctions

that "blocked" the property and thus implicated TRIA. *See, e.g., Kirschenbaum*, 830 F.3d at 117-21 (relating to alleged agency or instrumentality of Iran); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 54 (2d Cir. 2010) ("Bank Melli was added to the OFAC list because of its unlawful actions in support of terrorism."); *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 739 (11th Cir. 2014) (finding that OFAC-designated drug traffickers were agencies or instrumentalities of the FARC); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004) ("[T]he Office of Foreign Asset Control, a division of the Treasury Department, determined that the HLF acts 'for or on behalf of' Hamas and was thus a Specially Designated Terrorist under Executive Order 12947 and a Specially Designated Global Terrorist under Executive Order 13224.").

That connection is wholly absent here. Simply put, Plaintiffs cannot use TRIA to execute on the Bandes Affiliates' purported blocked assets when the basis for the blocking has nothing to do with Plaintiffs' agency or instrumentality allegations.

   2. <u>Plaintiffs' purported evidence is not sufficient to show that the Bandes Affiliates are agencies or instrumentalities of the FARC, and there is at least a question of fact.</u>

Plaintiffs' "evidence" consists of three affidavits of purported experts: (1) the affidavit of Brian Fonseca, ECF No. 111-5 ("Fonseca Affidavit");[14] (2) the affidavit of David Gaddis, ECF No. 111-4 ("Gaddis Affidavit"); and (3) the affidavit of Douglas Farah, ECF No. 111-3 ("Farah Affidavit"). These affidavits fail to provide any evidence showing that the Bandes Affiliates were

---

[14] Plaintiffs note, without explanation, that they rely on the Fonseca Affidavit. *See* ECF Nos. 139/65 at 15 n. 10, 144/71 at 15 n. 7. Plaintiffs also reference, again without explanation, additional purported evidence filed as an Appendix (ECF No. 16) and Supplemental Appendix (ECF No. 109). *See* ECF Nos. 139/65 at 9 n. 9, 144/71 at 9 n. 6. These documents are a compilation of hundreds of pages of news articles, press releases, indictments, and congressional documents. None of the documents provide any evidentiary basis to support the allegations that the Bandes Affiliates are agencies or instrumentalities of the FARC.

or are agencies or instrumentalities of the FARC, including any evidence as of the relevant time period, December 2020, when this action commenced. Instead, Plaintiffs' proffered "evidence" is nothing more than speculation, hearsay, and hearsay-within-hearsay regarding other entities and individuals, none of which are admissible. Plaintiffs have failed to meet their burden to prove that the Bandes Affiliates themselves are agencies or instrumentalities of the FARC. *See Kirschenbaum*, 830 F.3d at 131.

Knowing their purported evidence is insufficient, Plaintiffs rely on the Eleventh Circuit's *Stansell* decision to argue that they need only present evidence of an "indirect" relationship between the FARC and BANDES and its affiliates. *See* ECF Nos. 139/65 at 9, 15-16; ECF Nos. 144/71 at 8, 15 (citing *Stansell*, 771 F.3d at 742). Plaintiffs' claims go beyond even the "indirect" relationship alleged in *Stansell*. In *Stansell*, the court found that certain OFAC-designated Specially Designated Narcotics Traffickers ("SDNTs") were agencies or instrumentalities of the FARC. *Stansell*, 771 F.3d at 739. The plaintiffs submitted additional evidence that the North Valley Cartel and the SDNTs were agencies or instrumentalities of the FARC. *Id.* Here, by contrast, Plaintiffs are not attempting to connect the FARC, an alleged drug trafficker, to other alleged drug traffickers. Instead, they are attempting to connect an alleged drug trafficking organization in Colombia to unrelated financial institutions in Venezuela and Uruguay.

The Second Circuit has not held that an "indirect" relationship is sufficient. To the contrary, courts in the Second Circuit have required a direct relationship between the purported agency or instrumentality and the alleged terrorist entity. Thus, Plaintiff must establish that the Bandes Affiliates <u>themselves</u> were "(1) a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by a terrorist party." *Kirschenbaum*, 830 F.3d at 135.

15

In *Kirschenbaum*, the Second Circuit vacated a summary judgment and turnover award in a TRIA enforcement action because there were questions of fact as to whether Alavi, the purported agent, was an agency or instrumentality of Iran, the terrorist party. *Id.* at 117.[15] As to whether Iran itself controlled Alavi, the court noted the limited "recent record evidence of Iran's control," and in particular found "questions of fact as to the extent of Iran's control over Alavi <u>at the relevant time</u>," which was the time the plaintiffs filed their turnover actions. Alavi provided services to Bank Melli (and, thus, Iran) knowing that Bank Melli was owned or controlled by Iran. *Id.* at 136.

On remand, the district court found that the plaintiffs presented evidence demonstrating, in part (1) that the Alavi defendants, were "used by Iran as means to effectuate various significant national purposes"; (2) that "the most important decisions regarding the operations, management, and assets of [Alavi] have been made by the Government of Iran through its officials . . . or other instruments (such as . . . Bank Melli)"; and (3) that "the members of the Board of [Alavi] have always understood that Assa [Alavi's partner] was an instrument serving important purposes of the Government of Iran." *Kirschenbaum v. 650 Fifth Ave.*, 257 F. Supp. 3d 463, 513-14 (S.D.N.Y. 2017).

Unlike *Kirschenbaum*, Plaintiffs present no evidence of any activities by the Bandes Affiliates on behalf of the FARC or that the FARC made any decisions regarding the operations, management, or assets of the Bandes Affiliates. Plaintiffs instead rely on conclusory allegations

---

[15] *See also Levin v. Bank of N.Y. Mellon*, No. 09-CV-5900 (JPO), 2019 WL 564341, at *4-5 (S.D.N.Y. Feb. 12, 2019) (denying summary judgment on the plaintiff's TRIA action and finding that while an OFAC terrorist designation and the plaintiff's expert testimony showed that Tajideen was an agency or instrumentality of Hezbollah, "none of the evidence establishing Tajideen's relationship with Hezbollah actually links him to Iran"); *Doe v. Ejercito de Liberacion Nacional*, 92 F. Supp. 3d 1, 2 n.1 (D.P.R. 2015) (declining to decide merits but noting that "given the tenuous relationship between FARC/ELN and the two putative garnishees, I have serious doubts about whether either Bermúdez can really be considered an agent or instrumentality of FARC/ELN").

that improperly attribute to the Bandes Affiliates the alleged activities of the Venezuelan government, Venezuelan state-owned entities generally, and other entities and individuals with no connection to the Bandes Affiliates, or even BANDES. *See* ECF Nos. 139/65 at 9-15; ECF Nos. 144/71 at 9-15.

This attenuated string of alleged connections is legally insufficient. It would be a violation of due process to deprive the Bandes Affiliates of their assets based on such tenuous generalizations, which effectively convert Venezuela's military, government, and all of its state-owned entities and affiliates, into agents of the FARC—without any specific factual connection between any particular entity and the FARC.[16] Plaintiffs' Rube Goldberg-like argument can be described as follows: the purported "Cartel of the Suns" supports the FARC;[17] all members of Cartel of the Suns are agencies or instrumentalities of the FARC; the Cartel of the Suns includes all of the Venezuelan government and state-owned entities; the Bandes Affiliates are subsidiaries of a state-owned entity (BANDES)—and therefore, the Bandes Affiliates are agencies or instrumentalities of the FARC.

---

[16] *See, e.g., See* ECF Nos. 139/65 at 10; ECF Nos. 144/71 at 10 ("'Cartel of the Suns,' was a Venezuelan drug-trafficking organization comprised of high ranking Venezuelan officials . . . .") (quoting Maduro Indictment ¶ 3); *id.* at 11 ("Maduro Moros, Cabello Rondon, Carvajal Barrios, and Alcala Cordones coordinated with the FARC in furtherance of the narco-terrorism conspiracy . . . .") (quoting Maduro Indictment ¶ 14(e)); *id.* at 13 ("The FARC operates in and out of Venezuela still with the complicity of the Venezuelan government.") (quoting Farah Aff. ¶ 53); *id.* at 14 ("There has been long-standing cooperation between the FARC and ELN and the Venezuelan government, the Venezuelan military, Venezuelan state-owned companies generally . . . .") (quoting Gaddis Aff. ¶ 21).

[17] Plaintiffs also wrongly equate the alleged "Cartel of the Suns" conspiracy as fact when the conspiracy has not been proven. *See* Declaration of David Falt, attached as **Exhibit 4** ("Falt Decl.") ¶ 105 (citing Johnson, P.L (2020), "Narco-terrorism Charges Against Maduro and the 'Cartel of the Suns,'" https://nacla.org/news/2020/04/07/narco-terrorism-maduro). David Falt executed an expert declaration on behalf of PDVSA on March 27, 2021, in response to allegations made by Caballero in the Western District of New York that PDVSA and its affiliates are agencies or instrumentalities of the FARC. *See Caballero v. FARC*, No. 20-mc-00040-LJV, ECF No. 60-1 at Ex. 8 (W.D.N.Y.).

The Court essentially would have to conclude that all Venezuelan state-owned entities are agencies or instrumentalities of the FARC, a terrorist organization, and thus Venezuela is a state sponsor of terrorism. This is not a declaration the Court should make, and notably, one the Executive Branch has declined to make. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 65 n.7 (D.D.C. 2015) ("The term 'state sponsor of terrorism' means a country the government of which <u>the Secretary of State has determined</u> . . . is a government that has repeatedly provided support for acts of international terrorism.") (emphasis added) (citing 28 U.S.C. § 1605A(h)(6)).

In another TRIA action, brought by Caballero (third-party defendant here) in the Northern District of California, Caballero submitted a purported expert declaration that—like the affidavits of Plaintiffs' experts here—relied on "many general articles about drug trafficking," but provided "no specific, concrete evidence linking [the purported agent] Montelongo . . . to the FARC." *Caballero v. FARC*, 4:20-mc-80146-JST, Doc. No. 11, at 5 (N.D. Cal. Oct. 8, 2020), attached hereto as **Exhibit 5**. Thus, the court found, "[t]here is no clear connection in [Caballero's] application between Montelongo . . . and the FARC," and "[Caballero] has not shown that Montelongo is an instrumentality of the FARC." *Id.* Plaintiffs fail to show any connection here as well.

Plaintiffs must show that the Bandes Affiliates themselves were agencies or instrumentalities of the FARC, as of December 2020. This requires evidence of specific activity by the Bandes Affiliates on behalf of the FARC. Plaintiffs submit no evidence specifically related to the Bandes Affiliates and fail to offer any evidence linking the Bandes Affiliates (or even BANDES) to the FARC. The evidence is clear that the Bandes Affiliates are not agencies or instrumentalities of the FARC, as set forth below.

### a. Fonseca, Gaddis, and Farah rely on inadmissible hearsay.

The Fonseca Affidavit, Gaddis Affidavit, and Farah Affidavit quote and cite inadmissible hearsay—news articles, press releases, federal indictments (including the Maduro Indictment),[18] and consultant reports. *See, e.g.,* Farah Aff. ¶¶ 21, 56 (quoting OFAC press releases for over 9 of 38 pages of affidavit); *id.* ¶ 22 (quoting U.S. Attorney press releases); Gaddis Aff. ¶¶ 13, 20 (quoting Maduro Indictment); *id.* ¶ 22 (quoting report written by Farah and Havana Times news article); *id.* ¶ 23 (quoting Wall Street Journal article); Fonseca Aff. ¶ 23 (citing news article); *id.* ¶ 24 (citing magazine article).

Plaintiffs maintain that expert witnesses are entitled to rely on hearsay, but Federal Rule of Evidence 703 only allows qualified experts to rely on hearsay if the expert has employed a reliable methodology in doing so. *See, e.g.*, *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (finding that simply regurgitating hearsay information is not applying a "reliable methodology"); *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2002) (holding expert witness may only rely on hearsay while reliably applying expertise to such hearsay evidence and may not rely on hearsay for any other aspect of testimony). Here, Fonseca, Gaddis, and Farah do not employ a reliable methodology in forming their opinions. They simply recite the contents of the hearsay and make conclusory opinions. Plaintiffs use the affidavits merely as a vehicle for conveying inadmissible hearsay to the Court, and the affidavits should be disregarded entirely.

---

[18] The Maduro indictment is not admissible for any purpose, especially to prove the truth of the allegations contained therein. *Ruffalo's Trucking Serv. v. Nat'l Ben-Franklin Ins. Co.*, 243 F.2d 949, 953 (2d Cir. 1957) ("The indictment, since it was only hearsay, was clearly inadmissible for any purpose."); *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288 (DLC), 2005 WL 375315, at *9 (S.D.N.Y. Feb. 17, 2005) (rejecting use of indictments as inadmissible "hearsay, since the only purpose [was] to offer the documents for the truth of the statements contained in them"). Yet, Plaintiffs argue that the Court may take judicial notice of indictments, but as Plaintiffs' case law makes clear, courts will only take judicial notice of the fact that the indictment exists. ECF No. 363/128 at 25. In any event, the Maduro Indictment is irrelevant because it does not identify any activities by the Bandes Affiliates (or even BANDES) performed on behalf of the FARC.

> **b. The affidavits of Fonseca, Gaddis, and Farah do not allege specific misconduct by the Bandes Affiliates on behalf of the FARC, and the declarations of the Bandes Affiliates confirm they are not agencies or instrumentalities of the FARC.**

The affidavits of Fonseca, Gaddis, and Farrah do not allege any specific conduct by BANDES or the Bandes Affiliates (or any other BANDES affiliate) on behalf of the FARC. Fonseca does not mention BANDES or the Bandes Affiliates at all, and thus does not opine that the Bandes Affiliates are agencies or instrumentalities of the FARC. *See generally* Fonseca Aff. Moreover, the opinions of Gaddis and Farah are improper legal conclusions about agency or instrumentality status. *See United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994) ("It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions."). In addition, Plaintiffs provide no information relating to the time period at issue here, December 2020, when Plaintiffs commenced this action.

Gaddis's affidavit of 22 pages and 36 paragraphs mentions BANDES and the Bandes Affiliates only one time—and that is in the final paragraph of the affidavit, which merely consists of a list of various entities that Gaddis alleges are agencies or instrumentalities of the FARC. Gaddis Aff. ¶ 35. Gaddis does not back up his opinion with any allegations—much less evidence— relating to BANDES or the Bandes Affiliates. *Id.*

Of the 38 pages and 63 paragraphs of the Farah Affidavit, only two paragraphs even mention BANDES or the Bandes Affiliates. Like the Gaddis Affidavit, the final paragraph of Farah's affidavit also includes the Bandes Affiliates as part of a list of alleged agencies or instrumentalities of the FARC. Farah Aff. ¶ 63. Farah, also like Gaddis, does not allege any specific activities by the Bandes Affiliates on behalf of the FARC.

Farah makes one general allegation (in paragraph 58) relating to BANDES and its affiliates: "And several Venezuelan banks have been sanctioned by OFAC, in part for attempting to help Maduro move $1 billion from Venezuela to Uruguay. The U.S. Treasury Department's OFAC made a factual finding that '[r]egime insiders have transformed BANDES and its subsidiaries into vehicles to move funds abroad in an attempt to prop up Maduro.'" Farah Aff. ¶ 58. Farah's allegation has nothing to do with the FARC and does not support any purported association between the Bandes Affiliates (or BANDES), and the FARC. *Id.*; Bandes Uruguay Decl. ¶ 13; Banco de Venezuela Decl. ¶ 16; Banco Bicentenario Decl. at 2-3. As discussed above, the OFAC sanctions against BANDES and its affiliates have nothing to do with the FARC, drug trafficking, or terrorism; and Farah does not claim that the U.S. sanctions involve the FARC, drug trafficking, or terrorism. *Id.*

Farah and Plaintiffs nonetheless rely on a March 22, 2019, U.S. Department of Treasury Press Release announcing U.S. sanctions against BANDES and its affiliates. *See id.*; ECF Nos. 139/65 at 14; ECF Nos. 144/71 at 13. The March 2019 press release, however, includes nothing even remotely relating to the FARC, drug trafficking, or terrorism. *See* ECF No. 109-17, Mar. 22, 2019 Treasury Press Release. While the press release accuses the Maduro government of using affiliates of Bandes to move funds abroad (i.e. alleging that in early 2019 Maduro tried to move over $1 billion from Venezuela to Uruguay), there is nothing at all tying these allegations to the FARC, drug trafficking, or terrorism. *Id.* Instead, the United States claims that the Maduro government has used the banks to evade U.S. sanctions. *See, e.g.,* The Associated Press, Mar. 22, 2019 (https://federalnewsnetwork.com/government-news/2019/03/the-latest-us-sanctions-venezuelas-development-bank/) (noting White House press secretary Sarah Sanders statement that the sanctioned banks are "used by Maduro and his

regime as funds to evade US sanctions and move money out of Venezuela"). None of the OFAC factual findings relating to BANDES or the Bandes Affiliates have anything to do with the FARC, drug trafficking, or terrorism.

The remainder of the Gaddis and Farah affidavits (and the entirety of Fonseca's affidavit) make numerous unsubstantiated and conclusory allegations relating to the Venezuelan government, the Venezuelan military, the Cartel of the Suns, PDVSA and its affiliates generally,[19] Venezuelan government-owned entities generally, and individuals allegedly associated with these entities.[20] *See generally* Fonseca Aff., Gaddis Aff., Farrah Aff.; *see also* ECF Nos. 139/65 at 10-15; ECF Nos. 144/71 at 9-14. Plaintiffs do not provide any evidence that the Venezuelan government or military, that any state-owned entity, or that any individual, ever used the Bandes Affiliates to do anything for the FARC. None of these allegations even purport to relate to BANDES or the Bandes Affiliates, and thus cannot support agency or instrumentality determinations against the Bandes Affiliates.

---

[19] As detailed in Petrocedeño's Motion to Vacate, Plaintiffs have also not demonstrated that PDVSA or its affiliates are agencies or instrumentalities of the FARC. *See* ECF Nos. 409/134; ECF Nos. 420/140 (replies).

[20] Plaintiffs also fail to allege any connection between the individuals allegedly associated with the FARC and the Bandes Affiliates, much less provide any evidence that the individuals were acting on behalf of the Bandes Affiliates when they allegedly did anything for the FARC. *See Levin*, 2019 WL 564341, at *5 ("[N]one of the evidence establishing Tajideen's relationship with Hezbollah actually links him to Iran."); *In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 269 (S.D.N.Y. 2009) ("The plaintiffs additionally assert that Barclays aided and abetted apartheid by permitting one of its directors to serve on an advisory board to the South African Defense Forces. However, not every action taken by a corporate director is within the scope of his or her employment. The plaintiffs have not alleged that the Barclays director served on the board as a Barclays representative."); *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 355 (S.D.N.Y. 2009) ("While corporations may act through agents, not every action of a corporate employee can be attributed to the corporation.").

In contrast to the improper, hearsay-based, and speculative conclusions that Plaintiffs' purported experts make, the Bandes Affiliates have submitted declarations confirming that they are not agencies or instrumentality of the FARC. The Bandes Affiliates are not members of any conspiracy or criminal organization that is involved in drug trafficking, money laundering, or any other illegal activity for the FARC. *See* Bandes Uruguay Decl. ¶¶ 14-26; Banco de Venezuela Decl. ¶¶ 17-29; Banco Bicentenario Decl. at 3-4. The Bandes Affiliates do not launder money for the FARC and have not been used by the Venezuelan government for the purpose of drug trafficking, money laundering, or aiding the FARC. *Id.*

**C.     The FARC is not a "terrorist party."**

On November 30, 2021, the U.S. Department of State removed the FARC's designation as a "Foreign Terrorist Organization" and a "Specially Designated Global Terrorist." *See* Press Statement, Revocation of the Terrorist Designations of the Revolutionary Armed Forces of Colombia (FARC) and Additional Terrorist Designations, U.S. Dep't of State, Nov. 30, 2021, https://www.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-designations/. The State Department recognized that the FARC "formally dissolved and disarmed" following a 2016 Peace Accord with the Colombian government. In that regard, the FARC "no longer exists as a unified organization that engages in terrorism or terrorist activity or has the capability or intent to do so." *Id.*[21]

Because the FARC is no longer a "terrorist party," this Court lacks jurisdiction under TRIA to order the turnover of assets of an alleged agency or instrumentality of the FARC. In *Ruth*

---

[21] In a similar way, on December 1, 2021, the Office of Foreign Assets Control removed the FARC's designation as a "Specially Designated Narcotics Trafficking Kingpin." *See* Specially Designated Nationals List Update, U.S. Dep't of the Treasury, Dec. 1, 2021, https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20211201.

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, Judge Cote held the blocked assets of the Democratic Republic of North Korea (the "DPRK") could not be seized under TRIA because, among other things, the DPRK was no longer a terrorist party at the time the court entered a final order to turn over the assets. 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) (*vacated in part on other grounds by Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014)). Interpreting the plain language of TRIA, the court reasoned: "The language of [TRIA § 201] presumes that the 'terrorist party' against which a petitioner 'has obtained a judgment' is still a 'terrorist party' at the time its blocked assets 'shall' be subject to attachment." *Id.* at 395-96.

Moreover, "the Supreme Court has determined that this passage of TRIA § 201 speaks as of the date <u>when a court rules on an application for turnover</u>, not the date when a judgment creditor's claim arises." *Id.* at 396 (emphasis added). "For these reasons, <u>the most natural reading of TRIA § 201(a) is that is requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the enforcement proceeding</u>." *Id.* (emphasis added). Judge Cote explained:

> This interpretation also makes intuitive sense. Prior to any enforcement proceeding, the parties engage in private litigation. The government intervenes directly in these private proceedings through TRIA only at the moment of enforcement, when a party seeks special access to the "the blocked assets of [a] terrorist party" to satisfy a judgment. <u>The impact of TRIA thus occurs at the moment of enforcement, not the moment of judgment in the underlying action or the bringing of an initial claim.</u>

*Id.* at 396 (emphasis added).[22]

---

[22] For the Court's benefit, *Calderon-Cardona* was vacated in part and affirmed in part by the Second Circuit, though on grounds unrelated to the holding set forth above, which was not addressed by the Second Circuit. *See Calderon-Cardona*, 770 F.3d at 999, 1000, 1002.

Here, Plaintiffs have invoked TRIA to collect on their judgment against the FARC. Accordingly, because the FARC is no longer a "terrorist party," and in light of *Calderon-Cardona*, the Court lacks jurisdiction under TRIA to enforce Plaintiffs' judgment against the FARC.

## CONCLUSION

The Bandes Affiliates respectfully request that the Court: (i) vacate its Orders dated January 7, 2021 (ECF Nos. 130/58); (ii) quash the Writs of Execution issued to Equiniti and Citibank; (iii) deny Plaintiffs' Turnover Motions (ECF Nos. 138/64, 143/70); (iv) dismiss the Interpleader Complaints filed by Equiniti (*Stansell* ECF No. 208) and Citibank (*Stansell* ECF No. 225); and (v) dismiss the entirety of these actions with prejudice as to the property interests of the Bandes Affiliates.

Dated:  March 1, 2022

Respectfully submitted,

*s/Marcos Daniel. Jiménez*
Marcos Daniel Jiménez
New York Bar No. 4881736
**Marcos D. Jiménez, P.A.**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone: 305-570-3249
Email: mdj@mdjlegal.com

*Counsel for Banco de Venezuela S.A.,*
*Banco Universal, Banco Bandes Uruguay,*
*S.A., and Banco Bicentenario del Pueblo,*
*de la Clase Obrera, Mujer y Comunas,*
*Banco Universal, C.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>*//s// Marcos D. Jiménez* (NY 4881736)</u>
Marcos D. Jiménez