**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

**STANSELL, et al.,**

                        Claimants,

    vs.

**Revolutionary Armed Forces of Colombia (FARC), et al.,**

                        Defendants.

Case No.: 1:16-mc-00405-ALC

**SAMARK JOSE LÓPEZ BELLO AND YAKIMA TRADING CORPORATION'S OBJECTIONS TO THE REPORT AND RECOMMENDATION FILED MARCH 29, 2022**

Jeffery M. Scott, Esq.
Kerri E. Chewning, Esq.
ARCHER & GREINER, P.C.
1717 Arch Street
Suite 3500
Philadelphia, PA 19103
Tel: 215-279-9693
Email: jscott@archerlaw.com
Email: kchewning@archerlaw.com

The Report erred in recommending that Claimants' "full" Anti-Terrorism Act ("ATA"), 18 U.S.C. 2331, *et seq.* judgments are compensatory in nature and fully collectible under the Terrorism Risk Insurance Act of 2002 ("TRIA § 201(a)").

## I. The Report Failed to Consider the ATA's Statutory History and Misapplied Congress' Intent.

### A. ATA Treble Damages Are Punitive.

The central question addressed in the Report, and to which Intervenors object, is whether the treble damages provision set forth in the ATA "has a punitive or compensatory function." Report at 26. The ATA default judgments at issue were not entered against Intervenors; they are not the original judgment debtors who failed to appear and defend in the underlying matter. Rather, Claimants seek to hold Intervenors vicariously liable through TRIA for the criminal acts of others.

In deciding this question, the Court's "principal task is 'to afford the law's terms their ordinary meaning at the time Congress adopted them.'" *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021). If the terms of the statute are unambiguous, then the "sole function" is to "enforce [the statute] according to its terms." *Id.* If the statute is ambiguous, however, the Court must turn to extrinsic materials, such as legislative history, "to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.*; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 486 (1977) (analyzing Clayton Act treble damages); *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 152 (1987) (applying framework to RICO).

TRIA is unambiguous; it only subjects "blocked assets" to execution "to the extent of any compensatory damages." The Report found that the underlying Judgments are compensatory and fully collectible under the ATA despite the imposition of treble damages. This was in error because treble damages are not compensatory.

The relevant text of the ATA reads:

Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may

>sue therefor … and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333.  The statute is silent as to whether the phrase "threefold of damages he or she sustains" has a compensatory or punitive function. The ordinary meaning of the term "threefold of damages he or she sustains" is exactly as it sounds.  The Supreme Court has determined that phrases like "threefold of damages," necessarily imply, "that recovery will exceed full compensation." *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 131 (2003).

The definition of compensatory and punitive damages are critical.

>"Actual damages" compensate for actual injury, and thus the term is synonymous with compensatory damages ("*See* Black's 467 (defining "compensatory damages" as damages that "will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury"). … "[c]ompensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered."

*F.A.A. v. Cooper*, 566 U.S. 284, 306–07 (2012); *compare with* PUNITIVE DAMAGES, Black's Law Dictionary (11th ed. 2019) ("Damages awarded in addition to actual damages").

The question then is what "textual and structural clues" within the ATA itself, and what relevant extrinsic evidence addressing the statute, shed a reliable light on the Legislature's understanding of these terms when it adopted them. *Bedi,* 15 F.4th at 226.

The Report erred when it relied upon three factors to find that treble damages are compensatory for purposes of TRIA.  Those factors were: (1) "comparable" provisions in RICO and the Clayton Act; (2) textual differences between 28 U.S.C. § 1605A and 28 U.S.C. § 1605B ("JASTA"); and (3) the "incentive structure" for victims of international terrorism.  These factors do not support the conclusion that the ATA's treble damages provision is compensatory.

The legislative intent in passing the ATA was different from Congress' intent with respect to the Clayton Act or RICO.  Section 2333 is codified in the criminal code and was passed to "fill the gap in the law by establishing a civil counterpart to the existing criminal statute."  136 Cong. Rec.

S14279-01; S14279-01, S14283, 1990 WL 142121. "To prevail [under the ATA], a plaintiff must prove that the defendant would have violated any one of a series of predicate criminal laws had the defendant acted within the jurisdiction of the United States." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 122 (D.C. Cir. 2011); *see also* 18 U.S.C. §2331 (international terrorism is "a violation of the criminal laws of the United States or of any State").

Further, the ATA "evinces a clear congressional intent to deter and punish acts of international terrorism." *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 238 (D.R.I. 2004). Deterring future acts of terrorism does not "compensate the injured party for the injury sustained." The ATA's legislative history states that the ATA was designed to "deter and punish acts of terrorism."[1] *See* 136 Cong. Rec. S14279-01; S14279-01, S14284, 1990 WL 142121; *see also* JUSTICE AGAINST SPONSORS OF TERRORISM ACT 162 Cong. Rec. S2845-01, 162 Cong. Rec. S2845-01, S2846 (Statement of Senator John Cornyn) (noting that the "promise of the original [ATA] . . . was intended to 'interrupt, or at least imperil, the flow of money' to terrorist groups."); *see also Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 1:18-CV-25337-KMM, 2020 WL 7481302, at *6 (S.D. Fla. May 20, 2020) ("the trebling of damages and extensive legislative history evidenc[e] the statute's deterrent and punitive purposes").

Senator Charles Grassley, explained that the ATA was designed to both "deter and punish acts of terrorism" and bring "justice" to victims of international terrorism by holding terrorists accountable "where it hurts the most: at their lifeline, their funds." *See* 136 Cong. Rec. S14279-01, 136 Cong. Rec. S14279-01, S14284, 1990 WL 142121; *see also* 137 Cong. Rec. S4511-04, 137; S4511-04, 1991 WL 56141 (statement of Sen. Grassley) explaining that the ATA was a way to "fight

---

[1] The Report mentioned the legislative history of the ATA as set forth in *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013). *Linde* did not address whether the treble damages provision was punitive or compensatory and the quoted portion arose (in dicta) in the panel's discussion of principles of international comity. It is not instructive on the construction of the damages.

3

terrorism and equip victims with civil remedies for terrorists' acts"). Thus, the legislative history demonstrates the ATA was intended to "deter and punish acts of terrorism."

Contrary to the Report's determination, the ATA's legislative history is most similar to the False Claims Act ("FCA"), which, "[a]ccording to its sponsor, was adopted 'for the purpose of punishing and preventing . . . frauds.'" *United States v. Bornstein*, 423 U.S. 303, 310 (1976).

Both "RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees. Both statutes bring to bear the pressure of 'private attorneys general' on a serious national problem." *Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987). The objective in both the Clayton Act and RICO is achieved by way of "the carrot of treble damages." *Id.* Both statutes aim to compensate for economic injury and each requires a plaintiff show injury "in his business or property by reason of" a violation. *Id.*

The legislative history of the Clayton Act and RICO show that those statutes were designed to incentivize individuals to bring suits that are often complex and "challenging yet publicly beneficial" (*e.g.* those advancing economic policy and lack of adequate prosecutorial resources). *See* Report at 32; *Brunswick Corp.*, 429 U.S. 477, 486 (explaining that the legislative history of the Clayton Act saw "treble-damages suits as an important means of enforcing the [RICO] law"). Claims under both the Clayton Act and RICO often take years to prove, involve complex and expensive expert testimony, and can involve relatively small violations. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012); *Malley-Duff & Assocs., Inc.*, 483 U.S. at 154.

International terrorism, in contrast, is "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. § 2331. There is nothing in the legislative history of the ATA to indicate that the trebling provisions were included to "incentivize" claimants to seek recovery for criminal acts of "international terrorism."

The Report incorrectly concludes that treble damages will act as an economic incentive because a party may not be able to collect a judgment against a foreign terrorist. *Cf.* Report at 30-31 This rationale is flawed because potential difficulties in collecting a judgment cannot be remedied by increasing the potential recovery. Additionally, the collectability of a judgment is very often speculative regardless of basis for the judgment. *See Villoldo v. BNP Paribas S.A.,* 648 F. Appx. 53, 55 (2d Cir. 2016) ("The hope of collecting upon a judgment … is precisely the sort of mere expectation that is too speculative to constitute a property right."). Absent an indication that ATA treble damages were included to incentivize a private cause of action, the purpose of treble damages under RICO and the Clayton Act are not instructive and the Report erred in relying upon them.

**B.     Companion Anti-Terrorism Statutes Are Not Appropriate Comparatives on the Punitive Damages Question.**

JASTA modified the FSIA to allows claims for damages against foreign states in any case "in which money damages are sought against a foreign state for personal injury or death occurring in the United States" caused by "the tortious act or omission of that foreign state" on U.S. soil. *See* 28 U.S.C. § 1605B(b); JASTA § 3(a) (adding 28 U.S.C. § 1605B, "Responsibility of foreign states for international terrorism against the United States"). Under this provision, victims of terrorism in the United States can bring claims against foreign states regardless of whether they were designated as a "state sponsor of terrorism" at the time of the terrorist act. *Compare* 28 U.S.C. § 1605B(b) *with* 28 U.S.C. § 1605A(a)(2)(A)(i)(I) (requiring that foreign state have been designated as a state sponsor of terrorism at the time of the act "or was so designated as a result of such act").

"JASTA's history… reflects Congress's clear intent to provide an exception to the FSIA's presumptive immunity for foreign states in order "to hold foreign sponsors of terrorism that target the United States accountable in Federal courts." *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1160 (N.D. Cal. 2017). Other circuit courts have cautioned against injecting FSIA principles into TRIA collection cases.  *Stansell v. FARC,* 771 F.3d 713, 730 (11th Cir. 2014).  JASTA is inapplicable in

5

this TRIA case because there are no foreign state sponsors of terrorism which trigger application of any FSIA provision. Thus, the Report erred when it failed to focus on the ATA in deciding the question presented.

"The ATA has three essential elements. First, a U.S. national must have suffered an injury. Second, there must have been an act of international terrorism. And third, the U.S. national's injury must have occurred 'by reason of' the act of international terrorism. That is, there must be some causal connection between the act of international terrorism and the U.S. national's injury." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018). In 2016, JASTA amended the ATA to permit relief against "'any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed ... an act of international terrorism.'" 18 U.S.C. § 2333(d)(2). *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 494 (2d Cir. 2021).

An aiding-abetting claim under the ATA requires proof of the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation. *Id.* at 503 (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

The plain meaning of the amendments to the ATA require proof of knowledge or scienter of on the part of the alleged entity who has alleged to aid and abet an act of terrorism. JASTA did not amend the treble provision of the ATA, which has been interpreted as **punitive** by numerous courts.

The treble damages section of the ATA has a punitive aim. As the Report notes, courts have interpreted § 2333 to require that a defendant act with some scienter above negligence, independent of any scienter required to commit the predicate act of international terrorism. *Owens*, 897 F.3d at 270 (citing *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692-93 (7th Cir. 2008) (*en banc*)); *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 515 (S.D.N.Y. 2014); *Gill v. Arab*

6

*Bank, PLC*, 893 F. Supp. 2d 474, 503 (E.D.N.Y. 2012); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 42 (D.D.C. 2010).

"The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981); *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 784–86 (2000); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 642 (7th Cir.2003); *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 435–36 (7th Cir.1989); *United States v. Mackby*, 261 F.3d 821, 830–31 (9th Cir.2001).

> Punitive damages are rarely if ever imposed unless the defendant is found to have engaged in deliberate wrongdoing. "Something more than the mere commission of a tort is always required for punitive damages." There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton."

*Boim*, 692–93 (internal citations omitted).

The Report dismissed cases that have held that the treble damages provision of the ATA is punitive in order to reach a desired conclusion. (Report at 34-36). *See Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 82 (D.R.I. 2004) (observing the punitive nature of the ATA). The Report does not rely on any controlling case negating the persuasive reasoning of *Boim*, 549 F.3d at 692-93. The Report's statement that "[t]he issues that animated *Boim* have thus become less salient," is not supported by the plain meaning and legislative history of the ATA.

## II. The Report Improperly Analyzed the "Course of Particular Litigation."

The Report incorrectly relied on three components of the procedural history in the underlying cases from the Middle and Southern Districts of Florida. *See* Report at 36-37. Reliance on the procedural history was incorrect and not what was intended by the Supreme Court in *Chandler*.

It is clear that *Chandler* was not considering the procedural history of the subject FCA litigation in evaluating the question of punitive damages. Rather, the Court considered the underlying

7

case <u>before</u> entry of final judgment and not the post-judgment collection process. A proper evaluation of the "course of this particular litigation" must end at the entry of default judgment in 2010 <u>not</u> when the TRIA action was commenced in 2019.

As illustrated below, the "course of particular litigation" in this matter does not support a finding that the Claimants' damages are purely compensatory. Claimants here incurred very little "cost" in litigating the underlying matters to final default judgment. *See Chandler,* 538 U.S. at 130-131 (identifying costs like "detection and investigation" of fraud as showing that an award may be compensatory as opposed to punitive). No FARC defendants ever appeared, and Claimants proceeded by default. No party challenged any damages calculations or their purpose prior to this 2019 TRIA action being initiated. There was no delay in obtaining the final default judgments.

The other factors identified by the Report do not alter this result. First, as noted, these factors are not the traits the Court envisioned when it used the term "course of particular litigation." Second, the Court in *Stansell III* did not determine whether the treble damages were compensatory or punitive. *Stansell III*, 8:09-cv-02308-CEH-AAS, M.D. Fla. ECF Dkt. 1222.

Third, although *Stansell I* did not use the phrase "punitive damages," no defendant responded to, or challenged, Claimants' proposed analysis or form of order. Thus, the Middle District Court did not have occasion to – and did not – decide the compensatory versus punitive question. Moreover, the Court's Opinion confirms that the underlying award is at least partially punitive. When analyzing Plaintiff's proposed damages, Judge Lazarra relied on cases awarding similar damage awards comprised of a *per diem* calculation and an additional lump sum. Each of those cases characterized the *per diem* amounts and "lump sum" as "compensatory," and then separately discussed the issue of punitive damages. *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1, 20 (D.D.C. 2007) ("Plaintiffs are not seeking to recover punitive damages."); *Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 236 (D.D.C. 2002) (characterizing the lump sum as compensatory and awarding additional

8

punitive damages); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 269 (D.D.C. 2002) (providing for "additional compensation," and awarding punitive damages); *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 69 (D.D.C. 1998) (awarding additional lump sums for pain and suffering and noting that it must "avoid[] any punitive component"); *Acree v. Republic of Iraq*, 271 F. Supp. 2d 179, 224 (D.D.C. 2003) (awarding a lump sum and punitive damages); *Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120, 134 (D.D.C. 2005) (awarding a lump sum and stating that "[p]unitive damages are not available against foreign states."). In other words, each of the comparators relied upon by Judge Lazzara concluded that *per diem* and lump sum awards were sufficient to "compensate" Claimants for their injuries and any remaining sums were punitive.

Here, Claimants received a *per diem* and lump sum consistent with other "compensatory" awards. Those compensatory awards were then trebled. Accordingly, the initial awards, fully "compensated" Claimants for their loss (at least as compared to other victims of international terror with similar losses), and the remaining $212,020,000 was awarded to punish the original defendants.[2] *See* 136 Cong. Rec. S14279-01; S14279-01, S14284, 1990 WL 142121. Those trebled amounts are thus outside the scope of compensatory damages allowable under TRIA.

Fourth, *Stansell II* does not bind this court or alter this result. As noted, the ATA is not "similar to RICO and the Clayton Act." *Stansell II*, No. 19-20896-CIV, 2020 WL 4692748, at *1. Rather, the ATA was specifically designed to "punish and deter" acts of international terrorism. *See* 136 Cong. Rec. S14279-01; S14279-01, S14284, 1990 WL 142121. And, as confirmed in Judge Lazarra's analysis in *Stansell I*, the trebled portion of the award here has the same effect as a punitive damage award in other actions under Section 1605A.

---

[2]The surplus portion of the trebled award is roughly equal to the "punitive damages" awards in other cases under Section 1605A. *See, e.g.*, *Cronin*, 238 F. Supp. 2d at 236; *Surette*, 231 F. Supp. 2d at 269 (D.D.C. 2002).

9

Finally, the various garnishment orders have little to no value in the analysis, and, in fact, only serve to further prove Intervenors' point. A review of the docket in *Stansell I* shows that the district court signed each of the garnishment orders – which were, not coincidentally, drafted and submitted by Claimants' counsel – without modification, and typically within one day of submission. *Compare Stansell I,* ECF No. 260-5 (reflecting a 10-page order submitted on Jan. 31, 2010) *and* ECF No. 261 (reflecting the same 10-page order signed without modification on February 1, 2010); *see also* ECF No. 251 & 252 (reflecting one day between submission and entry).

Additionally, at least one of the garnishment orders cited in the Report was overturned by the Eleventh Circuit because it was based on a fundamental legal error, *e.g.* that the "assets" which Claimants hoped to execute upon were not "blocked assets" under TRIA. *See Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 917 (11th Cir. 2013)[3] (noting that "the district court's judgment in favor of Appellees relied on an erroneous interpretation of the Terrorism Act," and reversing the writ of garnishment docketed at *Stansell I,* ECF No. 261); *see also* Report at 37 (relying on ECF No. 262 as evidence that the underlying judgment is compensatory).

Reducing the characterization of an award as punitive or compensatory to the vagaries of the collection process appears nowhere in the Supreme Court's guidance and fails to appreciate that a final judgment significantly alters the rights of the parties. *See generally Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 204 (1999) (explaining that a final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). The Report erred in concluding that the entirety of the underlying judgment was compensatory.

---

[3] In this regard, *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d at 913 has little value in the present analysis, other than to perhaps show that the writs of garnishment were not intended to resolve substantive legal issues like the one presented here.

10

## III. CONCLUSION

For these reasons, Intervenors respectfully request this Court reject the March 29, 2022 Report and Recommendation.

Dated: May 12, 2022

                                             ARCHER & GREINER
A Professional Corporation
630 Third Avenue
New York, NY 10017
(609) 580-3700
Attorneys for The Intervenors

By: */s/ Jeffrey M. Scott*
      Jeffrey M. Scott
      Kerri E. Chewning

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been filed via the Court's CM/ECF system, which will send an electronic copy of the foregoing to all counsel of record, on May 12, 2022.

/s/ Jeffrey M. Scott

223993225v5