# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

KEITH STANSELL, *et al.*,

        *Plaintiffs,*

    v.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), *et al.*,

        *Defendants,*

    v.

CITIBANK, N.A., SUMITOMO MITSUI BANKING CORP. and EQUINITI TRUST COMPANY,

        *Garnishees & Third-Party Plaintiff Garnishees,*

    v.

KEITH STANSELL, *et al.*,

        *Third Party Defendant Adverse Claimants.*

Case No. 1:16-mc-00405 (LGS) (SN)

**MEMORANDUM OF LAW IN SUPPORT OF THE GARNISHEES' MOTION FOR AUTHORIZATION TO SERVE VENEZUELAN PARTIES BY ALTERNATIVE MEANS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 4(f)(2)(A) AND 4(f)(3)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

      A.      Political Landscape in Venezuela ...................................................... 2

      B.      Interpleader Actions and Garnishee Service Efforts .............................. 3

            1.      Citibank ................................................................................. 3

            2.      SMBC .................................................................................... 7

            3.      Equiniti ................................................................................. 10

ARGUMENT ............................................................................................................. 11

I.      THIS COURT SHOULD APPOINT GARNISHEES' VENEZUELAN LAW
          FIRM AS A SPECIAL PROCESS SERVER PURSUANT TO FEDERAL RULE
          OF CIVIL PROCEDURE 4(f)(2)(A) .......................................................... 12

II.     THIS COURT HAS DISCRETION TO AUTHORIZE ALTERNATIVE
          METHODS OF SERVICE PURSUANT TO FEDERAL RULE OF CIVIL
          PROCEDURE 4(f)(3) .............................................................................. 14

III.    SERVICE OF PROCESS THROUGH U.S. COUNSEL PURSUANT TO
          FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3) IS WARRANTED AND
          APPROPRIATE .................................................................................... 16

      A.      The Proposed Method of Alternative Service is Not Prohibited by Any
             International Agreement With Venezuela ........................................... 16

      B.      The Proposed Method of Alternative Service Comports With Notions of
             Due Process Because it is Reasonably Calculated to Provide the
             Venezuelan Third Parties With Notice of the Garnishees' Claims for
             Interpleader Relief ....................................................................... 17

      C.      The Court's Intervention is Necessary Because the Garnishees Reasonably
             Attempted to Effectuate Service Through the Hague Convention, But
             Service Has Proved Ineffective ....................................................... 20

CONCLUSION .......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 240 F.R.D. 608 (S.D.N.Y. 2007) ............................................................13

*Arista Recs. LLC v. Media Servs. LLC*,
 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008)...........................................20

*Banco Latino, S.A.C.A. v. Gomez Lopez*,
 53 F. Supp. 2d 1273 (S.D. Fl. 1999) .......................................................13

*In re BRF S.A. Sec. Litig.*,
 2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ............................................15

*Brockmeyer v. May*,
 383 F.3d 798 (9th Cir. 2004) ...................................................................13

*Caballero v. FARC*,
 No. 1:20-mc-0040-LJV(W.D.N.Y .............................................................18

*In re Cyrus II P'ship*,
 392 B.R. 248 (Bankr. S.D. Tex. 2008) .....................................................13

*Havlish v. Bin Laden*,
 No. 03-cv-9848, Dkt. No. 614 (S.D.N.Y. Apr. 5, 2022)..........................15

*In GLG Life Tech Corp. Sec. Litig.*,
 287 F.R.D. 262 (S.D.N.Y. 2012) ..................................................15, 16, 17

*Jian Zhang v. Baidu.com Inc.*,
 293 F.R.D. 508 (S.D.N.Y. 2013) ..................................................16, 18, 20

*Lumar Aviation, Inc. v. El Consorcio Venezolano De Industrias Aeronauticas*,
 2018 WL 3109625 (S.D. Fla. Mar. 16, 2018) ..........................................14

*Med. Corp. v. McGonigle*,
 955 F.Supp. 374 (E.D. Pa. 1997) .............................................................14

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
 2018 WL 11222556 (S.D.N.Y. Apr. 6, 2018)...........................................15

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) ..............................................17

### TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*RSM Prod. Corp. v. Fridman*,
  2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)..........................................................................16

*United States v. Besneli*,
  2015 WL 4755533 (S.D.N.Y. Aug. 12, 2015)..........................................................................15

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
  2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)...................................................................16, 18

*Zanghi v. Ritella*,
  2020 WL 589409 (S.D.N.Y. Feb. 5, 2020)......................................................................12, 15

**Other Authorities**

Fed. R. Civ. P. 4 ............................................................................................................ *passim*

*Privileged and Confidential*
*Attorney Work Product*

Citibank, N.A. ("Citibank"), Sumitomo Mitsui Banking Corporation ("SMBC"), and Equiniti Trust Company ("Equiniti") (together, the "Garnishees"), by and through undersigned counsel, respectfully submit this memorandum of law in support of their joint motion for leave to seek alternative means of service on Venezuelan entities Banco de Venezuela, Venezuelan Heavy Industries C.A. ("VHI"), Petrocedeño S.A. ("Petrocedeño"), Petrowarao S.A. ("Petrowarao"), Banco Bicentenario Banco Universal CA, Aceites y Solventes Venezolanos Vassa S.A., Venfleet Asphalt Ltd., and Petro San Felix SA (a/k/a Petrolera Zuata S.A.) (together, the "Venezuelan Third Parties") pursuant to Federal Rules of Civil Procedure 4(f)(2)(A) and 4(f)(3).

## PRELIMINARY STATEMENT

The Garnishees are disinterested neutral stakeholders seeking interpleader relief as to funds held in accounts belonging to certain Venezuelan entities (the "Garnishee Accounts") that are subject to competing claims asserted by several different claimants, including the Venezuelan Third Parties. As set forth in detail below, the Garnishees have undertaken diligent efforts to ensure that proper notice of the interpleader claims is given to each of the claimants. Notwithstanding these efforts, the Garnishees have been unable to achieve service on the Venezuelan Third Parties, in part because of the challenges associated with effectuating service in Venezuela under the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").

In order to ensure that proper notice is given to the Venezuelan Third Parties—and so the Court can fully discharge and release each of the Garnishees from any and all liability to any potential claim to the Garnishee Accounts—the Garnishees now seek authorization to serve these entities through alternative means pursuant to Federal Rules of Civil Procedure 4(f)(2)(A) and 4(f)(3). Specifically, the Garnishees request an Order authorizing and deeming effective each of the following methods of service on the Venezuelan Third Parties: (1) personal delivery in

Venezuela by a Venezuelan law firm in accordance with Venezuelan law; and (2) through the entities' respective U.S. counsel. The Garnishees intend to pursue both of these methods of service, and respectfully request that each be deemed sufficient under Rules 4(f)(2)-(3).

## FACTUAL BACKGROUND

### A.    Political Landscape in Venezuela

Venezuelan President Nicolás Maduro was first elected Venezuela's President in April 2013, taking over from the late President Hugo Chávez. Omaña Decl. ¶ 5. Most Venezuelan judges are members of the same political party as Mr. Maduro or are otherwise loyal to Mr. Maduro and to the Executive Branch. *Id.* ¶ 4. Mr. Maduro's re-election as President of Venezuela in May 2018 attracted international controversy and challenges from the Venezuelan opposition. *Id.* ¶ 5. Although the Supreme Court of Venezuela recognized Mr. Maduro as President, the opposition claims that Venezuela's judiciary is not independent from its Executive branch and Mr. Juan Guaidó, the head of Venezuela's legislature, declared himself "interim president" in January 2019. *Id.* ¶¶ 5-7.

The United States recognizes Mr. Guaidó as the President of Venezuela, and does not have formal diplomatic relations with Mr. Maduro's government, but Mr. Maduro's government retains control over the Venezuelan territory, the army and government-owned enterprises including Petróleos de Venezuela, S.A. ("PDVSA"). *Id.* ¶¶ 8-9.

Under the Hague Convention, the Venezuelan Ministry of the Popular Power for Foreign Relations (the "Ministry") has been appointed as Venezuela's Central Authority, but it is rejecting or returning foreign service packages that come from the United States. *Id.* ¶¶ 20-22.

B.      **Interpleader Actions and Garnishee Service Efforts**

1.      Citibank

On April 29, 2021, Citibank filed two third-party complaints seeking interpleader relief as to security entitlements and/or cash related to: (i) Banco de Venezuela, and (ii) Aceites y Solventes Venezolanos Vassa S.A., Venfleet Asphalt Ltd., and Petro San Felix SA (a/k/a Petrolera Zuata S.A.) (the "PDVSA Subsidiaries"). We address the background surrounding each Citibank third-party complaint and service thereof in turn below.

a.      Banco de Venezuela

On April 29, 2021, Citibank filed a third-party complaint seeking interpleader relief for certain assets held in an account in the name of Clearstream Banking S.A. ("Clearstream"). Assets in the account have been blocked pursuant to regulations of the Office of Foreign Assets Control ("OFAC") because Banco de Venezuela may be the ultimate beneficiary of the assets at issue. (Dkt. No. 225 ¶¶ 1, 16, 22-23). The assets are subject to competing claims by several different claimants including Banco de Venezuela, Clearstream, the *Stansell* Plaintiffs, the *Pescatore* Plaintiffs, and Antonio Caballero. *Id.* ¶¶ 22-26, 34. Citibank also filed a request for the issuance of summons (Dkt. No. 226), which was issued on April 30, 2021. (Dkt. No. 231). As reflected on the summons, Banco de Venezuela is located in Venezuela. *Id.* at 3.

Service on the *Stansell* Plaintiffs, the *Pescatore* Plaintiffs, Clearstream, and Antonio Caballero has been effectuated through their respective counsel. Declaration of Mohammad B. Pathan, dated November 10, 2022 ("Pathan Decl.") ¶ 4. The *Stansell* Plaintiffs and the *Pescatore* Plaintiffs filed a joint answer to the third-party complaint filed by Citibank as to Banco de Venezuela on May 5, 2021.[1] (Dkt. No. 256). Mr. Caballero filed an answer to Citibank's third-

---

[1] The *Pescatore* Plaintiffs and the *Stansell* Plaintiffs filed an amended Answer on May 18, 2021. (Dkt. No. 273).

party complaint on that same date.  (Dkt. No. 258).  Clearstream waived service of the third-party complaint on May 7, 2021.  Its deadline to respond to the third-party complaint has been extended until 21 days after briefing is completed regarding the Statement of Interest filed in *Caballero v. FARC et al.*, No. 1:20-mc-00040 (W.D.N.Y.).  (Dkt. Nos. 337, 350, 407, 438, 468, 476).

Counsel for Citibank also had various communications with the law firms that it understood may represent Venezuelan entities in this matter to seek service waivers with respect to Banco de Venezuela, but none of these firms are authorized to accept service.  Pathan Decl. ¶¶ 8-12.

- Marcos D. Jiménez P.A., and Leon Cosgrove LLP, who represent several agencies and instrumentalities of Venezuela were contacted to determine whether their firms would accept service of process on behalf of Banco de Venezuela.  No such confirmation was forthcoming.

- White & Case LLP ("White & Case"), which claims to represent Petróleos de Venezuela, S.A. entities in this and other matters were contacted to determine whether it represents Banco de Venezuela and would accept service of process of Citibank's third-party complaint.  White & Case advised that it does not represent Banco de Venezuela.

- Edmonds Marshall McMahon (UK Counsel), a law firm which represents the Ad Hoc Board for Banco de Desarrollo Económico y Social de Venezuela, the parent company of Banco de Venezuela was contacted to determine whether Banco de Venezuela was willing to waive service of process.  Lawyers in that firm indicated that they were not in a position to respond to our request and, to date, have not agreed to accept or waive service of process.

- Marcos D. Jimenez of Marcos D. Jiménez P.A. appeared in this lawsuit as counsel for Banco de Venezuela, but stated in his notice of appearance that Banco de Venezuela, among the other Venezuelan entities on whose behalf he appeared, "do not consent to

jurisdiction in this Court and reserve all rights [and] defenses … including … lack of service of process."  (Dkt. No. 361 at n.1); Pathan Decl. ¶ 12.

        b.    <u>PDVSA Subsidiaries</u>

On April 29, 2021, Citibank filed a third-party complaint seeking interpleader relief with respect to certain funds held in blocked accounts at Citibank in the name of the PDVSA Subsidiaries.  Cagney Decl. ¶ 2.  The assets in the blocked accounts held by Citibank are subject to competing claims by several different judgment creditors, including the *Stansell* and *Pescatore* Plaintiffs and Antonio Caballero.  *Id.*  The *Stansell* and *Pescatore* Plaintiffs and Mr. Caballero timely answered the interpleader complaint and waived any objections based on service of process. *Id.* ¶ 4.

Immediately after the summonses were issued, Citibank provided copies of the pleadings and summonses to two sets of attorneys that had purported to represent the PDVSA Subsidiaries: (1) Marcos D. Jiménez P.A. and Leon Cosgrove LLP which, on information and belief, derive their authority, directly or indirectly, from Mr. Maduro's government; and (2) White & Case LLP, which derives its authority from the Ad Hoc Board for PDVSA appointed by Venezuela's Interim President Juan Guaído.  *Id.* ¶ 7.  To ensure a full and complete discharge of liability, Citibank has made efforts to ensure both sets of representatives are properly served or waive service.

On June 3, 2021, White & Case returned an executed Waiver of Service on behalf of the PDVSA Subsidiaries, and later moved to dismiss Citibank's interpleader complaint on October 1, 2021, without challenging service of process of the interpleader.  *Id.* ¶ 9.  Mr. Jiménez, however, has contested White & Case's ability to represent the PDVSA Subsidiaries, cited their waiver of service as a reason why White & Case was purportedly failing to adequately represent the PDVSA Subsidiaries' interests, and purports to have reserved all of the PDVSA Subsidiaries' objections to service.  *Id.* ¶¶ 10-11. In email correspondence in May 2021 and October 2021, Mr. Jiménez and

Leon Cosgrove also indicated that "[o]ur client, however, is unable to waive service of process" and "[a]s of now, our clients have instructed us not to accept service or aid in facilitating service." *Id.* ¶¶ 7, 12.

c.   Attempts to Serve Via the Hague Convention

In addition to its attempts to engage counsel, Citibank also retained the services of an international process server ABC Legal Services, Inc. ("ABC Legal") to effect formal service on Banco de Venezuela and the PDVSA Subsidiaries pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").  Pathan Decl. ¶ 13; Cagney Decl. ¶ 14.  ABC Legal has been the official service of process contractor for the United States Department of Justice since 2003 and manages all formal service of process coming into the United States under the Hague Convention along with outgoing requests under the Inter-American Convention on Letters Rogatory.  *See, e.g.*, Declaration of Ramona Holmes in Support of Citibank, N.A.'s Motion for Alternative Service, dated June 24, 2022 ("Holmes Citi 6/24 Decl.") ¶ 4.  ABC Legal prepared the necessary materials for service under the Hague Convention.  The service package consisted of original and translated copies of (i) redacted and unredacted copies the relevant third-party complaint for each entity, (ii) the corresponding summonses, and (iii) Plaintiffs' corresponding turnover motion and associated filings, along with a Model Form Request for Service Abroad of Judicial or Extrajudicial documents.  *See id.* ¶ 7, Ex. A.

Banco de Venezuela and the PDVSA Subsidiaries are located in Venezuela, with the exception of Venfleet Asphalt Ltd., which had an address in Bermuda according to Citibank's records.  Cagney Decl. ¶ 3.  According to the Bermudian Registrar of Companies, however, Venfleet Asphalt Ltd.'s directors were all located at an address in Venezuela, and thus Citibank attempted to serve Venfleet Asphalt Ltd. at both addresses.  *Id.*  Venezuela requires that all service

6

requests be sent to its Central Authority. *See, e.g.*, Holmes Citi 6/24 Decl. ¶ 6. The United Parcel Service attempted on several occasions in July, August, and September 2021 to deliver the service packages to the Venezuelan Central Authority but could not complete delivery, and the Central Authority refused to respond to UPS's attempts to contact them. *Id.* ¶ 8; Declaration of Ramona Holmes in Support of Citibank, N.A.'s Motion for Alternative Service, dated September 8, 2022 ("Holmes Citi 9/8 Decl.") ¶ 8. Citibank's efforts to serve Venfleet through the Central Authority for Bermuda have been similarly unsuccessful to date. Declaration of Ramona Holmes in Support of Citibank, N.A.'s Motion for Alternative Service, dated September 9, 2022 ("Holmes Citi 9/9 Decl.") ¶¶ 7-8.

2.     <u>SMBC</u>

On April 30, 2021, SMBC filed three third-party complaints seeking interpleader relief as to funds held in accounts belonging to (1) VHI, (2) Petrocedeño, and (3) Petrowarao. *See* Dkt. Nos. 234, 236, 238. The funds held by SMBC have been blocked pursuant to applicable regulations of the OFAC and are subject to competing claims asserted by several different claimants, including, among others, VHI, Petrocedeño, and Petrowarao. SMBC also filed requests for the issuance of summons (Dkt. Nos. 235, 237, 239), which were issued on May 5, 2021 (Dkt. Nos. 240, 241, 242). As reflected on the summons, VHI, Petrocedeño, and Petrowarao are each principally located in Venezuela.

Shortly thereafter, counsel for SMBC communicated with counsel for the *Stansell* Plaintiffs, the *Pescatore* Plaintiffs, and Antonio Caballero regarding service. *See* Declaration of Robert Hamburg in Support of the Garnishees' Motion for Alternative Service of Process Pursuant to Rule 4(f)(3) ("Hamburg Decl.") ¶ 3. Counsel for the *Pescatore* Plaintiffs and the *Stansell* Plaintiffs informed SMBC that they intended to answer SMBC's third-party complaints, such that the need to serve the summons on any of the Stansells or the Pescatores was rendered moot. *Id.* ¶

4.  Counsel for Mr. Caballero confirmed that he was authorized to accept service.  *Id.* ¶ 5.  The *Pescatore* Plaintiffs and the *Stansell* Plaintiffs subsequently filed joint answers to each of SMBC's third party interpleader complaints, and Mr. Cabellero also filed an answer.  *See* Dkt. Nos. 251, 252, 253, 262, 263, 264.

Counsel for SMBC also reached out by email to the law firms that it understood may represent VHI, Petrocedeño, and Petrowarao in this matter, in order to seek service waivers.  *See* Hamburg Decl. ¶ 6.  Specifically, counsel for SMBC contacted Harris Beach PLLC, Marcos D. Jiménez P.A., and Leon Cosgrove LLC to ask whether they represented VHI, Petrocedeño, and/or Petrowarao and if so, whether they were authorized to accept service on behalf of those entities.  *See Id.* ¶ 6.  Marcos D. Jiménez indicated that he represented each of these entities, but was not authorized to accept service.  *Id.*  Counsel for SMBC sent a similar inquiry to White & Case, which SMBC understands represents PDVSA entities in other matters.  *Id.* ¶ 8.  White & Case also purported to represent Petrowarao and VHI in this matter, and executed service waivers for those entities; White & Case was unable to confirm at the time whether it would be representing Petrocedeño in this action, but has since appeared for Petrocedeño and has neither executed a service waiver or otherwise agreed to accept service on behalf of Petrocedeño.  *See* Dkt. Nos. 305, 306; Hamburg Decl. ¶ 8.[2]

Given that two different sets of attorneys purported to represent the same entities, and to ensure that proper notice is given to each of these entities, SMBC continued in its efforts to effect

---

[2] Counsel for SMBC also communicated with Quinn Emanuel Urquhart & Sullivan, counsel for Total Venezuela S.A. ("Total"), and Gibson, Dunn & Crutcher LLP, counsel for Equinor Sincor Netherlands BV ("Equinor"), regarding service.  *See* Hamburg Decl. ¶ 11.  Quinn Emanuel indicated that it was authorized to accept service on Total's behalf and executed a waiver of service, which SMBC filed with the Court on June 16, 2021.  *See Id*. ¶ 12; Dkt. No. 309. SMBC voluntarily dismissed Total from this action on November 8, 2021.  *See* Dkt. Nos. 398, 400.  As to Equinor, Gibson, Dunn & Crutcher confirmed that it represented Equinor in this matter, but that it was not authorized to accept service on Equinor's behalf.  *See* Hamburg Decl. ¶ 13.  SMBC voluntarily dismissed Equinor from this action on May 9, 2022.  *See* Dkt. No. 455.

formal service on VHI, Petrocedeño, and Petrowarao in Venezuela through the Hague Convention. To do so, SMBC retained the services of an international process server with over 20 years of experience and specific expertise in Venezuela, Maria J. Gutierrez.  *See* Declaration of Maria Gutierrez, dated September 14, 2022 ("Gutierrez Decl.") ¶ 4.  Ms. Gutierrez informed counsel for SMBC that service in Venezuela can take several months and that, given Venezuela's policy of non-cooperation with U.S.-originated Hague Convention requests, such efforts likely would be unsuccessful.  *Id*. ¶ 7.  Still, SMBC pressed ahead with its service efforts.

Ms. Gutierrez compiled the necessary materials for service under the Hague Convention. *Id*. ¶ 9.  The service package contained (i) the original and translated copies of the third-party complaints filed by SMBC seeking interpleader relief, (ii) the corresponding summonses, and (iii) the Model Form Request for Service Abroad of Judicial or Extrajudicial Documents for each entity (the "Service Package").  *Id*.; *see also* Exhibit A to Gutierrez Decl.

Venezuela, as a signatory to the Hague Convention, has provided that all requests for service are to be delivered to the designated "Central Authority."  *Id*. ¶ 8; *see also* Hague Convention at Art. 2 ("Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.").  Accordingly, on November 11, 2021, Ms. Gutierrez sent the Service Package to the Central Authority designated by Venezuela.  *Id*. ¶ 10. The Central Authority refused to accept the Service Package, in violation of Article 2 of the Hague Convention, and on November 26, 2021, Ms. Gutierrez was notified that service efforts had failed and that the Service Package would be destroyed.  *Id*. ¶ 11.  This was not surprising, given the

9

current policy of non-cooperation with U.S.-originated Hague Convention service requests in Venezuela.  *See* Omaña Decl. ¶¶ 21-22.

3. Equiniti

On April 15, 2021, Equiniti filed a third-party complaint seeking interpleader relief as to competing claims to, among other assets, OFAC-blocked assets held in accounts belonging to Banco de Venezuela and Banco Bicentenario Banco Universal CA.  *See* Dkt. 208.  The assets are subject to competing claims by several different judgment creditors, including the *Stansell* and *Pescatore* Plaintiffs and Antonio Caballero.  *Id.* ¶¶ 1-2, 5-7, 9-10.  The *Stansell* and *Pescatore* Plaintiffs answered the interpleader complaint and waived any objections based on service of process.  *See* Dkt. 254.  Mr. Cabellero filed a motion to dismiss and/or transfer venue (Dkts. 332-334), which he withdrew on September 24, 2021 (Dkt. 358), and answered the interpleader complaint (Dkt. 376), waiving any objections based on service of process.

As reflected in the summons (Dkts. 249, 249-1), Banco de Venezuela and Banco Bicentenario Banco Universal CA are each principally located in Venezuela.  Counsel for Equiniti communicated by email with law firms that it understood may represent Banco de Venezuela and Banco Bicentenario Banco Universal CA in this matter to seek service waivers. *See* Declaration of Robert N. Ward ("Ward Decl.") ¶¶ 2-5.  Counsel at White & Case advised that they did not represent Banco de Venezuela and Banco Bicentenario Banco Universal CA.  *See id.*  Mr. Jiménez, who purports to represent Banco de Venezuela and Banco Bicentenario Banco Universal CA in this matter, did not respond to several emails or the delivery of a formal waiver of service request. *See id.* ¶¶ 3-4.  Counsel at from the law firm of Edmonds Marshall McMahon, a law firm which represents the Ad Hoc Board for Banco de Desarrollo Económico y Social de Venezuela, the parent company of Banco de Venezuela and Banco Bicentenario Banco Universal CA, have not responded to a request to confirm whether counsel would accept service on behalf of Banco de

Venezuela and Banco Bicentenario Banco Universal CA or if either entity were willing to waive service of process.  *See id.* ¶ 5.

Unable to obtain waivers of service, Equiniti has also attempted to effect formal service through the Hague Convention.  To do so, Equiniti retained the services of ABC Legal.  *See* Declaration of Ramona Holmes in Support of Motion for Alternative Service, dated July 21, 2022 ("Holmes Equiniti Decl.") ¶ 3.  Ramona Holmes, a representative of ABC Legal, compiled the necessary materials for service under the Hague Convention (the "Equiniti Service Package").  *Id.* ¶ 6; *id.* Ex. A.  On November 22, 2021, Ms. Holmes sent the Equiniti Service Package via both DHL and United Parcel Service to the Venezuelan Central Authority.  *Id.* ¶ 6.  DHL was unable to successfully deliver the Equiniti Service Package to the Venezuelan Central Authority.  *Id.* ¶ 7. United Parcel Service delivered the Equiniti Service Package to the Venezuelan Central Authority on December 3, 2021.  *Id.*  In the past three years, however, ABC Legal has not received a single completed certificate of service for any service packages that have reached the Venezuelan Central Authority and thus does not know that the Venezuelan Central Authority is attempting service.  *Id.* ¶¶ 8-9.

## ARGUMENT

Authorizing service of process pursuant to Federal Rules of Civil Procedure 4(f)(2)(A) and 4(f)(3) is appropriate in this case because of the extreme difficulties associated with effectuating service in Venezuela pursuant to the Hague Convention.  The Garnishees have diligently attempted to serve each of the Venezuelan Third Parties through the Hague Convention for the last **thirteen** months, and those efforts have proven unsuccessful—in each instance, Venezuela's designated Central Authority has not processed Hague-compliant requests for service of process.  Further, although White & Case, as counsel for the PDVSA Ad Hoc Board, has waived service for several (but not all) of the Venezuelan Third Parties, and the Garnishees should be entitled to rely on those

waivers, Mr. Jiménez has challenged both White & Case's standing to represent the Venezuelan Third Parties and its waivers of service, while purporting to reserve all of the Venezuelan Third Parties' objections to service of process. Given this uncertainty, and the apparent impossibility of serving these entities via the Hague Convention until diplomatic relations between the United States and Venezuela improve, an order authorizing alternative service is necessary to avoid indefinite delay and expense, and to ensure that the Venezuelan Third Parties are adequately notified of the Garnishees' interpleader claims and bound by any order discharging the Garnishees from liability. Accordingly, the Garnishees seek an Order authorizing the Garnishees to effect service on the Venezuelan Third Parties by hand delivery in Venezuela via a Venezuelan law firm. In addition, if any cannot be successfully served in that manner, the Garnishees propose that the Court authorize service on their U.S. counsel who have appeared in this action.

As described in detail below, the proposed alternative means of service are consistent with the requirements mandated by Rules 4(f)(2)(A) and 4(f)(3). They do not violate any international agreement with Venezuela or Venezuelan law and, most importantly, they are reasonably calculated to notify the Venezuelan Third Parties of the Garnishees' requests for interpleader relief. *See Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020). Indeed, personal delivery and service through U.S. counsel are both efficient and reliable means of service under the circumstances, and each would provide sufficient notice to the relevant parties.

## I.   THIS COURT SHOULD APPOINT GARNISHEES' VENEZUELAN LAW FIRM AS A SPECIAL PROCESS SERVER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(2)(A)

Federal Rule of Civil Procedure 4(h)(2) governs service of process on foreign corporations. Pursuant to Rule 4(h)(2), service of a corporation "at a place not within any judicial district of the United States," may be performed "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery. . . ." Rule 4(f), however, provides that a party "may be served

at a place not within any judicial district of the United States . . . if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Courts have typically "applied 4(f)(2) to approve personal service carried out in accordance with foreign law." *See Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004).

Personal service by a Venezuelan law firm is both allowed by international agreement, and "prescribed by [Venezuela's] law for service in that country." Fed. R. Civ. P. 4(f)(2). Although service via a signatory's designated Central Authority is the primary method of service provided by the Hague Convention, Article 10 provides that, so long as "the State of destination does not object, the present Convention shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Venezuela has not objected to this provision.[3] Furthermore, Venezuela permits private litigants in its own courts to serve process through a notary public and does not expressly prohibit service by individuals or attorneys licensed to practice in Venezuela. Omaña Decl. ¶¶ 17, 24. Hand delivery is also consistent with the laws of Bermuda. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. 608, 609–10 (S.D.N.Y. 2007). Accordingly, the Court can and should authorize personal delivery pursuant to Rule 4(f)(2)(A). *See, e.g.*, *In re Cyrus II P'ship*, 392 B.R. 248, 251 (Bankr. S.D. Tex. 2008) (finding personal service on Hong Kong Defendant proper because "[FRCP] 4(f)(2)(A) and Article 19 of the Hague Convention permit service"); *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1280 (S.D. Fl. 1999) (holding that personal service on Spanish defendant was valid under Rule 4(f)(2)

---

[3]  *See* Declaration, Reservation, and Notification of the Bolivarian Republic of Venezuela, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=429&disp=resdn.

because the Hague Convention allows alternative forms of service and Spanish law "does not prohibit service of a summons arising out of foreign litigation upon a foreign national via hand delivery by a private process server"); *Supra Med. Corp. v. McGonigle*, 955 F.Supp. 374, 384 (E.D. Pa. 1997) (finding personal service on UK defendants proper under Rule 4(f)(2)(A) "[b]ecause the Hague Convention and the United Kingdom permit [personal] service to be effectuated in that country through the use of a solicitor, and because the Court finds that such service comports with notions of due process").

The Court therefore should appoint the Garnishees' Venezuelan law firm, D'Empaire Reyna Abogados, as a special process server authorized to hand deliver the service packages to the Venezuelan Third Parties in Venezuela. *See* Omaña Decl. ¶ 25; *see also Lumar Aviation, Inc. v. El Consorcio Venezolano De Industrias Aeronauticas*, 2018 WL 3109625, at *1 (S.D. Fla. Mar. 16, 2018) (affirming that plaintiff "having its Court-appointed process server effect service of process on Defendant in Venezuela in accordance with the Venezuelan Code of Civil Procedure, as if the service of process were by a judicial officer there" was proper service and "consistent with the law of Venezuela").[4]  In addition, the Court should authorize Citibank to retain a vendor to hand deliver the service package to Venfleet Asphalt Ltd. in Bermuda.

## II.   THIS COURT HAS DISCRETION TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

In addition to hand delivery pursuant to Rule 4(f)(2), the Garnishees seek authorization to serve the Venezuelan Third Parties through their U.S. counsel.  Rule 4(f)(3) provides that the Court may authorize service on a foreign corporation "by . . . means not prohibited by international agreement."  Thus, "[a]n alternative method of service under Rule 4(f)(3) is acceptable if it (1) is

---

[4] Even if the Court concludes that hand delivery by a Venezuelan law firm is not "prescribed by" Venezuelan law, Fed. R. Civ. P. 4(f)(2)(A), it should nonetheless authorize such service pursuant to Rule 4(f)(3) because, for the reasons set forth *infra*, it is "not prohibited by international agreement" or Venezuelan law and comports with due process.

not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Zanghi*, 2020 WL 589409, at *6 (internal quotation marks omitted).  An alternative method of service satisfies constitutional notions of due process "if it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks omitted).

 "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Nurlybaev v. ZTO Express (Cayman) Inc.*, 2018 WL 11222556, at *1 (S.D.N.Y. Apr. 6, 2018) (citing *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012)); *see also Havlish v. Bin Laden*, No. 03-cv-9848, Dkt. No. 614 at 5 (S.D.N.Y. Apr. 5, 2022).  In exercising this discretion, "courts in this district have typically required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Nurlybaev*, 2018 WL 11222556, at *2. (internal quotations marks omitted).

Although courts may consider prior efforts to effectuate service, the Federal Rules do not require that any other method of service be exhausted prior to seeking authorization of alternative means of service. *See United States v. Besneli*, 2015 WL 4755533, at *1 (S.D.N.Y. Aug. 12, 2015) ("[e]xhaustion of the other provisions of Rule 4(f) is not required before a plaintiff seeks court-ordered service.").  This is because "there is no hierarchy among the subsections in Rule 4(f)," *In GLG Life*, 287 F.R.D. at 265, and service under Rule 4(f)(3) "is merely one means among several which enables service of process on an international defendant." *Zanghi* 2020 WL 589409, at *5. In other words, service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief." *Id.*

The difficulties and delay attendant to service pursuant to international conventions, however, does weigh in favor of allowing alternative methods of service. *See, e.g.*, *In re BRF S.A.*

*Sec. Litig.*, 2019 WL 257971, at *4 (S.D.N.Y. Jan. 18, 2019) ("[Plaintiff] has not attempted to effectuate service through the letters rogatory process, but, as Judge Gardephe observed, there is no useful purpose in requiring it to do so merely in order to confirm the existence of delay."); *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *8 (S.D.N.Y. Sept. 21, 2018) ("This Court sees no purpose in requiring Plaintiff to make an effort to serve [international defendant] through the letters rogatory system just to confirm the delays and difficulties that Plaintiff has already demonstrated are likely to occur"); *In GLG Life*, 287 F.R.D. at 267-68 (similar, in context of Hague Convention).  So, too, does the fact that counsel for the Venezuelan Third Parties have appeared in this action, demonstrating their actual knowledge of these proceedings, while also standing on ceremony and insisting on service through a process they likely know has broken down for diplomatic reasons.

Therefore, even if the Garnishees had not expended substantial time and effort to serve the Venezuelan Third Parties by traditional means (and they have), and even if they were not willing to attempt hand delivery in Venezuela if authorized by this Court (and they are), the authorization of alternative methods of service still would be plainly permissible under Rule 4(f)(3).

## III.   SERVICE OF PROCESS THROUGH U.S. COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3) IS WARRANTED AND APPROPRIATE

### A.   The Proposed Method of Alternative Service is Not Prohibited by Any International Agreement With Venezuela

There is no applicable international agreement with Venezuela that prohibits service on a corporation through U.S. counsel.  *See RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel.").  In fact, "because service on counsel occurs domestically, and does not involve transmission of documents abroad, it does not even implicate the Hague Convention."  *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y.

2013) (internal quotations and brackets omitted); *see also In GLG Life*, 287 F.R.D. at 267 (service on U.S. counsel "would not run afoul of the Hague Convention since [] no documents would be transmitted abroad").

    **B.**    **The Proposed Method of Alternative Service Comports With Notions of Due Process Because it is Reasonably Calculated to Provide the Venezuelan Third Parties With Notice of the Garnishees' Claims for Interpleader Relief**

The Garnishees' proposal to serve the Venezuelan Third Parties through U.S. counsel satisfies any due process concerns because it is reasonably calculated to apprise the Venezuelan Third Parties of the interpleader relief the Garnishees are seeking.

Indeed, Marcos D. Jiménez has not only informed the Garnishees that he represents the Venezuelan Third Parties on several occasions, but he has appeared in this and other litigation on behalf of the Venezuelan Third Parties and presented evidence purporting to demonstrate that they have authorized Mr. Jiménez to represent them. To the extent Mr. Jiménez is not the proper representative of the Venezuelan Third Parties in this action, it is due to legal reasons relating to the United States' diplomatic relationship with Venezuela, and not based on any factual finding that Mr. Jiménez has not, in fact, been retained to represent the Venezuelan Third Parties. *See, e.g.*, Dkt. No. 427 at 1 (brief submitted by White & Case challenging Mr. Jiménez's claims of representation arguing, *inter alia*, that "the political question doctrine requires this Court to accept the recognition by the Executive Branch of the Interim Government [of Venezuela] led by Interim President Juan Guaidó.").

Service on an entity's U.S. counsel in circumstances where it has entered an appearance, or is actively litigating, on behalf of that entity in the relevant action is reasonably calculated to provide the client with notice. *See NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2015 WL 998455, at *5 (S.D.N.Y. Mar. 5, 2015) ("In all the circumstances, service on the Paul Hastings lawyers who are litigating actively on Noboa's behalf was reasonably calculated, under all the circumstances,

to apprise him of the pendency of the action and afford him an opportunity to present his objections.") (internal quotations marks and brackets omitted); *Jian Zhang*, 293 F.R.D. at 515 ("Additionally, service on Baidu's counsel would satisfy the requirements of due process, as Baidu has actual notice of this lawsuit and there is evidence of adequate communication between Baidu and counsel in any event.") (internal quotation marks omitted).

Even if U.S. counsel refuses to accept service on behalf of a foreign corporation in one matter, representation of that corporation in another (even unrelated) matter is in itself sufficient to justify alternative service through counsel—it is a prime indicator that the foreign corporation will be made aware of the relevant proceeding. *See, e.g.*, *Wash. State Inv. Bd.*, 2018 WL 6253877, at *5 (authorizing service through U.S. counsel given the firm's representation of the corporation in other related matters and evidence of "adequate communication" between the law firm and the respective foreign entity); *see also Atlantica Holdings, Inc*., 2014 WL 12778844, at *3 (authorizing service on U.S. counsel because "there is plainly evidence of adequate communication between White & Case and Defendant, as White & Case has already entered a notice of appearance on Defendant's behalf and previously represented it [in other actions].") (internal quotation marks omitted).

Here, two sets of U.S. attorneys—White & Case and Marcos D. Jiménez—have appeared in this action purporting to represent some or all of the same Venezuelan Third Parties (further underscoring the need for judicial assistance in matters of service).  Both sets of attorneys have also appeared on behalf of these entities in a separate matter pending in the Western District of New York, *Caballero v. FARC*, No. 1:20-mc-0040-LJV(W.D.N.Y.).  Given the outstanding question as to which set of attorneys is the proper representative, and to further ensure compliance

18

with principles of due process, the Garnishees propose serving both law firms (to the extent they have not already waived service) and seek an order deeming this service effective.[5]

To the extent there is any doubt as to whether alternative service by hand delivery will provide the Venezuelan Third Parties with notice of the Garnishees' request for interpleader relief, service on the entities' respective U.S. counsel is reasonably calculated to provide such notice because Marcos D. Jiménez, P.A. has entered an appearance in this action on behalf of all of the Venezuelan Third Parties, and has submitted evidence of his authority to represent those entities. It is therefore reasonable to infer that the Venezuelan Third Parties already have notice of the claims through their attorney of record, and that service on Mr. Jiménez is reasonably likely to apprise the Venezuelan Third Parties about the Garnishee's actions.

In addition, the Garnishees seek authorization to serve certain additional attorneys with respect to the following Venezuelan Third Parties:

- **Banco de Venezuela**: Edmonds Marshall McMahon (UK Counsel), represents the Ad Hoc Board for Banco de Desarrollo Económico y Social de Venezuela ("BANDES"), but has disclaimed authorization to accept service of Citibank's third-party complaint on behalf of Banco de Venezuela and has not responded to a request to accept service of Equiniti's third-party complaint on behalf of Banco de Venezuela. Pathan Decl. ¶ 11; Ward Decl. ¶ 5.

- **Banco Bicentenario Banco Universal CA**: Edmonds Marshall McMahon (UK Counsel), represents the Ad Hoc Board for BANDES but has not responded to a request

---

[5] White & Case has agreed to waive service on behalf of certain Venezuelan Third Parties, but has stated that it is unable to do so with respect to Petrocedeño. *See* Hamburg Decl. ¶ 8. However, like Mr. Jiménez, White & Case has appeared in this action, and filed briefing, on behalf of Petrocedeño. *See, e.g.*, Dkt. Nos. 425, 427. Thus service on White & Case is reasonably calculated to provide notice to Petrocedeño.

to accept service of Equiniti's third-party complaint on behalf of Banco Bicentenario

Banco Universal CA. Ward Decl. ¶ 5.

**C.      The Court's Intervention is Necessary Because the Garnishees Reasonably Attempted to Effectuate Service Through the Hague Convention, But Service Has Proved Ineffective**

As set forth above, the Garnishees have diligently pursued service through means other

than Rule 4(f)(2) and (f)(3) for many months, including in a manner consistent with the Hague

Convention.   Such efforts were ultimately unsuccessful because of the Venezuelan Central

Authority's refusal to process service requests originating from the United States, coupled with

Venezuela's current state of deep economic and political turmoil.  *See* Omaña Decl. at ¶¶ 21-22.

For that reason, any further attempts to serve the Venezuelan Third Parties pursuant to the Hague

Convention would be futile, and only result in a waste of time and resources. *See* Omaña Decl. ¶¶

21-23; Holmes Citi 6/24 Decl. ¶¶ 10-11; Holmes Citi 9/8 Decl. ¶¶ 9-10; Gutierrez Decl. ¶ 12;

Holmes Equiniti Decl. ¶¶ 8-9.

Courts typically authorize alternative means of service where, like here, the recipient

country's Central Authority has refused to cooperate and Hague Convention service has failed or

will ultimately prove ineffective.  *See*, *e.g.*, *Bystolic Antitrust Litig.*, 2021 WL 4296647, at *1

(S.D.N.Y. Sept. 20, 2021) (authorizing service by email after service under the Hague Convention

failed); *Arista Recs. LLC v. Media Servs. LLC*, 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008)

(quoting Fed. R. Civ. P. 4(f)(1)) (finding "[c]ourt-directed service [] particularly appropriate where

a signatory to the Hague Service Convention has 'refused to cooperate for substantive reasons,'"

including by "den[ying] all requests for service of process originating from the United States");

*Jian Zhang*, 293 F.R.D. at 514 (authorizing alternative service "notwithstanding China's refusal

to effect service under the Hague Convention…").   Seeking to avoid unnecessary delay and

expense in serving foreign defendants through the Hague Convention is also a valid reason to grant

a request for alternative service. *See In GLG Life*, 287 F.R.D at 266-67 ("Additionally, the Court is concerned that the length of time required for service under the Hague Convention, approximately six to eight months . . . may unnecessarily delay this case. . .  Given the certainty that service … will result in notice … and given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified.").

Rather than continue down a path that would likely accomplish nothing other than indefinitely delaying this case, the Garnishees instead seek the Court's permission to effectuate service through the reasonable alternative methods described in this motion. The requested relief is necessary because, absent the Court's intervention, the Garnishees would be left with no viable means of providing proper notice to the Venezuelan Third Parties and, as a result, obtaining a discharge from any and all liability as to the Garnishee Accounts.

## CONCLUSION

For the foregoing reasons, the Garnishees respectfully request an Order authorizing service on the Venezuelan Third Parties pursuant to Federal Rules of Civil Procedure 4(f)(2) and 4(f)(3) by: (i) personal delivery in Venezuela by a Venezuelan law firm, D'Empaire Reyna Abogados or, in the case of Venfleet Asphalt Ltd., in Bermuda by a private process server; and (ii) through delivery to, or waiver of service by, the U.S. counsel for the Venezuelan Third Parties.

Dated: November 10, 2022
        New York, New York

Respectfully Submitted,

/s/ Mark G. Hanchet
Mark G. Hanchet
Robert W. Hamburg
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500
Email: mhanchet@mayerbrown.com
        rhamburg@mayerbrown.com

*Counsel for Sumitomo Mitsui Banking Corp.*

/s/ Michael S. Flynn
Michael S. Flynn
Craig T. Cagney
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Email: craig.cagney@davispolk.com

*Counsel for Citibank, N.A.,*

/s/ Levi M. Downing
Levi M. Downing
Robert N. Ward
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Email: ldowning@kelleydrye.com
        rward@kelleydrye.com

*Counsel for Equiniti Trust Company*

/s/ Sharon L. Schneier
Sharon L. Schneier
Mohammad B. Pathan
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel.: (212) 603-6448
Email: sharonschneier@dwt.com
        mohammadpathan@dwt.com

*Counsel for Citibank, N.A., relating to Banco de Venezuela*