```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/5/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**KEITH STANSELL, et al.,**

                                        Claimants,                          **16-MC-00405 (LGS)(SN)**

                -against-                                                    **ORDER &**
                                                                            **OPINION**

**REVOLUTIONARY ARMED FORCES OF**
**COLOMBIA (FARC), et al.,**

                                        Defendants.
------------------------------------------------------------------ X
------------------------------------------------------------------ X
**OLIVIA PESCATORE, et al.,**

                                        Claimants,                          **18-MC-00545 (LGS)(SN)**

                -against-

**JUVENAL OVIDIO RICARDO PALMERA**
**PIENDA, et al.,**

                                        Defendants.

-------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        The Plaintiffs in Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et

al., No. 16-mc-00405, and Pescatore, et al. v. Pineda, et al., No. 18-mc-00545, initiated these

cases to recover Antiterrorism Act judgments issued in their favor. To that end, the Plaintiffs,

along with Antonio Caballero, (collectively, the "Judgment Holders") have targeted accounts at

Citibank, N.A., Sumitomo Mitsui Banking Corporation, and Equiniti Trust Company

(collectively, the "Garnishees"), which hold funds for various Venezuelan entities, including

Banco Bicentenario Banco Universal C.A.; Banco de Venezuela S.A., Banco Universal;

Petrocedeño S.A.; Petrowarao S.A.; Petro San Felix S.A.; Aceites y Solventes Venezolanos

Vassa S.A.; Venfleet Asphalt Ltd.; and Venezuelan Heavy Industries C.A. (collectively, the "Third Parties").

Because the Judgment Holders and the Third Parties have competing interests in the targeted funds, the Garnishees filed third-party complaints seeking interpleader relief. ECF Nos. 208, 225, 227, 229, 234, 236, 238.[1] The Garnishees have attempted to serve those complaints on the Third Parties but have faced substantial difficulties. They initially tried to effectuate service through counsel, but that proved unsuccessful when two firms claiming to represent the same Third Parties each contested the other's authority.[2] See ECF Nos. 362, 378. The Garnishees then attempted service via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), but those efforts were stymied by diplomatic tension between the United States and Venezuela. See ECF No. 479.

The Garnishees therefore seek leave to serve the Third Parties by alternative means pursuant to Rule 4(f) of the Federal Rules of Civil Procedure.[3] ECF No. 478. They propose serving them (1) via personal delivery by a Venezuelan law firm and a Bermudan notary public, and (2) through the firms purporting to represent the Third Parties in the United States.

## DISCUSSION

Rule 4(f) governs service on international corporations, partnerships, and associations. At first blush, it appears to be the appropriate framework for serving the Third Parties, which are all Venezuelan entities. But the Garnishees' complaints allege facts that suggest the Third Parties may be state-owned or state-controlled. See, e.g., ECF Nos. 208 at ¶ 19 (Equiniti complaint describing two Third Parties as "owned or controlled by . . . a Venezuelan state-owned and

---

[1] All ECF numbers refer to the Stansell docket at No. 16-m-00405.
[2] One of the two firms, White & Case, executed service waivers on behalf of five Third Parties, ECF Nos. 290, 291, 292, 305, 306; the other firm objects to service on behalf of the same parties, see ECF No. 494.
[3] Subsequent references to "Rules" are to the Federal Rules of Civil Procedure.

controlled bank"), 227 at ¶ 19–21 (Citibank complaint alleging that Venezuela may own three

other Third Parties), 234 at ¶ 14 (SMBC complaint alleging that a sixth Third Party is controlled

by a state-owned company), 236 at ¶ 11 (same as to a seventh), 238 at ¶ 11 (same as to the

eighth). If true, the Third Parties may qualify as "agenc[ies] or instrumentalit[ies]" of Venezuela.

28 U.S.C. § 1603(b). And agencies or instrumentalities of foreign states must be served in

accordance with the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1608(b).

The Garnishees, though aware of the need to determine whether the Third Parties are

"agencies or instrumentalities of Venezuela," neglected to address the issue in their motion. ECF

No. 227 at ¶ 14 (Citibank complaint asking the Court to determine various Third Parties'

relationship to Venezuela); <u>see</u> ECF No. 225 at ¶¶ 31, 33 (describing a Third Party as a

"subsidiary" of a state-affiliated bank and asking the Court to determine whether it is "an agency

or instrumentality of Venezuela"); ECF No. 478 (analyzing service only under Rule 4(f)).

Without a fuller record, it is unclear which service framework—Rule 4(f) or the FSIA—applies.

The Court therefore orders the Garnishees to submit evidence and briefing on the

following issues by May 26, 2023:

> (1) Do the Third Parties qualify as agencies or instrumentalities of Venezuela as defined in § 1603(b)?
>
> (2) If the Court decides that Rule 4(f) applies to the Third Parties, how does <u>Smart Study Co., Ltd. v. Acuteye-Us</u>, __ F. Supp. 3d __, 2022 WL 2872297 (S.D.N.Y. July 21, 2022), impact its analysis of alternative service methods?
>
> (3) If the Court decides that the FSIA applies to the Third Parties, how should it analyze the availability of service under § 1608(b)(1) and (2)? Is there evidence of any special arrangement between the parties? Is service on an officer or other appropriate agent available? Is service via any international convention applicable to Venezuela, Bermuda, or the United Kingdom available?
>
> (4) If the Court deems service under § 1608(b)(1) and (2) unavailable, are the proposed methods of service both "consistent with" Venezuelan law and reasonably calculated to give actual notice? § 1608(b)(3).

(5) If the Court determines that White & Case is the proper counsel for certain Third Parties, how should the Court treat the service waivers White & Case executed on behalf of those parties? <u>See</u> ECF Nos. 290, 291, 292, 305, 306.

(6) Is there an available method of service that would satisfy both Rule 4(f) and the FSIA?

The Garnishees' brief should be no more than 25 pages and should address every method of service they want the Court to authorize.

Each firm purporting to represent the Third Parties may file an opposition brief of up to 25 pages by June 9, 2023. They should simultaneously file any evidence relevant to the agency-or-instrumentality question.

The Garnishees may file a reply of up to 10 pages by June 16, 2023.

## CONCLUSION

The Court lacks the information it needs to evaluate the Garnishees' motion for alternative service. It therefore orders the Garnishees to file the additional briefing and evidence described above by May 26, 2023. The Third Parties' oppositions are due June 9, 2023 and the Garnishees' reply is due June 16, 2023.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      May 5, 2023
            New York, New York