**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH STANSELL, *et al.*<br><br>     Plaintiffs,<br><br>v.<br><br>REVOLUTIONARY ARMED<br>FORCES OF COLOMBIA (FARC); *et al.*,<br><br>     Defendants, | CASE NO.: 1:16-mc-405-LGS-SN<br>Related Case No. 1:18-mc-545-LGS-SN |
| KEITH STANSELL, *et al.*<br><br>     Counterclaim Respondents,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>     Counterclaimant-Crossclaimant, | Turnover Proceedings with respect to<br>SDNY & SDFL Writs<br>Served on Citibank N.A.<br><br>(Transferred from Southern District of<br>Florida No. 10-mc-22724-Scola reassigned<br>to No. 19-cv-20896-Scola) |
| CITIBANK, N.A.,<br><br>     Counterclaimant-Crossclaimant,<br><br>v.<br><br>SAMARK JOSE LOPEZ BELLO, *et al.*<br><br>     Adverse Claimants-Crossclaim<br>     Respondents. | **SUBSTITUTE TO REPLACE JOINT<br>PROPOSED TURNOVER ORDER AND<br>JUDGMENT ECF 582** |

**[JOINT PROPOSED] ORDER GRANTING PLAINTIFFS' MOTIONS**
**FOR TRIA TURNOVER OF BLOCKED ASSETS AND**
**FINAL TRIA TURNOVER JUDGMENT**

This matter is before the Court on the *Stansell* Plaintiffs' ("Stansell Plaintiffs") motion

[ECF 563-64 and exhibits thereto] and the *Pescatore* Plaintiffs' motion [Pescatore 1:18-mc-545

ECF 24-25-26] (the "Turnover Motions") for the turnover under the Terrorism Risk Insurance Act

("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note), of

the blocked assets in account numbers ***743-0000 (securities/securities entitlements) and ***743-0001 (accrued cash) (collectively the "Blocked Account"), held by counterclaimant and cross-claimant in interpleader, Citibank, N.A. ("Citibank").

IT IS HEREBY ORDERED that Plaintiffs' Turnover Motions are **GRANTED**. The Court enters this Order and Final Turnover Judgment in favor of Plaintiffs directing the liquidation of the securities entitlements and turnover of the funds in the Blocked Account. Based on the record regarding the Blocked Account, the Court finds and rules as follows:

## I.   SUBJECT MATTER JURISDICTION AND PROCEDURAL HISTORY

This Court has subject matter jurisdiction to conduct post-judgment execution proceedings on Plaintiffs' final judgment, under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a)-(e), rendered by the U.S. District Court for the Middle District of Florida in *Stansell v. FARC, et al.*, No. 09-cv-2308 (the "Plaintiffs' Judgment") with post-judgment execution under the ATA, TRIA § 201, and Fed. R. Civ. P. 69(a). The Plaintiffs' Judgment has been registered in the U.S. District Court for the Southern District of New York ("SDNY"), and in the U.S. District Court for the Southern District of Florida ("SDFL") pursuant to 28 U.S.C. § 1963. (SDNY ECF 5; *Stansell v. Revolutionary Armed Forces of Colombia*, 19-cv-20896 (S.D. Fla.), ECF 1).

### The OFAC-Designated Owners of the Blocked Property Held by Citibank

Citibank established the Blocked Account under 31 C.F.R Part 598, the Foreign Narcotics Kingpin Sanctions Act, administered by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department. It blocked certain assets in 2017 and submitted multiple Initial Blocking Reports to OFAC in which it identified securities and related accumulated cash proceeds that were the subject of an OFAC block. (ECF 564, Ex. 6). The Blocked Account is held and

maintained by Citibank in its New York branch. Citibank has continued filing Annual Reports with OFAC acknowledging that it holds the assets in the Blocked Account in New York.

The assets held in the Blocked Account are the property of Samark Lopez Bello ("Lopez") and/or his wholly owned entity Yakima Trading Corp. ("Yakima"). On February 13, 2017, OFAC sanctioned Lopez and Yakima by designating them as narcotics Kingpins, under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq.*; placing them on its list of Specially Designated Nationals ("SDNs"), where they remain today. Lopez himself remains a fugitive. (ECF 564, Ex. 1). Lopez and Yakima are the undisputed owners of the subject blocked assets, having admitted ownership in three separate filings in the Southern District of Florida. (SDNY ECF 564, Exs. 6-7). No other party has claimed ownership of these assets. The assets held by Citibank in the Blocked Account are "blocked assets" under TRIA and the ATA Clarification Act of 2018, 18 U.S.C. § 2333(e). Therefore, these blocked assets are subject to attachment and execution by Plaintiffs in these cases.

### Procedural History of this Matter

The Stansell Plaintiffs served a writ of execution on Citibank in the Southern District of New York ("SDNY") on January 30, 2019, and served a writ of execution/garnishment on Citibank in the Southern District of Florida on February 25, 2019, establishing their judgment liens on the Blocked Account under both New York and Florida law. (ECF 22, 26, 564, Ex. 3).

Lopez and Yakima intervened and voluntarily appeared in the SDFL TRIA proceedings on February 28, 2019. By doing so, Lopez and Yakima acquiesced to the Court's jurisdiction over them. SDFL ECF Nos. 55, 57; *see also In re Ford Motor Co.*, 471 F. 3d 1233, 1248 (11th Cir. 2006). Lopez and Yakima separately appeared in this Court on February 6, 2019, without objection and moved to dismiss the Stansell Plaintiffs' SDNY writ of execution. (ECF 23, 24, 48,

52, 148).  Thus, this Court has jurisdiction over Lopez and Yakima.  *See Funnekotter v Republic of Zimbabwe*, 09 CIV. 8168 (CM), 2017 WL 448966, at *4 (S.D.N.Y. Jan. 20, 2017) (an individual may submit to the jurisdiction of the court by appearance); *Grammenos v. Lemos*, 457 F. 2d 1067, 1070 (2d Cir. 1972); *India Steamship Co. v. Kobil Petroleum Ltd.*, 620 F. 3d 160, 161 (2d Cir. 2010).

In February 2019, Stansell Plaintiffs sought a stay of proceedings in this case to preserve their SDNY lien priority and to allow the SDFL executions to proceed.  Lopez opposed this request.  (ECF 46-47).  On March 20, 2019, the Honorable Andrew L. Carter, Jr. held a hearing on the stay issues and determined that a stay was warranted.  In the interim, Judge Carter set a briefing schedule on Lopez and Yakima's motion to dismiss the Stansell SDNY writ of execution and tolled the time within which the Stansell Plaintiffs could file a motion for turnover.  (ECF 53).

Executions against various assets owned by Lopez and his entities continued in the SDFL while the stay in this district was in effect.  (SDFL ECF 151, 156).  Throughout 2019, multiple properties owned by Lopez and his entities were sold to satisfy the judgment held by the Stansell Plaintiffs.  Lopez appealed multiple orders concerning these execution sales to the Eleventh Circuit Court of Appeals.

On March 18, 2019, Citibank timely filed its answer to the Stansell Plaintiffs' SDFL Writ. (SDFL ECF 87).  Citibank subsequently amended its answer to add a third-party complaint in the nature of interpleader, adding the Stansell Plaintiffs, SIX SIS Ltd. ("SIX SIS"), and adverse claimants Lopez and Yakima.  (SDFL ECF 126).  On April 22, 2019, Lopez and Yakima sought to dissolve the SDFL Writ served on Citibank as well as its interpleader counterclaim and crossclaim asserted by Citibank.  Alternatively, they sought to change venue to this district.  (SDFL

ECF 174). On May 6, 2019, Citibank opposed the motion to dismiss, but joined in the motion to change venue. (SDFL ECF 187.)

On September 22, 2019, the SDFL denied the motions to dissolve the SDFL writs filed by Lopez and his entities, finding that "the evidence proves that the allegations about Movants' 'agency or instrumentality' status are true." (SDFL ECF 248 at 17 R&R; affirmed and adopted SDFL 279). On January 21, 2020, the Eleventh Circuit issued an opinion affirming the SDFL execution sales from 2019 and holding that the Florida garnishment statute's notice requirements in a TRIA execution were again "found to be constitutionally adequate." *Stansell v. Lopez Bello*, 802 F. Appx. 445, 449, 2020 WL 290423, at \*3 (11th Cir. 2020).

On March 23, 2020, Judge Carter denied Lopez and Yakima's motion to dismiss and stayed this case once again "pending resolution of the outstanding turnover motions in the Southern District of Florida" and again tolling the time for the Stansell Plaintiffs to file a turnover motion. (ECF 67). That same day, the SDFL recommended turnover of Lopez and his entities' blocked assets held at five financial institutions. (SDFL ECF 322, *affirmed and adopted* SDFL ECF 339). With respect to the blocked assets held by Citibank which are at issue here, the SDFL recommended that "the Writ and the Interpleader Claims should be transferred to the SDNY pursuant to Section 1404(a)." (SDFL ECF 323 at 14, *affirmed and adopted* SDFL ECF 340). Lopez and his entities appealed once again.

### The Citibank-Lopez Interpleader History in the Southern District of New York

On May 14, 2020, the Stansell Plaintiffs, Lopez, and Yakima filed a Joint Status Report on the Impact of the SDFL Rulings and transfer. (ECF 69). On May 26, 2020, Citibank filed a separate letter to the court to apprise it of Citibank's position that "Citibank does not believe it is the proper garnishee." (ECF 76 at 2). Judge Carter set a hearing for July 9, 2020 where he

separated the Citibank-Lopez Interpleader into two Phases which were briefed by the parties. (ECF 86, 87). The two phases are:

### Phase I:

(1) Whether collateral estoppel applies to prevent Intervenors from litigating certain matters already determined by the U.S. District Court for Southern District of Florida ("SDFL"), in particular, whether Intervenors are each an "agency or instrumentality" of a terrorist party, i.e., the FARC;

(2) If collateral estoppel does not apply here, whether Plaintiffs' writs to Intervenors in any event were valid pursuant to governing law;

(3) Whether the Intervenors have been afforded Due Process; and

(4) Whether the collectible amount of Plaintiffs' Anti-Terrorism Act Judgment is the full $318,030,000 compensatory amount stated on the face of the Judgment itself, as opposed to only one-third of that amount ($106,010,000).

### Phase II:

(1) Whether Citibank is the proper garnishee for purposes of this execution.

On August 4, 2020, Citibank filed a Second Amended Answer and Interpleader [ECF 93] to add plaintiffs in *Pescatore v. FARC*, Case No. 18-mc-00545, then pending before the Honorable Paul Oetken (the "Pescatore Plaintiffs"). On August 17, 2020, the Pescatore Plaintiffs filed a Motion to Enforce Judgment against the same Citibank held blocked assets in that case. (*Pescatore* ECF 24, 25, 26). The time to complete turnover proceedings in that case was tolled by Judge Oetken. (*Pescatore* ECF 18).

On February 17, 2021, this matter was reassigned to the Honorable Lorna Schofield. This Court accepted the *Stansell* and *Pescatore* matters as related cases. (ECF 194). To avoid duplicative filings, this Court ordered that all Interpleader Complaints be filed in the *Stansell* docket, and that the "Pescatore turnover motions shall be resolved through the Interpleader Complaints." (ECF 214).

6

**The Operative Citibank-Lopez Interpleader at Issue**

Caballero, yet another claimant to the blocked assets held by Citibank, intervened in this case on January 28, 2021. (ECF 162). The parties, excluding Lopez and Yakima, stipulated to the chronological dates of service of each of their writs on Citibank. (ECF 323) (*Stansell* 2019 writs first, *Pescatore* 2020 writ second, *Caballero* 2021 writ third). The Stipulation was adopted and so-ordered. *Id*. Citibank thereafter filed its Third Amended Answer and Interpleader Counterclaim and Crossclaims joining all parties with conflicting claims to the blocked funds. (ECF 324).

Each party has answered the Third Amended Answer and Interpleader. (ECF 328 (*Stansell/Pescatore* Jointly); ECF 329 (SIX SIS); ECF 335 (Caballero); ECF 347 (Lopez/Yakima)). The cross claims of the Stansell and Pescatore Plaintiffs and Caballero have been ruled upon,[1] thereby leaving the claims in Citibank's Third Amended Answer and Interpleader at issue and ready to be decided.

**The Stay is Lifted, and the Turnovers are Ripe for Adjudication**

Following the issuance of the Eleventh Circuit's decision in *Stansell v. Revolutionary Armed Forces of Colombia*, 120 F. 4th 754 (11th Cir. 2024), the Phase I issues were fully resolved. In that decision, Lopez was determined to be an agency of instrumentality as a matter of law. The due process issues were decided, and the collateral estoppel issues were addressed in a related case in this district.

---

[1] In their Answer ECF 328 the Stansell and Pescatore Plaintiffs crossclaimed against Caballero alleging that his judgment was void. Similarly, in his Answer ECF 335, Caballero crossclaimed against the Stansell and Pescatore Plaintiffs that the trebled amount of their respective judgments was not compensatory damages and therefore not collectable under TRIA. The court recommended entry of declaratory judgment on each claim. ECF 443 R&R, adopted Order ECF 479 at 1 ("Caballero's prior judgment is not void as a matter of law, that Caballero is entitled to collect both the economic and non-economic compensatory damages awarded to him, and that the Stansells and Pescatores may collect their entire ATA judgments as compensatory damages under TRIA.). Each of these crossclaims was denied and disposed of by Final Declaratory Judgment. ECF 499.

On July 1, 2025 this Court lifted the previously imposed stay and set a briefing schedule. ECF 559.  Stansell Plaintiffs have now filed a Motion for Final TRIA Turnover Judgment.  ECF 563, 564.   The Pescatore Plaintiffs also have a pending Motion for Judgment in this garnishment/interpleader action making the same arguments as in the Stansell Plaintiffs' motion for turnover with respect to the same blocked assets held by Citibank.  (*Pescatore* ECF 24- 26). Lopez and Yakima responded to the Stansell motion for turnover [ECF 586, 599].  Mr. Caballero filed a response to the Stansell motion for turnover [ECF 585] and a reply to Lopez and Yakima's response [ECF 601].  Stansells and Pescatores filed a reply to Mr. Caballero [ECF 602] and a reply to Lopez and Yakima Corp. [ECF 603].

All parties have had an opportunity to respond to the Stansell Plaintiffs' Motion for Final TRIA Turnover Judgment.

## II.    <u>ANALYSIS</u>

### A.  <u>The Assets are Blocked, Owned by Lopez and Yakima and Subject to TRIA</u>

It is undisputed that Lopez and Yakima are OFAC designated Kingpins and remain so to this day.  It is also undisputed the assets held by Citibank are and remain blocked under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*., because of Lopez and Yakima's ownership interest in the blocked assets.  Citibank blocked these assets in accordance with 31 C.F.R Part 598, the Kingpin Act regulations.  Lopez and Yakima have admitted ownership of the blocked assets.  ECF 564-7.  Their claim is corroborated by the relevant blocking reports.  ECF 564-6.  Assets blocked under the Kingpin Act are "blocked assets" within the meaning of TRIA and are subject to execution by the Stansell and Pescatore Plaintiffs and Caballero in accordance with their respective priorities.  18 U.S.C. § 2333(e).  It is also undisputed that the relevant blocked assets for which turnover is being sought are held here in New York.  The blocked assets consist

of intangible assets including, but not limited to, cash and securities entitlements. *See* § 598.206. Thus, the Lopez and Yakima assets for which turnover is being sought are located in the United States and are being held and maintained by Citibank in New York. ECF 24 at 10. Until this Court enters a TRIA turnover order, these assets must remain blocked at Citibank in the U.S. and remain in the name of Lopez and Yakima. *See* § 598.504. The blocked assets held by Citibank are not immune from attachment under the TRIA as sovereign, diplomatic, or consular property.

**B. The Court Has Personal Jurisdiction over the Parties and In Rem Jurisdiction over the Account**

The Court has personal jurisdiction over Lopez and Yakima who have intervened in this action and have voluntarily appeared. The Court also has personal jurisdiction over Citibank, Caballero, the Pescatore Plaintiffs, and SIX SIS for the purposes of this case, all of whom have entered appearances. Moreover, the Court also has *in rem* jurisdiction over the blocked assets insofar as the blocked assets are held and maintained by Citibank in New York.

**C. Writs Were Properly Issued and Constitutionally Adequate Notice Provided**

Under TRIA attachment and execution may proceed without delay. *See Stansell v. FARC et al.*, 771 F. 3d 713, 728-29 (11th Cir. 2014) (TRIA favors "minimally intrusive manner" of "immediate attachment"). The Stansell Plaintiffs filed an *ex parte* motion with evidence of Lopez's and Yakima's agency or instrumentality status to issue a writ of execution under New York law. ECF 12, 13, 14, 15 16. The Court issued the TRIA writ without delay. ECF 19. Thereafter, the Stansell Plaintiffs served their writ of execution on Citibank on January 30, 2019, thereby perfecting their judgment lien priority under New York law on the blocked assets. ECF 26. The Stansell Plaintiffs complied with statutory notice requirements on February 1, 2019. ECF 30. Lopez and Yakima intervened within seven days of service of the SDNY writ. (ECF 23).

While this SDNY Writ was pending, the Stansell Plaintiffs also sought issuance of another *ex parte* writ of execution/garnishment in the SDFL. SDFL ECF 16, 17, 18. The SDFL Court issued the writ without delay. SDFL ECF 22. *Id*. (*ex parte* proceeding to attach appropriate under TRIA). *See Stansell*, 713 F. 3d at 746 ("Plaintiffs proffered evidence" of agency or instrumentality). Stansell Plaintiffs then served the SDFL writ of execution/garnishment on Citibank on February 25, 2019. By doing so, the Stansell Plaintiffs perfected their judgment lien priority on these blocked assets under Florida law. ECF 546-3, SDFL ECF 33, 49. Plaintiffs complied with the Florida garnishment statute's notice requirements and provided the USM 285 Citibank levy to Lopez and Yakima's counsel on February 26, 2019. SDFL ECF 53. Lopez and Yakima intervened in the SDFL garnishment/executions the next day. SDFL ECF 55. Plaintiffs also provided Citibank's Answer to all interested parties identified by Citibank as required by Florida law. ECF 564-9, 564-10.

The Pescatore Plaintiffs also filed an *ex parte* motion seeking a writ of execution against the blocked assets held by Citibank. *Pescatore* ECF 3. The Court issued the writ of execution timely on May 2, 2020, which the Pescatore Plaintiffs properly served on Citibank on May 14, 2020. By doing so, the Pescatore Plaintiffs perfected their judgment lien priority under New York law. The Pescatore Plaintiffs provided proper notice of levy. *Pescatore* ECF 26. Lopez and Yakima intervened in that action on June 3, 2020. Lopez, Yakima and Citibank jointly sought to adjourn the *Pescatore* matter given that this interpleader in this case was already pending and given that the Pescatores were already a party with a pending turnover motion. *Pescatore* ECF 33.

The Stansell Plaintiffs have properly complied with the procedures for issuing and levying TRIA writs of attachment and providing notice in this district and in the SDFL. The *Stansell* writs are valid and enforceable. Similarly, the Pescatore Plaintiffs have properly complied with the

procedures for issuing and levying their writ and providing notice, and it is valid and enforceable. Lopez and Yakima received timely, if not early and actual notice, and intervened within days of each respective levy. *Stansell v. FARC*, 771 F. 3d 713, 741 (11th Cir. 2014) (OFAC designated claimants, like Lopez and Yakima here, "also received actual notice and appeared").

### D. **The Phase I Issues are Fully Resolved in Plaintiffs' Favor**

The Phase I issues that required determination are: (i) agency or instrumentality; (ii) collateral estoppel; (iii) due process; and (iv) compensatory damages. These issues are resolved in favor of the Stansell Plaintiffs.

### **Agency or Instrumentality**

The Court finds that Lopez and Yakima are agents or instrumentalities of FARC, and they are collaterally estopped from challenging this final determination here. Lopez and Yakima were each found to be a FARC agency or instrumentality on multiple occasions. including in a final judgment entered November 4, 2022 in which the SDFL determined that Lopez and Yakima "are each an agency or instrumentality of the FARC . . . as a matter of law." ECF 564-4, SDFL ECF 548 *aff'd*, *Stansell v. FARC*, 120 F. 4th 754 (11th Cir. 2024).

### **Collateral Estoppel**

This conclusion was confirmed in this district when the Honorable Judge Valerie Caproni entered a February 12, 2025 final turnover Order against Lopez's blocked assets held by JPMorgan Chase Bank N.A. Judge Caproni ruled that Lopez "is collaterally estopped from contesting prior judicial determinations that he is agency or instrumentality of the FARC." *Caballero v. FARC*, 1:20-mc-00249-VEC, ECF 135 at 4 (emphasis added). Nonmutual offensive collateral estoppel "'preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.'" *Bifolck v Philip Morris USA Inc.*, 936 F. 3d 74, 79 (2d Cir. 2019) (quoting

*Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F. 3d 26, 37 (2d Cir. 2005).)  *See Dish Network Corp. v. Ace Am. Ins. Co.*, No. 16-CV-4011 (ALC), 2019 WL 7047341, at \*8 (S.D.N.Y. Dec. 23, 2019) (*citing Ball v. A.O. Smith Corp.*, 451 F. 3d 66, 69 (2d Cir. 2006)).

Judge Caproni further ruled that collateral estoppel is particularly applicable under these circumstances, where Lopez and his entities willfully disobeyed the SDFL's discovery orders, and Lopez failed to appear for deposition despite court orders.  *Caballero* ECF 135; *see* SDFL ECF 536, 547.  *Am. Empire Surplus Lines Ins. Co. v. UN Lee*, No. 23-788, 2024 WL 3507597, at \*3 (2d Cir. July 23, 2024) ("'[C]ollateral estoppel may be properly applied to default judgments where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so.'"); *In re Snyder*, 939 F. 3d 92, 100-01 (2d Cir. 2019) (determining that a default judgment for repeated failures to comply with discovery obligations should be granted preclusive effect because not giving preclusive effect to the default may result in an "'undeserved second bite at the apple'" (citation omitted)).

### Due Process Challenges

TRIA provides this Court with subject matter jurisdiction over post-judgment execution and attachment proceedings against blocked assets of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment. That is plainly the case with Lopez and Yakima.  *Stansell v. FARC*, 771 F. 3d 713, 737 (11th Cir. 2014); *Weinstein v. Islamic Republic of Iran*, 609 F. 3d 43, 50 (2d Cir. 2010).

Lopez's due process challenges and those of his entities were rejected by the Eleventh Circuit. *Stansell v. Lopez Bello*, 802 F. App'x 445, 446 (11th Cir. 2020) ("[W]e reject Lopez Bello's argument that the District Court's order offended his due process rights."); *id*. at 449 (Florida

12

garnishment statute's notice requirements as applied to third-party like Lopez "found to be constitutionally adequate"); *id.* ("Lopez Bello 'simply did not present any evidence that changed the district court's position on the agency or instrumentality determination,' despite being afforded the opportunity to do so through the filing of various motions"); *Stansell v. FARC*, 45 F. 4th 1340, 1348 (11th Cir. 2022) ("To the extent that the López appellants claim that the *ex parte* proceeding culminating in the initial writs of garnishment denied them due process, we rejected that argument in *Stansell IV*, 802 F. App'x at 448–49."). Lopez and Yakima actively litigated in the SDFL for over five years filing multiple motions and appealed several times to the Eleventh Circuit. They have been fully afforded due process.

### E. <u>Phase II—Citibank is Holding the Blocked Assets</u>

Citibank holds and maintains the Blocked Account in its New York branch. SIX SIS, a securities intermediary, has stated that it has no claim to the property held in the Blocked Account. [ECF 329 at 8]. In light of the Court's findings and directives in this Order and Final Turnover Judgment, this Court need not reach Phase II.

### F. <u>The Plaintiffs Have Priority and There Are No Other Competing Claims</u>

All interested parties have been provided notice of these proceedings or have been joined in the Third Amended Answer and Interpleader and have answered or have failed to do so despite proper notice. The parties stipulated and the court so ordered the chronological sequence of service of the writs to perfect judgment liens to be:

1. *Stansell* SDNY writ of execution levied January 30, 2019;
2. *Stansell* SDFL writ of garnishment levied February 25, 2019;
3. *Pescatore* SDNY writ of execution levied May 14, 2020;
4. *Caballero* SDNY writ of execution levied February 4, 2021.

ECF 323.

Citibank's Third Amended Answer and Interpleader identify a restraining notice filed by *Doe et al. v. Taliban et al.*, No. 20-MC-00740 (S.D.N.Y.). ECF 324 at 14. The Does' claim against the Lopez and Yakima assets was vacated by the Honorable George B. Daniels. *Does 1 Through 7 v. Taliban*, 2024 WL 1312744, at *7 (S.D.N.Y. Mar. 27, 2024) ("Doe Creditors' requests for writs of execution and attachment against the Blocked Assets of Lopez Bello and Yakima are DENIED, and their preexisting writ of execution is VACATED").

The Pescatore Plaintiffs and the Stansell Plaintiffs have executed a Joint Prosecution and Sharing Agreement with respect to their post-judgment executions, and they are not competing creditors. *See* SDFL ECF 65 at 3 (S.D. Fla. Mar. 7, 2019) (stating plaintiffs have a joint prosecution and sharing agreement that "eliminates any issues of competing judgment lien priorities."). Thus, the Stansell Plaintiffs and the Pescatore Plaintiffs have lien priority as to the blocked assets. Caballero makes no claim of priority over either the Stansell Plaintiffs or the Pescatore Plaintiffs in his Answer or Affirmative Defenses to the Third Amended Answer and Interpleader. (ECF 335).

Under Florida law, a judgment lien is created at the moment a writ of garnishment is properly served, before any service on the debtor is required. § 77.06(1), Fla. Stat. ("Service of the writ creates a lien in or upon any such debts or property at the time of service. . ..."). *See Tempur-Pedic N. Am., LLC v. SOS Furniture Co., Inc.*, 2021 WL 2689388, at *4 (S.D. Fla. Mar. 8, 2021) ("In determining the right of property between plaintiff and another judgment creditor who obtained a writ of garnishment, priority is given based on the date the respective writs were served."), R. & R. adopted, 2021 WL 2682273 (S.D. Fla. June 29, 2021).

The Second Circuit Court of Appeals ("Second Circuit") held that under C.P.L.R. § 5234, "the order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies and the filing of orders for turnover." *City of New York*

*v. Panzirer*, 23 A.D.2d 158, 259 N.Y.S.2d 284, 286 (1st Dep't 1965) (citing N.Y. C.P.L.R. § 5234(c)). *CSX Transp., Inc. v. Island Rail Term., Inc.*, 879 F. 3d 462, 472-73 (2d Cir. 2018) (emphasis added).

Accordingly, under both Florida law (the law of the transferor court) and under New York law, Plaintiffs have lien priority over all other interested parties.  The Court finds that the Stansell Plaintiffs have chronological judgment lien priority under their New York writ of execution (January 30, 2019) or their SDFL writ of garnishment (February 25, 2019).  The Pescatore Plaintiffs then follow in priority with a writ of execution served May 14, 2020.  Caballero follows third with a writ of execution served February 4, 2021.

Nonetheless, the interests of any securities intermediaries must be addressed in light of Article 8 of the UCC.  SIX SIS, which is a securities intermediary Citibank joined in its interpleader, has appeared and submitted to the jurisdiction of the court by Answering the Citibank interpleader Crossclaim on June 17, 2019.  Notably, in both its initial and currently operative Answers, SIX SIS states that it "does not assert a claim to the property currently held in the Blocked Account that is the subject of the Writ."  SIX SIS Answer, ECF 329 at 9-10; SDFL ECF 227 at 8 (same).  Thus, SIX SIS asserts no claim in the blocked property under New York or Florida law.

In its Third Amended Answer and Interpleader, Citibank stated that Bank J. Safra Sarasin ("BJSS") may have an interest in the security entitlements.  ECF 324 at 4.  BJSS is not a party to the interpleader, and BJSS has no ownership interest in the blocked assets.[2]  Plaintiffs have submitted evidence concerning notice to BJSS.  ECF 564-9, 10;  Pescatore ECF 26, 30.

---

[2] S*ee* U.C.C. § 8-503(a)  (with respect to a securities intermediary's obligation to satisfy all securities entitlements regarding a specific financial asset, "all interests in that financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders [and] are not property of the securities intermediary[.]" (emphasis added));  U.C.C. § 8-503 ("all interests in that financial asset held by

The Court finds that all parties have received constitutionally adequate notice from Plaintiffs, they have all appeared in the SDFL transferor court, and before this Court, and have all answered Citibank's Third Amended Answer and Interpleader (ECF 328, 329, 335, 347), are represented by counsel and have had an opportunity to be heard before the Court on the Turnover Motion. No other person or entity has appeared claiming ownership interest in the blocked assets superior to the perfected lien rights of the Plaintiffs.

### G. No OFAC License is Required

Section 201(a) of TRIA provides that a holder of a judgment against a terrorist party on a claim based upon an act of terrorism may collect from the "blocked assets," as defined by TRIA § 201(d)(2), of an agency and instrumentality of the judgment debtor. A license from OFAC is not required for a party to turn over to a judgment creditor, pursuant to a valid turnover order or judgment under TRIA, assets that are blocked under OFAC sanctions regulations. *See Harrison v. Republic of Sudan*, 802 F. 3d 399, 409 (2d Cir. 2015) ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006).

The Court finds that the assets held in the Blocked Account are within the meaning of "blocked assets" under TRIA, are owned by an agency or instrumentality of the terrorist party, and therefore the assets held in the Blocked Account are subject to execution by the Plaintiffs. No OFAC license is required for Citibank, or its affiliated broker dealer Citigroup Global Markets, Inc. ("Broker Dealer") to transfer, liquidate, sell or dispose of and turn over the proceeds of assets held in the Blocked Account to Plaintiffs in accordance with this Order.

---

the securities intermediary are held by the securities intermediary for the entitlement holders [and] are not property of the securities intermediary[.]"); U.C.C. § 8-508 ("A securities intermediary shall act at the direction of an entitlement holder . . . .").

16

**H. Citibank Satisfies the Requirements for Discharge in Interpleader.**

In response to the multiple conflicting writs served on Citibank, Citibank was exposed to potential liability and the prospect of additional claims from other claimants to the assets in the Blocked Account.  In seeking interpleader relief Citibank had a real and reasonable fear of double duplicative litigation and multiple liability.  This Court finds that Citibank acted in good faith as a disinterested stakeholder and has satisfied the requirements for a discharge in interpleader under Fed. R. Civ. P. 22. Third Party Defendant SIX SIS has also acted in good faith as a disinterested stakeholder, it has asserted no claim, and is also being discharged in interpleader.

**I. Plaintiffs Satisfy the Requirements for a TRIA Execution**

To obtain an order directing the turnover of a blocked asset under TRIA § 201(a), a judgment creditor must establish: (1) that the ATA judgment being enforced is against a terrorist party and is based on an act of terrorism; (2) that the property on which execution is sought is a "blocked asset" within the meaning of TRIA § 201(d)(2); (3) that the amount of the blocked asset being executed on does not, combined with the judgment creditor's other recovered blocked assets, exceed the compensatory damages component of the creditor's ATA judgment; and (4) that the party with an ownership interest in the blocked asset on which execution is sought is the terrorist party/judgment debtor or an agency or instrumentality thereof. *Weininger*, 462 F. Supp. 2d at 479.

Plaintiffs meet all of the elements required to obtain a final turnover judgment under TRIA § 201(a).  Specifically: (1) Plaintiffs have a judgment under the ATA against a terrorist party, Revolutionary Armed Forces of Colombia ("FARC"), for a claim based on an act of terrorism (ECF 5); (2) Plaintiffs seek the turnover of blocked assets within the meaning of TRIA § 201(d)(2) and 18 U.S.C. § 2333(e); (3) Plaintiffs' recovery of the assets held in  the Blocked Account will not result in their overall recovery of more than the compensatory damages component of the

17

Plaintiffs' Judgment; and (4) Lopez Bello and Yakima have been conclusively determined to each be an agency or instrumentality of the FARC as a matter of law.  ECF 564, Ex. 4, *aff'd*, *Stansell v. FARC*, 120 F. 4th 754 (11th Cir. 2024).  Further, Lopez Bello is collaterally estopped from contesting the prior judicial determinations that he is agency or instrumentality of the FARC. *Caballero v. FARC*, 1:20-mc-00249-VEC, ECF 135 at 4.

**IT IS THEREFORE ORDERED** that:

1.    The Stansell Plaintiffs, Pescatore Plaintiffs, and Caballero Plaintiff are entitled under TRIA § 201(a) to recover the cash and the liquidated sale proceeds of the securities in the Blocked Account(s), including all interest, dividends and maturity payments that exist in the Blocked Account at the time of payment in accordance with this Order, toward  the Stansell Plaintiffs', Pescatore Plaintiffs', and Caballero Plaintiff's  outstanding judgments, and terminating the *Stansell* and *Pescatore* turnover motions seeking these same blocked assets.

2.    Subject to Section 3(d) below,  Citibank shall, in order to give effect to the Court's Order and Final Turnover Judgment, engage its affiliated broker dealer Citigroup Global Markets, Inc. (the "Broker Dealer") to liquidate all of the securities in the Blocked Account(s) (the "Securities") in the relevant market and is authorized to transfer the Securities to such Broker Dealer in advance of the liquidation.  Thereafter, the Broker Dealer is authorized to sell the Securities in one or more transactions on one or more days as it, in its sole discretion, determines may be necessary to fully liquidate Securities due to market conditions at the time.  The Broker Dealer is authorized to liquidate the Securities at prevailing market bid side prices (using, if available, information on bid side prices available on Composite Bloomberg Bond Trader) on the days it determines, in its sole discretion, to enter the market to liquidate all or a portion of the Securities, or at a negotiated discount to such bid prices if a block trade is being executed in its

sole discretion. The Broker Dealer shall be entitled to charge, from the gross proceeds of the liquidation of the Securities, a fee in connection with such liquidation that will be reflected as a mark-down from the bid side price available in the market at the time of the sale, equal to up to 1% of the sale price (the "Liquidation Fees"), the amount of which shall be determined by the Broker Dealer in its sole discretion, taking into account, among other factors, the nature, size, liquidity, and market conditions applicable to the Securities being liquidated at the time of sale, including any complexity or risk associated with executing transactions in distressed or thinly-traded securities; provided that only such Liquidation Fees shall be deducted from the gross proceeds prior to remittance of the net proceeds pursuant to the terms of this Order.  Other than the Liquidation Fees, the Broker Dealer shall take no other form of compensation, including additional discounts, markups/markdowns or spreads.  Upon completion of the liquidation process, Citibank will provide the Stansell Plaintiffs' counsel with a report itemizing the ongoing accrued interest and dividends, and all of the sale proceeds for each specific security, including the commission Liquidation Fees, then after all of the Securities have been liquidated or such earlier time as further ordered by the Court, transfer the final aggregate or interim sale proceeds, with all of the cash, principal, interest and/or dividends that exist in the Blocked Account(s) at the time of payment in accordance with this Order, less the Liquidation Fees incurred in connection with the liquidation process to Plaintiffs within 60 days after this Order and Final Turnover Judgment has become final under Section 3(d) below, provided reasonable market conditions permit an orderly liquidation, or within an additional 30 days should market conditions reasonably require, as determined by Broker Dealer in its  sole discretion, with payments to be made in accordance with sub-paragraphs (a)-(c) below.  As provided in paragraph 3, neither Citibank nor the Broker Dealer it engages to facilitate the liquidation of the Securities shall be liable to any person or entity related

to or arising out of the transfer, liquidation, sale, disposition or turn over process and any and all such attempts to hold Citibank or the Broker Dealer it engages liable in any manner are prohibited and enjoined:

    a. Pursuant to the *Stansell* and *Pescatore* Plaintiffs' Joint Prosecution and Sharing Agreement, Citibank shall wire transfer 40% of the final total liquidated balance in the Blocked Account(s) to Hagens Berman Trust Account, up to a maximum payment amount of $42,096,996.73, plus accrued interest pursuant to 28 U.S.C. § 1961 specified as set forth below in the updated Declaration of counsel for the Pescatore Plaintiffs, credited to the *Pescatore* ATA Judgment to fully satisfy the *Pescatores*' outstanding judgment [ECF 564, Ex. 11]; and

    b. then the remaining total balance to be wire transferred to Porter & Korvick, P.A. Trust Account, not to exceed $231,570,481.45, inclusive of all post-judgment collections and interest through 6/15/26 pursuant to 28 U.S.C. § 1961, plus ongoing accrued interest after 6/15/26, specified as set forth below in the updated Declaration of counsel for the Stansell Plaintiffs, the Stansell Plaintiffs' remaining outstanding compensatory damage judgment balance.

    c. Because Antonio Caballero ("Caballero") has satisfied the requirements for TRIA execution upon the Blocked Assets and is therefore entitled to recover thereunder against the Blocked Assets, any funds in excess of the amounts to be paid pursuant to paragraphs 2a. and 2b. immediately above shall (promptly after completion of the wire transfer pursuant to 2.b.) be wire transferred to Zumpano Patricios' trust account, not to exceed $105,965,126.97, inclusive of interest through 5/19/26, plus ongoing accrued interest after 5/19/26 pursuant to 28 U.S.C. § 1961 specified as set forth below in the updated

Declaration of counsel for the Caballero Plaintiffs, Caballero's outstanding compensatory damages judgment balance.

Once the liquidation process is completed in accordance with this order, Citibank shall inform counsel for the *Stansell*, *Pescatore* and *Caballero* Plaintiffs that the liquidation process has been completed. Within 5 days from receiving that notice, the *Stansell*, *Pescatore* and *Caballero* Plaintiffs shall file updated Declarations of counsel stating the current outstanding judgment balances, with all accrued interest to a date 7 days thereafter, calculated pursuant to 28 U.S.C. § 1961. The judgment amounts specified above, inclusive of the amounts of accrued interest set forth in the updated Declarations, can be relied upon Citibank as the total outstanding judgments (plus accrued interest) for the *Stansell*, *Pescatore* and *Caballero* Plaintiffs, respectively. Citibank or the Broker Dealer will transfer the funds in accordance with the terms of this Order relying solely on the amounts specified in the updated Declarations as the respective judgment amounts (including accrued interest pursuant to 28 U.S.C. § 1961 through 7 days after the updated Declarations are filed) to which the funds (including any amounts resulting from the liquidation process set forth herein) to be turned over, as set forth in this Order, are to be applied. These amounts set forth in the updated Declarations, which include interests calculated pursuant to 28 U.S.C. § 1961 through 7 days from when the updated Declarations are filed, unless modified or changed by the Court, are deemed approved by the Court. For avoidance of doubt, Citibank has no responsibility for or input into the amounts set forth in the updated Declarations and/or the calculation of interest on the *Stansell*, *Pescatore* and *Caballero* Plaintiffs' judgments. Citibank or the Broker Dealer shall turn over the funds in accordance with the terms of this Order on the 7th day after the updated Declarations are filed with the Court. Counsel for the *Stansell*, *Pescatore* and *Caballero* Plaintiffs, to the extent they are entitled to any payment of funds under this Order,

shall provide Citibank within two days of the filing of the updated Declarations with the account numbers and routing numbers into which any applicable funds should be transferred.  Citibank or the Broker Dealer shall not be subject to liability of any kind arising out of or in connection with transferring the funds in accordance with this Order to the account numbers provided to Citibank by counsel for the *Stansell*, *Pescatore* and *Caballero* Plaintiffs (and any effort to pursue claims against either Citibank or the Broker Dealer are hereby enjoined)  *See* Paragraph 3 below.  Citibank shall not include any reference to Lopez, Yakima or the FARC in making these wire transfers, and may simply note "*Stansell* SDNY 16-mc-405 turnover judgment."

       3.       Upon Citibank's transfer of the funds in the Blocked Account(s) to Plaintiffs' counsel:

   a.  **Release and Discharge**: Citibank (as well as the Broker Dealer referenced in paragraph 2 above) and SIX SIS shall have no further obligations of any kind with respect to the Blocked Account(s), including the cash, principal, interest and/or dividends that exist in the Blocked Account(s). For avoidance of doubt, Citibank and SIX SIS shall have no obligation for any amounts of cash, principal, interest and/or dividends that do not exist in the Blocked Account on the date of turnover, including, but not limited to, interest not in the Blocked Account or calculated or accrued in a manner other than as it exists in the Blocked Account.  Citibank (as well as the Broker Dealer referenced in paragraph 2)  and SIX SIS shall accordingly have no liability to, and are hereby discharged and released in Interpleader and under the applicable statutes,  held harmless and released from, any potential claims by or liability to Plaintiffs, Lopez, Yakima, Citibank, SIX SIS, the Stansell Plaintiffs, the Pescatore Plaintiffs, Antonio Caballero, Bank J. Safra Sarasin, and any agencies or instrumentalities of the FARC, including any counsel, agents or successors to

any of the foregoing, or of any of the other any other persons or entities worldwide, including any government or governmental entity, as to any matters based on, arising from or otherwise relating to the transfer, liquidation, sale, disposition and turn over of any of the securities in the Blocked Account(s), the process, timing or execution of any step in the transfer, liquidation, sale, disposition and turn over process referenced in paragraph 2 above, including any liability for any taxes or tax withholding, the payment to or receipt by Citibank and/or the Broker Dealer of Liquidation Fees referenced in paragraph 2 or the transfer of the funds in the Blocked Account(s) or arising out of the sale of securities in the Blocked Account(s) to Plaintiffs or any other action taken pursuant to this Order and Final Turnover Judgment.   This Release and Discharge covers any claim, however styled, including but not limited to, for breach of any duty, sounding in tort, contract or arising out of any alleged action or inaction on the part of Citibank (and the Broker Dealer referenced in paragraph 2) or SIX SIS.

b. **Permanent Bar on Future Litigation**: Citibank, Plaintiffs, Lopez, Yakima, SIX SIS, the Stansell Plaintiffs, the Pescatore Plaintiffs, Antonio Caballero, Bank J. Safra Sarasin, any agencies or instrumentalities of the FARC, and any other persons or entities worldwide shall be permanently restrained and enjoined from instituting or pursuing any legal action or proceeding, in any jurisdiction worldwide, against Citibank (or the Broker Dealer reference in paragraph 2) or SIX SIS for damages allegedly arising from or otherwise relating to the transfer, liquidation, sale, disposition or turn over of the securities or securities entitlements contemplated by paragraph 2 above, including the transfer of the securities to the Broker Dealer from the Blocked Account as contemplated by paragraph 2 above,  the payment to or receipt by Citibank or the Broker Dealer referenced in paragraph

2 of Liquidation Fees and/or transfer of the funds in the Blocked Account(s), from the Broker Dealer or arising in any way out of the liquidation contemplated by paragraph 2 above to Plaintiffs pursuant to (and in order to give effect to) this Order and Final Turnover Judgment. For avoidance of doubt, this permanent bar on future litigation extends to claims arising out of or related to activities in compliance with this Order and/or any matters covered by the release and discharge set forth in this paragraph 3, including all subparts thereof.

c.   **Termination of All Writs**: All writs of execution and garnishment, notices of pending action, restraining notices and other judgment creditor process of any kind served on, or delivered to, Citibank or SIX SIS, to the extent they apply to or attach the specific securities or securities entitlements and cash in the Blocked Account(s) that are turned over or liquidated in accordance with this Order and Final Turnover Judgment and turned over, are hereby terminated, and the Stansell Plaintiffs' turnover motion (ECF 563-564) and the Pescatore Plaintiffs' pending turnover motion in SDNY Case 18-mc-00545 (ECF 24-25) will then also be terminated.

d.  **Deferral of Liquidation and Transfers Until After Order Is Final:**

1.   *No timely appeal filed.*

In the event no party files a timely appeal, Citibank's obligation under and as provided in Section 2 above to liquidate all of the securities in the Blocked Account(s) and transfer the funds in the Blocked Account(s) and resulting from the liquidation referenced in and governed by paragraph 2, less any Liquidation fees or taxes, to the Stansell Plaintiffs, the Pescatore Plaintiffs, and Caballero Plaintiff shall arise only after the Fed. Rule Civ. P. 62(a) thirty day automatic stay of execution has expired on the 31st day after entry of this

24

Order and Final Turnover Judgment. Thereafter, Citibank shall complete the required liquidation and wire transfer payments within the time period as provided in paragraph 2 above.

    2.    *Timely appeal filed.*

In the event any party has timely filed a notice of appeal from this Order and Final Turnover Judgment and, prior to the deadline for Citibank complete the required liquidation and wire transfer payments set forth in above in paragraph 3.d.1, also has filed a motion for stay of execution pending appeal with this Court, the Second Circuit and/or the United States Supreme Court, but has not yet posted a bond under Fed. Rule Civ. P. 62(b), and has not obtained an Order staying execution pending appeal from this Court,the Second Circuit Court of Appeals and/or the United States Supreme Court, then Citibank's obligation to liquidate all of the securities in the Blocked Account(s) and transfer the funds in the Blocked Account(s) to the Stansell Plaintiffs, the Pescatore Plaintiffs, and Caballero Plaintiff, shall only commence after a ruling(s) denying the motion(s) for stay by this Court,the Second Circuit and/or the United States Supreme Court, and be completed within 60 days of the denial(s), pursuant to the same terms and conditions provided for in paragraph 2 above.  If no motion to stay execution pending appeal has been filed prior to the deadline for Citibank complete the required liquidation and wire transfer payments set forth in above in paragraph 3.d.1, this paragraph does not apply and Citibank shall complete the required liquidation and wire transfer payments within 60 days of the entry of this Order and Final Judgment Turnover pursuant to the same terms and conditions provided for in paragraph 2 above.  Similarly, if a stay is entered, then Citibank's 60-day obligation, as set

forth and on the same terms and conditions as provided for in paragraph 2, commences upon the lifting of the stay.

4.      Citibank's counsel will provide to Plaintiffs' counsel for each of the Plaintiffs referenced in Paragraph 2 (Pescatore, Stansell and Caballero), its claimed attorneys' fees pursuant to applicable law.  Each of these counsel for the Plaintiffs and Citibank are directed to confer in good faith effort to resolve the issue of attorney fees without the need for this Court's intervention. The Stansell,  Pescatore and Caballero Plaintiffs' counsel are directed to hold in trust the amount of Citibank's claimed attorneys' fees and expenses to which it is entitled, pending either a stipulation by Plaintiffs and Citibank for a reasonable fee, or a ruling of this Court on same, and authorizing Plaintiffs' counsel to pay same from the trust proceeds once the funds have cleared post-turnover, upon either a stipulation with Citibank or entry of a Court Order awarding such fees and expenses.  Plaintiffs shall pay the reasonable fee within 30 days of such stipulation or Court Order.

5.      This Order constitutes a final judgment within the meaning of Fed. R. Civ. P. 54(b), and there is no just reason for delay in the entry of it as a final judgment, subject to Section 3(d).

6.      This Court shall retain jurisdiction over this matter to enforce any violation of this Order and Final Turnover Judgment,

SO ORDERED:                              Dated: _____, 2026

_____