## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KEITH STANSELL, *et al.*,<br><br>              Plaintiffs,<br><br>   v.<br><br>FUERZAS ARMADAS REVOLUCIONARIAS<br>DE COLOMBIA, *et al.*,<br><br>              Defendants. | Case No. 1:16-mc-00405 (LGS) (SN) |

**INTERVENOR-MOVANTS PDV HOLDING, INC. AND LDC SUPPLY
INTERNATIONAL, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO INTERVENE AND VACATE
<u>THE COURT'S DECEMBER 15, 2020 ORDER (ECF NO. 114)</u>**

Samuel Hall
(admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street N.W.
Washington, DC 20006
(202) 303-1000
SHall@willkie.com

and

Michael Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
Tel: (310) 855-3000
MGottlieb@willkie.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... i

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 8

    I.      PDVH AND LDC ARE ENTITLED TO INTERVENE ....................................... 8

    II.     THE ORDER SHOULD BE VACATED TO THE EXTENT IT HOLDS
            THAT MOVANTS ARE AGENCIES OR INSTRUMENTALITIES OF
            THE FARC ........................................................................................................ 10

            A.     Neither PDVH Nor LDC Is an "Agency or Instrumentality" of a
                    "Terrorist Party" Under TRIA .................................................... 11

            B.     PDVH's and LDC's Assets Are Not Blocked ......................................... 16

            C.     Plaintiffs Failed to Provide PDVH and LDC With Notice of the
                    Court's Order ......................................................................................... 18

            D.     The FARC Is No Longer a "Terrorist Party" Under TRIA ...................... 20

CONCLUSION.................................................................................................................... 22

CERTIFICATE OF SERVICE AND LOCAL RULE 7.1(c) WORD COUNT ........................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
  380 F. Supp. 2d 334 (S.D.N.Y. 2005)......................................................................12

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
  867 F. Supp. 2d 389 (S.D.N.Y. 2011) *vacated in part on other grounds by* 770
  F.3d 993 (2d Cir. 2014)...............................................................................20, 21

*Cruz v. TD Bank, N.A.*,
  2 N.E.3d 221 (N.Y. 2013).....................................................................................8, 9

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018)....................................................................................8

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)..........................................................................................15, 16

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007)..................................................................................15

*Epperson v. Ent. Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001)..................................................................................19

*G&A Strategic Invs. I LLC et al. v. PDVSA, S.A.*,
  788 F. Supp. 3d 616 (S.D.N.Y. 2025)...................................................................15

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*,
  415 U.S. 423 (1974)...............................................................................................20

*Jimenez v. Palacios*,
  250 A.3d 814 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020)..............4, 5, 12, 17

*Kirschenbaum v. 650 Fifth Ave.*,
  830 F.3d 107 (2d Cir. 2016) *abrogated on other grounds by Rubin v. Islamic
  Republic of Iran*, 138 S. Ct. 816 (2018)...........................................................11, 14

*Levinson v. Kuwait Finance House (Malaysia) Berhad*,
  44 F.4th 91 (2d Cir. 2022) ................................................................................18, 19

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
  467 F.3d 238 (2d Cir. 2006)...............................................................................9, 10

*Stansell v. Revolutionary Armed Forces of Colombia (FARC)*,
  771 F.3d 713 (11th Cir. 2014) ..........................................................................14, 20

*United States v. Wallach*,
     935 F.2d 445 (2d Cir. 1991)..................................................................................15

*Weinstein v. Islamic Republic of Iran*,
     609 F.3d 43 (2d Cir. 2010)...................................................................................19

**Statutes**

8 U.S.C. § 1182................................................................................................21, 22

8 U.S.C. § 1182(a)(3)(B)(vi)(I)....................................................................................20

28 U.S.C. § 1610(g) ...............................................................................................16

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat.
     2337, 2337-40, as amended, Pub. L. No. 112-158, 126 Stat. 1214, 1260
     (codified at note following 28 U.S.C. § 1610)................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 24(a) ...........................................................................................9, 10

Fed. R. Civ. P. 24(b)(1)(B) ...........................................................................................9

Fed. R. Civ. P. 24(b)(3)................................................................................................10

Fed. R. Civ. P. 69(a)(1)................................................................................................8

CPLR § 5239................................................................................................8, 9, 10

CPLR § 5240................................................................................................................9

David D. Siegel & Patrick M. Connors, N.Y. Practice § 521 (6th ed. 2018) ................................10

7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1909 (3d ed.)...........................................9

Exec. Order No. 13224, 3 C.F.R. 786 (2002) ........................................................22

Executive Order 13808, Imposing Additional Sanctions With Respect to the
     Situation in Venezuela, 82 Fed. Reg. 41155, Aug. 24, 2017.....................................3

General License 2A: Authorizing Certain New Debt, New Equity, and Securities
     Transactions Involving PDV Holding, Inc. and CITGO Holding, Inc., Office
     of Foreign Assets Control, Aug. 5, 2019 ................................................................3

General License No. 7C, Authorizing Certain Activities Involving PDV Holding,
     Inc. and CITGO Holding, Inc., Office of Foreign Assets Control, Aug. 5, 2019.....................4

In the Matter of the Designation of the Revolutionary Armed Forces of Colombia
    (FARC) (and Other Aliases) as a Foreign Terrorist Organization, 86 Fed. Reg.
    68293 (Dec. 1, 2021) ..................................................................................................22

Issuance of a New Venezuela-related Executive Order and General Licenses;
    Venezuela-related Designation, Office of Foreign Assets Control, Jan. 28,
    2019..............................................................................................................................4

Office of Foreign Assets Control, *General License No. 31B Certain Transactions
    Involving the IV Venezuelan National Assembly and Certain Other Persons*
    (Jan. 9, 2023)...............................................................................................................18

Office of Foreign Assets Control, *General License No. 7C Authorizing Certain
    Activities Involving PDV Holding, Inc. and CITGO Holding, Inc.* (Aug. 5,
    2019) ............................................................................................................................17

Office of Foreign Assets Control, *Revised Guidance on Entities Owned by
    Persons Whose Property and Interests in Property are Blocked* (Aug. 13,
    2014) ............................................................................................................................14

Publication of Venezuela Sanctions Regulations Web General Licenses 29, 30,
    30A, 31, and 31A, 88 Fed. Reg. 19840 (Apr. 4, 2023) (codified at 31 C.F.R.
    pt. 591) ........................................................................................................................18

Revocation of the Designation of the Revolutionary Armed Forces of Colombia
    (FARC) (and Other Aliases) as a Specially Designated Global Terrorist, 86
    Fed. Reg. 68295 (Dec. 1, 2021).................................................................................22

Statement from President Donald J. Trump Recognizing Venezuelan National
    Assembly President Juan Guaido, U.S. Mission Panama, Jan. 20, 2019.....................4

U.S. Department of State, *Revocation of the Terrorist Designations of the
    Revolutionary Armed Forces of Colombia (FARC) and Additional Terrorist
    Designations*, Nov. 30, 2021 (Press Release).........................................................22

*Venezuela-related Designation: Specially Designated Nationals List*, Office of
    Foreign Assets Control, July 31, 2017.........................................................................3

Pursuant to Federal Rules of Civil Procedure 24 and 69, and New York Civil Practice Laws and Rules ("CPLR") § 5240 and 5239, non-parties PDV Holding, Inc. ("PDVH") and LDC Supply International, LLC ("LDC") (together "Movants") respectfully submit this Memorandum of Law in Support of their Motion to Intervene and to Vacate the Court's December 15, 2020 Order (ECF No. 114) (the "Order").

## INTRODUCTION

More than five years ago, on December 15, 2020, based on a then-sealed *ex parte* motion, the Court ordered that certain subsidiaries of Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), including Movants PDVH and LDC, were each an "agency or instrumentality" of the Defendant, Fuerzas Armadas Revolucionarias de Colombia (the "FARC"), a notorious Colombian militant and narco-terror organization which was, at that time, a "terrorist party" under the Terrorism Risk Insurance Act of 2002 ("TRIA"). Because the Order is fundamentally flawed as to PDVH and LDC, it should be vacated.

Movants PDVH and LDC are Delaware entities, with their headquarters in Houston, Texas. They conduct business operations in the oil and gas industry in the United States. Movant PDVH wholly-owns CITGO Petroleum Corporation, which owns and operates CITGO-branded oil refineries, pipelines, retail gas stations, and other assets throughout the United States. Movant LDC is a wholly-owned subsidiary of PDVH. Movants have no connection to the FARC or to the events that gave rise to Plaintiffs' judgments in this case. In fact, Movants' assets are not blocked by the Office of Foreign Assets Control ("OFAC") or otherwise targeted by any U.S. sanctions programs related to the regime of Nicolás Maduro in Venezuela.

As a matter of both fact and law, neither PDVH nor LDC is an "agency or instrumentality" of the FARC or any other "terrorist party," and nothing in the record (from either before or after

1

the Order) could support such a conclusion.   Thus, Movants should be entitled to intervene in this action, and the Court's Order should be vacated with respect to PDVH and LDC for any of four independent reasons:  (1) there is no factual basis on which to conclude that PDVH or LDC is an "agency or instrumentality" of the FARC or any other "terrorist party" under TRIA; (2) PDVH's and LDC's assets are not blocked by OFAC, an incontrovertible fact that places PDVH and LDC outside the scope of TRIA as a matter of law; (3) Plaintiffs failed to provide PDVH and LDC with notice of the Court's then-sealed Order; and (4) the FARC is no longer a "terrorist party" under TRIA.

For any of these reasons—and for the additional reasons set forth by other of the PDVSA subsidiaries and Petrocedeno, S.A. in their respective motions to vacate the Order[1]—the Order should be vacated.

## FACTUAL BACKGROUND

In this proceeding, Plaintiffs have sought to enforce their default judgments against Defendants by garnishing the assets of various third parties under TRIA.  TRIA subjects "the blocked assets" of a "terrorist party" or "any agency or instrumentality of that terrorist party" to "execution or attachment in aid of execution" on any judgment against the terrorist party.[2]  *See* 28 U.S.C. § 1610 note.  As relevant here, Plaintiffs sought to establish that PDVSA and various of its subsidiaries, including Movants PDVH and LDC, are each an "agency or instrumentality" of the FARC, which the Court has previously found to be a "terrorist party" under TRIA.  *See* ECF No. 111 at 20.

---

[1]    *See* ECF Nos. 346, 393, 409, 420.  Movants adopt and incorporate those arguments as noted herein with respect to PDVH and LDC.

[2]    *See* Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2337, 2337-40, as amended, Pub. L. No. 112-158, 126 Stat. 1214, 1260 (codified at note following 28 U.S.C. § 1610).

2

Movant PDVH is a stock holding company incorporated in Delaware and headquartered in the "energy corridor" in Houston, Texas. *See Osio v. Maduro Moros*, No. 21-cv-20706, ECF No. 592-1, Declaration of Fernando Vera, at ¶ 3 (S.D. Fla. Jul. 11, 2025). Through other of its wholly-owned subsidiaries, PDVH wholly-owns non-party CITGO Petroleum Corporation, which owns and operates CITGO-branded oil refineries, pipelines, retail gas stations, and other assets throughout the United States. *Id.* Movant LDC is a Delaware limited liability company and a wholly-owned subsidiary of PDVH. PDVH is a U.S.-based subsidiary of PDVSA, which owns 100% of PDVH's shares. *Id.* at ¶ 4.

PDVH and its subsidiaries, as U.S. companies, have been legally and factually cut off from the regime of Nicolás Maduro since 2017. To start, the United States designated Maduro as a Specially Designated National ("SDN") in July 2017, in turn blocking U.S. persons (including PDVH and its subsidiaries) from providing any services to him, or receiving services from him, directly or indirectly.[3] What is more, in August 2017, the U.S. Government placed sanctions on the Government of Venezuela and PDVSA (and its subsidiaries), significantly limiting their ability to obtain new debt, or to issue new equity.[4] The U.S. Government exempted PDVH and its subsidiaries from these restrictions, so long as no other entities owned by the Government of Venezuela were "involved," thereby ensuring against involvement of the Government of Venezuela and/or PDVSA in most transactions for the U.S. companies.[5] In May 2018, the U.S.

---

[3]    *See Venezuela-related Designation: Specially Designated Nationals List*, Office of Foreign Assets Control, July 31, 2017, https://ofac.treasury.gov/recent-actions/20170731.

[4]    *See* Executive Order 13808, Imposing Additional Sanctions With Respect to the Situation in Venezuela, 82 Fed. Reg. 41155, Aug. 24, 2017, https://ofac.treasury.gov/media/5476/download?inline.

[5]    *See* General License 2A: Authorizing Certain New Debt, New Equity, and Securities Transactions Involving PDV Holding, Inc. and CITGO Holding, Inc., Office of Foreign Assets Control, Aug. 5, 2019, https://ofac.treasury.gov/media/34121/download?inline.

Government further separated PDVH and its subsidiaries from Venezuela by restricting the Government of Venezuela and PDVSA from collateralizing, pledging, assigning, or otherwise transferring equity in PDVH and its subsidiaries, among other entities, thereby further restricting the Maduro regime's ability to utilize the U.S. companies for any benefit.

Then, on January 23, 2019, the U.S. Government went even further—de-recognizing the Maduro regime altogether and officially recognizing Juan Guaidó as the Interim President of Venezuela.[6]  This, in turn, entirely severed any legal or factual connection between PDVH and the Maduro regime.  *See Jimenez v. Palacios*, 250 A.3d 814, 830-31 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) ("The determinations of the Executive Branch are unambiguous: Guaidó is recognized, the National Assembly is legitimate, and neither Maduro nor the Constituent Assembly are legitimate parts of the Venezuelan government.").  Soon after, on January 28, 2019, OFAC added PDVSA to its Specially Designated Nationals and Blocked Persons List.[7]  At the same time, the U.S. Government issued General License 7, making clear that the restrictions on PDVSA did not apply to PDVH and its subsidiaries, so long as no other Government of Venezuela entities are "involved."[8]

Then, on February 8, 2019, a PDVSA Ad Hoc Board was appointed by Juan Guaidó and the 2015 National Assembly, which was as of that time the U.S.-recognized Government of

---

[6]    *See* Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido, U.S. Mission Panama, Jan. 20, 2019, https://pa.usembassy.gov/statement-from-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-as-the-interim-president-of-venezuela/.

[7]    *See* Issuance of a New Venezuela-related Executive Order and General Licenses; Venezuela-related Designation, Office of Foreign Assets Control, Jan. 28, 2019, https://ofac.treasury.gov/recent-actions/20190128.

[8]    General License No. 7C, Authorizing Certain Activities Involving PDV Holding, Inc. and CITGO Holding, Inc., Office of Foreign Assets Control, Aug. 5, 2019, https://ofac.treasury.gov/media/34136/download?inline.

Venezuela.[9]  The PDVSA Ad Hoc Board's legitimacy as the sole shareholder of PDVH was adjudicated and confirmed by the Delaware Supreme Court in 2020.  *See Jimenez*, 250 A.3d at 824-26.  As a result, from February 8, 2019 up until the recent arrest of Nicolás Maduro and the subsequent formal recognition of a new Interim Government of Venezuela by the United States in March 2026, PDVH recognized *only* the PDVSA Ad Hoc Board as its shareholder.[10]

Nevertheless, as part of their efforts to enforce their default judgment by obtaining assets connected to Venezuela's oil industry, on December 10, 2020, Plaintiffs filed under seal, and without notice to PDVH or LDC, an *ex parte* Expedited Motion for Issuance of Post-Judgment TRIA Writ of Execution, seeking in part what Plaintiffs allege to be blocked funds belonging to PDVSA and various subsidiaries, including PDVH and LDC.  *See* ECF No. 111 at 20-21.  Plaintiffs attached to their Motion as exhibits affidavits from three individuals, Douglas C. Farah, David L. Gaddis, and Brian Fonseca, all of whom purport to be experts on the drug trade and political situation in South America.  *See* ECF Nos. 111-3, 4, 5.  Plaintiffs' motion mentions PDVH and LDC by name only twice: in two identical lists of PDVSA subsidiaries, which Plaintiffs assert are "members of the Cartel of the Suns and . . . each and agency or instrumentality of the FARC."  *See* ECF No. 111 at 14, 17, 21.  In support of their extraordinary pronouncement that PDVH and LDC are "members" and "agenc[ies] or instrumentalit[ies]" of notorious international narco-terror syndicates, Mr. Farah and Mr. Gaddis likewise mention PDVH and LDC by name only once each: in the same identical list of "PDVSA subsidiaries," which both Mr. Farah and Mr. Gaddis conclude

---

[9]    *See* PDVSA Ad Hoc Home Page, https://pdvsa-adhoc.com/en/home/ (last visited Aug. 12, 2026).

[10]    Indeed, as the Delaware Court of Chancery noted in *Jimenez*, "[s]ince the Executive Branch recognized [Juan] Guaidó, no United States court has held that representatives of the Maduro regime may act for either the Venezuelan government or a Venezuelan state-owned enterprise in litigation."  *See Jimenez*, 250 A.3d at 826 n.40.

are "members of the Venezuelan Cartel of the Suns" and "each an agency or instrumentality of the FARC." *See* ECF Nos. 111-3 at 37-38, 111-4 at 21. To be clear, they did not provide *any* factual support for *any* connection between PDVH and LDC and members of the Venezuelan Cartel of the Suns. Instead, they seem to have based their conclusion on the unsupported (and incorrect) assumption that PDVH and LDC were in some way connected to Nicolás Maduro at the time. They also entirely and conveniently ignore the long history of sanctions severing any legal or factual connection between PDVH and its subsidiaries and the Maduro regime.

Five days later, on December 15, 2020, the Court issued the Order under seal granting Plaintiffs' *ex parte* motion, holding (in relevant part) that the "PDVSA subsidiaries (identified in plaintiffs' Motion DE 111, P. 21) . . . are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA." ECF No. 114. The Order further stated that the Clerk of the Court is "authorized and directed to issue further writs in aid of execution as warranted under, an in accordance with, Rule 69 of the Federal Rules of Civil Procedure, consistent with the Court's Order." *Id.* Despite being identified on Plaintiffs' list in ECF No. 111, Plaintiffs did not serve the Order on PDVH or LDC, or otherwise notify them of the Order.

On August 14, 2021, certain PDVSA subsidiaries identified on Plaintiffs' list, represented by the law firm of White & Case, moved the Court to vacate the Order (the "PDVSA Subsidiaries' Motion"). *See* ECF Nos. 346, 393. A separate similar motion filed by the law firm of Marcos Daniel Jimenez, P.A. on behalf of Petrocedeno S.A. followed on November 24, 2021 (the "Petrocedeno Motion"). *See* ECF Nos. 409, 420. Plaintiffs opposed both motions. *See* ECF Nos. 363, 410. On August 2, 2023, while those motions remained pending, the Court stayed these proceedings pending the Second Circuit's decision in *Havlish v. Bin Laden*, No. 23-258 (2d Cir.

6

Feb. 28, 2023).  *See* ECF No. 534.  That stay "paused the adjudication of various motions made by [PDVSA] subsidiaries challenging the Court's December 15, 2020 order, which authorized writs of execution against those PDVSA subsidiaries' assets."  *See* ECF No. 557 (Netburn, M.J. order describing the stay pending *Havlish*).  On September 9, 2025, the Court lifted the stay after the Second Circuit issued its decision in *Havlish*.  ECF No. 574.

Shortly thereafter, on September 29, 2025, the Court held a status conference with the parties where, among other things, the issue of which counsel had the proper authority to represent certain PDVSA subsidiaries was discussed (the so-called "authority to represent" issue).  *See* ECF No. 605 at 14-19 (conference transcript).[11]  At the conference, the undersigned counsel for PDVH and LDC noted that PDVH and LDC would be "seeking to intervene and file our own motion to vacate [ECF No. 114] based off the fact that all the evidence submitted for that underlying order did not include any mention of [PDVH] or [LDC]."  *Id.* at 31-32.  Undersigned counsel further expressed concern that PDVH and LDC are "U.S. companies operating with the full support of the U.S. Government, and now there is a public filing that has been unsealed, deeming [them] to be an agent or instrumentality of a potential [terrorist] (sic) entity that they have never had any connection to."  *Id.* at 32.  Undersigned counsel agreed with the Court that addressing the "authority to represent" issue as a "gating issue" first made sense, so long as PDVH and LDC preserved the opportunity to brief the issue of the validity of ECF 114 thereafter.  *Id.* at 34.  Shortly after the conference, on October 2, 2025, the Court stayed these proceedings again pending the resolution of the "authority to represent" issue.  *See* ECF No. 598.  On May 15, 2026, the Court lifted the stay "on activity related to the Venezuelan state-owned entities" after the "authority to

---

[11]    The "authority to represent" issue did not involve PDVH and LDC, as PDVH and LDC have always been represented by Willkie Farr & Gallagher LLP in these proceedings.

represent" issue was resolved with the change in recognition of the Government of Venezuela by the U.S. Government and the withdrawal of White & Case. *See* ECF No. 632.

Accordingly, PDVH and LDC now submit this motion to supplement the PDVSA Subsidiaries' Motion and Petrocedeno's Motion and to protect their own interests.

## ARGUMENT

### I. PDVH AND LDC ARE ENTITLED TO INTERVENE

PDVH and LDC are entitled to intervene in this action under Federal Rules of Civil Procedure 24 and 69. Under Rule 69, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). New York CPLR § 5239, in turn, provides:

> Prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt. . . . The court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded.

CPLR § 5239.[12]  Under New York post-judgment execution procedure, Movants are entitled to intervene because—as entities subject to a categorical "agency or instrumentality" determination, which has the effect of placing "their blocked assets subject to attachment and execution pursuant to TRIA" (*see* ECF No. 114)—Movants are each unquestionably an "interested person." *See Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 230 (N.Y. 2013) ("A judgment debtor is certainly an 'interested person.'").  New York judgment-enforcement procedures also authorize Movants' intervention under CPLR § 5240, which provides that "at any time," the court "may . . . on its own initiative or

---

[12]    Relief that would otherwise be available in a special proceeding under New York law is available by motion under Federal Rule of Civil Procedure 69. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (reaching that conclusion as to a special proceeding under CPLR § 5225).

the motion of any interested person . . . make an order . . . modifying the use of any enforcement procedure."  CPLR § 5240; *see also Cruz*, 2 N.E.3d at 230 (CPLR § 5240 authorizes "comparable relief" to CPLR § 5239).

In addition to Movants' right of intervention under New York procedure, Movants are also entitled to intervene under Federal Rule of Civil Procedure 24.  Rule 24 provides that a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).  To meet that standard, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  "*R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (internal quotation marks omitted).

PDVH and LDC both satisfy the Rule 24(a) standard.  Unless the Court vacates the Order finding that PDVH and LDC are each an "agency or instrumentality of the FARC," their assets are potentially "subject to attachment and execution pursuant to TRIA."  *See* ECF No. 114 at 2.  The Court's finding also subjects PDVH and LDC to ongoing reputational damage.  Moreover, none of the existing parties represent PDVH's or LDC's interests.  *See* 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ("An interest that is not represented is surely not adequately represented and intervention must be allowed.").

In the alternative, PDVH and LDC are entitled to permissive intervention under Rule 24(b). "On timely motion, the court may permit anyone to intervene who[] . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  "The

9

court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *R Best Produce*, 467 F.3d at 240.  In addition, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Here, for the reasons discussed above, the Rule 24(a) factors weigh in favor of granting intervention to LDC under Rule 24(b) as well.  As to prejudice or delay, PDVH's and LDC's participation in this action will not result in prejudice or further delay to any party given that, as described below, Plaintiffs are not currently seeking to execute on any funds belonging to PDVH or LDC, and in the interim, PDVH's and LDC's interests remain unprotected.

This motion is timely as to all of the above standards as it is being filed shortly after the most recent stay of these proceedings due to the "authority to represent" issue has been lifted. Moreover, to Movants' knowledge Plaintiffs are not presently seeking to execute on any funds belonging to either PDVH or LDC in accordance with the Order in satisfaction of their judgment, nor will any such funds be applied for that purpose unless and until Plaintiffs successfully pursue a turnover action.  *See* Siegel, N.Y. Practice § 521 (6th ed.) ("The only stated time limitation for the CPLR 5239 proceeding is that it be brought before the property involved has actually been applied (*i.e.*, the proceeds distributed) towards satisfaction of a judgment.").  For all these reasons, Movants are entitled to intervene in this action.

## II.    THE ORDER SHOULD BE VACATED TO THE EXTENT IT HOLDS THAT MOVANTS ARE AGENCIES OR INSTRUMENTALITIES OF THE FARC

The Order should be vacated pursuant to CPLR § 5239 to the extent that it holds that PDVH and LDC are agencies or instrumentalities of the FARC for any of four independent reasons.

10

**A.      Neither PDVH Nor LDC Is an "Agency or Instrumentality" of a "Terrorist Party" Under TRIA**

Plaintiffs have not, and cannot, carry their burden to show that PDVH or LDC is an "agency or instrumentality" of a "Terrorist Party," as required by TRIA.  Section 201(a) of TRIA provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), *in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism*, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code, *the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment* in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note (emphasis added).  The statute defines "Terrorist Party" to mean "a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under [former] section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) [former 50 U.S.C. 4605(j)] or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)."   TRIA § 201(d)(4), codified as amended at note following 28 U.S.C. § 1610.   To demonstrate that a person or entity is an "agency or instrumentality" of a "terrorist party" under TRIA, a plaintiff must show that *each* such person or entity "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by a terrorist party." *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016) (emphasis added) *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

Plaintiffs cannot satisfy any of these standards.  The only support for their conclusion that Movants are "agencies or instrumentalities" of the FARC is contained in the affidavits of Messrs.

Farah[13] and Gaddis.  *See* ECF No. 111 at 14, 17.  But Messrs. Farah Gaddis point to *no evidence* in their respective declarations that support this conclusion.  Their omissions are not surprising, however, because there is no independent factual basis to conclude that PDVH or LDC is an "agency or instrumentality" of a "terrorist party" as is required by TRIA.  PDVH and LDC are Delaware companies, led by executives based in the United States, employing U.S. citizens, openly conducting normal business operations in the oil and gas industry in Houston, Texas.  Plaintiffs' conclusion that they are in fact secretly a conduit for the FARC, a former Colombian narco-terror organization, is baseless.  As the Delaware Supreme Court has affirmed as a matter of U.S. law, since the change in U.S. recognition of the Government of Venezuela in 2019, the Maduro regime and the PDVSA operating in Venezuela during the Maduro regime's rule had no factual, legal or practical ability to control PDVSA's U.S.-based subsidiaries—indeed *it has had no connection whatsoever to the U.S.-based subsidiaries of PDVSA.  See Jimenez*, 250 A.3d at 824-26.  And even prior to the change in recognition, PDVH and LDC were factually and legally separated from the Maduro regime and were barred from involving the Maduro regime in broad and significant ways. *See supra,* Factual Background at 3-4.  The fact that these affidavits fail even to mention the Delaware Supreme Court's decision in *Jimenez* or the sanctions regime that has long separated PDVH and its subsidiaries from Venezuela confirms that their conclusions are unsupportable and wrong.  *See, e.g., Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 355 (S.D.N.Y. 2005).

Instead, the entire substance of Mr. Farah's and Mr. Gaddis's testimony with respect to PDVH and LDC is that they are PDVSA subsidiaries, and because PDVSA is allegedly part-and-

---

[13]    Mr. Farah appears to be in the business of selling boilerplate reports to plaintiffs' counsels for their use in supporting similar arguments in other TRIA actions.  *See e.g.*, *Osio v. Maduro Moros*, No. 21-cv-20706, ECF No. 405-1 (S.D. Fla. Apr. 15, 2025).

parcel with the Cartel of the Suns, which Messrs. Farah and Gaddis allege supports the FARC, then all of the PDVSA subsidiaries must be "agencies or instrumentalities" of the FARC as well. *See* ECF Nos. 111-3 at ¶¶ 57, 58, 59, 63; 111-4 at ¶¶ 29, 32, 35.[14] That is insufficient as a matter of law, and it also fundamentally misunderstands the ownership structure of PDVH and LDC.  As a matter of settled law, PDVSA's mere ownership of PDVH (and by extension LDC) cannot support a determination that PDVH and LDC are "agencies or instrumentalities" of the FARC or any other "terrorist party" under TRIA.  To begin, Plaintiffs do not put forth any allegations that PDVSA itself is a "terrorist party."  Instead, Plaintiffs allege that PDVSA is effectively controlled by the Cartel of the Suns, which Plaintiffs in turn allege supports the only "terrorist party" present in this case, the FARC.  Thus, even accepting Plaintiffs' allegations as true (which they are not), this leaves PDVH and LDC at least thrice removed from *any* direct connection to an alleged "terrorist party".

TRIA, however, does not permit such an attenuated connection.  As the statutory text makes clear, when a plaintiff has a judgment against a "terrorist party," TRIA exposes to execution or attachment "the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality ***of that terrorist party***)."  TRIA § 201(a) (emphasis added).  Under TRIA's plain text, therefore, any "agency or instrumentality" relationship must be direct—*i.e.*, the entity at issue must be an agency or instrumentality of the terrorist party *itself*, not of *another agency or*

---

[14]      As the PDVSA Subsidiaries and Petrocedeno argued in their respective motions, the evidence that Plaintiffs put forth in support of their conclusion that those entities specifically and the PDVSA subsidiaries collectively are "agencies or instrumentalities" of the FARC boils down to a combination of inadmissible hearsay in old news articles, extensive parroting of the United States's indictment of Nicolás Maduro and affiliated entities and individuals, improper legal conclusions, and the say-so of Messrs. Farah, Gaddis, and Fonseca.  *See* ECF Nos. 346 at 21-23; 409 at 17-25.  To the extent the arguments raised in those motions apply to the PDVSA subsidiaries collectively, Movants adopt and incorporate them herein specifically with respect to PDVH and LDC.

13

*instrumentality* of the terrorist party.    The Second Circuit's "agency or instrumentality" test articulated in *Kirschenbaum* requires this conclusion.  As the Court explained, to demonstrate that an entity is an "agency of instrumentality" of a "terrorist party" under TRIA, a plaintiff must show that **each defendant** was "(1) was a means through which a material function **of the terrorist party** is accomplished, (2) provided material services to, on behalf of, or in support **of the terrorist party**, or (3) was owned, controlled, or directed **by a terrorist party**."  *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016) (emphases added) (citing *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 771 F.3d 713, 724 n.6 (11th Cir. 2014)).  Each of these tests contemplates that Plaintiffs must draw a direct causal chain, supported by specific allegations, between the "terrorist party" and each of its alleged "agenc[ies] or instrumentalit[ies]."

OFAC's "50 percent rule"—which is standing guidance through which OFAC advises the public that, unless otherwise stated, it considers entities in which a blocked person owns a 50 percent or greater ownership interest to be blocked as well—also does not support Plaintiffs' position.  *See* OFAC 50 Percent Rule (Rev. Aug. 13, 2014).[15]  That is because, as the Eleventh Circuit has explained, OFAC's 50 Percent Rule is not a basis to attribute agency or instrumentality status from a parent to an indirect subsidiary under TRIA § 201(a).  *See Stansell*, 771 F.3d at 732 n.13 ("[I]t is not proper for the district court to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status.  The agency or instrumentality determination is separate from the blocked asset determination.").  This is doubly so given that OFAC has expressly exempted PDVH and its subsidiaries (including LDC) from the 50% Rule

---

[15]    Office of Foreign Assets Control, *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked* (Aug. 13, 2014), https://ofac.treasury.gov/media/6186/download?inline.

14

and any blocking restrictions against PDVSA operating in Venezuela, as discussed *supra*, Factual

Background at 3-4 and *infra*, at Argument Part B.

What is more, the ownership chain described above cannot support a determination that

PDVH and LDC are "agencies or instrumentalities" of the FARC for the additional reason that

neither PDVSA nor its controlling shareholders have any legal right to funds belonging to PDVH,

LDC, or any of its other subsidiaries.  That is because a "basic tenet of American corporate law is

that the corporation and its shareholders are distinct entities. . . . An individual shareholder, by

virtue of his ownership of shares, does not own the corporation's assets[.]"  *Dole Food Co. v.

Patrickson*, 538 U.S. 468, 474-75 (2003); *accord EM Ltd. v. Republic of Argentina*, 473 F.3d 463,

476 (2d Cir. 2007), *United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991).  Indeed, "a

corporate parent which owns the shares of a subsidiary does not … own or have legal title to the

assets of the subsidiary; and, it follows with even greater force, the parent does not own or have

legal title to the subsidiaries of the subsidiary."  *Dole Food Co.*, 538 U.S. at 475.  "The fact that

the shareholder is a foreign state does not change the analysis."  *Id*.  Following those principles,

the Supreme Court and the Second Circuit have consistently rejected requests to deem a

subsidiary's assets as attachable or executable property interests of its parent corporation.  *See,

e.g.*, *Dole Food Co.*, 538 U.S. at 474-76; *EM Ltd.*, 473 F.3d at 475–76.  Absent veil-piercing,

which Plaintiffs have not argued for or shown to be warranted here and has been rejected

elsewhere,[16] Plaintiffs may not disregard PDVSA's and its subsidiaries' corporate forms in order

to reach assets belonging to PDVH or LDC based solely on PDVSA's ownership of PDVH or on

---

[16]    *See G&A Strategic Invs. I LLC et al. v. PDVSA, S.A.*, 788 F. Supp. 3d 616, 630-41
(S.D.N.Y. 2025) (rejecting plaintiffs' argument that PDVH and its subsidiaries, including LDC,
were alter-egos of PDVSA because PDVSA did not "exercise significant and repeated control over
[PDVH's] day-to-day operations, such that plaintiffs can overcome the strong presumption in favor
of the independent status of PDVH.") (quotations and citations omitted).

15

whatever the "agency or instrumentality" status of the PDVSA operating in Venezuela may be. *Cf. Dole Food Co.*, 538 U.S. at 476 (declining to interpret the Foreign Sovereign Immunity Act ("FSIA")[17] as disregarding the traditional distinction between a corporation and its subsidiaries absent a clear congressional statement to that effect).

## B.    PDVH's and LDC's Assets Are Not Blocked

In their Motion, Plaintiffs assert—incorrectly—that the assets of PDVH and LDC are blocked by OFAC. *See* ECF 111 at 6, 20 ("As a result of these OFAC sanctions, all of PDVSA's majority and wholly owned subsidiaries are also sanctioned and their assets are also blocked under IEEPA."). The Court, in turn, relied on Plaintiffs' erroneous assertion in its Order holding that PDVH and LDC are agencies or instrumentalities of the FARC. ECF No. 114 at 2.

But Plaintiffs are simply wrong—neither PDVH's nor LDC's assets are blocked under U.S. sanctions. Their assets are therefore outside of the reach of TRIA, which, by its terms, provides that only "blocked assets" of a terrorist party, or its agency or instrumentality, are "subject to execution or attachment in aid of execution." 28 U.S.C. § 1610. At all relevant times, OFAC has made clear that PDVH's and LDC's assets are not blocked under any of the Executive Orders blocking PDVSA or the Government of Venezuela, namely Executive Orders 13850 and 13884, respectively. More specifically, OFAC issued General License 7 on the same day as the designation of PDVSA under Executive Order 13850 and then reissued and expanded the license as General License 7C on the same day PDVSA was separately blocked as an entity owned by the

---

[17]    Although Congress later added 28 U.S.C. § 1610(g) to the FSIA in order to overcome the Supreme Court's holding in *Dole Food Co.*, that only further illustrates that Congress knows how to subject assets owned by corporate subsidiaries of a foreign state's "agency or instrumentality" to attachment and execution, but did not do so in (or make a corresponding post-*Dole* amendment to) TRIA § 201(a). *Cf.* 28 U.S.C. § 1610(g) (stripping attachment and execution immunity from property held by a foreign state's agency or instrumentality, including "an interest held directly or indirectly in a separate juridical entity").

Government of Venezuela under Executive Order 13884.  *See* OFAC, Gen. License 7C (Aug. 5, 2019).[18]  By its plain terms, General License 7 (and now General License 7C)[19] makes clear that all transactions involving property of PDVH and its subsidiaries (including LDC) are not blocked under Executive Orders 13850 and 13884, so long as no other Government of Venezuela entities are involved.[20]  Further, OFAC specifically described this authorization as "unblocking," noting that General License 7C otherwise does not authorize "the unblocking of any property blocked pursuant to any part of 31 C.F.R. chapter V, **except as authorized by paragraph[] (a)**"—the paragraph authorizing dealings in PDVH's (and LDC's) property.  *Id*. at § (d)(4) (emphasis added).

In addition, prior to U.S. Government's blocking of PDVSA and the Maduro regime, it recognized the government in opposition to the then-Maduro regime as the sole legitimate Government of Venezuela.  *See Jimenez*, 250 A.3d at 822-23.  That opposition government then appointed representatives to the PDVSA Ad Hoc Board, and OFAC then unblocked the PDVSA Ad Hoc Board under U.S. law.  More specifically, OFAC issued General License 31, which exempts the PDVSA Ad Hoc Board, and has maintained those authorizations continuously since

---

[18]     Office of Foreign Assets Control, *General License No. 7C Authorizing Certain Activities Involving PDV Holding, Inc. and CITGO Holding, Inc.* (Aug. 5, 2019), https://ofac.treasury.gov/media/34136/download?inline.

[19]     The relevant authorizations of General License 7 have been continuously in effect since the designation of PDVSA in January 2019.  The title of the license has changed from General License 7 to 7C due to extensions to the expiration dates and updates to the orders referenced in the license, but those edits did not affect the underlying authorizations at issue here, which have not lapsed for even a single day since January 28, 2019—the day OFAC blocked PdVSA.

[20]     More specifically, General License 7C authorizes all transactions with "PDV Holding, Inc. (PDVH), CITGO Holding, Inc., and any of their subsidiaries"—which includes LDC—so long as no other entities owned by the Government of Venezuela are involved.  OFAC, Gen. License 7C (Aug. 5, 2019).

17

well before the Plaintiffs obtained their judgment.  *See* OFAC, Gen. License 31 (Aug. 5, 2019),[21]

*replaced ultimately as* OFAC, Gen. License 31B (Jan. 9, 2023).[22]

Accordingly, the Order should be vacated because it was based on the incorrect premise that PDVH's and LDC's assets are blocked under U.S. sanctions.

**C.      Plaintiffs Failed to Provide PDVH and LDC With Notice of the Court's Order**

The entirety of the "agency or instrumentality" determination with respect to PDVH and LDC was done *ex parte* and under seal.  *See* ECF Nos 111 and 114 as unsealed by ECF No. 325. To make matters worse, Plaintiffs' counsel did not serve PDVH or LDC or its counsel with notice or a copy of the Order.

As the Second Circuit has explained, the proper method for implementing TRIA § 201(a) under New York state law is through a *contested* proceeding at which TRIA's statutory requirements can be litigated consistent with the basic requirements of New York enforcement procedures and due process, including notice to the alleged TRIA "agency or instrumentality" and an opportunity to be heard.  In *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022), the plaintiffs "obtained a default judgment against Iran under an FSIA exception in the District of Columbia," and then "sought to enforce that judgment in the Southern District of New York under TRIA by executing on the assets of KFH Malaysia," a third-party that the plaintiffs alleged to be an agency or instrumentality of Iran.  *Id.* at 97.  The plaintiffs "moved *ex parte* for a writ of execution," which the District Court granted.  *Id.*  On appeal, the Second Circuit

---

[21]     Publication of Venezuela Sanctions Regulations Web General Licenses 29, 30, 30A, 31, and 31A, 88 Fed. Reg. 19840 (Apr. 4, 2023) (codified at 31 C.F.R. pt. 591), https://www.federalregister.gov/documents/2023/04/04/2023-06970/publication-of-venezuela-sanctions-regulations-web-general-licenses-29-30-30a-31-and-31a.

[22]     Office of Foreign Assets Control, *General License No. 31B Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons* (Jan. 9, 2023), https://ofac.treasury.gov/media/930241/download?inline.

held that it was "legal error" to grant a writ of execution "before KFH Malaysia had received any notice, *and* without making any findings about KFH Malaysia's connections to Iran." *Id.* (emphasis added).

Here, although the Court's Order did recite Plaintiffs' proposed finding that "the PdVSA subsidiaries (identified in plaintiffs' Motion DE 111, p. 21) are each an agency or instrumentality of the FARC," *Levinson*'s other requirement—notice of the proceedings to the alleged agency or instrumentality—was absent.  TRIA "provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment[.]" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010).  Importantly, however, there is a "distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability[.]" *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001).  As *Levinson* makes clear, TRIA's grant of jurisdiction over enforcement proceedings against a *new party*—such as PDVH and LDC—does not relieve the judgment creditor of its obligation to actually *litigate* those enforcement proceedings constituent with due process.

That did not occur here. Instead, the Court awarded Plaintiffs a legal determination that PDVH and LDC are each an "agency or instrumentality" of the FARC, without notice to PDVH or LDC, and without testing Plaintiffs' assertions through an adversarial process.  As a result, PDVH and LDC have been deprived of the opportunity to challenge that determination, which remains on the public docket, until years after the fact.  Movants submit that this failure by Plaintiffs to provide even minimal notice to entities that have been the target of their efforts is not

19

consistent with due process and requires that the Order be vacated.  *See, e.g.*, *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974) ("[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."); *Stansell*, 771 F.3d at 727 (constitutional due process entitles an alleged TRIA "agency or instrumentality" to "actual notice of the post judgment proceedings against them" and an opportunity to be "heard on their challenge to the agency or instrumentality issue") (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

**D.    The FARC Is No Longer a "Terrorist Party" Under TRIA**

A finding that an entity is an "agency or instrumentality" of a "terrorist party" under TRIA requires that the "terrorist party" be designated as such as of both the time of the underlying judgment and when the plaintiff seeks to execute on the blocked assets of its "agency or instrumentality."  But as of November 18, 2021, the FARC is no longer designated as a "terrorist party" by the U.S. government, which places any blocked assets of its alleged "agencies or instrumentalities" out of reach under TRIA.

TRIA defines the term "terrorist party" to mean "a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism . . . ." TRIA § 201(d)(4), codified as amended at note following 28 U.S.C. § 1610 (2018 ed.). INA Section 212(a)(3)(B)(vi), in turn, defines "terrorist organization" to include organizations "designated under" INA Section 219 by the Secretary of State. 8 U.S.C. § 1182(a)(3)(B)(vi)(I).  Section 201(a) under TRIA requires a judgment debtor to be a "terrorist party" both at the time of the underlying judgment **and** at the time of a final turnover proceeding.  *See Calderon-Cardona v. JPMorgan*

20

*Chase Bank, N.A.*, 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) *vacated in part on other grounds by* 770 F.3d 993 (2d Cir. 2014).

In *Calderon-Cardona*, the court held that the statutory requirements of TRIA are not met unless there is a terrorist party at the final order to provide access to the so-called blocked property, including a turnover action:

> The government intervenes directly in these private proceedings through TRIA only at the moment of enforcement, when a party seeks special access to 'the blocked assets of [a] terrorist party' to satisfy a judgment. The impact of TRIA thus occurs at the moment of enforcement, not the moment of judgment in the underlying action or the bringing of an initial claim.

*Id.* Moreover, "the Supreme Court has determined that this passage of TRIA § 201 speaks as of the date *when a court rules on an application for turnover*, not the date when a judgment creditor's claim arises." *Id.* (emphasis added). In turn, "the most natural reading of TRIA § 201(a) is that it requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the enforcement proceeding." *Id.*

Here, Plaintiffs argued that the FARC is a "terrorist party" under TRIA, a contention which the Court accepted in its Order. *See* ECF Nos. 111 at 20 ("Plaintiffs filed evidence supports . . . [that] PdVSA and its subsidiaries are agencies or instrumentalities of the terrorist party FARC"); 114 at 2 ("the OFAC IEEPA sanctioned PDVSA subsidiaries . . . are each an agency or instrumentality of the FARC"). While Plaintiffs did not explain the basis for their designation of the FARC as a "terrorist party" in their motion, they must have relied on the designation by the Secretary of State under INA Section 219, which is the only relevant valid basis for such a finding under TRIA.[23] However, the FARC is no longer a "terrorist party" under TRIA because it was de-

---

[23]    Executive Order 13224 had also designated the FARC as a terrorist organization; however, that designation is irrelevant for purposes of § 212 of the INA, and consequently for TRIA. *See* 8 U.S.C. § 1182; TRIA § 201(d)(4). In any case, the FARC was removed from Executive Order 13224 on the same day that it was de-designated by the Secretary of State under INA § 219.

designated as such by the U.S. Secretary of State on November 18, 2021. *See* 86 Fed. Reg. 68293

(Dec. 1, 2021).[24]  Thus, the Order must be vacated to the extent it holds that PDVH and LDC are

"agencies or instrumentalities" of the FARC, because the FARC is no longer a "terrorist party"

under TRIA.[25]

## CONCLUSION

For the reasons set forth above, Movants respectfully submit that their Motion should be

granted and the Court's Order docketed at ECF No. 114 should be vacated to the extent that it

holds that PDVH and LDC are "agencies or instrumentalities" of a "terrorist party" under TRIA.

---

*See* Revocation of the Designation of the Revolutionary Armed Forces of Colombia (FARC) (and Other Aliases) as a Specially Designated Global Terrorist, 86 Fed. Reg. 68295 (Dec. 1, 2021), https://www.federalregister.gov/documents/2021/12/01/2021-26087/revocation-of-the-designation-of-the-revolutionary-armed-forces-of-colombia-farc-and-other-aliases; *see also* Exec. Order No. 13224, 3 C.F.R. 786 (2002), https://www.state.gov/executive-order-13224.

[24]      In the Matter of the Designation of the Revolutionary Armed Forces of Colombia (FARC) (and Other Aliases) as a Foreign Terrorist Organization, 86 Fed. Reg. 68293 (Dec. 1, 2021), https://www.federalregister.gov/documents/2021/12/01/2021-26083/in-the-matter-of-the-designation-of-the-revolutionary-armed-forces-of-colombia-farc-and-other.

[25]      To the extent that Plaintiffs argue that the FARC still qualifies as a terrorist organization under § 212(a)(3)(B)(vi) of the INA Act (8 U.S.C. 1182(a)(3)(B)(vi)), that is without merit. The INA defines a terrorist organization to include **"**a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in," various terrorist activities. 8 U.S.C.A. § 1182. But as then-Secretary of State Blinken explained in delisting the FARC, "[f]ollowing a 2016 Peace Accord with the Colombian government, the FARC formally dissolved and disarmed. It no longer exists as a unified organization that engages in terrorism or terrorist activity or has the capability or intent to do so." U.S. Department of State, *Revocation of the Terrorist Designations of the Revolutionary Armed Forces of Colombia (FARC) and Additional Terrorist Designations*, Nov. 30, 2021 (Press Release), https://2021-2025.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-designations/. This compels the conclusion that the FARC no longer exists—organized or not—and therefore does not have the capability or intent to carry out the types of acts necessary to deem it a terrorist organization under the INA.

Dated: August 12, 2026

*/s/ Samuel Hall*

Samuel Hall
(admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street N.W.
Washington, DC 20006
(202) 303-1000
SHall@willkie.com

and

Michael Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
Tel: (310) 855-3000
MGottlieb@willkie.com

*Counsel for Movants PDV Holding, Inc. and
LDC Supply International, LLC*

23

**CERTIFICATE OF SERVICE AND LOCAL RULE 7.1(c) WORD COUNT**

I hereby certify that the foregoing memorandum of law was filed on the Court's CM/ECF system on August 12, 2026, and that it contains 6,357 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate, as counted using Microsoft Word.

Dated: August 12, 2026                              */s/ Samuel Hall*
                                                    Samuel Hall

24